# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ERICSSON INC., et al., | Case No. 6:10-CV-473-LED |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| D-LINK SYSTEMS, INC., et al., | |
| Defendants. | |

## INTEL CORPORATION'S PARTIALLY UNOPPOSED MOTION TO INTERVENE

**I.      INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Intel Corporation ("Intel") hereby moves to intervene in this action as of right under Fed. R. Civ. P. 24(a)(2), or alternatively, with permission of the Court under Fed. R. Civ. P. 24(b)(1)(B).[1] Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson ("Plaintiffs") allege that four of Intel's larger customers[2] infringe seven patents-in-suit. In alleging infringement of those patents, Plaintiffs rely heavily on Wi-Fi standards promulgated by the Institute of Electrical and Electronics Engineers ("IEEE"). Specifically, Plaintiffs allege that Customer Defendants infringe seven patents-in-suit because they sell "IEEE 802.11-compliant products." Intel sells Wi-Fi products that operate in accordance with 802.11 ("Intel Wi-Fi Products") to each of the Customer Defendants. It also sells those products (among others) to multiple other customers throughout the United States.

None of the defendants oppose Intel's motion. Plaintiffs do not oppose Intel's intervention with respect to the specific Wi-Fi products that Intel sells to the Customer Defendants. Plaintiffs do, however, oppose Intel's motion to the extent it extends either to (i) other Intel Wi-Fi Products operating in accordance with those 802.11 standards implicated by Plaintiffs in this suit, or (ii) even the same specific Wi-Fi products that Plaintiffs have identified in this suit, to the extent different units of those same Intel products have been sold to customers not party to this suit. In so doing, Plaintiffs appear to propose that Intel be required to litigate—

---

[1] In accordance with Fed. R. Civ. P. 24(c), a copy of Intel's proposed Complaint in Intervention is attached as Exhibit A.

[2] Intel's four named-defendant customers are Acer, Inc. and Acer America Corporation (collectively, "Acer"); Gateway, Inc. ("Gateway"); Dell, Inc. ("Dell"); and Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Consumer Products, LLC (collectively, "Toshiba") (all referred to together herein as Intel's "Customer Defendants"). Plaintiffs' claims target the Customer Defendants' computer products, such as laptops, which incorporate Intel's 802.11 chips to provide Wi-Fi functionality.

in piecemeal fashion—the very same products, patents, and standards that Plaintiffs have placed at-issue in this action. While Plaintiffs may see some tactical advantage to the threat of *seriatim* suits against Intel customers on the same subject matter, the law does not countenance it. As explained below, Plaintiffs' position serves no legitimate interest, promotes inefficiency, and invites inconsistent results.

## II. FACTUAL BACKGROUND

### A. This Action Concerns Intel 802.11 Wi-Fi Networking Products That Are Contained In Its Customer Defendants' Accused Products

Intel supplies, among other things, networking components with wireless functionality referred to as "802.11" or "Wi-Fi," relating to the IEEE's 802.11 technical standards. Intel is a member of the IEEE and participated in the development of the accused 802.11 technical standards. The Customer Defendants assemble and sell, among other things, computer products that contain Wi-Fi products (such as those supplied to them by Intel), so that those computer products can have Wi-Fi functionality. *See* Dkt. No. 93 (Answer of Defendants Acer and Gateway) at ¶¶ 10, 13, 16; Dkt. No. 111 (Answer of Defendant Dell) at ¶ 19; Dkt. No. 117 (Answer of Defendant Toshiba) at ¶ 22.

On September 14, 2010, Plaintiffs sued Customer Defendants Acer and Gateway for infringement of eight of the nine patents-in-suit, relating to standardized Wi-Fi components in their products.[3] Plaintiffs' original Complaint was limited to those customers' products "having

---

[3] Plaintiffs asserted seven patents against Intel's Customer Defendants based on the accused products' alleged use of 802.11 standardized functionality: U.S. Patent Nos. 5,790,516 ("the '516 patent"), 5,987,019 ("the '019 patent"), 6,466,568 ("the '568 patent"), 6,330,435 ("the '435 patent"), 6,424,625 ("the '625 patent"), 6,772,215 ("the '215 patent"), and 6,519,223 ("the '223 patent") (collectively referred to as "the Patents"). Plaintiffs also assert U.S. Patent No. 6,173,352 ("the '352 patent") against certain laptop computers with hardware switches, and U.S. Patent No. 5,771,468 ("the '468 patent") against only Wi-Fi routers sold by defendants D-Link Systems, Inc., Netgear, Inc., and Belkin, who are not supplied by Intel.

