**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON,** § § § § § | |
| **Plaintiffs,** § § § | **CIVIL ACTION NO. 6:10-CV-473-LED** |
| **v.** § § § | |
| **D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC.** § § § § § § § | **JURY TRIAL DEMANDED** |
| **Defendants.** § § § | |

**PLAINTIFFS' RESPONSE AND PARTIAL OPPOSITION
TO INTEL'S MOTION TO INTERVENE**

## TABLE OF CONTENTS

I.  Introduction ........................................................................................................................1

II.  Factual Background ............................................................................................................2

III.  Legal Background ...............................................................................................................4

IV.  Argument ............................................................................................................................5

    A.  The Opposed Portion of Intel's Motion Would Force Ericsson to Assert Compulsory Counterclaims That Would Needlessly Burden the Parties, the Court, and Numerous Third Parties ...............................................................................................................6

    B.  Because Ericsson Is Seeking Damages For Direct Infringement, The Opposed Portion of Intel's Motion Will Do Nothing to Increase Judicial Efficiency .............................................9

    C.  The Opposed Portion of Intel's Motion Interferes With Ericsson's Right as Plaintiff to Control Its Case ....................................................11

    D.  Intel Lacks Jurisdiction To Assert a Claim for Non-Infringement as to Non-Defendant Customers ........................................................12

V.  Conclusion ........................................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Consol. Wood Prods. Emple. Benefit Plan*,
    2011 U.S. Dist. LEXIS 14570 (E.D. Tex. Feb. 14, 2011) .......................................................5

*Beauregard, Inc. v. Sword Servs., LLC*,
    107 F.3d 351 (5th Cir. 1997) ...............................................................................................12

*Cajun Elec. Power Coop., Inc. v. Gulf States Utils. Inc.*,
    940 F.2d 117 (5th Cir. 1991) .................................................................................................5

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)................................................................................................................9

*Creative Compounds, LLC v. Starmark Labs.*,
    651 F.3d 1303 (Fed. Cir. 2011)......................................................................................13, 14

*Deus v. Allstate Ins. Co.*,
    15 F.3d 506 (5th Cir. 1994), cert. denied, 513 U.S. 1014 (1994).......................................4, 11

*Edwards v. City of Houston*,
    78 F.3d 983 (5th Cir.1996) .....................................................................................................4

*Farouk Systems, Inc. v. Costco Wholesale Corp.*,
    Civ. A. No. 09-cv-3499, 2010 U.S. Dist. LEXIS 38742, 2010 WL 1576690 (S.D. Tex.
    Apr. 20, 2010) ........................................................................................................................5

*First Quality Baby Prods., L.L.C. v. Kimberly-Clark Worldwide, Inc.*,
    No. 1:09-0354, 2009 U.S. Dist. LEXIS 51961 (M.D. Penn. Jun. 15, 2009) ..........................14

*Gafni v. Multiethnic Behavioral Health, Inc.*,
    No. 08-3700, 2009 U.S. Dist. LEXIS 82385 (E.D. Pa. Sept. 9, 2009) ...................................11

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006)...............................................................................................10

*Harris v. Amoco Production Co.*,
    768 F.2d 669 (5th Cir. 1985) ......................................................................................4, 11, 13

*League of United Latin American Citizens, Council No. 4434 v. Clements*,
    884 F.2d 185 (5th Cir. 1989) ..................................................................................................4

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)..............................................................................................................13

McKool 404632v1

*Minnesota Mining & Mfg. Co. v. Norton Co.*,
  929 F.2d 670 (Fed. Cir. 1991)...................................................................................14

*Polymer Indus. Prods. v. Bridgestone/Firestone, Inc.*,
  347 F.3d 935 (Fed. Cir. 2003).....................................................................................7

*Reid v. Gen. Motors Corp.*,
  240 F.R.D. 257 (E.D. Tex. 2006).................................................................................5

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) .......................................................................................4

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
  474 F.3d 1298 (Fed. Cir. 2007)....................................................................................9

*United States v. Texas E. Transmission Corp.*,
  923 F.2d 410 (5th Cir. 1991) .......................................................................................4

OTHER AUTHORITIES

FEDERAL RULE OF CIVIL PROCEDURE 24 .........................................................4–7, 11, 13

McKool 404632v1

## I.  INTRODUCTION

Ericsson owns a portfolio of patents covering its inventions related to wireless networking and the 802.11 wifi standard.  As part of its ongoing portfolio licensing program, Ericsson has offered licenses under its 802.11 portfolio to companies who sell routers, computers, and smartphones with wifi capability.  A substantial number of companies have licensed Ericsson's 802.11 portfolio.

