**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ERICSSON INC., et al., | ) | Case No. 6:10-CV-473-LED |
| | ) | |
| Plaintiffs, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| D-LINK SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**INTEL CORPORATION'S REPLY IN SUPPORT OF ITS
PARTIALLY UNOPPOSED MOTION TO INTERVENE**

## I.    INTRODUCTION

Plaintiffs concede that Intel may intervene in this case.  Plaintiffs further admit that they are engaged in a licensing and litigation campaign much broader than this suit.  And Plaintiffs consistently assert in this suit that any product operating in accordance with IEEE 802.11 Wi-Fi standards — *i.e.*, using components (*e.g.*, 802.11 "chipsets") with 802.11 Wi-Fi functionality — infringes their "802.11 portfolio."  Opp. at 1.  Despite casting their net to cover any 802.11 products, Plaintiffs paradoxically contend here that the scope of the accused 802.11 products should be narrowed to particular units that Intel has sold to Defendants, entitling them to split their claims against such products in multiple, piecemeal actions.  There is no legitimate basis for this artificial constraint.  Plaintiffs have created a substantial controversy over *any* product operating in accordance with 802.11, and it is within that scope that Intel may intervene.[1]

## II.    ARGUMENT

### A.    Plaintiffs' Broad Allegations Leave No Room For Piecemeal Intervention

First, Plaintiffs have based infringement on *any* products that operate in accordance with the 802.11 standards.  In their original Complaint, Plaintiffs allege that any device "compliant with one or more of 802.11(a), 802.11(e), 802.11(g), and 802.11(n) wireless LAN standards" infringes the patents-in-suit.  *See e.g.*, Dkt. No. 1 at ¶¶ 4, 7, 10, 13, 16, 19.  Plaintiffs' infringement contentions assert that six of the patents are "infringed by all Acer 802.11(n)-compliant products" and that the seventh patent is infringed by "all Acer 802.11(a), (g), and (n)-compliant products."  *See* Ex. A (Acer ICs).  Plaintiffs' infringement charts are almost wholly based on the 802.11 standards documents and are substantively identical as between Defendants,

---

[1] Plaintiffs do not address this central issue, instead contending that Intel should not be entitled to intervene fully because it would obligate Plaintiffs to assert compulsory counterclaims against other Intel customers.  Opp. at 7.  As discussed below, however, this argument is without merit.

1

regardless of the particular product at-issue or the specific 802.11 chipset within that product. *Compare* Ex. A (Acer ICs) *with* Ex. B (Gateway ICs).  As such, the Defendants in this case are entitled to resolve their liability as to any 802.11 chipsets they may purchase from Intel or any other supplier.  As a direct result, Intel's intervention interest extends to all of its 802.11 chipsets. Second, Plaintiffs concede that their claims against Intel are substantively indistinguishable, whether based on sale of its 802.11 products to Defendants or some other Intel customer, by admitting that such claims would be barred by *res judicata*.  Opp. at 10.  This is a concession that piecemeal resolution against Intel would be impermissible splitting of the same indirect infringement claims across multiple actions.  *See, e.g., Mars, Inc. v. Nippon Conlux,* 58 F.3d 616, 619-20 (Fed. Cir. 1995) (complaint arising out of "same set of transactions" as previous case was barred).

Courts routinely permit suppliers to intervene in customer suits without placing artificial limits on the scope of the suppliers' intervention.  *See, e.g., Reid v. General Motors*, 240 F.R.D. 257, 260 (E.D. Tex. 2006) (granting supplier's intervention in suit against subset of customers of certain software "central" to infringement claims); *Honeywell Int'l v. Audiovox Comm'ns*, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (intervenor's parts "at the heart" of infringement claims); *U.S. Ethernet v. Acer, et al.*, No. 6:09-cv-448, Ex. C at *4 (E.D. Tex. May 10, 2010) (noting supplier's interest in potential "loss of its customer base and reputation").  Plaintiffs do not cite a single case limiting a supplier's intervention to specific products sold to customer defendants, where the same products are sold to non-defendant customers.

Plaintiffs' argument that only some of the accused functionality is supplied by Intel is also no basis for piecemeal intervention.  *See* Opp. at 12.  As a party, Intel is entitled to resolve Plaintiffs' claims against ***all*** of its products — *i.e.*, that any "802.11-compliant product" used in

Defendants' products infringes — regardless of any role the Defendants' products may play in that alleged infringement.  Plaintiffs' own discovery requests confirm this scope:

> Separately for each product identified in response to Interrogatory No. 1, identify that product's ***microchip(s) that provides wireless communications functionality***, including wireless communication functionality ***compliant with 802.11(a), 802.11(b), 802.11(e), 802.11(g), or 802.11(n) standards***.

