# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON, <br><br> Plaintiffs, <br><br> v. <br><br> D-LINK CORPORATION, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC. <br><br> Defendants. | § § § § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. 6:10-CV-473-LED <br><br> JURY TRIAL DEMANDED |

## PLAINTIFFS' SURREPLY TO INTEL'S MOTION TO INTERVENE

## I. INTRODUCTION

This case involves a dispute between Ericsson and a select number of consumer device defendants with whom Ericsson has been involved in extensive patent licensing negotiations. Ericsson has carefully structured this case to allow for manageable and efficient adjudication of its claims. To the extent Intel seeks to protect its interests directly related to those specific claims, Ericsson has no opposition. However, Intel seeks to greatly expand the scope of this case and erect financial, legal, and logistical barriers that would prevent Ericsson from efficiently proving up its case. Intel's motion should be recognized for what it is—a procedural tactic designed to make it extremely difficult and expensive for Ericsson to proceed with its case.

Ericsson has identified numerous reasons why unlimited intervention would unduly prejudice Ericsson and needlessly complicate this case. Instead of addressing these issues up front, Intel sidesteps them by failing to acknowledge the true scope of its proposed intervention. Intel further obfuscates this dispute by failing to relate its arguments to the applicable legal standard set forth in Federal Rule 24. As a result, Intel's reply brief focuses on an ancillary issue—whether it can establish an independent jurisdictional ground for unlimited intervention—rather than the factors laid out in Rule 24. Because unlimited intervention would unduly prejudice Ericsson and burden the Court without providing any benefits to the parties or the Court, Ericsson respectfully requests that the Court limit Intel's intervention to only those chipsets sold to Defendants.

## II. ARGUMENT

### A. INTEL IS NOT ENTITLED TO UNLIMITED INTERVENTION UNDER RULE 24(A)

Intel does not dispute that the opposed portion of its motion fails to satisfy the requirements for intervention under Rule 24(a). Ericsson Resp., Doc. No. 156 at 6. Thus, in order to obtain unlimited intervention under Rule 24(b), Intel bears the burden of showing: (1)

1

intervention will not delay the case or unduly prejudice the original parties; and (2) Intel has an independent jurisdictional ground for intervention. *See generally* Ericsson Resp., Doc. No. 156 at 4–5. Intel has failed to meet its burden with respect to both requirements. Moreover, because Intel has failed to identify any benefits to unlimited intervention and Ericsson has identified numerous drawbacks, the Court may use its discretion and deny the opposed portion of Intel's motion. *NipponKoa Ins. Co. v. Port Terminal R.R. Assoc.*, No. H-10-0284, 2011 U.S. Dist. LEXIS 29892, at *7 (S.D. Tex. Mar. 23, 2011) ("Where permissive intervention would further complicate the case without any added benefit, the court may deny a motion to intervene.").

### B. UNLIMITED INTERVENTION WILL UNDULY PREJUDICE ERICSSON

Because Intel fails to acknowledge the distinction between Ericsson's indirect claims against Intel and its separate claims against consumer device-makers, Intel fails to address the numerous practical problems that unlimited intervention will cause. For example, Intel asserts that the Court can resolve all of the liability issues surrounding sales of Intel chipsets to non-Defendant customers without involving those customers in this litigation. Intel Reply, Doc. No. 160 at 4–5. As explained below, this assertion is simply wrong.

*Unlimited Intervention May Require Ericsson To Bring Separate Claims Against Intel's Customers.* If the Court allows Intel to intervene on an unlimited basis, Federal Rule of Civil Procedure 13 will compel Ericsson to file a counterclaim against Intel alleging that Intel contributes to and/or induces its customers to infringe the patents-in-suit by selling 802.11 chipsets. If Ericsson prevails on such a claim against Intel, it will recover damages tied to the sales of infringing chips. However, because the sale of each chipset represents only a portion of Ericsson's damages, Ericsson is also entitled to seek additional damages tied to sales of consumer devices. *See, e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 872 (Fed. Cir. 2006) ("By our law, judgment against one joint trespasser, without full satisfaction, is no bar to a

suit against another for the same trespass."). Thus, if Intel is allowed to intervene on an unlimited basis, Ericsson must decide whether to add Intel's customers into the current lawsuit or reserve the option to file separate lawsuits against those customers at a later time. Under either option, Ericsson will be unduly prejudiced.

**Res Judicata *May Require Ericsson To Assert Its Claims Against Intel's Customers In This Case.*** *Res judicata* can prevent a patentee from obtaining a judgment of indirect infringement against a manufacturer and later suing a customer for infringement of the same claims.[1] *See, e.g., Mars, Inc. v. Nippon Conlux*, F.3d 616, 619 (Fed. Cir. 1995) ("a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together"). It is unclear whether *res judicata* would apply in this situation, but if it does, Ericsson would be forced to bring Intel's customers into this case in order to avoid forfeiting its rights against those customers. Intel cannot reasonably dispute the profound impact this would have on Ericsson's case and has not even attempted to do so.

