# EXHIBIT 1

Reed Smith LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
+1 415 543 8700
Fax +1 415 391 8269
reedsmith.com

**John P. Bovich**
Direct Phone:  +1 415 659 5926
Email:  jbovich@reedsmith.com

May 8, 2012

The Honorable Leonard Davis, Chief Judge
Eastern District of Texas
211 West Ferguson, 3rd Floor
Tyler, Texas 75702

Re:  Ericsson Inc., et al. v. D-Link Systems, Inc., et al., Case No. 6:10CV473

Dear Judge Davis:

Pursuant to the Court's Standing Order re Letter Briefs, and in advance of the claim construction hearing, Defendants respectfully request leave to file a Motion for Summary Judgment of Indefiniteness of Claim 45 of U.S. Patent No. 6,772,215 ("the '215 patent") and Claim 1 of U.S. Patent No. 5,771,468 ("the '468 patent").

Claim 45 of the '215 patent is indefinite because it includes a "means plus function" element lacking any corresponding structure in the specification.  More specifically, claim 45 functionally claims software ("means for receiving . . . and constructing") with no corresponding structure for performing the function (let alone any algorithm) in the specification in violation of 35 U.S.C. §112, paragraph 6.

Similarly, claim 1 of the '468 patent, the only asserted claim, is indefinite because it lacks antecedent basis, includes a "means plus function" element lacking any corresponding structure in the specification, and includes a nonsensical claim element.  Ericsson concedes these defects by proposing a claim construction which would improperly redraft the claim to remove the "means plus function" element, delete existing terms, add new terms and effectively rewrite the claim.  The Court should reject Ericsson's attempts.

A.    **Legal Standard**

Under 35 U.S.C. §112, ¶6, a "means plus function" claim must be supported by a structure disclosed in the specification that performs the claimed function.  Where, as here, the structure that performs the claimed function is not described in the specification, the "means plus function" limitation cannot be construed and the claim is invalid for the applicant's failure to particularly point out and distinctly claim the invention.  Although it is permissible to use "means plus function" limitations for software inventions, "computer-implemented means-plus function terms are limited to the algorithms disclosed in the specification." *Ergo Licensing v. Carefusion*, 673 F.3d 1361, 1364, 1364 (Fed. Cir. 2012); *Noah Systems, Inc. v. Intuit,* -- F.3d --, 2012 WL 1150216 *8 (Fed. Cir. April 9, 2012).  An algorithm is a "step-by-step procedure for accomplishing a given result" whether given as a "mathematical formula, in prose, or as a flow chart." *Ergo,* 673 F.3d at 1364.

"Indefiniteness under 35 U.S.C. § 112, ¶ 2 is an issue of claim construction and a question of law." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009).  A claim term which is "not amenable to construction" and "insolubly ambiguous" is indefinite. *See Novo Indus., L.P. v. Micro Molds Corp.,* 350 F.3d 1348, 1353 (Fed. Cir. 2003).  Moreover, a claim term is insolubly ambiguous and indefinite if it "does not have proper antecedent basis [and] such basis is not otherwise

Hon. Leonard Davis
**May 8, 2012**
Page 2

ReedSmith

present by implication or the meaning is not reasonably ascertainable." *See Synqor, Inc. v. Artesyn Technologies, Inc.*, 2010 WL 2991037 (E.D.Tex. July 26, 2010).

**B.     Ericsson Does Not Identify An Algorithm To Support Claim 45 of the '215 Patent**

The '215 patent relates generally to the telecommunications field, and more specifically, to a method for "minimizing feedback response in Automatic Repeat Request (ARQ) protocols." ['215 at Abstract, claim 45.] Claim 45 is a software claim that states in relevant part:

45. A system for minimizing feedback responses in an ARQ protocol, comprising:

* * * * *

said second peer entity including means for receiving said plurality of first data units, and constructing one to several message fields for a second data unit, said one to several message fields including a type identifier field and at least one of a sequence number field, a length field, a content field, a plurality of erroneous sequence number fields, and a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields.

