# EXHIBIT 1

# MᴄKᴏᴏʟ Sᴍɪᴛʜ

A PROFESSIONAL CORPORATION • ATTORNEYS
300 Crescent Court
Suite 1500
Dallas, Texas  75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

May 22, 2012

The Honorable Leonard Davis, Chief Judge
Eastern District of Texas
211 West Ferguson, 3rd Floor
Tyler, Texas 75702

> RE:  *Ericsson Inc., et al. v. D-Link Systems, Inc., et al.*
> Civil Action No. 6:10-CV-473
> United States District Court for the Eastern District of Texas, Tyler Division

Dear Judge Davis:

## I.    Introduction

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson ("Ericsson") respectfully submit this answering letter brief in opposition to Defendants' letter brief requesting permission to file a motion for summary judgment of indefiniteness of Claim 45 of U.S. Patent No. 6,772,215 ("the '215 patent") and Claim 1 of U.S. Patent No. 5,771,468 ("the '468 patent"). *See* Dkt. No. 208-1.

A party seeking to invalidate a patent on the basis of indefiniteness must overcome the presumption of validity with clear and convincing evidence. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344–45 (Fed. Cir. 2007). "Indefiniteness requires a determination whether those skilled in the art would understand what is claimed. To make that determination, [the Federal Circuit has] explained that '[i]n the face of an allegation of indefiniteness, general principles of claim construction apply.'" *Id.* at 1346.

Under 35 U.S.C. § 112 ¶ 6, construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* The critical inquiry in determining whether a § 112 ¶ 6 claim is definite is whether the specification discloses "adequate defining structure to render the bounds of the claim understandable to an ordinary artisan." *See Intel Corp. v. VIA Techs., Inc.*, 319 F.3d

-1-

May 22, 2012
Page 2

1357, 1365-66 (Fed. Cir. 2003); *see also Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007) ("The inquiry is whether one of skill in the art would understand the specification itself to disclose structure . . .").

Because Defendants cannot overcome the presumption of validity with clear and convincing evidence, Defendants' requested permission should be denied.

**II.   Claim 45 of the '215 Patent Discloses Adequate Algorithmic Structure.**

Defendants argue that this term is indefinite because the '215 patent allegedly contains no algorithm for constructing the claimed "one to several message fields."   The '215 patent, however, contains extensive algorithmic disclosure for performing this recited function, and Ericsson cites these algorithms as structure in its proposed construction for this term.  *See* Dkt. No. 209 at 12.

Defendants specifically criticize Ericsson's proposed claim construction as citing "only to specification disclosures concerning the various types of prior art ARQ protocols from which the system may choose, but not how to construct the message in order to minimize feedback responses."  *See* Dkt. No. 208-1 at 4.  This is demonstrably wrong.  The '215 patent discloses algorithms for constructing a bitmap feedback response message.  *See* '215::3:17–28 and '215::6:8–48, particularly '215::6:8–11 ("For this exemplary embodiment, a basic message to be used for minimizing feedback responses in an ARQ protocol **can be constructed as follows**.  Using a BITMAP method for this embodiment . . .") (emphasis added).  The '215 patent also discloses algorithms for constructing a compressed bitmap feedback response message.  *See* '215::6:49–54 (disclosing the use of a "conventional data compression method" to compress the information in the bitmap field).  The '215 patent also discloses algorithms for constructing a list feedback response message.  *See* '215::2:63–3:16 and '215::7:28–51.[1]  The '215 patent also teaches algorithms for constructing a feedback response message by combining the list and bitmap methods.  *See* '215::7:52–65.

The algorithmic disclosures in the '215 patent explain how to construct these various feedback messages by populating appropriate fields to indicate erroneous data in a feedback response.  Defendants' theory of indefiniteness is predicated on nothing more than their *ipse dixit* that this structure is somehow insufficient.  Defendants cannot demonstrate that any necessary

---

[1]  Defendants also argue that "Ericsson points to no mathematical formula, decision tree that ends in certain ARQ protocols, or any other appropriate structure."  *See* Dkt. No. 208-1 at 4.  The mathematical formula at '215::3:10-12—which is cited in Ericsson's proposed claim construction for this term—plainly disproves this assertion.  In any event, if Defendants are suggesting that a patentee cannot disclose an algorithm in prose form, as Ericsson has, then Defendants are simply incorrect.  *See Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) ("This court permits a patentee to express that algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.") (inner citation omitted).

-2-

McKool 445527v3

May 22, 2012
Page 3

structure is missing; in fact, Defendants did not even try to articulate what is missing. In some cases, the dispute turns on whether the disclosed structure is sufficient (or whether more detail is required), but here, it is hard to image how the '215 patent could have disclosed more structure corresponding to the recited function. In sum, the algorithms cited in Ericsson's proposed construction serve as adequate, defining structure that renders the bounds of the claim understandable to an ordinary artisan, and the Court should not grant Defendants leave to file a futile motion for summary judgment.

