**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ERICSSON INC., et al., | ) | Case No. 6:10-CV-473-LED |
| | ) | |
| Plaintiffs, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | HONORABLE LEONARD DAVIS |
| D-LINK SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
OF CLAIM 1 OF U.S. PATENT NO. 5,771,468 AND CLAIM 45 OF
U.S. PATENT NO. 6,772,215**

US_ACTIVE-109591964.1-AHILGARD

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ISSUES TO BE DECIDED BY THE COURT ....................................................1

III.    STATEMENT OF UNDISPUTED FACTS .........................................................2

      A.    Undisputed Defects in Claim 1 of the '468 Patent ..................................2
      B.    Undisputed Facts Concerning the '215 Patent..........................................3

IV.     LEGAL ANALYSIS..............................................................................................4

      A.    Summary Judgment and Indefiniteness Standards ...................................4
      B.    Claim 1 of the '468 Patent is Indefinite ..................................................6

            1.    The nature of the defects are not apparent on the face of the patent ...........7
            2.    Ericsson's construction would improperly re-draft the claim language ................................................................................................9
            3.    Ericsson's construction is not the only way to amend the claim ...............10

      C.    Claim 45 of the '215 Patent is Indefinite at Least Under Ericsson's Construction...............................................................................................11

V.      CONCLUSION....................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................................................ 5

*Aristocrat Technologies Australia Pty Ltd. v. International Game Technology,*
521 F.3d 1328 (Fed. Cir. 2008) ........................................................................... 12

*B. Braun Med., Inc. v. Abbott Labs.,*
124 F.3d 1419 (Fed. Cir. 1997) ............................................................................. 5

*Blackboard, Inc. v. Desire2Learn Inc.,*
574 F.3d 1371 (Fed. Cir. 2009) ........................................................................... 12

*Chef Am., Inc. v. Lamb-Weston, Inc.,*
358 F.3d 1371 (Fed. Cir. 2004) ............................................................................. 7

*Cordis Corp. v. Boston Scientific Corp.,*
561 F.3d 1319 (Fed. Cir. 2009) ............................................................................. 5

*Energizer Holdings, Inc. v. Int'l Trade Comm'n,*
435 F.3d 1366 (Fed. Cir. 2006) ......................................................................... 5, 7

*Ergo Licensing v. Carefusion,*
673 F.3d 1361 (Fed. Cir. 2012) .................................................................. 6, 12, 13

*Halliburton Energy Services, Inc. v. M-I LLC,*
514 F.3d 1244 (Fed. Cir. 2008) ............................................................................. 5

*Hoffer v. Mircrosoft Corp.,*
405 F.3d 1326 (Fed. Cir. 2005) ............................................................................. 9

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.,*
248 F.3d 1303 (Fed. Cir. 2001) ............................................................................. 6

*Noah Systems, Inc. v. Intuit,*
F.3d, 2012 WL 1150216  (Fed. Cir. April 9, 2012)............................................ 6, 13

*Novo Indus., L.P. v. Micro Molds Corp.,*
350 F.3d 1348 (Fed. Cir. 2003) ............................................................................. 5

*Quantum Corp. v. Rodime, PLC,*
65 F.3d 1577 (Fed. Cir. 1995) ............................................................................... 7

*Synqor, Inc. v. Artesyn Technologies, Inc.,*
2010 WL 2991037 (E.D.Tex.  July 26, 2010) ........................................... 5, 7, 10, 11

*United Carbon Co. v. Binney & Smith Co.,*
317 U.S. 228 (1942)................................................................................................ 5

**Statutes**

35 U.S.C. §112............................................................................................... 1, 3

US_ACTIVE-109591964.1-AHILGARD 6/1/12 6:13 PM

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................ 4

## I.    **INTRODUCTION**

Claim 1 of U.S. Patent No. 5,771,468 ("the '468 patent") and claim 45 of U.S. Patent No. 6,772,215 ("the '215 patent") are invalid as indefinite.  Specifically, by Ericsson's own admission, claim 1 of the '468 patent, as drafted and issued, lacks antecedent basis, includes a "means plus function" element lacking corresponding structure in the specification, and is nonsensical.  Ericsson argues that these defects result from an "obvious administrative error" that the Court can correct through claim construction.  But Ericsson is wrong because the nature of the claim's defects are not apparent on the face of the patent, and Ericsson's construction would impermissibly re-write the claim language and require the Court to guess at the proper claim scope.  Indeed, the claim is susceptible to multiple interpretations, which precludes it from being amended through claim construction.  Claim 1's defects render it insolubly ambiguous, and summary judgment of invalidity is appropriate.

