# EXHIBIT L



| | | ISSUE CLASSIFICATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Subclass | 347 | | | | | | | | **5987019** |
| Class | 370 | | | | | | | | |

| UTILITY SERIAL NUMBER | 08/725643 | PATENT DATE | NOV 16 1999 | PATENT NUMBER | | 5987019 |
|---|---|---|---|---|---|---|

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| | | | | | |

**APPLICANTS**

FD   NONE

FD   None

| Foreign priority claimed ☐ yes ☒ no | AS FILED → | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☑ no | | | | | | | |
| Verified and Acknowledged   Examiner's initials | | | | | | | |

**ADDRESS**

**TITLE**

U.S. DEPT. OF COMM./ PAT. & TM—PTO-436L (Rev.12-9

| PARTS OF APPLICATION FILED SEPARATELY | | | Applications Examiner |
|---|---|---|---|
| **NOTICE OF ALLOWANCE MAILED** | FRANK DUONG<br>Assistant Examiner | **CLAIMS ALLOWED** | |
| 76 57 | | Total Claims | Print Claim |
| | | | 1 |
| **ISSUE FEE** | CHIH PHAM<br>SUPERVISORY PATENT EXAMINER<br>GROUP 2700 | **DRAWING** | |
| Amount Due | Date Paid | Sheets Drwg. | Figs. Drwg | Print Fig. |
| $1310.00 | | 9 | 15 | 6 |
| | | Primary Examiner | **ISSUE BATCH NUMBER** | V35 |
| Label Area | **PREPARED FOR ISSUE** | | |
| | **WARNING:** The information disclosed herein may be restricted  Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368  Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only | | |

Form PTO-436A
(Rev 8/92)

(FACE)



Attorney's Docket No. 040010-001

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Patent Application of | ) | |
| | ) | |
| Alex Krister RAITH et al. | ) | Group Art Unit: 2731 |
| | ) | |
| Application No.: 08/725,643 | ) | Examiner: F. Duong |
| | ) | |
| Filed: October 15, 1996 | ) | |
| | ) | |
| For: MULTI-RATE | ) | |
| RADIOCOMMUNICATION SYSTEMS | ) | |
| AND TERMINALS | ) | |

RECEIVED

NOV 0 5 1998

Group 2700

## AMENDMENT

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

In response to the Office Action dated August 5, 1998, please amend the above-identified application as follows.

### IN THE CLAIMS:

Claim 1, line 14, delete "mobile station" and insert --first remote station--.

Claim 14, line 17, after "downlink" insert --connection--.

Claim 19, line 6, after "which identifies" delete "the" and insert --a--.

Claim 37, line 7, after "transmitting" insert --the--.

### REMARKS

Claims 1-25 and 37-44 were elected in response to a telephone restriction requirement and claims 1, 14, 19 and 37 have been amended. Accordingly, claims 1-25 and 37-44 are currently pending in front of the Examiner.

(1/96)

Application Serial No. <u>08/725,643</u>
Attorney's Docket No. <u>040010-001</u>
Page 2

Initially, Applicant notes with appreciation the Examiner's indication that claims 22 and 23 contain allowable subject matter.

In paragraph 7 of the Office Action, figures 1-3 and 10 of the drawings are objected to because of alleged informalities. A copy of figures 1-3 and 10, with corrections in red ink, are submitted with this response for the Examiner's approval.

In paragraph 9 of the Office Action, the specification is objected to because of a minor informality. It is respectfully submitted that the phrase "might be rate 1/2" need not be corrected, since the phrase describes an exemplary channel encoding rate using a well known convention for describing a convolutional code. (see Col. 1, line 51 of U.S. Patent No. 5,182,753, cited in the Office Action, for use of similar language.)

In paragraph 10 of the Office Action, claims 1-13, 19-25 and 37-41 are rejected under 35 U.S.C. §112, second paragraph, as allegedly being indefinite. The claims have been amended to address the Examiner's concerns.

