**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ERICSSON INC., et al., | ) Case No. 6:10-CV-473-LED |
| Plaintiffs, | ) JURY TRIAL DEMANDED |
| v. | ) |
| D-LINK SYSTEMS, INC., et al., | ) |
| Defendants | ) |
| and | ) |
| INTEL CORPORATION, | ) |
| Intervenor | ) |

**INTEL CORPORATION'S COMPLAINT IN INTERVENTION**

On May 4, 2012, the Court partially granted and partially denied Intel Corporation's Partially Unopposed Motion to Intervene. In partially granting and partially denying Intel's motion, the Court stated:

> The Court, having considered Intel Corporation's Partially Opposed Motion to Intervene, which motion is partially opposed by Ericsson, finds the Motion should be GRANTED except as to any products sold to any non-Defendant. IT IS THEREFORE ORDERED that Intel's Motion is hereby granted in part.

In accordance with and subject to that Order, Intel Corporation files its Complaint in Intervention.

## COMPLAINT

1. Intel Corporation ("Intel") for its Complaint in Intervention against Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson"), hereby demands a jury trial and alleges as follows:

## NATURE OF THE ACTION

2. This is an action for declaratory judgment of non-infringement and invalidity of seven (7) United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and for such other relief as the Court deems just and proper.

3. Intel further brings this action for breach of Ericsson's contractual obligations and other commitments to the Institute of Electrical and Electronics Engineers Standards Association ("IEEE") and to Intel and other parties in relation to the 802.11 wireless standards. Ericsson has violated its promises and obligations by, without limitation, failing to negotiate with or license entities under the patents Ericsson claims are "essential" to at least 802.11a, 802.11g, and 802.11n on fair, reasonable, and non-discriminatory terms.

## PARTIES

4. Intel is a Delaware Corporation with its worldwide headquarters in Santa Clara, California.

5. Upon information and belief, Plaintiff and Defendant-in-Intervention Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

6. Upon information and belief, Plaintiff and Defendant-in-Intervention Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of Sweden with its principal place of business at Torshamnsgatan 23, Kista, 164 83 Stockholm, Sweden.

## JURISDICTION AND VENUE

7. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

8. This Court has supplemental jurisdiction over Intel's state-law claims under 28 U.S.C. § 1367.

9. This Court has jurisdiction over Ericsson by virtue of, *inter alia*, its filing of the Complaint in this action.

10. To the extent that venue over Ericsson's complaint is found to be proper, venue in this judicial district over Intel's Complaint in Intervention is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), although venue would be more convenient in another forum.

## BACKGROUND AND INTEL'S INTEREST IN THIS LAWSUIT

11. On September 14, 2010, Ericsson filed a complaint against, *inter alia*, Acer, Inc., Acer America Corporation (collectively, "Acer") and Gateway, Inc. ("Gateway") for infringement of U.S. Patent Nos. 5,790,516 ("the '516 patent"), 5,987,019 ("the '019 patent"),

2

6,466,568 ("the '568 patent"), 6,330,435 ("the '435 patent"), 6,424,625 ("the '625 patent"), 6,772,215 ("the '215 patent"), and 6,519,223 ("the '223 patent") (collectively referred to herein as the "Patents").

12. On June 8, 2011, Ericsson filed an Amended Complaint against, *inter alia*, Acer and Gateway, as well as Dell, Inc. ("Dell") and Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Consumer Products, LLC (collectively, "Toshiba") for infringement of the Patents. Acer, Gateway, Dell, and Toshiba are collectively referred to herein as the Customer Defendants.

13. In this action, Ericsson asserts the Patents against products containing wireless functionality relating to certain standards promulgated by the IEEE referred to as 802.11. Ericsson's infringement contentions and related discovery further identify particular Wi-Fi components that Intel supplies to the Customer Defendants as providing 802.11 functionality in the accused products. On information and belief, Ericsson has thus specifically identified Intel 802.11 components as those relevant to their accusations against the Customer Defendants.

14. Intel has agreed to requests from the Customer Defendants to defend and partially indemnify them in connection with Ericsson's claims directed at Intel's 802.11 products. As a result, Intel has a direct and substantial interest in the outcome of this litigation.

15. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, either directly or indirectly, any valid or enforceable claim of any of the Patents, either literally or under the doctrine of equivalents.