Atheros, QMI, Ralink, Foxconn, Gemtek, Lite-On, Marvell, Realtek, or Cambridge Silicon Radio [Wi-Fi] chipsets." Dkt. No. 1 (Complaint) at ¶¶ 4, 7, 10, 13, 16, 19. On June 8, 2011, Plaintiffs filed an Amended Complaint adding two additional Intel Customer Defendants—Dell and Toshiba—and alleging infringement of the same eight patents. Plaintiffs' Amended Complaint also eliminated the original allegations restricting their claims to particular suppliers, thereby broadening Plaintiffs' allegations to include Intel's Wi-Fi Products. *See* Dkt. No. 77 (Amended Complaint) at ¶¶ 56, 66-69, 75-78, 84-87, 93-96, 102-05, 111-14, 120-23.

### B. Plaintiffs Accuse Functionality Provided By Intel Wi-Fi Products

Plaintiffs served Acer and Gateway with infringement contentions on June 14, 2011 and served Dell and Toshiba with infringement contentions on June 20, 2011. While Plaintiffs' infringement contentions for the Patents are nominally directed at the Customer Defendants' computer products, they in fact target functionality allegedly found on Intel Wi-Fi Products contained in the Customer Defendants' accused products. *See* Exh. B (Excerpt of Infringement Contentions Against Acer).

Notably, Plaintiffs' allegations in the Amended Complaint are not directed to specific products, but rather generally accuse all "products that are compliant with one or more of 802.11(a), 802.11(e), 802.11(g), and 802.11(n) wireless LAN standards." Dkt. No. 77 (Amended Complaint) at ¶¶ 10, 13, 16, 19, 22, 25, 28, 31, 34. In addition, Plaintiffs allege that Defendants infringe "the claimed methods and apparatuses of the Ericsson WLAN Patents *through the IEEE 802.11-compliant products* they make, use, import, export, sell, and/or offer for sale." *Id.* at ¶ 56 (emphasis added). Similarly, in their infringement contentions as to each and every Customer Defendant, Plaintiffs allege that the '223, '215, '435, '625, '568, and '019 patents are "infringed by *all* Acer 802.11(n)-compliant products" and that the '516 patent is infringed by "all Acer 802.11(a), (g), and (n)-compliant products." *See* Exh. B (Excerpt of Infringement Contentions)

4

(emphasis added). Further, Plaintiffs rely heavily and almost exclusively on the language of the standards in their infringement contentions. *See id.* Accordingly, Plaintiffs do not purport to limit their allegations to specific products—they generally accuse all of Defendants' "802.11-complaint products."

C. **Intel's Customer Defendants Have Tendered Indemnity And Defense Demands, And Intel Has Agreed To Partially Accept Those Tenders For Each Customer Defendant**

Each of Intel's Customer Defendants has requested that Intel indemnify and defend them in this action based on their respective contractual agreements for their purchases of Intel Wi-Fi Products. Given Plaintiffs' Amended Complaint and associated infringement contentions, Intel recently has concluded that it is appropriate to defend each of the Customer Defendants as to the Patents and partially indemnify them on relevant asserted claims for their accused products using Intel products that provide 802.11 functionality.

D. **This Case Is At An Early Stage Of Litigation**

No activity has occurred that weighs against Intel's intervention. The Customer Defendants just recently made their production of documents concerning the accused functionalities. Dkt. No. 102 (Docket Control Order) at 6. Intel has agreed to make a prompt sufficient-to-show production upon acceptance into the case as a party. Invalidity contentions are not due until December 9, 2011, and *Markman* proceedings have not yet commenced. *Id.* at 5-6. Minimal discovery has been exchanged, no depositions have been taken, and trial is over a year and a half away. *See id.* at 1; Exh. C (Docket as of Nov. 17, 2011).

E. **The Only Issue In This Motion Contested By Plaintiffs Is The Scope Of Intel's Participation As A Party**

Counsel for Intel has been negotiating with counsel for Plaintiffs since early October in an attempt to submit this motion as an agreed motion. Counsel have engaged in a lengthy and

5

detailed meet and confer process over the past six weeks, both in writing and by telephone conference, in order to narrow the issues presented to this Court. At Plaintiffs' request, Intel provided Plaintiffs[4] with underlying supply contracts that underscore Intel's substantial legal and financial interests in these proceedings. The result of those negotiations is agreement that Intel should be permitted to intervene at least as to the Intel Wi-Fi Products supplied to the Customer Defendants. The only remaining issue is whether Intel's intervention should extend to Intel Wi-Fi Products sold to others.