The Defendants in this case—DLink, Netgear, Acer, and Gateway—to date have refused to license Ericsson's portfolio despite selling infringing products with wifi capability.  Ericsson has met repeatedly with these Defendants to exchange infringement and validity positions and financial offers.  Some of these negotiations have lasted several years.  Ericsson finally sued these specific Defendants only after its licensing negotiations stalled with no optimism that agreement would be reached.

The Defendants use Intel chipsets for some, but not all, of their accused products.  Intel now seeks to intervene in this case.  Ericsson agrees that Intel can intervene as to the Defendants that Ericsson has sued in this case.  But Intel seeks to intervene more broadly, and that is where the dispute arises.  Intel sells its chipsets to companies other than the specific Defendants in this suit, and Intel seeks to intervene in this suit to assert that companies other than the specific Defendants in this case do not infringe.

Ericsson objects to the scope of Intel's proposed intervention because it creates enormous case management issues for Ericsson and the Court.  Allowing unlimited intervention by Intel would force Ericsson to add all of Intel's other customers to this case.  This would be an unknown, and probably unmanageable, number of additional router and computer manufacturer

1

defendants to be added to this case.  At this point, Ericsson does not know how many router and computer manufacturers use Intel chipsets, but suspects that number is large.

Ericsson is aware of this Court's case management rulings in large multi-defendant cases. Consistent with this Court's prior statements, Ericsson has endeavored to limit the number of defendants to keep this case manageable and to allow it to be tried in one trial setting.  Ericsson has not asserted the patents-in-suit against the wireless industry as a whole, nor has it asserted the patents-in-suit against any wireless chip-makers.

Ericsson does not oppose Intel intervening with respect to the currently accused devices sold by the existing Defendants. This will avoid the need to add any additional Defendants other than Intel.  However, Ericsson strongly disputes that Intel should be permitted to intervene with respect to non-accused devices sold by parties that are not currently Defendants.  Ericsson respectfully requests that the Court limit Intel's intervention to claims related to the current Defendants.

## II. FACTUAL BACKGROUND

Ericsson is a world-leading provider of telecommunications equipment and related services to mobile and fixed network operators.  Ericsson provides equipment and services to mobile communication and multimedia companies throughout the United States and the world. Ericsson's research and development efforts have provided the technical backbone for many of the most popular mobile communication standards in the world.  In addition, on its own, and through strategic partnerships with Sony and LG, Ericsson also provides cutting edge consumer devices such as wireless access points, routers, and mobile phones.

Prior to filing this lawsuit, Ericsson began licensing negotiations with various providers of 802.11-compliant devices regarding its 802.11 patent portfolio.  On September 14, 2010,

2

Ericsson filed the present suit alleging infringement of several patents related to 802.11 wireless communication technology.[1]  All of the defendants in this case sell various 802.11-compliant consumer devices such as laptops, routers, and mobile phones that compete with Ericsson's and its partners' products.  Although Defendants manufacture and sell these devices, they contend that much of the 802.11 functionality of their products has been designed by various third party chipset manufacturers.  *See, e.g.,* Def.'s Mot. To Transfer Venue, Doc. No. 55 at p. 4.

Ericsson has not asserted that any chipset manufacturer directly infringes any of the patents-in-suit.  Nonetheless, in October 2011, Intel informed Ericsson that it intended to intervene in this lawsuit based on Ericsson's allegations related to its customers—Acer, Dell, and Toshiba.  Intel contends that, because it provides at least some of the 802.11 wireless chipsets for the accused devices sold by these defendants, and because it has accepted some indemnity obligations, it has an interest in this case.