*See e.g.*, Ex. D (emphasis added).  And the focus of Plaintiffs' Complaint and contentions is on the 802.11 standards, none of which contain any serious analysis of Defendants' products.[2]

### B.        DJ Jurisdiction Over Intel's Claims-In-Intervention Is Not Piecemeal

Plaintiffs assert that any 802.11 product Intel supplies to Defendants infringes the patents-in-suit, have sued Intel customers in furtherance of those claims, confirmed that they are engaged in a worldwide licensing strategy concerning a "portfolio of patents . . . related to wireless networking and the 802.11 wifi standard," and indicated their intent to sue if they do not get their way.  Opp. at 1.  Plaintiffs have created an actual controversy over Intel's 802.11 components that Intel need not wait for Plaintiffs' serial suits to resolve.  *See MedImmune , Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (ameliorating the dilemma between abandoning rights or risking prosecution "'was the very purpose of the Declaratory Judgment Act.'").  Since *MedImmune,* the Federal Circuit has time and again confirmed these principles, emphasizing that the Declaratory Judgment Act prevents an alleged infringer from being faced with "an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of [its] enterprises."  *See, e.g., SanDisk v. STMicroelectronics*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (an accused infringer "need not risk a suit for infringement by engaging in

---

[2] For example, in contentions against Acer for the '516, '625, '223, '435, and '215 patents, plus several claims of the '568 patent, the *sole* reference specific to Acer is a screenshot of a laptop from its website that is not used to support any particular element.  *See* Ex. A.

the identified activity before seeking a declaration of its legal rights."); *see also Arris Group v. British Telecom*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) (allegations against customer created DJ jurisdiction for supplier of "material component").  None of Plaintiffs' cases suggest that this Court lacks jurisdiction to resolve **all** allegations against **all** Intel 802.11 chipsets.[3]  Plaintiffs' proposed approach — limiting Intel to piecemeal intervention that would permit it to serially sue Intel's customers on Intel 802.11 products — is inconsistent with Supreme Court and Federal Circuit precedent and is fundamentally at odds with judicial economy.

### C.     Intel's Intervention Imposes No Intractable Case Management Issues

Plaintiffs are not (as they argue) required to file a compulsory counterclaim against non-party customers of Intel's 802.11 chipsets when Intel fully intervenes.  Compulsory counterclaims apply only against a ***party-in-suit***.  Fed. R. Civ. P. 13 (a compulsory counterclaim must be a "claim that … the pleader has against *an opposing party*") (emphasis added); *Noel v. Hall*, 341 F.3d 1148, 1170 (9th Cir. 2003) ("Rule 13(a) makes compulsory only counterclaims against an opposing party in the lawsuit.").  Nor do Intel's other customers become indispensible parties.  *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *Isogon v. Amdahl*, 1997 WL 759435, *3 (S.D.N.Y. Dec. 10, 1997) (alleged infringer's customers were not necessary parties).

Plaintiffs lack any supporting authority for their position.[4]  Moreover, their argument is

---

[3] *Friends of the Earth* held that standing had to be demonstrated separately "for each form of relief sought," and not for each of a supplier's customers.  In *Creative Compounds,* jurisdiction was denied because the letters to customers that the DJ plaintiff relied upon were sent before DJ plaintiff existed.  Finally, *First Quality Baby Products* did not involve a supplier DJ.

[4] *Polymer Indus.,* 347 F.3d at 938, never suggests that a DJ claim for no indirect infringement requires a DJ Defendant to bring compulsory counterclaims against ***non-parties***.

4

inconsistent with their own actions in this case.  For example, although Defendant Toshiba has asserted claims in its Answer for declarations of no direct or indirect infringement (*see see* Dkt. No. 117 at pp. 28-32), Plaintiffs have not asserted any alleged "compulsory counterclaims" against Toshiba's suppliers of 802.11 components or, for that matter, the end-users of Toshiba's products.

Plaintiffs also submit that Intel's "unlimited intervention" will make this action "exponentially" more complex, requiring "hundreds" of third-party subpoenas.  Opp. at 7, 9.  But *Lucent Techs. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009), which Plaintiffs cite, actually indicates that there is no requirement "that damages in all circumstances be limited to specific instances of infringement proven with direct evidence."  Courts routinely preside over the full and final resolution of DJ claims brought by suppliers without requiring that all their customers be parties.  Those cases have not come to a grinding halt due to third-party discovery.

### D. Full Intervention Outweighs Plaintiffs' Tactical Considerations

Plaintiffs argue Intel's intervention will interfere with their control of the case by turning the focus to Intel.  But Intel will already be a focus under the conceded scope of intervention.  Also, a plaintiff's litigation plan does not trump efficient resolution.  In *Bandspeed v. Sony Elec.,* a chip supplier moved to intervene in a case against its customers.  2009 WL 5785229 (W.D. Tex. Dec. 9, 2009).  Plaintiff argued that intervention would "unduly burden or prejudice adjudication" by requiring it add numerous patent claims (direct vs. indirect) and "impermissibly expand the present case to potentially include an entire universe of cell phone and other device makers and chip makers." 2009 WL 5785226 (W.D. Tex. Dec. 23, 2009).  The court rejected those arguments and granted intervention.  Ex. E at 3 (W.D. Tex. Mar. 5, 2010).

### III. CONCLUSION

For the foregoing reasons, Intel respectfully requests that the Court grant its motion.

5

Dated:    December, 15, 2011          RESPECTFULLY SUBMITTED,

By: /s/ *Robert M. Parker*_____
Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, TX 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
Email: rmparker@pbatyler.com
Email: rcbunt@pbatyler.com

ATTORNEYS FOR INTERVENING PARTY
INTEL CORPORATION

6

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on December 15, 2011 via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Robert M. Parker*_____
Robert M. Parker

7