***Even If* Res Judicata *Does Not Apply, Unlimited Intervention Would Be Extremely Prejudicial To Ericsson.*** Even if *res judicata* does not apply, Ericsson will at least be required to seek discovery from Intel's customers to obtain evidence of direct infringement in order to prove up its indirect infringement claims against Intel. Moreover, in order for Ericsson to prove up its damages claim, Ericsson must obtain discovery related to consumer demand for, and use

---

[1] The term *res judicata* may loosely refer to two distinct legal concepts: "claim preclusion" and "issue preclusion." Claim preclusion prevents a patentee from filing a claim against one party, proceeding to judgment, and then later filing the same claim against that party or another party in privity. On the other hand, issue preclusion prevents a patentee from re-litigating an issue decided by a Court. For example, if a patent is found invalid, the patentee cannot re-litigate that issue by involving a new defendant.

3

McKool 405483v4

of, infringing products. Thus, at a minimum, Ericsson would be forced to subpoena Intel's customers—potentially hundreds of companies—for information related to how the relevant 802.11 functionality affects consumer demand, how each customer incorporates Intel chips into finished products sold in the U.S., and how each customer distributes parts and products in and out of the U.S. In addition, Ericsson would need financial records for sales of all products that contain Intel chips. As a practical matter, these subpoenas will likely drag Ericsson into expensive, time-consuming discovery disputes and/or declaratory judgment actions.[2]

Intel has not even attempted to argue that the prejudice to Ericsson would be outweighed by some benefit. Intel has apparently abandoned its claim that unlimited intervention will increase judicial economy,[3] opting instead to argue only that unlimited intervention will not cause any "intractable" case management issues. Intel Reply, Doc. No. 160 at 4. This argument, however, falls far short of satisfying Intel's burden under Rule 24. Because the opposed portion of Intel's motion will unduly prejudice Ericsson, it should be denied.

### C. INTEL HAS FAILED TO IDENTIFY INDEPENDENT JURISDICTIONAL GROUNDS FOR UNLIMITED INTERVENTION

The bulk of Intel's reply brief is devoted to what it calls the "central issue." Intel argues that because Ericsson has generally accused all 802.11 products, Intel may intervene with respect

---

[2] Intel seriously misconstrues the holding of *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) in its reply. While the Federal Circuit did acknowledge in that case that direct infringement may be proven via circumstantial evidence, the bulk of the Court's reasoning was devoted to explaining the requirements for proving up a damages model. The Federal Circuit rejected the plaintiff's damages model based in part on the lack of evidence of use and demand for the infringing feature of the accused products.

[3] Intel does appear to argue that unlimited intervention would prevent "serial" suits. Intel Reply, Doc. No. 160 at 4. Intel does not explain this statement, and elsewhere Intel argues that *res judicata* would prevent multiple lawsuits. *See id.* at 2. Regardless, as explained in Ericsson's response, there is no scenario in which unlimited intervention would increase judicial economy. Ericsson Resp., Doc. No. 156 at 9-10. Intel does not dispute this explanation.

4

to any of its 802.11 chipsets. Intel Reply, Doc. No. 160 at 1. While Intel does not explain the relevance of this argument, at best, it relates only to a non-dispositive, threshold issue—Intel's burden of establishing an independent jurisdictional ground for unlimited intervention. Nonetheless, Intel has failed to satisfy its burden on even this issue.

Courts have consistently held that a patentee does not subject itself to indiscriminate declaratory judgment jurisdiction merely by filing suit against a limited number of Defendants. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011). In *Creative Compounds*, the patentee sent letters to various parties alleging that its patent broadly covered a chemical compound. *Id.* at 1315. A supplier of the exact same chemical compound filed a declaratory judgment action alleging that the patent was invalid. The Federal Circuit dismissed the supplier's action for lack of subject matter jurisdiction explaining that broad infringement allegations against other parties, standing alone, do not create subject matter jurisdiction. *See id.* at 1315–26.

In this case, Ericsson has not indiscriminately accused any 802.11 product or component made by any company. Rather, it has only accused 802.11-compliant electronic devices made, used, imported, or sold by the seven named Defendants in this case. Thus, to the extent Intel seeks a declaratory judgment that sales of chipsets to non-Defendant customers do not contribute to or induce infringement, Intel must present some evidence that Ericsson has created a substantial controversy with respect to those customers. Intel has not even attempted to make such a showing. Thus, Intel has failed to establish an independent jurisdictional ground for unlimited intervention.

### III. CONCLUSION

For all of the reasons stated above, Ericsson respectfully requests that the Court limit Intel's non-infringement claim in intervention to only cover chipsets sold to Defendants.

5

Dated:  December 27, 2011          Respectfully submitted,

**MCKOOL SMITH P.C.**

By: */s/ Theodore Stevenson III*
Theodore Stevenson III, Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@mckoolsmith.com
Ashley N. Moore
Texas State Bar No. 24074748
amoore@mckoolsmith.com
Justin Nemunaitis
Texas State Bar No. 24065815
jnemunaitis@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044
Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile:  (903) 923-9099
**ATTORNEYS FOR PLAINTIFFS ERICSSON INC. and TELEFONAKTIEBOLAGET  LM ERICSSON**

## CERTIFICATE OF SERVICE

The foregoing document and attachments were served upon counsel for all parties who have consented to service via electronic mail on December 27, 2011.

                                         /s/ Justin Nemunaitis