The parties have agreed that the "means for receiving . . . and constructing" element is governed by 35 U.S.C. §112, ¶6 and requires construction. [JCC Statement (DKT 187), Exh. A at p. 2-3.] Ericsson has proposed the following as the function and structure of the means element at issue here:

| Claim Element | Ericsson's Proposed Function and Structure |
|---|---|
| …means for receiving said plurality of first data units, and constructing one to several message fields for a second data unit, said one to several message fields including a type identifier field and at least one of a sequence number field, a length field, a content field, a plurality of erroneous sequence number fields, and a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields. | Function: <br><br> receiving said plurality of first data units, and constructing one to several message fields for a second data unit, said one to several message fields <br><br> including a type identifier field and at least one of a sequence number field, a length field, a content field, a plurality of erroneous sequence number fields, and a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields <br><br> Structure: <br><br> the receiver of a peer entity, see '215::29-30, whereby different mechanisms can be used to indicate erroneous data units so as to optimize performance, see '215::5:53-56, and the mechanisms refer to any of the methods described for constructing a bitmap feedback response message disclosed at '215::3:17-28 and '215::6:8-48, any of the methods for constructing a compressed bitmap feedback response message |

US_ACTIVE-109316841.4

Hon. Leonard Davis
**May 8, 2012**
Page 3



|  | disclosed at '215::6:49-54, any of the methods for constructing a list feedback response message disclosed at '215::2:-63-3:16 and '215::7:2-28-51, |
|  | and/or the method for constructing a feedback response message combining the list and bitmap methods, and any equivalents thereof. |

Because this is a means-plus-function element, to comply with 35 U.S.C. §112, ¶6, the specification must disclose an algorithm for constructing a feedback response message, which includes a step by step procedure to construct a message to minimize feedback responses. *See Noah Systems*, -- F.3d --, 2012 WL 1150216 *8 (Fed. Cir. April 9, 2012); *Ergo*, 673 F.3d at 1364. The patent discloses no such structure, i.e, algorithm, under Section 112, paragraph 6.

For example, even under Ericsson's proposed construction, although the proposed corresponding structure requires "different mechanisms [that] can be used to indicate erroneous data units so as to optimize performance," Ericsson cites only to specification disclosures concerning the various types of prior art ARQ protocols from which the system may choose, but not how to construct the message in order to minimize feedback responses. Ericsson points to no mathematical formula, decision tree that ends in certain ARQ protocols, or any other appropriate structure.

Without any algorithm, the "means for receiving . . . and constructing" element lacks structural support under Ericsson's proposed construction, and claim 45 is invalid as indefinite. *Ergo*, 673 F.3d at 1364; *Noah Systems*, -- F.3d --, 2012 WL 1150216 *8 (Fed. Cir. April 9, 2012).

**C.      Claim 1 of the '468 Patent is Indefinite**

The '468 patent, entitled "Multi-Purpose Base Station," is directed to modular electronic equipment, and more particularly, to a modular base station capable of being used with one or more cellular telecommunications systems that each operate according to a different system standard. ['468 at Abstract, 1:5-10.] The patent explains that in a "typical" prior art cellular system, the user carries a wireless device (e.g., a cell phone) which communicates with a base station that connects the user to other cell phones or landlines. [*Id*. 1:34-40.] Because cellular "systems operate according to many different standards," the cell phone and prior art base station used in one system "generally will not operate in another system." [*Id*. 1:40-54, 1:62-64.] Therefore, there is a need for a base station which is easily modified so as to be compatible with a different system. [*Id*. 2:21-24.]

The '468 patent purports to solve this (and other) problems by disclosing a base station with PC & Memory Card International Card Association (PCMCIA) card slots, into which operators can mount, remove and swap cards; each card containing a system component of a wireless telecommunications system. [*See id*. 3:6-29; 5:58-6:4, Fig. 6.][1] Independent claim 1 provides:

---

[1] According to the patent, a "system operator desiring to use the base station in a new system would replace the relevant components in the base station with components necessary for operation in the new system. If the system operator desired to upgrade its equipment, the operator could retain its existing base stations, and make on the modifications necessary to allow the base station to be used in the upgraded system." [*Id*. 2:39-45.]

US_ACTIVE-109316841.4

Hon. Leonard Davis
**May 8, 2012**
Page 4



A base station for use in a plurality of telecommunications systems operating according to different system standards, said base station comprising:

> at least one **PCMCIA card slot for removably mounting at least one system component of a system** of said plurality of telecommunications systems;
>
> a **line interface** connected to at least one of said plurality of telecommunications systems; and
>
> **an interface** for allowing electrical communication **between** **at least one means for removably mounting said line interface**.