### III.    The Court May Correct the Obvious Administrative Errors in Claim 1 of the '468 Patent.

The Federal Circuit has made clear that a district court can correct obvious, administrative errors in a claim. *See Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents.") (citing *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1356-57 (Fed. Cir. 2003)). However, a district court may retroactively correct an error in a patent "only if the error is evident on the face of the patent." *See Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297 (Fed. Cir. 2005). In its opening claim construction brief, Ericsson requested that the Court use its authority to correct the obvious, administrative errors in claim 1 of the '468 patent. In their letter brief, Defendants: (i) do not even acknowledge the Court's authority to correct these errors; and then (ii) seize upon these errors in an attempt to invalidate claim 1 for indefiniteness. In this way, Defendants' letter brief arguments pertaining to the '468 patent are predicated on the false assumption that the Court is powerless to correct the errors that are evident on the face of the patent.

Claim 1 of the '468 patent, as issued, reads as follows:

1. A base station for use in a plurality of telecommunications systems operating according to different system standards, said base station comprising:

[1] at least one PCMCIA card slot for removably mounting at least one system component of a system of said plurality of telecommunications systems;

[2] a line interface connected to at least one of said plurality of telecommunications systems; and

[3] an interface for allowing electrical communication between said at least one means for removably mounting said line interface.

'468 patent, claim 1 (numbering and coloring added to the claim elements and terms for reference). As explained in Ericsson's opening claim construction brief, this claim contains two errors that are administrative in nature and clear from the face of the patent. *See* Dkt. No. 209 at 23–24.

-3-

May 22, 2012
Page 4

The first error, visible in the red text above, is that the third limitation should read "an interface for allowing electrical communication between **the PCMCIA card slot for removably mounting** . . ." instead of "an interface for allowing electrical communication between **said at least one means for removably mounting** . . . ." It is evident from reading the claim that the PCMCIA card slot in the first limitation serves as the antecedent basis for the "means" in the third limitation. The prosecution history confirms this. In response to the October 27, 1997 Office Action, the patentee attempted to replace each use of the phrase "means for removably mounting" with "PCMCIA card slot for removably mounting" in response to the examiner's rejection. *See* Ex. 12, January 17, 1996 Office Action Response at pgs. 2–6. By mistake, the substitution was not made in the presently disputed claim element, but this mistake was purely administrative and is clear on the face of the patent. Undoubtedly, a person of ordinary skill in the art would understand and interpret the reference in element 3 to a "*said* at least one means for removably mounting" to refer to the "PCMCIA card slot for removably mounting" that had previously been introduced.

The second error, again in the third limitation, is that there is a missing "and" between "means for removably mounting" and "said line interface." The missing "and" is clear from the face of the patent because the use of "said" before "at least one means for removably mounting" and again before "line interface" unmistakably refer to two separate, previously introduced pieces of the claimed based station, namely the PCMCIA card slot of the first element (red text) and the line interface of the second element (blue text). This is also confirmed by the specification, which discloses electrical communication between the PCMCIA card slot and the line interface. *See* '468::2:65–3:5 ("Each mounting means is connected to a bus structure that allows electrical communication between components mounted in the separate mounting means. The base station also comprises a first interface capable of being connected to telecommunications networks. A second interface connected between the bus structure and the first interface provides a communication path between the system components and the telecommunications network.").

Because the two errors discussed above are clear from the face of the patent and are corroborated by the claim language and specification, and because it cannot be said that a person of ordinary skill in the art would not understand what is claimed, *see Young*, 492 F.3d at 1346, the Court has authority to correct the errors. *See Hoffer* 405 F.3d at 1331. Defendants summarily assert that the obvious administrative errors contained in Claim 1 of the '468 patent render the claim indefinite, citing to *Novo Indus., L.P. v. Micro Molds Corp.*, but Defendants make no assertion that Claim 1 is "insolubly ambiguous" and not "amenable to construction" as was found to be true in that case. *See* 350 F.3d 1348, 1358 (Fed. Cir. 2003). On the contrary, the patentee's intent in this case is made clear by the claim language, specification, and the prosecution history, and Ericsson's proposed construction gives effect to that intent.

Moreover, Defendants' reliance upon *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1347 (Fed. Cir. 2002), is misplaced. In that case, unlike here, the construction proposed by the patentee was directly contradicted by the specification and found no support in the prosecution history. *Allen Eng'g*, 299 F.3d at 1348–49 ("Allen argues that one of skill in the art would understand that the term 'perpendicular' in the claim should be read to mean 'parallel.' . . . Here,

-4-

May 22, 2012
Page 5

it is apparent from a simple comparison of the claims with the specification that the inventor did not regard a trowel in which the second gear box pivoted only in a plane perpendicular to the biaxial plane to be his invention. Allen admits as much.").  As such, the court could not adopt the patentee's proposed construction, and the claims as issued were deemed indefinite.  *Id.*

In sum, Defendants' arguments regarding the '468 patent completely miss the mark, and accordingly, Defendants should not be permitted to file a motion for summary judgment.

## IV.    Conclusion

In light of the considerations set forth above, Defendants cannot and will not be able to meet their burden of establishing indefiniteness by clear and convincing evidence.  Accordingly, Ericsson respectfully asks the Court to deny Defendants' request for permission to file their proposed motion for summary judgment of indefiniteness.

.

Respectfully Submitted,

*/s/  Theodore Stevenson III* _____
Theodore Stevenson III

-5-

May 22, 2012
Page 6

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the forgoing document via the Court's CM/ECF system pursuant to the Court's Local Rules on this day, May 22, 2012.

_/s/ Theodore Stevenson III_
Theodore Stevenson III

-6-

McKool 445527v3