Claim 45 of the '215 patent is also indefinite, at least under Ericsson's construction, because it functionally claims software ("means for receiving . . . and constructing") with no corresponding algorithm as required by 35 U.S.C. §112, paragraph 6.  Accordingly, Defendants respectfully request that the Court grant summary judgment of invalidity of claim 1 of the '468 patent and claim 45 of the 215 patent.[1]

## II.    **ISSUES TO BE DECIDED BY THE COURT**

1.    Is claim 1 of the '468 patent insolubly ambiguous based on its undisputed defects, or should the claim be substantially re-written through claim construction, as proposed by Ericsson?

---

[1] The '468 and '215 patents patent are asserted against Defendants D-Link Systems, Inc. and NETGEAR, Inc. who join in all portions of this Motion.  The remaining Defendants join in the portions of this Motion (Sections II(2), III.B, IV.A and IV.C) related to the '215 patent, which is asserted against all Defendants.

US_ACTIVE-109591964.1-AHILGARD 6/1/12 6:13 PM

2.       Does the "means for receiving . . . and constructing" limitation in claim 45 of the '215 patent, at least as construed by Ericsson, have adequate algorithmic support in the specification?

III.    **STATEMENT OF UNDISPUTED FACTS**

A.      **Undisputed Defects in Claim 1 of the '468 Patent**

The '468 patent, entitled "Multi-Purpose Base Station," is directed to a modular base station capable of being used with one or more telecommunications systems that each operate according to a different system standard.  [Exh. A, '468 at Abstract, 1:5-10, claim 1.][2] Independent claim 1, with relevant portions in bold, provides:

> A base station for use in a plurality of telecommunications systems operating according to different system standards, said base station comprising:
>> at least one PCMCIA card slot for removably mounting at least one system component of a system of said plurality of telecommunications systems;
>>
>> a line interface connected to at least one of said plurality of telecommunications systems; and
>>
>> **an interface for allowing electrical communication between at least one means for removably mounting said line interface**.

It is undisputed that the third element of claim 1 contains at least three defects.  First, the "**between *said* at least one means for removably mounting said line interface**" limitation lacks antecedent basis because there is no disclosure in the patent for any means for removably mounting *a line interface*, as claimed in element 3.[3]   [*Id*.; Plt. Markman Brief (Dkt. 209) at 23.]

---

[2] All Exhibit citations are to the Declaration of Adaline J. Hilgard, filed concurrently.

[3] Notably, as drafted, the first claim element's "***PCMCIA card slot*** for removably mounting ***at least one system component***" is not the antecedent basis for the third element's "said means for removably mounting," which instead functions to removably mount "*said line interface*".  Indeed, neither the claim language nor the specification equates a "system component" to the "line interface," as these elements refer to separate and distinct portions of the claimed base station.  For example, the "system component" is a component of a telecommunication system that operates according to its own standard whereas the "line interface" provides connectivity between systems and components.  ['468 at 2:62-3:15, 2:39-49;

Continued on following page

- 2 -

Second, there is no structural support in the specification for this "means plus function" limitation, as required by 35 U.S.C. §112, ¶6.  Indeed, the only disclosed means for "removably mounting" anything is a PCMCIA card slot, and its function is for removably mounting "system components" contained on PCMCIA cards, not a line interface, as required by the claim, as drafted and issued.  [*See* Exh. A, '468 at 2:62-3:29; 3:17-25, 5:24-34, 5:58-6:7, Figs. 3B, 6.]  Finally, Ericsson concedes that, as drafted, the term "between" in element three is meaningless because whereas it implies that electrical communication is "*between*" *two* elements, the claim only recites *one* element, which makes no sense.  [*Id.*, claim 1; Plt. Markman Brief at 24.]  Without revision, these defects render claim 1 invalid as indefinite.