In paragraph 12 of the Office Action claims 1-21, 24 and 25 are rejected under 35 U.S.C. §102(e) as allegedly being anticipated by U.S. Patent No. 5,570,467 (herein referred to as Sawyer). This rejection is respectfully traversed. Prior to discussing this ground of rejection in detail, a brief summary of exemplary embodiments of the present invention is provided below to highlight some of the advantageous characteristics thereof.

The present invention is concerned with adapting a radiocommunication connection to variance in bandwidth by changing the type of information being transmitted. In an exemplary embodiment, a first downlink time slot associated with a double- or triple-rate connection may have first format, while a second time slot associated with the same connection may have a second format different from the first format. Bandwidth in the second (or third) time slot can be used to carry information in a fast out-of-band channel (FOC). The FOC may provide information relating to the same connection as the payload or data field in that time slot, e.g., a service type identifier which informs the mobile or base station of the type of information (e.g., voice, video or data) being conveyed in the payload. Alternatively, the FOC information may be associated with a connection or

Application Serial No. 08/725,643
Attorney's Docket No. 040010-001
Page 3

connections which are different from that supported by the payload or data field containing the FOC.

In accordance with an exemplary embodiment, information is transmitted asymmetrically on a duplex radio channel, wherein a bandwidth associated with a terminal's usage of the uplink connection differs from the bandwidth associated with the terminal's usage of the downlink connection. According to another exemplary embodiment of the present invention, during the establishment of a connection between a base station and a communication station, the communication station is informed whether the type of connection being established is a multimedia connection or a non-multimedia connection. In accordance with another exemplary embodiment, a predetermined field is read if a connection is identified as a multimedia connection, and the predetermined field is ignored if the connection is not a multimedia connection.

Accordingly, claim 1 defines a method for transmitting information on a traffic channel to a first remote station. The method comprises the steps of grouping the information into a plurality of successive time slots on a radio carrier signal and grouping a plurality of the successive time slots into a frame. The method further comprises the step of providing a first field starting at a predetermined bit position in at least one of the successive time slots within the frame, the first field containing a first type of control channel information. The method also comprises the step of providing a second field starting at the same predetermined bit position in at least another one of the successive time slots within the frame, the second field containing a different type of information than the first type of information. The method further comprises the step of transmitting the frame to the first remote station.

Sawyer teaches a method and apparatus for locating a digital control channel in a radio communications system. The system groups the channels which are candidates for carrying supervisory messages in blocks indicative of their relative likelihood for being used as control channels. A mobile station begins its search for a control channel with channels which are most likely to actually be control channels. However, Sawyer fails to teach providing a first field starting at a predetermined bit position in at least one of the

Application Serial No. 08/725,643
Attorney's Docket No. 040010-001
Page 4

successive time slots within the frame, said first field containing a first type of control channel information and providing a second field starting at the same predetermined bit position in at least another one of said successive time slots within said frame, the second field containing a different type of information than the first type of information.

Nevertheless, the Office Action cites figures 2(a)-2(d) of Sawyer as allegedly teaching the aforementioned steps. These figures describe timeslot structures associated with different types of channels found in systems compliant with the TIA/EIA 136 standard. Specifically, the Office Action states that the first field containing the first type of control channel information is the slow associated control channel (SACCH) and that the second field containing a different type of information from the first type of information is the coded digital verification color code (CDVCC) field. The Office Action also cites the numbers below the SACCH field and the CDVCC field as allegedly showing that the different fields have the same bit position. However, the SACCH field and the CDVCC field are in different positions in the same time slot and not in the same position in different time slots as recited, among other features, in claim 1. The numbers below the time slot in the figures of Sawyer indicate the number of bits which are allocated to the field and not the position of the fields, as alleged in the Office Action. Instead, the starting bit position of each field for the SACCH fields of Sawyer can be calculated by adding each number sequentially to zero going from left to right, e.g., for figure 2(a) SACCH starts at bit position 178 and CDVCC starts at bit position 190. The slot structures described in each of figures 2(a)-2(d) are repetitive for each channel. Thus, successive timeslots of downlink digital traffic channels (figure 2 (a)) each contain a SACCH field beginning at bit position 178 and a CDVCC field at bit position 190 in the described exemplary embodiment of Sawyer.