16. A substantial controversy exists between Intel and Ericsson that is of sufficient immediacy and reality to warrant declaratory relief. By intervening in this action, Intel seeks the

Court's assistance and declaration concerning these matters, which are subjects of disagreement among it and Ericsson.

## COUNT 1
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING U.S. PATENT NO. 5,790,516

17. Intel incorporates by reference the allegations of paragraphs 1-16 herein.

18. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '516 patent.

19. Ericsson's claims with regard to the '516 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

20. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

21. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '516 patent.

## COUNT 2
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING U.S. PATENT NO. 5,790,516

22. Intel incorporates by reference the allegations of paragraphs 1-21 herein.

23. The '516 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

24. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

25. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '516 patent.

## COUNT 3
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING U.S. PATENT NO. 5,987,019

26. Intel incorporates by reference the allegations of paragraphs 1-25 herein.

27. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '019 patent.

28. Ericsson's claims with regard to the '019 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

29. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

30. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '019 patent.

## COUNT 4
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING U.S. PATENT NO. 5,987,019

31. Intel incorporates by reference the allegations of paragraphs 1-30 herein.

32. The '019 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

33. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

34. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '019 patent.

## COUNT 5
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING
## U.S. PATENT NO. 6,330,435

35. Intel incorporates by reference the allegations of paragraphs 1-34 herein.

36. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '435 patent.

37. Ericsson's claims with regard to the '435 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

38. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

39. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '435 patent.

## COUNT 6
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING
## U.S. PATENT NO. 6,330,435

40. Intel incorporates by reference the allegations of paragraphs 1-39 herein.

41. The '435 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

42. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

43. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '435 patent.

## COUNT 7
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING U.S. PATENT NO. 6,424,625

44. Intel incorporates by reference the allegations of paragraphs 1-43 herein.

45. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '625 patent.

46. Ericsson's claims with regard to the '625 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

47. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

48. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '625 patent.

## COUNT 8
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING U.S. PATENT NO. 6,424,625

49. Intel incorporates by reference the allegations of paragraphs 1-48 herein.

50. The '625 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

51. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

52. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '625 patent.

## COUNT 9
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING
## U.S. PATENT NO. 6,466,568

53. Intel incorporates by reference the allegations of paragraphs 1-52 herein.

54. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '568 patent.

55. Ericsson's claims with regard to the '568 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

56. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

57. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '568 patent.

## COUNT 10
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING
## U.S. PATENT NO. 6,466,568

58. Intel incorporates by reference the allegations of paragraphs 1-57 herein.

59. The '568 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

60. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

61. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '568 patent.

## COUNT 11
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING
## U.S. PATENT NO. 6,519,223

62. Intel incorporates by reference the allegations of paragraphs 1-61 herein.

63. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '223 patent.

64. Ericsson's claims with regard to the '223 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

65. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

66. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '223 patent.

## COUNT 12
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING
## U.S. PATENT NO. 6,519,223

67. Intel incorporates by reference the allegations of paragraphs 1-66 herein.

68. The '223 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

69. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

70. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '223 patent.

## COUNT 13
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT REGARDING U.S. PATENT NO. 6,772,215

71. Intel incorporates by reference the allegations of paragraphs 1-70 herein.

72. Subject to the Court's May 4, 2012 Order as noted above, Intel has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '215 patent.

73. Ericsson's claims with regard to the '215 patent are barred in whole or in part by the doctrines of waiver, laches, license, and/or estoppel, including prosecution history estoppel.

74. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

75. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '215 patent.

## COUNT 14
## DECLARATORY JUDGMENT OF INVALIDITY REGARDING U.S. PATENT NO. 6,772,215

76. Intel incorporates by reference the allegations of paragraphs 1-75 herein.

77. The '215 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101 *et seq.*, *e.g.*, 102, 103, 112, and 132.

78. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

79. A judicial declaration concerning these matters is necessary and appropriate so that Intel can ascertain its rights regarding the '215 patent.

## COUNT 15
## BREACH OF CONTRACT

10

80. Intel incorporates by reference the allegations of paragraphs 1-79 herein.

81. The IEEE is a professional association and leading developer of technical standards. IEEE members include engineers, scientists, and allied professionals whose technical interests relate to electrical and computer sciences, engineering and related disciplines. Members may participate in the standards-setting process in working groups and/or subgroups called task groups.