## III. ARGUMENT

The unopposed motion should be granted as a matter of right pursuant to Rule 24(a)(2) or, alternatively, as a matter of permission under Rule 24(b)(1)(B). As explained in section "C" below, the same reasons that support unopposed intervention warrant intervention on all Intel Wi-Fi Products implicated by Plaintiffs' allegations.

### A. Intel Is Entitled To Intervene As A Matter Of Right

Rule 24(a)(2) permits intervention on timely motion for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In assessing a motion to intervene as a matter of right, Fifth Circuit courts consider: (1) timeliness; (2) the potential intervenor's interest in the property or transaction that is the subject of the underlying lawsuit; (3) any impairment to the intervenor's ability to protect its interest absent intervention; and (4) the adequacy of the representation of the potential intervenor's interest by the

---

[4] On an agreed outside counsels' eyes only basis.

6

existing parties. *Ross v. Marshall,* 426 F.3d 745, 753 (5th Cir. 2005); *see also State of Texas v. Am. Tobacco Co.,* No. 5-98CV-270, 1999 WL 1022129, at *1 (E.D. Tex. Nov. 5, 1999).

The inquiry under Fed. R. Civ. P. 24(a)(2) "is a flexible one, which focuses on the particular facts and circumstances surrounding each application, and . . . intervention of right must be measured *by a practical rather than technical yardstick.*" *Ross*, 426 F.3d at 753 (emphasis added) (internal quotation marks omitted). And where, as here, a manufacturer seeks to intervene in a suit brought against its customers, the intervenor has a substantial interest that is to be given greater weight. *See, e.g.*, *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 55 (1935) (manufacturer's intervention in patent infringement action against its customers was "necessary for the protection of its interest"); *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 365 (N.D. Cal. 2002); *see also Honeywell Int'l Inc. v. Audiovox Commc'ns. Corp.*, No. Civ.A. 04-1337-KAJ, 2005 WL 2465898, at *3-4 (D. Del. May 18, 2005) ("[D]ealing with the manufacturers first is the fairest and most efficient way to proceed.").

As underscored by the non-opposition, Intel's motion is timely, and no party will be prejudiced by Intel's participation. Limited activity has occurred in this case thus far, and if permitted to intervene, Intel will comply with the calendar outlined in the Court's Docket Control Order. In addition, Intel has substantial legal and financial interests in the outcome of this action. Intel's products are specifically targeted in Plaintiffs' standards-based infringement contentions, and Intel's interest in the issues to be litigated here—such as claim interpretation, validity, infringement, and FRAND obligations—is direct. Indeed, because Plaintiffs' recent actions have triggered defense and indemnity obligations on the part of Intel to each of the Customer Defendants, Intel has a direct financial stake in this case. Moreover, Intel cannot adequately protect its interests without intervention. While Intel's interests are obviously aligned

7

with those of other defendants in this case, its financial exposure and economic incentives are unique. Finally, intervention promotes judicial economy. Because the allegations in this case implicate documents and testimony that are unique to Intel, its intervention will facilitate that discovery. Intervention will also avoid duplicative litigation (and discovery) and avoid inconsistent results.

   **B.**  **At A Minimum, The Court Should Exercise Its Discretion To Permit Intel's Intervention**

In the alternative, the Court should permit Intel to intervene under its independent discretion to do so. Permissive intervention is allowed on timely motion to one who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is allowed when: (1) the motion is sufficiently timely; (2) there is a common question of law or fact between the intervenor's claim or defense and the main action; and (3) intervention will not unduly delay or prejudice the adjudication of rights of the original parties. *See Am. Tobacco,* 1999 WL 1022129, at * 1. Permissive intervention should be granted liberally when an "applicant's claim or defense and the main action have a question of law or fact in common." *See Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.,* Civ.A. Nos. B-87-00507-CA, B-88-00429-CA, 1989 WL 237732, at *3 (E.D. Tex. Feb. 14, 1989). Permissive intervention "'dispenses with any requirement that the intervenor [shall] have a direct, personal or pecuniary interest in the subject of the litigation.'" *Id.* (citation omitted) (alteration in original).