Ericsson informed Intel that it does not oppose Intel's intervention provided that Intel clarifies that its intervention does not relate to acts of infringement caused by non-Defendant Intel customers.  Intel refused to agree to this clarification and now seeks permission to intervene and assert claims extending far beyond Ericsson's infringement claims in this case.  Specifically, Intel seeks to add into this case any potential infringement claims Ericsson may be able to bring against Intel or other Intel 802.11-chip customers.  Because this unlimited intervention would dramatically alter the scope of this case and impose significant, unnecessary hardship on Ericsson, third parties, and the Court, Ericsson opposes Intel's motion to the extent it relates to products sold by Intel's non-Defendant customers.

---

[1] Ericsson's Original Complaint names D-Link, Netgear, Acer, and Gateway as Defendants.  On June 8, 2011, Ericsson amended its complaint to add Defendants Dell, Toshiba, and Belkin into this case.

3

McKool 404632v1

## III. LEGAL BACKGROUND

"The purpose of intervention is to admit, by leave of court, a person who is not an original party into a proceeding. The intervening party then becomes a 'party' for the purpose of protecting some right or interest alleged by the intervenor to be affected by the proceeding." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994), cert. denied, 513 U.S. 1014 (1994). Intervention "is intended to prevent multiple lawsuits where common questions of law or fact are involved, but is not intended to allow the creation of whole new lawsuits by the intervenors." *Id.* The movant bears the burden of establishing its right to intervene. *See United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991).

Federal Rule of Civil Procedure 24 establishes two kinds of intervention: intervention as of right (Rule 24(a)) and permissive intervention (Rule 24(b)). Absent a statutory authority granting a right to intervene, Rule 24(a)(2) allows intervention as of right when: (1) the motion is timely, (2) the proposed intervenor claims an interest related to the property or transaction underlying the action, (3) disposition of the action may impair or impede the intervenor's ability to protect that interest, and (4) the current parties do not adequately represent the intervenor's interest. *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005). Failure to meet any one of these requirements precludes intervention under Rule 24(a)(2). *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir.1996).

Rule 24(b) provides that a Court may, at its discretion, allow intervention when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin American Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). In addition, a movant must establish "independent jurisdictional grounds" for its claims. *See Harris v. Amoco*

4

McKool 404632v1

*Production Co.*, 768 F.2d 669, 675 (5th Cir. 1985). Aside from these requirements, the decision whether to grant intervention under Rule 24(b) depends on the facts of each case and is entirely within the court's discretion. *See Cajun Elec. Power Coop., Inc. v. Gulf States Utils. Inc.*, 940 F.2d 117, 121 (5th Cir. 1991); *Adams v. Consol. Wood Prods. Emple. Benefit Plan*, 2011 U.S. Dist. LEXIS 14570 at *13-14 (E.D. Tex. Feb. 14, 2011). Where permissive intervention would further complicate the case without any added benefit, the court may deny a motion to intervene. *Farouk Systems, Inc. v. Costco Wholesale Corp.*, Civ. A. No. 09-cv-3499, 2010 U.S. Dist. LEXIS 38742, 2010 WL 1576690, *3 (S.D. Tex. Apr. 20, 2010).

## IV. ARGUMENT

The bulk of Intel's motion is devoted to discussing an issue that Ericsson does not oppose: whether Intel may intervene with respect to chip sales to the Defendants. Ericsson does not oppose Intel's intervention with respect to chip sales to the Defendants under either Rule 24(a) or 24(b). The opposed portion of Intel's motion, however, presents a very different set of circumstances. While Courts in this district have allowed manufacturers to intervene in lawsuits where the manufacturer's customer is accused of patent infringement, Intel does not cite any authority, under either Rule 24(a) or 24(b), allowing a manufacturer to intervene and adjudicate infringement claims related to customers that are not accused of infringement. *See, e.g., Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006).