Claim 1 of the '468 patent suffers at least three fatal defects stemming from its third and final element. First, the third element's phrase "**between *said* at least one means for removably mounting said line interface**" is insolubly ambiguous as lacking antecedent basis because there is no disclosure anywhere in the patent for any means for removably mounting *a line interface*. Specifically, the first element of claim 1 recites "at least one ***PCMCIA card slot*** for removably mounting at least one ***system component*** . . . ." But, contrary to Ericsson's position (discussed below), the first element's "at least one PCMCIA card slot," is not, and cannot be, the antecedent basis for the third element's "said means for removably mounting." Instead, the claimed function of the PCMCIA slot is for removably mounting "*at least one system component*" whereas the claimed function of the "at least one means . . ." in the third element is for removably mounting "*said line interface*". Neither the claim language nor the specification equates a "system component" to the "line interface," as these elements plainly refer to separate and distinct portions of the claimed base station.[2] Nor does the second claim element provide any antecedent basis, because although it discloses a "**line interface**," it does not disclose any *"said **means for removably mounting*** said line interface," as required by the third element. One of ordinary skill in the art would not be able to ascertain the missing antecedent for the limitation upon review of the claims or the specification, which fail to disclose (1) any *line interface* that is "removably mountable"; or (2) any *means* for removably mounting a line interface.

The second defect in claim 1 is that there is no structural support in the specification for the third element's "means plus function" limitation – the "said means for removably mounting said line interface" – as required by 35 U.S.C. §112, ¶6. The only disclosed means for "removably mounting" anything is a PCMCIA card slot, and its function is for removably mounting "system components" contained on PCMCIA cards, <u>not</u> a line interface. [*See* '215 at 2:62-3:29; Figs. 3B, 6.] Without any supporting structure disclosed in the specification, Claim 1 is invalid as indefinite.

Finally, claim 1 is insolubly ambiguous because the third element's use of the word "between" in the phrase "interface for allowing electrical communication **between** . . ." implies that the claimed "electrical communication" is "*between*" **two** elements. But the claim language recites that the electrical communication is "between" only *one* element -- "*the said at least one means for removably mounting said line interface*" – which, of course, makes no sense.

---

[2] For example, the "system component" is a component of a telecommunication system that operates according to its own standard whereas the "line interface" provides connectivity between systems and components. ['468 at 2:62-3:15, 2:39-49; Figs. 3B, 6; 5:24-34, 5:58-6:12.]

Hon. Leonard Davis
**May 8, 2012**
Page 5

ReedSmith

Ericsson implicitly concedes <u>all three</u> of these defects by proposing an improper construction that purports to completely *re-write* and substantially *change* the claim language, as set forth below:

| CLAIM 1, ELEMENT 3 | ERICSSON'S PROPOSED CONSTRUCTION |
|---|---|
| an interface for allowing electrical communication between at least one means for removably mounting said line interface | an interface for allowing electrical communication between ~~at least one means for removably mounting~~ the PCMCIA card slot ~~said~~ and the line interface |

Specifically, in the hopes of curing the antecedent basis and Section 112, paragraph 6 defects, Ericsson cavalierly asks this Court to *delete the entire "means plus function" claim limitation*, and *replace* it with the term "PCMCIA card slot," which is found nowhere in this element as written, and which does <u>not</u> perform the recited function of "removably mounting said line interface." In addition, Ericsson proposes to delete "said" and <u>*add*</u> the word "and" before "line interface" thereby fundamentally changing the language such that the claimed "electrical communication" is "**between**" <u>two</u> items – a "PCMCIA card slot" (which is non-existent in the element as drafted) and the "line interface" instead of one item – the "at least one means for removably mounting said line interface." The Court should reject Ericsson's proposal to radically change the claim's language. *Novo Industries*; 350 F.3d at 1358; *Allen Engineering Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1348, 1349 (Fed. Cir. 2002).[3] Leave to file Defendants' indefiniteness summary judgment motion should be granted.

Accordingly, Defendants respectfully request that they be permitted to file their proposed Motion for Summary judgment of Indefiniteness of claim 45 of the '215 patent and claim 1 of the '468 patent.

Very truly yours,

/s/ *John P. Bovich*

John P. Bovich

---

[3] Contrary to Ericsson's position, the file history confirms that the claim's defects are not mere typographical errors fixable by the Court through claim construction, but the product of intentional, if ultimately misguided, claim drafting. The original application included a broad claim 1 *without any mention of any PCMCIA card slot*. In response to the Examiner's first rejection, the applicant then amended the claim language to specify the "PCMCIA card slot" term wherever appropriate, clearly demonstrating that the applicant knew where and how to properly claim a PCMCIA card slot. Despite ample opportunity, at no time throughout prosecution of the patent, did the applicant amend the third element of claim 1 to specify any PCMCIA card slot – or to claim that communications occurred between the slot "and" a line interface. Instead, the applicant chose to claim this element in a "means plus function" format and according to the language set forth in the originally filed Claim 1 and as issued.

US_ACTIVE-109316841.4