### B.    Undisputed Facts Concerning the '215 Patent

The '215 patent relates to a specific method for "minimizing feedback responses in Automatic Repeat Request (ARQ) protocols."  [Exh. B, '215 at abstract, claim 45.]  Claim 45 states in relevant part, with relevant portions in bold:

> 45. A system *for minimizing feedback responses* in an ARQ protocol, comprising:
>
> * * * * *
>
> said second peer entity including *means for receiving said plurality of first data units, and constructing one to several message fields* for a second data unit, said one to several message fields including a type identifier field and at least one of a sequence number field, a length field, a content field, a plurality of erroneous sequence number fields, and a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields.

---

Continued from previous page
Figs. 3B, 6; 5:24-34, 5:58-6:12.]  Similarly, the second claim element, as drafted, does not provide any antecedent basis because although it discloses a "**line interface**," it does not disclose the *"said **means for removably mounting** said line interface,"* as claimed in the third element.  The specification likewise fails to disclose a means for removably mounting said line interface, as that phrase is recited in claim 1.

The parties agree that the "means for receiving . . . and constructing" element is computer implemented, governed by 35 U.S.C. §112, ¶6 and requires construction.  [JCCS, Dkt. 187-1 at p. 2-3.]  The parties have proposed different constructions, including different functions and structures, for this limitation.  [*Id*.]  The following is Ericsson's proposed construction:

> Function:
> receiving said plurality of first data units, and constructing one to several message fields for a second data unit, said one to several message fields including a type identifier field and at least one of a sequence number field, a length field, a content field, a plurality of erroneous sequence number fields, and a plurality of erroneous sequence number length fields, each of said plurality of erroneous sequence number fields associated with a respective one of said plurality of erroneous sequence number length fields
>
> Structure:
> the receiver of a peer entity, see '215::29-30, whereby different mechanisms can be used to indicate erroneous data units so as to optimize performance, see '215::5:53-56, and the mechanisms refer to any of the methods described for constructing a bitmap feedback response message disclosed at '215::3:17-28 and '215::6:8-48, any of the methods for constructing a compressed bitmap feedback response message disclosed at '215::6:49-54, any of the methods for constructing a list feedback response message disclosed at '215::2:-63-3:16 and '215::7:2-28-51, and/or the method for constructing a feedback response message combining the list and bitmap methods, and any equivalents thereof.

[*Id*.]  As set forth below, the undisputed facts and controlling law mandate entry of summary judgment of invalidity because the patent does not contain an algorithm to support the function of this limitation, at least under Ericsson's construction.

IV.    **LEGAL ANALYSIS**

A.    **Summary Judgment and Indefiniteness Standards**

Summary judgment is proper when the pleadings, discovery, and affidavits indicate there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those affecting the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The patent statute requires that every patent's specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2 (2000).  "The statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise."  *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (quoting *United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 236 (1942)).  "Indefiniteness under 35 U.S.C. § 112 ¶ 2 is an issue of claim construction and a question of law." *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009).

A claim term which is "not amenable to construction" and "insolubly ambiguous" is indefinite.  *See Novo Indus., L.P. v. Micro Molds Corp.,* 350 F.3d 1348, 1353 (Fed. Cir. 2003). A claim term is insolubly ambiguous and indefinite if it "does not have proper antecedent basis [and] such basis is not otherwise present by implication or the meaning is not reasonably ascertainable."  *See Synqor, Inc. v. Artesyn Technologies, Inc.*, 2010 WL 2991037 *27 (E.D.Tex. July 26, 2010), *citing Energizer Holdings, Inc. v. Int'l Trade Comm'n,* 435 F.3d 1366, 1370-71 (Fed. Cir. 2006).

Both claims at issue in this Motion contain means-plus-function limitations that require construction, if possible.  Where a claim limitation is expressed in means-plus-function language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112¶ 6.  *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).  In relevant part, 35 U.S.C. § 112 ¶ 6 "mandates that such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id.* (quoting 35 U.S.C. § 112 ¶ 6).  The first step of construing a means-plus-function limitation to

- 5 -

determine the function of the limitation. *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "[t]he next step is to determine the corresponding structure described in the specification and equivalents thereof." *Id.* Where, as here, there is no structure recited in the claim and there is no structure in the specification that is "clearly linked" to the function, the claim is indefinite under 35 U.S.C. § 112, ¶ 2. *Id.* at 11-13; *see, e.g., Ergo Licensing v. Carefusion*, 673 F.3d 1361, 1364, 1364 (Fed. Cir. 2012); *Noah Systems, Inc. v. Intuit*, -- F.3d --, 2012 WL 1150216 *8 (Fed. Cir. April 9, 2012).