Claims 2-13 variously depend from claim 1, and are, therefore, respectfully submitted to be patently distinguishable over Sawyer for at least those reasons set forth above with respect to claim 1.

Claim 14 defines a method for transmitting information between a first communication terminal and a radiocommunication system and a second communication

Application Serial No. <u>08/725,643</u>
Attorney's Docket No. <u>040010-001</u>
Page 5

terminal and the radiocommunication system. The method comprises the step of providing an uplink connection for transmitting uplink information from the first and second communication terminals to the radiocommunication system, wherein the uplink information is disposed in at least one predetermined, uplink information field. The method further comprises the step of providing a downlink connection, associated with the uplink connection, for transmitting downlink information from the radiocommunication system to the first communication terminal, wherein the downlink information is disposed in at least one predetermined downlink information field and wherein the uplink and downlink connections together comprise a duplex radio channel. The method also comprises the step of transmitting information asymmetrically on the duplex radio channel wherein a bandwidth associated with the first communication terminal's usage of the uplink connection differs from a bandwidth associated with the first communication terminal's usage of the downlink connection. The method further comprises the step of transmitting another field on the downlink connection that provides information to the second communication terminal relating to its uplink connection.

Claim 14 is not anticipated by Sawyer for at least the reason that Sawyer fails to teach asymmetrical transmission of information on the duplex radio channel, in combination with the other steps of claim 14. Specifically, Sawyer fails to teach transmitting information asymmetrically wherein a bandwidth associated with the first communication terminal's usage of the uplink connection differs from a bandwidth associated with the first terminals usage of the downlink. **Accordingly, should the Examiner maintain this ground of rejection in a subsequent communication, he is respectfully requested to point out by column and line number where the aforementioned features are taught by Sawyer so that Applicant has a full and fair opportunity to respond.**

Claims 15-18 variously depend from claim 14, and are, therefore, respectfully submitted to be patently distinguishable over Sawyer for at least those reasons set forth above with respect to claim 14.

Claim 19 defines a method for transmitting information on a radio channel between a first communication terminal and a radiocommunication system. The method comprises

(1/96)

Application Serial No. <u>08/725,643</u>
Attorney's Docket No. <u>040010-001</u>
Page 6

the step of providing at least one first field in which payload information is disposed. The method also comprises the step of providing at least one second field, separate from the first field, which includes a service type identifier which identifies the type of payload information provided in the at least one first field. The method further comprises the step of transmitting the at least one first field and the at least one second field on the radio channel.

However, Sawyer does not remotely teach or suggest, among other features, providing at least one second field, separate from said first field, which includes a service type identifier which identifies the type of payload information provided in said at least one first field. **Since this feature is not mentioned in the Office Action, it is respectfully requested that the Examiner specifically point out by column and line number where Sawyer teaches the aforementioned claim features.**

Claims 20, 21, 24 and 25 variously depend from claim 19, and are, therefore, respectfully submitted to be patently distinguishable over Sawyer for at least those reasons set forth above with respect to claim 19.

For each of the forgoing reasons, it is respectfully requested that the rejection of claims 1-21, 24 and 25 as allegedly being anticipated by Sawyer be reconsidered and withdrawn.

In paragraph 13 of the Office Action, claims 14-21, 24 and 25 are rejected under 35 U.S.C. §102(e) as allegedly being anticipated by U.S. Patent No. 5,603,081 (herein referred to as Raith et al.). This rejection is respectfully traversed.

Raith et al. teaches, among many other things, a method for registration of a remote station with a communications system. Raith et al. also teaches acknowledging the registration of remote stations and assigning each remote station an identity number. Raith et al. further teaches identifying to a remote station the services available in the communication system.