82. To protect against unscrupulous conduct by any member who seeks to benefit unfairly from, or to manipulate to its advantage, the IEEE's standard-setting process, and to enable the IEEE and its members to develop standards free from potentially blocking patents, the IEEE instituted policies and rules regarding the disclosure and licensing of patents.

83. The IEEE's rules and policies required fairness and candor with respect to intellectual property. By way of example only, the IEEE requires members to submit letters of assurance including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents incident to practice of the standard or a statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination. The IEEE's Standards Board Bylaws stated at relevant times, for instance, that "IEEE standards may include the known use of patent(s), including patent applications, provided the IEEE receives assurance from the patent holder or applicant with respect to patents essential for compliance with both mandatory and optional portions of the standard. This assurance shall be provided without coercion and prior to approval of the standard (or reaffirmation when a patent becomes known after initial approval of the standard)." The IEEE Bylaws further state

that the assurance "shall be a letter that is in the form of either a) A general disclaimer to the effect that the patentee will not enforce any of its present or future patent(s) whose use would be required to implement the proposed IEEE standard against any person or entity using the patent(s) to comply with the standard or b) A statement that a license will be made available without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

84.     The IEEE formed the 802.11 working group in 1990. The IEEE 802.11 standard is titled "Wireless LAN Media Access Control (MAC) and Physical Layer (PHY) Specifications" and concerns wireless local area networking ("wireless LAN").

85.     In 1997, the IEEE formed a task group related to 802.11a. In subsequent years, the IEEE formed additional task groups for 802.11, including 802.11g, and also for 802.11n.

86.     Intel is a member of the IEEE and its representatives have participated and attended IEEE task group meetings relating to development of the IEEE 802.11 standards.

87.     Intel has sold or sells Wi-Fi components that operate in accordance with various of the 802.11 standards, including aspects of 802.11a, 802.11g, and 802.11n. Intel's customers, such as the Customer Defendants, purchase these Wi-Fi components and incorporate them into other devices such as laptop computers, which Intel's customers sell to end-users. Intel's customers of Wi-Fi components include members and beneficiaries of the IEEE and participants in the development of the 802.11 standards.

88.     Ericsson is an alleged member of the IEEE and claims that it participated in the standards setting process for 802.11. As a result of its alleged membership, Ericsson agreed, both explicitly and implicitly, that it would abide by the rules and policies of the IEEE.

89. On or about January 29, 2003, Ericsson submitted a letter of assurance to the IEEE relating to 802.11. In this document titled "Letter of Assurance for Essential Patents," Ericsson identified the "IEEE Standard or Proposed IEEE Standard" as "802.11a, 802.11b, 802.11e, 802.11f, 802.11g, 802.11h 802.11i." Ericsson further stated that it "was prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE standard." Ericsson also attached a document to its letter of assurance titled "Free form LoA Ericsson IP Statement for IEEE 802.11a, . . .", in which Ericsson committed to licensing any patents it contends are required to operate in accordance with the standards on "fair, reasonable, and non-discriminatory terms."

90. On or about April 18, 2011, Ericsson submitted another letter of assurance to the IEEE for 802.11n. In that letter of assurance, Ericsson stated that it "may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims." The letter further states, "The Submitter [Ericsson] will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination" and that "users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA."

91. For consideration, including IEEE membership and participation, Ericsson entered into an express and/or implied contract with the IEEE's members, or alternatively with the IEEE, to which IEEE members and others are third party beneficiaries, in which Ericsson agreed, among other things, to abide by the IEEE's rules and policies. The IEEE's rules and policies, whether formal or informal, including all stipulations, requirements and representations

in any form, constitute a contract between Ericsson and the IEEE's members, or alternatively between Ericsson and the IEEE, to which the IEEE's members and others are third-party beneficiaries.

92. In accordance with the foregoing, the IEEE's rules and policies require its members to submit letters of assurance including a general disclaimer to the effect that the patent holder will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents to make, use, sell, import, or offer for sale in the U.S. any product that operates in accordance with the standard, or to provide statements that a license will be offered and made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

93. Ericsson's conduct including, without limitation, its letters of assurance offering licenses on fair, reasonable, and non-discriminatory terms, created express and/or implied contracts with the IEEE and its members, or alternatively between Ericsson and the IEEE, to which IEEE members and others are third-party beneficiaries.