  For the same reasons noted above, permissive intervention is appropriate. Because Plaintiffs' infringement contentions on the Patents in the main action are directed to 802.11 functionality allegedly found in Intel's Wi-Fi Products, Intel's defenses will most certainly involve common questions of law and fact. *See Reid v. Gen. Motors Corp.,* 240 F.R.D. 257, 260

(E.D. Tex. 2006) (permissive intervention granted where the intervener's technology "appears to be central to both [the intervenor's] claim of noninfringement and, at minimum, [a defendant's] claim of noninfringement"). Intel's validity and FRAND defenses will also involve common questions of law and fact. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.,* No. 6:09-cv-00448-JDL, Doc. 224 at 3 (E.D. Tex. May 10, 2010) (Love, M.J.) (granting Intel's intervention and identifying common questions of law and fact relating to patent validity and infringement). Since Intel's intervention will not delay or prejudice the adjudication of Plaintiffs' claims, is partially unopposed by Plaintiffs, and promotes judicial economy, it should be granted.

### C. Intel Should Be Permitted To Intervene As To All Intel Wi-Fi Products

The only contested issue in this motion is whether Intel's participation as a party should be limited to the specific products with 802.11 functionality that it sells to the Customer Defendants. Plaintiffs claim to place at issue all products that operate in accordance with 802.11. Their alleged proof of infringement relies almost entirely on the language of the standards. *See* Part II.B, *supra*. As such, artificially limiting intervention to exclude implicated Intel products with 802.11 functionality that are not sold to Customer Defendants would be inconsistent with Plaintiffs' allegations. For Intel to resolve the controversy created by those allegations, it necessarily must resolve that controversy with respect to all of its Wi-Fi products. Otherwise, Intel would paradoxically be forced to resolve Plaintiffs' allegations directed to a particular Intel product in this action, and then separately resolve identical allegations on that same product in the future merely because the product is sold to other customers.

Plaintiffs' allegations—both in this case, and also in the licensing demands it has made to Intel's other customers—have created a substantial controversy with respect to all of the Intel Wi-Fi Products, including both those it supplies to the Customer Defendants, as well as those it supplies to its other customers. Having Intel bring a separate declaratory relief as to the latter

9

products would yield piecemeal litigation, duplicative discovery, and potentially inconsistent rulings.  *See, e.g.*, *VFD Consulting, Inc. v. 21st Servs.; 21st Holdings, LLC*, No. C 04-2161 SBA, 2005 WL 1115870, at *4 (N.D. Cal. May 11, 2005) ("Allowing parties with a practical interest in the outcome of a particular case to intervene often prevents or simplifies future litigation involving related claims . . . .").

## IV.   CONCLUSION

For the foregoing reasons, Intel respectfully requests that the Court grant its unopposed motion to intervene in this action, either as a matter of right, or permissively pursuant to the Court's discretion.

Dated: November 18, 2011

Respectfully submitted,

By: */s/ Robert M. Parker*
Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No.  00787165
Charles Ainsworth
State Bar No. 00783521
Andrew T. Gorham
State Bar No. 24012715
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
903/531-3535
903/533-9687 - Facsimile
E-mail: rmparker@pbatyler.com
E-mail: rcbunt@pbatyler.com
E-mail: charley@pbatyler.com
E-mail: tgorham@pbatyler.com

ATTORNEYS FOR INTERVENING
PARTY INTEL CORPORATION

**CERTIFICATE OF CONFERENCE**

   The undersigned hereby certifies that counsel for Intel has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is partially opposed.  The personal conference required by Local Rule CV-7(h) was conducted via email and several telephone conferences starting in October 2011 and continuing through November 15, 2011.  Adam Alper (for Intel), Theodore Stevenson (for Plaintiffs), and other counsel for the parties participated in the conferences.  During the conferences, counsel for Intel and Plaintiffs attempted to resolve all disputes before filing this motion, but they were not able to reach agreement regarding Intel's request to intervene on Wi-Fi products that Intel sells to customers other than the Customer Defendants.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

                    */s/ Adam R. Alper with permission by*
                     *Robert M. Parker*
                     Adam R. Alper

**CERTIFICATE OF SERVICE**

   I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served this November 18, 2011, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

                     */s/ Robert M. Parker*
                     Robert M. Parker