Intel's motion simply overlooks the numerous practical and legal problems which would result from granting the opposed portion of Intel's motion. First, Intel's motion would require Ericsson to assert compulsory counterclaims which would inevitably lead to unnecessary delay and burden on Ericsson, the Court, and numerous third parties. Second, because Ericsson is entitled to full compensation for acts of direct infringement, Intel's intervention related to

5

indirect infringement will not provide any increase in judicial economy. Third, Intel's motion would further prejudice Ericsson by focusing this case on indirect infringement by chipset suppliers rather than direct infringement by Ericsson's competitors or *their* (not Intel's) customers. Finally, Intel's motion is deficient as a matter of law because it has failed to present evidence necessary for meeting its jurisdictional burden.

### A. INTEL HAS NOT SHOWN THAT IT HAS AN INTEREST RELATING TO THE PROPERTY OR TRANSACTION THAT IS THE SUBJECT OF THE ACTION UNDER RULE 24(a)

Intel's motion asserts that Intel is entitled to intervene under either Rule 24(a) or 24(b). Ericsson does not dispute Intel's intervention as to chip sales to Defendant customers under either subsection. However, because Intel has failed to meet its jurisdictional burden of showing that it is entitled to intervene with respect to non-Defendant customers, Intel cannot satisfy the requirements of either 24(a) or 24(b) as to sales such customers.

There can be no dispute that Intel is not entitled to intervene as a matter of right on this issue. In order to intervene as a matter of right, the movant must show that it has "an interest relating to the property or transaction that is the subject of the action." Here, the "property" is the accused consumer devices and the "transaction" is the sale of those devices by Defendants, not the Intel chips. Ericsson has not asserted any infringement claim against Intel or any non-Defendant customer of Intel based on the patents-in-suit. Thus, Intel has no interest in the sale of the accused consumer devices, and Intel certainly has no interest in the sale of non-accused consumer devices sold by any non-Defendant customers. Accordingly, for at least this reason, Intel's motion cannot satisfy the requirements of Rule 24(a).

### B. INTEL HAS NOT SHOWN THAT IT IS ENTITLED TO PERMISSIVELY INTERVENE UNDER RULE 24(b)

Intel has similarly failed to show that it is entitled to permissively intervene with respect to non-Defendant customers. Intel cannot satisfy even the threshold requirements of Rule 24(b),

6

and numerous practical considerations dictate that the Court should, in its discretion, deny Intel's motion as to sales to non-Defendant customers.

### 1. The Opposed Portion of Intel's Motion Would Force Ericsson to Assert Compulsory Counterclaims That Would Needlessly Burden the Parties, the Court, and Numerous Third Parties

To intervene under Rule 24(b), Intel must prove, as a threshold matter, that intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *Clements*, 884 F.2d at 189. If Intel were permitted to assert a non-infringement claim based on sales of chipsets to non-Defendant customers, as a practical matter, Ericsson would be forced to file a counterclaim alleging that Intel's sales of 802.11 chipsets to non-Defendant customers indirectly infringe the patents-in-suit.[2] In addition, Ericsson may also be compelled to allege direct infringement by Intel's non-Defendant customers, or risk forfeiting its right to license the patents-in-suit to those customers. Under either scenario, the burden on the parties and the Court would be increased significantly.

If Ericsson is required to counter Intel's non-infringement claim with claims for infringement by all of Intel's customers, the complexity of this case would grow exponentially. Ericsson would be required to identify infringing products, prepare infringement allegations, and serve an amended complaint on dozens—or possibly hundreds—of new defendants. While Intel has agreed to abide by the Court's scheduling order, the addition of numerous defendants to this case would undoubtedly require the Court to enter a new scheduling order and significantly delay the trial date for this case. Moreover, the additional defendants would greatly complicate the

---

[2] *See Polymer Indus. Prods. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) ("a claim for a declaration of noninfringement makes a counterclaim for patent infringement compulsory. . . . a party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation.").

7

discovery process, and dramatically reshape the structure of this case.  Given the high number of potential new defendants, the Court would likely need to sever the cases for trial to manage the case, effectively transforming Ericsson's streamlined suit against consumer device competitors into a multi-trial suit against most major purchasers of Intel chips.  Thus, rather than increasing judicial economy as Intel suggests, Intel's attempt to unilaterally shift the focus of this litigation will actually *decrease* efficiency, as discussed further below.