Although it is permissible to use "means plus function" limitations for software inventions, it is well-settled that "computer-implemented means-plus function terms are limited to the algorithms disclosed in the specification." *Ergo*, 673 F.3d at 1364; *Noah Systems,* 2012 WL 1150216 at *8. An algorithm is a "step-by-step procedure for accomplishing a given result" whether given as a "mathematical formula, in prose, or as a flow chart." *Ergo,* 673 F.3d at 1364.

### B.    Claim 1 of the '468 Patent is Indefinite

As set forth above, Ericsson concedes the defects of claim 1 of the '468 patent. [Plt. Markman Brief (Dkt. 209) at 23, Response to Letter Brief (Dkt. 215-1).] Separately and together, these undisputed defects render claim 1 insolubly ambiguous, and summary judgment of invalidity for indefiniteness is appropriate.

Against this backdrop, Ericsson seeks to avoid invalidity by asking the Court to *re-write* the claim language to (1) delete the entire "means plus function" claim limitation; (2) replace the "means plus function" language with the phrase "the PCMCIA card slot," (3) delete the word "said" before line interface; and (4) add "and the" before line interface, as follows:

- 6 -

| CLAIM 1, ELEMENT 3 | ERICSSON'S PROPOSED CONSTRUCTION |
|---|---|
| an interface for allowing electrical communication between at least one means for removably mounting said line interface | an interface for allowing electrical communication between ~~at least one means for removably mounting~~ the PCMCIA card slot ~~said~~ and the line interface |

Ericsson tries to justify its proposed re-write by arguing that the claims' defects are the result of "an obvious administrative error" that can be "corrected" by the Court through claim construction. It is well-settled, however, that "courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995) ("[I]t is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims"). Moreover, a court may correct "obvious, minor, typographical and clerical" errors in a patent, but "only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo*, 350 F.3d at 1354, 1357-58 (Fed. Cir. 2003). Similarly, where, as here, the parties agree that a claim lacks an antecedent basis, "the question presented to the Court is whether one of skill in the art would be able to ascertain the missing antecedent for the limitation upon review of the specification." *Synqor,* 2010 WL 2991037 at *27, *citing Energizer Holdings,* 435 F.3d at 1370-71. In this case, Ericsson's proposal to re-draft claim 1 should be rejected for at least three reasons.

1.      **The nature of the defects are not apparent on the face of the patent**

First, the prosecution history and Ericsson's own actions in this case establish that the claim defects are neither typographical nor clerical, and in fact, more likely resulted from intentional drafting. *See Novo*, 350 F.3d at 1357 ("The present case does not fall within the

ambit of the district court' s authority, for the nature of the error is not apparent from the face of the patent."). For example, the originally-filed claim 1 included *two* distinct means plus function limitations: (1) in the first element, a "means for removably mounting at least one system component" and (2) in the third element, a "means for removably mounting said line interface." [Exh. C at p.23, '468 FH, 1/17/96 App., claim 1.] The examiner rejected all original claims as obvious, finding that the prior art disclosed, among other things, both the first and third elements, including specifically, their "means plus function" limitations. [Exh. D, '468 FH, 10/20/97 Rej. at 3-4.] Effectively confirming his view that the limitation was properly drafted, the Examiner *twice* repeated *verbatim* the limitation *as originally drafted* (and eventually issued), and found that it was disclosed in the prior art. [*Id.* at 4 ("Fisher et al. disclosed . . . an interface **(fig. 13)** for allowing electrical communication between said at least one means for removably mounting said line interface.").]