However, Raith et al. fails to anticipate claim 14 for at least the reason that Raith et al. fails to teach transmitting information asymmetrically on the duplex radio channel, in combination with the steps of claim 14. The Office Action fails to show where Raith et al.

(1/96)

Application Serial No. 08/725,643
Attorney's Docket No. 040010-001
Page 7

teaches the aforementioned step. **Accordingly, it is respectfully requested that the Examiner specifically point out, by column and line number where the aforementioned step is taught by Raith et al.**

Claims 15-18 variously depend from claim 14, and are, therefore, respectfully submitted to be patently distinguishable over Raith et al. for at least those reasons set forth above with respect to claim 14.

Raith et al. fails to anticipate claim 19 for at least the reason that Raith et al. fails to teach providing at least one second field, separate from the first field, which includes a service type identifier which identifies the type of payload information provided in the at least one first field, in combination with the steps of claim 19. Nevertheless, the Office Action alleges that the fast associated control channel (FACCH) identifies whether the payload information is voice, data or multimedia. However, nowhere in Raith et al. is there a teaching of using the FACCH to transmit a service type identifier as recited in claim 19. **Accordingly, it is respectfully requested that the Examiner specifically point out, by column and line number where Raith et al. teaches the use of the FACCH to identify a payload type, as recited, among other things, in claim 19.**

Claims 20, 21, 24 and 25 variously depend from claim 19, and are, therefore, respectfully submitted to be patently distinguishable over Raith et al. for at least those reasons set forth above with respect to claim 19.

For each of the foregoing reasons, it is respectfully requested that the rejection of claims 14-21, 24 and 25 as allegedly being anticipated by Raith et al. be withdrawn.

In paragraph 15 of the Office Action, claims 37-44 are rejected under 35 U.S.C. §103(a) as allegedly being unpatentable over U.S. Patent No. 5,182,753 (hereinafter Dahlin et al.) in view of U.S. Patent No. 5,230,003 (hereinafter Dent et al.). This rejection is respectfully traversed.

Claim 37 defines a method for transmitting information to a communication station. The method comprises the step of establishing a connection between a base station and the communication station, including informing the communication station of whether the type of connection being established is a multimedia connection or a non-multimedia connection.

(1/96)

Application Serial No. 08/725,643
Attorney's Docket No. 040010-001
Page 8

The method also comprises the step of transmitting information to the communication station over the established connection.

Dahlin et al. teaches a method of transmitting signaling messages in a mobile radio communication system. However, Dahlin et al. fails to teach or suggest the establishment of a multimedia connection. Accordingly, Dahlin et al. cannot possibly teach informing the communication station whether the type of connection being established is a multimedia connection, in combination with the other steps of claim 37.

The Office Action recognizes this deficiency of Dahlin et al., and cites col. 1, lines 35-54 of Dent et al. as allegedly teaching the aforementioned claim feature. However, the cited section merely teaches the use of a voice/data flag to indicate whether voice or data is currently being transmitted. However, Dent et al. fails to teach establishing a connection between a base station and a communication station, including informing the communication station of whether the type of connection being established is a multimedia connection or a non-multimedia connection. Accordingly, the alleged combination of Dahlin et al. and Dent et al. fails to teach all of the features of claim 37.

Further, it is respectfully submitted that there is no motivation to combine Dahlin et al. and Dent et al. to arrive at the claimed invention. The Office Action states that one skilled in the art would have been motivated to "implement the Dent's teaching into Dahlin's system to insure the voice/data signal is accurately receive." However, Dahlin et al. fails to contain any motivation to incorporate the transmission of voice and data signals as taught by Dent et al. Further, since Dent et al. already teaches a method to insure that the voice and data signals are accurately received, it is submitted that there is no motivation to use a method of transmitting signaling messages, as taught by Dahlin et al., to transmit the voice and data signals of Dent et al.