94. Ericsson breached its contractual obligations, including by, among other things, failing to offer licenses for the Patents on fair, reasonable and non-discriminatory terms, and by seeking to enjoin Intel's customers from making and selling products that include Intel components that operate in accordance with at least the 802.11a, 802.11g, and 802.11n standards.

95. Intel's customers have sought recovery and indemnification from Intel. Intel has incurred damages, and will be further damaged in the future due to Ericsson's breach of its contractual obligations.

## COUNT 16

## PROMISSORY ESTOPPEL

96. Intel incorporates by reference the allegations of paragraphs 1-95 herein.

97. Ericsson made representations and engaged in other conduct, including Ericsson's submission of letters of assurance to the IEEE that obligated Ericsson to license any patents Ericsson may own that Ericsson alleges are required to operate in accordance with the accused 802.11a, 802.11g, and 802.11n standards on terms that are fair, reasonable, and non-discriminatory.

98. Ericsson's conduct constituted promises to the IEEE, its members, such as Intel, and Intel's customers. By making such promises, Ericsson knew or reasonably should have known they would be relied upon.

99. The IEEE and its members, including Intel, reasonably relied upon Ericsson's promises. In so relying, the IEEE and its members, including Intel invested substantial resources developing and marketing Wi-Fi products that operate in accordance with the accused 802.11 standards.

100. Intel has been damaged as a result of its reasonable reliance as provided herein such that injustice can only be avoided by enforcement of Ericsson's promises.

## COUNT 17

### Unclean Hands

101. Intel incorporates by reference the allegations of paragraphs 1-100 herein.

102. Ericsson's wrongful conduct as alleged herein constitutes unclean hands and renders the Patents unenforceable.

15

## REQUEST FOR RELIEF

Therefore, Intel requests judgment as follows:

1. For a declaration that the claims of the Patents are invalid;

2. For a declaration that neither Intel, nor any of its products infringe (directly, indirectly, literally, and/or under the doctrine of equivalents) any valid or enforceable claim of the Patents, and subject to the Court's May 4, 2012 Order as noted above;

3. For a declaration that no valid or enforceable claim of the Patents is infringed (directly, indirectly, literally, and/or under the doctrine of equivalents) by any of the Customer Defendants in connection with Intel products;

4. For a declaration that Ericsson has no standing for, and is not entitled to, injunctive relief for any alleged infringement of the Patents;

5. For a declaration that the Patents are unenforceable;

6. Award Intel damages in an amount to be proven at trial on account of Ericsson's breach of contract, including without limitation expectancy damages and restitution;

7. A judgment requiring Ericsson's specific performance under its contract with the IEEE and/or IEEE members and third parties to grant licenses to the Patents, to the extent such licenses are required, on fair, reasonable and non-discriminatory terms and conditions;

8. Award and declaration that Ericsson grant Intel and Intel's customers of Wi-Fi components a royalty-free license to make, use, sell, offer for sale, and import within the U.S. any Wi-Fi products that are covered by any claim of the Patents to the extent such a license is required;

9. An order declaring that Intel is a prevailing party and that this is an exceptional case, awarding Intel its costs, expenses, disbursements, and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law;

16

10. Award Intel its costs and expenses of litigation, including attorneys' fees and costs.

11. Such other and further equitable or legal relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Intel hereby demands a jury trial as to all issues triable to a jury.

Dated: June 22, 2012                                Respectfully submitted,

By: *Robert M. Parker*

Robert M. Parker
**Parker Bunt & Ainsworth**
State Bar No. 15498000
100 E Ferguson, Suite 1114
Tyler, TX 75702
Tel:   903/531-3535
Fax:   903/533-9687
Email: rmparker@pbatyler.com

Michael E. Jones
**Potter Minton**
110 N. College
Tyler, Texas 75702
Tel:   903/597-8311
Fax:   903/593-0846
Email: mikejones@potterminton.com

ATTORNEYS FOR INTERVENING
PARTY INTEL CORPORATION

**CERTIFICATE OF SERVICE**

      I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on June 22, 2012 via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                                    /s/ *Robert M. Parker*  
                                                        Robert M. Parker