Even if Ericsson can reserve its rights against the non-Defendant Intel customers without adding them into the case, Intel's claim would severely burden the parties and the Court. Ericsson would at least be compelled to assert an indirect infringement counterclaim against Intel based on Intel's sales to non-Defendant customers.  Ericsson would be required to prove that Intel contributed to and/or actively induced non-Defendant customers to infringe Ericsson's patents.  In order to prove up its case, Ericsson would have no choice but to subpoena non-Defendant Intel customers to obtain evidence of infringement.  *See*, *e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) (requiring evidence that correlates the extent of direct infringement with damages awarded for indirect infringement).[3]  At a minimum, Ericsson would require evidence of how each customer incorporates Intel chips, whether any customer modifies, supplements, or removes functionality contained in Intel chips, and the extent of U.S. sales of devices that contain Intel chips.

Besides imposing a significant logistical burden on Ericsson, issuing dozens or even hundreds of third party subpoenas could spawn extensive discovery disputes.  These efforts could also motivate some third parties to file separate declaratory judgment actions.  Even if

---

[3] These subpoenas could motivate some third parties to file separate declaratory judgment actions.  While Ericsson could contest subject matter jurisdiction in those cases, as an intervenor, Intel should not be permitted to dramatically re-shape Ericsson's case and entangle Ericsson in additional litigation against its will.

8

Ericsson is not drawn into formal discovery disputes or litigation, this process will prevent Ericsson from successfully licensing its 802.11 portfolio and resolving its claims outside of the courtroom. Thus, regardless of which counterclaims Ericsson would be compelled to bring in response to Intel's intervention, an unlimited intervention would dramatically increase the burden on the parties and the Court.

### 2. Because Ericsson Is Seeking Damages For Direct Infringement, The Opposed Portion of Intel's Motion Will Not Increase Judicial Efficiency

The one argument that Intel offers in support of the opposed portion of its motion is that intervention as to the non-defendant customers would increase judicial efficiency. This argument is meritless. As noted above, if the opposed portion of Intel's motion is granted, Ericsson will be compelled to assert counterclaims based on: (a) Intel's indirect infringement caused by selling chipsets to non-Defendant customers; and/or (b) direct infringement by Intel's non-Defendant customers or their customers. If Ericsson were forced to add numerous additional defendants into this case, the Court would need to enter a new, significantly delayed schedule, and the parties would be faced with an extremely large and complicated case. Even if Ericsson is not forced to add additional defendants into the case, injecting Intel's additional non-infringement allegations into the case would do nothing to improve judicial efficiency.

Ericsson intends to seek damages based on direct and indirect infringement by consumer device-makers. Thus, even if the Court allowed Intel to intervene with respect to non-Defendant customers, Ericsson would still be entitled to seek a license and/or infringement damages from non-Defendant customers. *See, e.g., Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1303 (Fed. Cir. 2007) ("the law generally allows a patentee to sue manufacturers or sellers and users of an infringing device as joint tortfeasors, and that the law permits multiple suits, just not multiple (i.e., double) recoveries"); *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 872 (Fed.

9

Cir. 2006) ("By our law, judgment against one joint trespasser, without full satisfaction, is no bar to a suit against another for the same trespass."). The chart below compares the effects of granting and denying the opposed portion of Intel's motion on future proceedings:

| *Opposed Portion of Intel's Motion is Denied:* Intel is not permitted to assert a claim for non-infringement as to non-Defendant Customers | |
| --- | --- |
| **Potential Case Outcome** | **Result for Future Proceedings** |
| 1. Ericsson's patents are found to be invalid or unenforceable | *Res judicata* will preclude Ericsson from asserting the patents-in-suit in any subsequent suits. |
| 2. Ericsson's patents are found to be not infringed | Based on *Res judicata*, or as a practical matter, Ericsson will be precluded from asserting the patents-in-suit against Intel for sales of the same chipsets to other customers. |
| 3. Ericsson's patents are found to be valid and infringed | Ericsson may file another cause of action against Intel customers not named in this suit and seek damages for direct infringement and indirect infringement of, e.g., method claims. |
| *Opposed Portion of Intel's Motion is Granted:* Intel is permitted to assert a claim for non-infringement as to non-Defendant Customers.  Ericsson is compelled to counterclaim that Intel indirectly infringes the patents-in-suit. | |
| **Potential Case Outcome** | **Result for Future Proceedings** |
| 1. Ericsson's patents are found to be invalid or unenforceable | *Res judicata* will preclude Ericsson from asserting the patents-in-suit in any subsequent suits. |
| 2. Ericsson's patents are found to be not infringed | Based on *Res judicata*, or as a practical matter, Ericsson will be precluded from asserting the patents-in-suit against Intel for sales of the same chipsets to other customers. |
| 3. Ericsson's patents are found to be valid and infringed | Ericsson may file another cause of action against Intel customers not named in this suit and seek damages for direct infringement and indirect infringement of, e.g., method claims. |

Whether or not Intel's non-infringement claim encompasses the non-Defendant customers, judicial economy will not be increased.  Intel apparently contends that, by adding non-Defendant customers into the case, the Court will be able to resolve all of Intel's liability vis-à-vis the patents-in-suit.  While this is correct with respect to any potential contributory or induced infringement claim Ericsson could bring against Intel, it would not resolve liability based on direct or indirect infringement by Intel's customers.  To the extent Intel is required to indemnify its customers for their infringement, the opposed portion of Intel's motion will not allow the court to resolve all of Intel's liability.

McKool 404632v1

### 3. The Opposed Portion of Intel's Motion Interferes With Ericsson's Right as Plaintiff to Control Its Case

In addition to the time, resource, and logistical burden that Intel's motion would impose, Intel's motion would greatly interfere with Ericsson's rights as Plaintiff.    It is widely acknowledged that the plaintiff is the master of the complaint.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987).  Further, Rule 24 requires district courts to consider and protect the rights of existing parties from undue delay and prejudice caused by intervention.  *See, e.g., Estate of Kelly ex rel. Gafni v. Multiethnic Behavioral Health, Inc.*, No. 08-3700, 2009 U.S. Dist. LEXIS 82385 at *25-26 (E.D. Pa. Sept. 9, 2009) (denying permissive intervention which would have conflicted with Plaintiff's right to control the course of the litigation).

Rule 24 intervention "is intended to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors."  *See Deus*, 15 F.3d at 525.  A Court has broad discretion to limit the scope of intervention to protect the interests of the parties.  Because an intervenor's mere presence in an action does not "clothe it with the status of an original party," its participation remains subject to its "threshold dependency on the original parties' claims."  *See id.*  While the Fifth Circuit has not addressed whether a permissive intervenor can broaden the scope of a litigation by asserting additional claims, to the extent it can, the district court has a "concomitant prerogative—as an outgrowth of its discretionary power to withhold permission altogether—to condition the intervention so as to minimize delay and not prejudice the existing parties."  *See Harris*, 768 F.2d at 675.  Similarly, "it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."  *See Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 353 (5th Cir. 1997).

11

The current lawsuit centers on infringement by Ericsson's consumer device competitors. Ericsson brought this case only after extensive licensing negotiations broke down between Ericsson and the Defendants. While Intel's status as a supplier may provide it with an interest in this litigation, it is not permitted to drastically change this litigation by intervening with much broader claims.

Intel's broad non-infringement claim seeks to inject new fact issues related to chipsets and 802.11 devices sold by third parties. Were Intel permitted to assert these claims, the focus of this case would shift away from infringement by Ericsson's competitors, and instead focus on indirect infringement caused by Intel's sales of chipsets. This shift in focus would needlessly complicate trial and confuse the jury. For example, Ericsson may be required to develop two separate damages models—one based on the Defendant customers' infringement and another based on Intel's indirect infringement caused by sales of chipsets to parties not involved in the litigation. In addition, Ericsson would need to develop and present separate infringement proof directed to Intel's infringement, but no other chipset supplier.