To overcome the prior art, the applicants responded by amending *only the first* "means plus function" limitation (and like limitations in other claims) to specify a "PCMCIA card slot", but they left untouched the *entire* third element. [Exh. E, '468 FH, 12/23/97 Amend. at 2.] Thus, apparently, the applicants also viewed this limitation as properly drafted and as distinct from the first means limitation (the PCMCIA card slot). Despite ample opportunity to change the claim language as Ericsson now proposes, the applicants – and the examiner – chose to retain this element's original format and language, which eventually issued in claim 1.[4]

---

[4] In its Opposition Letter Brief [Dkt. 215], Ericsson relies on *Hoffer v. Microsoft Corp.*, which is easily distinguishable. In *Hoffer*, the examiner *renumbered* the claims, but failed to change the text of dependent claim 22 to identify the newly numbered antecedent claim 21. Claim 22 thus stated that it depended from "claim 38" which was a clear administrative error since no claim 38 issued. Moreover, the patentee in *Hoffer* obtained a Certificate of Correction from the PTO to correct the obvious numbering error. 405 F.3d 1326, 1331 (Fed. Cir. 2005). In contrast, here, the asserted error is far more substantive than a re-numbering mix-up, the proposed correction would substantially re-draft the claim, and, until

Continued on following page

In fact, before these *Markman* proceedings, Ericsson also took the position that claim 1's recitation of an interface allowing communication "between" a *single* structure (as opposed to between *two* structures) was *proper* – not "meaningless," as it now contends.  [*See* Plt. Markman Brief (Dkt. 209) at 24.]  Specifically, in its infringement contentions, Ericsson identified in the accused products only *one* structure "between" which the claimed communication is allowed.  [Exh. F, '468 Inf. Cont. to NETGEAR at 4 (asserting that accused products "include an interface for allowing electrical communication between the PC card slot" [and no other identified structure]).]  Ericsson cannot legitimately seek to exploit the claim's ambiguity for its infringement read, and now seek revision based on alleged "obvious" errors to avoid invalidity.

In short, like the examiner and applicants during prosecution, and Ericsson during this litigation, a person of ordinary skill in the art would neither appreciate the nature of the claim defects nor understand the scope of the claim urged by Ericsson.

> **2.      Ericsson's construction would improperly re-draft the claim language**

The second problem with Ericsson's interpretation is that it constitutes an unsupported and substantial re-write of the claim element.  The recited function of the claimed "PCMCIA card slot" is to removably mount "*at least one system component*," whereas the recited function of the claimed "means for removably mounting" limitation in the third element is substantively different – it is to removably mount *"said line interface*."  [Exh. A, '468, claim 1, 3:6-29.]  Replacing the third element's "means plus function" limitation with "PCMCIA card slot" would thus substantively alter the claim and its meaning.  Ericsson's proposal to delete "said" and add "and" also would substantively change the claim by making the communication occur "between

---

Continued from previous page

now, neither the Examiner nor the applicants ever sought to "correct" the alleged error, whether during prosecution or through the PTO after-the-fact, as in *Hoffer*.

the PCMCIA card slot and the line interface" – a concept that is not present in the claim, as drafted, prosecuted and issued.[5]

### 3. Ericsson's construction is not the only way to amend the claim

Finally, Ericsson's proposed re-write should be rejected because it is not the only possible way to amend the claim. *Novo,* 350 F.3d at 1358 ("[I]n order to make sense out of the patent, the district court was required to guess as to what was intended. That is beyond its authority."); *see Synqor,* 2010 WL 2991037 at *28. For example, a person of ordinary skill in the art reading the specification could attempt to understand the claimed "means for removably mounting said line interface" limitation as referring to a "wall outlet, or phone jack," which is arguably be a means to "removably mount" a phone line (i.e., a "line interface"), and which is disclosed in the specification. ['468 at cl. 1, 6, 1:22-39, 4:8-12.]. The element could thus be amended by adding at the end, "and a system of said plurality of telecommunications systems" such that it recites: "an interface for allowing electrical communication between at least one means for removably mounting said line interface [i.e., a phone jack] <u>and a system of said plurality of telecommunications systems</u>."

Or, similar to disclosures in the specification, the element possibly could be amended by replacing "said line interface" with "and at least one system component" such that the element recites: "an interface for allowing electrical communication between at least one means for

---

[5] Ericsson's reliance on the specification at 2:65-3:5 is misplaced because that portion instead discloses that "[e]ach mounting means is connected to a bus structure that allows electrical communication *between components mounted in the separate mounting means*." [Exh. A, '468 at 2:65-68 (emphasis added).] It also discloses an "interface capable of being connected to telecommunications networks" and a "second interface connected between the bus structure and the first interface [that] provides communication path between the system components and the telecommunications network." None of these disclosures specifically disclose the claim language Ericsson is proposing in which the claimed interface allows electrical communication between the "PCMCIA card slot and the line interface." [*Id*. at 2:65-3:5.]

removably mounting [or PCMCIA card slot] and at least one system component." [*See id*. 2:64-3:5.]