Claim 38, which depends from claim 37, recites that the step of establishing occurs at call-setup. The Office Action cites col. 2, lines 15-38, of Dahlin et al. as allegedly teaching the aforementioned claim feature. However, the cited section merely describes a call handoff procedure when a mobile station moves from one cell to another cell. Even assuming strictly arguendo, that the transmission of the voice/data flag of Dent et al. could

(1/96)

Application Serial No. 08/725,643
Attorney's Docket No. 040010-001
Page 9

be considered analogous to Applicant's claimed step of informing the communication station of whether the connection is a multimedia or non-multimedia connection, the cited documents still fail to teach or suggest that such information is transmitted at call-setup. Accordingly, the alleged combination of Dahlin et al. and Dent et al. fails to teach all of the features of claim 38.

Claim 39, which depends from claim 37, recites that the step of establishing occurs at call handoff. The Office Action cites col. 2, lines 15-38, of Dahlin et al. as allegedly teaching the aforementioned claim feature. However, as stated above in regard to claim 38, the cited section merely describes a call handoff procedure. Even assuming strictly arguendo, that the transmission of the voice/data flag of Dent et al. could be considered analogous to Applicant's claimed step of informing the communication station of whether the connection is a multimedia or non-multimedia connection, the cited documents still fail to teach or suggest that such information is transmitted at call handoff. Accordingly, the alleged combination of Dahlin et al. and Dent et al. fails to teach all of the features of claim 39.

Claim 41, which depends from claim 37, recites that a non-multimedia connection is a connection wherein control information associated with at least one other communication station is transmitted via the connection. However, both Dahlin et al. and Dent et al. fail to teach the aforementioned claim feature, in combination with the steps of claim 37. **Since this feature is not mentioned in the Office Action, it is respectfully requested that the Examiner specifically point out by column and line number where the aforementioned feature is taught by the combination of Dahlin et al. and Dent et al.**

Claim 42 defines a method for receiving information in a radiocommunication system. The method comprises the step of receiving connection information which identifies a connection as one of multimedia or non-multimedia. The method also comprises the steps of reading, if the connection is identified as a multimedia connection, a predetermined field of information which has been received, otherwise, if the connection is identified as a non-multimedia connection, ignoring the predetermined field of information.

(1/96)

Application Serial No. 08/725,643
Attorney's Docket No. 040010-001
Page 10

As stated above in regard to claim 37, Dent et al. merely teaches the transmission of a voice/data flag. However, Dent et al. fails to teach ignoring a predetermined field of information if the connection is identified as a non-multimedia connection, as recited among other features in claim 42. Further, Dent et al. fails to teach reading, if the connection is identified as a multimedia connection the predetermined field of information.

Further, as stated above, in regard to claim 37, Dahlin et al. fails to teach a multimedia connection. Since Dahlin et al. fails to teach a multimedia connection, Dahlin et al. cannot possibly teach reading, if the connection is identified as a multimedia connection a predetermined field of information which has been received, in combination with the other steps of claim 42. Accordingly, the combination of Dahlin et al. and Dent et al. fails to teach every feature of claim 42.

Claims 43 and 44 depend from claim 42, and are, therefore, respectfully submitted to be patently distinguishable over Dahlin et al. in view of Dent et al. for at least those reasons set forth above with respect to claim 42.

For each of the forgoing reasons, it is respectfully requested that the rejection of claims 37-44 as allegedly being obvious in view of the combination of Dahlin et al. and Dent et al. be reconsidered and withdrawn.

The present application is in condition for allowance. Notice of same is earnestly solicited. If there are any questions regarding this response or the application in general, the Examiner is urged to contact the undersigned attorney at (703) 838-6578.

Respectfully submitted,

BURNS, DOANE, SWECKER & MATHIS, L.L.P.

By: _____
Stephen W. Palan
Registration No. P43,420

P.O. Box 1404
Alexandria, VA 22313-1404
Phone: (703) 836-6620
Date: _____

(1/96)