While this sort of prejudice to Ericsson may seem difficult to quantify, Intel only supplies some of the accused functionality related to seven of the nine patents-in-suit for a fraction of the total accused products. Despite Intel's marginal importance to the overall case, the opposed portion of its motion would require Ericsson to devote substantial time and energy to prepare for what would essentially be a separate trial focusing on Intel's infringing sales of chipsets to third parties. Thus, the Court should not allow Intel to overshadow Ericsson's claims by drastically changing the scope of this litigation.

> **4. Intel Lacks Jurisdiction To Assert a Claim for Non-Infringement as to Non-Defendant Customers**

12

McKool 404632v1

Although the foregoing, by itself, is sufficient justification for denying Intel's motion under Rule 24(b), there is an additional, independent gap in Intel's proof. A party seeking permissive intervention must establish independent jurisdictional grounds for its claim. *See Harris*, 768 F.2d at 675. Thus, Intel must establish that the Court has subject matter jurisdiction over Intel's declaratory judgment non-infringement claim related to non-Defendant customers. Intel has failed to make that showing.

Subject matter jurisdiction in declaratory judgment actions exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A court's decision must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* In order to establish "adverse legal interests," the party seeking a declaratory judgment must show that the defendant could have brought a cause of action based on the declaratory relief sought. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011). Moreover, a party "must demonstrate standing separately for each form of relief sought." *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)); *see also Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("Standing is not dispensed in gross.").

To establish declaratory judgment jurisdiction, Intel must show that, at the time Intel filed the present motion, an actual case or controversy existed between Ericsson and Intel with respect to non-Defendant customers. More specifically, because Ericsson's potential claims against each non-Defendant customer would in some cases be based on direct infringement by multiple

13

customers of each non-Defendant customer, Intel must present evidence that a case or controversy existed between Ericsson and each non-Defendant customer. *See, e.g., Creative Compounds*, 651 F.3d at 1316 (denying declaratory judgment jurisdiction to supplier where patentee sent dear infringer letters to some third parties, but supplier failed to show that any of those third parties received accused products from supplier); *First Quality Baby Prods., L.L.C. v. Kimberly-Clark Worldwide, Inc.*, No. 1:09-0354, 2009 U.S. Dist. LEXIS 51961, *9 (M.D. Penn. Jun. 15, 2009) (explaining that a patentee's litigation against other companies does not indicate a 'definite and concrete' dispute with regard to companies that make similar products). Intel has failed to identify its non-Defendant customers, let alone present evidence that the requisite case or controversy existed for each of those customers. Accordingly, the opposed portion of Intel's motion should be denied.

Finally, even if Intel were able to identify its non-Defendant customers and show that a case or controversy exists between those customers and Ericsson, the Court should still deny the opposed portion of Intel's motion. Specifically, The Declaratory Judgment Act provides that judges have discretion to decline to hear a case even if jurisdiction is proper. A trial judge's decision to decline to hear a declaratory judgment case is reviewed for abuse of discretion. *See generally Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991). As set forth in detail above, allowing Intel to intervene as to its non-Defendant customers would significantly increase the burden on the parties, the Court, and third parties. For at least this reason, the Court should exercise its discretion to deny the opposed portion of Intel's motion.

## V. CONCLUSION

For all of the reasons stated above, Ericsson respectfully requests that the Court limit Intel's non-infringement claim in intervention to only cover chipsets sold to the Defendants.

14

McKool 404632v1

Dated:  December 5, 2011

Respectfully submitted,

**MCKOOL SMITH P.C.**

By:  */s/ Theodore Stevenson III*
Theodore Stevenson III, Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@mckoolsmith.com
Ashley N. Moore
Texas State Bar No. 24074748
amoore@mckoolsmith.com
Justin Nemunaitis
Texas State Bar No. 24065815
jnemunaitis@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044
Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile:  (903) 923-9099
**ATTORNEYS FOR PLAINTIFFS ERICSSON INC. and TELEFONAKTIEBOLAGET  LM ERICSSON**

15

## CERTIFICATE OF SERVICE

The foregoing document and attachments were served upon counsel for all parties who have consented to service via electronic mail on December 5, 2011.

/s/ Justin Nemunaitis

16

McKool 404632v1