As another alternative, a person of skill in the art could understand that the word "with" should replace "between" to eliminate the nonsensical nature of the claim created by the word "between." The remainder of the element could be left untouched, as drafted (to refer to a phone jack or wall outlet), or it could be replaced with "at least one PCMCIA card slot and said system component," or it could be replaced with "said at least one system component." Thus, the element could be amended to read: "an interface for allowing electrical communication *with* said at least one means for removably mounting said line interface," <u>or</u>, "an interface for allowing electrical communication *with* said PCMCIA card slot and said at least one system component," or, "an interface for allowing electrical communication with said at least one system component." [*Id*.]

However, like Ericsson's proposal, all these alternatives – and other possible variations -- "would either completely rewrite the claims by ignoring express language of the claims or would cover concepts and features where there is no such disclosure in the specification," and thus they should be rejected. *Synqor*, 2010 WL 2991037 at *28. Because the claim is susceptible to various amendments, this Court would be required to guess at what amendment was proper, and a person of skill in the art would not necessarily understand Ericsson's proposed claim scope. Thus, the claim is insolubly ambiguous and Ericsson's proposal should be rejected. *Novo,* 350 F.3d at 1358. Summary judgment of invalidity for indefiniteness is appropriate.

C. <u>**Claim 45 of the '215 Patent is Indefinite at Least Under Ericsson's Construction**</u>

The parties agree that to survive an indefiniteness challenge, claim 45's "means for receiving . . . and constructing" limitation, which requires computer implementation, must have

algorithmic support.  Notably, to satisfy 35 USC §112 ¶6, the structure identified must actually be found in the specification – it is insufficient to identify a function, or merely paraphrase the function in the claim, and state that one of ordinary skill would know how to find or build the software that would work.  *Ergo*, 673 F.3d at 5 ("That ordinarily skilled artisans could carry out the recited function in a variety of ways is precisely why claims written in 'means-plus-function' form must disclose the particular structure that is used to perform the recited function"), *citing Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009); *Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 521 F.3d 1328, 1336 (Fed. Cir. 2008) (distinguishing enablement and indefiniteness requirements for means-plus-function claims).  Here, claim 45 is invalid because Ericsson's proposals for corresponding structure do not include portions of the specification necessary to support Ericsson's interpretation of the claimed function.  ['215, claim 45.]

Although Ericsson's proposal for the claimed function mostly repeats the claim language, its corresponding proposed structure requires "different mechanisms [that] can be used to indicate erroneous data units so as to optimize performance."  [JCCS, Dkt. 187-1 at 2.]  In support of its function, Ericsson cites to various prior art ARQ message types – i.e., a bitmap, a list feedback response, etc. – but none of those message types alone can be used to inform the system how to carry out constructing a message to optimize performance for any particular circumstance.  [*Id.*].  Indeed, while Ericsson includes some references in its corresponding structure to support constructing a feedback response, Ericsson's proposed structure is incomplete because it omits portions of the specification relating to the claimed optimization.  For example, Ericsson does not cite to Table 1, which shows the size in bits of different types of feedback responses depending on the number and sequence of errors received by the receiver.

- 12 -

[*See id.* at 4:18-29 (Table 1)].  As another example, Ericsson selectively cites to some structures (*see id.* at 3:10-13 (providing equation to calculate S-PDU size)), but not others that are related (*see id.* at 3:36-42 (providing equation to calculate S-PDU size).  Thus, Ericsson's structure is incomplete, and as such does not disclose an algorithm to support its construction of the "means for receiving . . . and constructing" element.[6]  Claim 45 is invalid as indefinite at least under Ericsson's proposal.  *Ergo*, 673 F.3d at 1364; *Noah* 2012 WL 1150216 at *8.

## V.    CONCLUSION

For the reasons stated above, Defendants respectfully request that summary judgment of invalidity of claim 1 of the '468 patent and claim 45 of the '215 patent be entered.

Dated:  June 1, 2012                                    Respectfully submitted,

*/s/ Adaline J. Hilgard*

Scott D. Baker, *Pro Hac Vice* (Cal. SBN 84923)
John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
Christine M. Morgan, *Pro Hac Vice* (Cal. SBN 169350)
Adaline J. Hilgard, *Pro Hac Vice* (Cal. SBN 173213)
William R. Overend, *Pro Hac Vice* (Cal. SBN 180209)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  941015
Telephone:  +1 415 543 8700
Facsimile:  +1 415 391 8269
Email:  sbaker@reedsmith.com
Email:  jbovich@reedsmith.com
Email:  ahilgard@reedsmith.com
Email:  woverend@reedsmith.com

---

[6] According to Ericsson, even adding the structure cited by Defendants would provide insufficient algorithmic support for this limitation because Defendants' citations are merely "representative of the messages that are *created* as a result of the recited function" and/or "describe aspects of created response messages."  [Plt. Markman Brief (Dkt. 209) at 8.]  By Ericsson's own argument, therefore, claim 45 is indefinite under any construction.

- 13 -

Email:  jmitchell@reedsmith.com

Trey Yarbrough (Bar No. 22133500)
Debby E. Gunter (Bar No. 24012752)
**YARBROUGH & WILCOX, PLLC**
100 E. Ferguson, Ste. 1015
Tyler, Texas 75702
Telephone:  +1 903 595 3111
Facsimile:  +1 903 595 0191
Email:  trey@yw-lawfirm.com
Email:  debby@yw-lawfirm.com

**Counsel for Defendants, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC.**

S.J. Christine Yang (admitted *pro hac vice*)
Duncan Palmatier (admitted *pro hac vice*)
Victoria Hao (admitted *pro hac vice*)
**THE LAW OFFICES OF S.J. CHRISTINE YANG**
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Tel: (714) 641-4022; Fax: (714) 641-2082
E-Mail:  cyang@sjclawpc.com
E-Mail:  dpalm@dpalmlaw.com
E-Mail:  vhao@sjclawpc.com

**Counsel for Defendant D-LINK SYSTEMS, INC.**


  */s/ Dwayne C. Norton* (with permission)
Michael J. Newton (Texas Bar No. 24003844)
Jason W. Cook (Texas Bar No. 24028537)
Stacey G. White (Texas Bar No. 24053220)
Dwayne C. Norton (Texas Bar No. 24076139)
Shaun W. Hassett (Texas Bar No. 24074372)
Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood St, Suite 1800
Dallas, TX 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
Email: mike.newton@alston.com
Email: jason.cook@alston.com
Email: stacey.white@alston.com
Email: dwayne.norton@alston.com

- 14 -

Email: shaun.hassett@alston.com
Email: brady.cox@alston.com

Marsha E. Mullin (California Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
Email: marsha.mullin@alston.com

Frank G. Smith (Georgia Bar No. 657550)
Kamran Jivani (Georgia Bar No. 510908)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: frank.smith@alston.com
Email: kamran.jivani@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**RAMEY & FLOCK, P.C.**
100 East Ferguson, Suite 500
Tyler, TX 75702
Phone: (903) 597-3301
Fax: (903) 597-2413
Email: ddacus@rameyflock.com

**Counsel for DEFENDANT DELL INC.**


*/s/ John Feldhaus* (with permission)
John Feldhaus
Pavan Agarwal
**FOLEY & LARDNER LLP**
3000 K. Street, NW, Suite 500
Washington, DC 20007
PH: (202) 672-5300
Fax: (202) 672-5399
Email:  jfeldhaus@foley.com
Email:  pagarwal@foley.com

Guy N. Harrison
Attorney at Law
217 N. Center

- 15 -

Longview, TX 75606
PH: (903) 758-7361
Fax: (903) 753-9557
Email: guy@gnhlaw.com

**Counsel for TOSHIBA CORPORATION AND TOSHIBA AMERICA INFORMATION SYSTEMS, INC.**

*/s/ Vision Winter* (with permission)
Ryan K. Yagura (Bar No. 24075933)
Vision Winter (*Pro Hac Vice*)
Eric Chan (*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

**Attorneys for BELKIN INTERNATIONAL, INC.**

- 16 -

## Certificate of Service

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECD system per Local Rule CV-5(a)(3) on June 1, 2012.  Any other counsel will be served via U.S. mail.

                                                   */s/ Adaline J. Hilgard*
                                                   Adaline J. Hilgard