# ALSTON&BIRD LLP

2828 N. Harwood Street, Suite 1800
Dallas, TX 75201-2139

| Michael J. Newton | Direct Dial: 214-922-3423 | Email: mike.newton@alston.com |
|---|---|---|

June 29, 2012

The Honorable Leonard Davis, Chief Judge
211 West Ferguson, 3rd Floor
Tyler, Texas 75702

   Re: *Ericsson Inc., et al.* v. *D-Link Systems, Inc., et al.*, Case No. 6:10-cv-473

Dear Chief Judge Davis:

   Pursuant to the Court's Standing Order Regarding Letter Briefs, Defendants Acer, Dell, and Toshiba respectfully request leave to file a Motion for Summary Judgment of Invalidity of Claims 1 and 6 of U.S. Patent 6,673,352 ("the '352 patent") based on anticipation and obviousness. Numerous references demonstrate that the concept of a physical "on/off" switch for wireless in a mobile computer was well known in the art at the time of the alleged invention of the '352 patent. These references are understandable without expert testimony explaining how they anticipate the asserted claims. Because the '352 patent is the only patent of the eight patents asserted against the Acer, Dell, and Toshiba defendants that is *not* asserted to cover the IEEE 802.11 standard, this motion will greatly simplify the factual issues and scope of discovery in this case. If granted, Defendants will show that these claims are invalid as a matter of law because all of the claimed elements of the '352 patent are anticipated or rendered obvious by the prior art '197 and/or '540 patents, neither of which were considered by the USPTO.

## A. Asserted Claims of the '352 Patent

   Claims 1 and 6 are the only asserted claims of the '352 patent. Plaintiff claims the following, with similar elements A through G of the two claims illustrated in brackets for ease of reference:

1. **[A]** An apparatus for enabling and disabling a wireless communication device, **[B]** the wireless communication device internally located within a mobile computer comprising:

   **[C]** a switch extending through and mounted directly to an exterior housing of the computer, **[D]** the switch having no affect [sic] on enablement or disablement of the mobile computer, **[E]** the switch having a first position associated with enablement of the wireless communication device and **[F]** being indicative of a wireless communication device enabled status, **[E]** the switch having a second position associated with disablement of the wireless communication device internally located within the mobile computer and **[F]** being indicative of a wireless communication device disabled status; and

   **[G]** circuitry for enabling the wireless communication device when the switch is in the first position and disabling the wireless communication device when the switch is in the second position.

June 25, 2012
Page 2

> 6. **[A, F]** An apparatus for indicating the status of a wireless communication device **[B]** incorporated internally within into [sic] a mobile computer comprising:
>
> **[C]** a switch directly mounted to an external housing of the mobile computer, **[D]** the switch having no affect [sic] on enablement or disablement of the mobile computer, **[E]** the switch having a disabled position wherein the wireless communication device is disabled, the switch further having an enabled position wherein the wireless communication device is enabled; and
>
> **[F]** a visual indicator for identifying whether the wireless communication device is enabled or disabled.

### B.  Claims 1 and 6 Are Anticipated by U.S. Patent No. 4,991,197

Because each and every element of claims 1 and 6 of the '352 patent is disclosed by U.S. Patent No. 4,991,197 ("the '197 patent"), the '352 patent is invalid. *See Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). The '197 patent issued on Feb. 5, 1991, more than six years prior to the filing of the '352 patent, and is therefore prior art under 35 U.S.C. § 102(b). Figures 3 and 4 of the '197 patent are displayed below, along with an enlarged image of switch 78.



**Element A is met.** The '197 patent teaches an externally mounted physical switch (78) for enabling and disabling a wireless communication device (cellular transceiver unit 16). *See* Figs. 4 and 9B; *see also* col. 4:12-14 ("With reference to FIG. 4, the cellular TRU Power-On switch 78 and the computer Power-On switch 80 are disclosed.").

**Element B is met.** The dotted lines in Fig. 3 indicated that the cellular transceiver unit (16) is internally located within the mobile computer (12). A cellular transceiver unit is a wireless communication device. "Data signals may be transmitted or received via the cellular phone system and the landline from the computer." Col. 2:26-28.

**Element C is met.** Examination of the switch (78) illustrated in Figure 4 reveals that the switch extends through and is directly mounted to an exterior or external housing of mobile computer (12), as claimed by the '352 patent. Notably, this switch appears to have the same "sliding switch" design as several of the accused devices.

**Element D is met.** Switch 78 has no effect on the enablement or disablement of mobile computer 12. Switch 78 is only used to enable or disable the cellular transceiver unit 16. *See* 4:12-14 ("With reference to FIG. 4, the cellular TRU Power-ON switch 78 and the computer Power-On switch 80 are disclosed."). If a user wishes to make a call or send data using the cellular transceiver unit, the '197 patent teaches that the user must separately turn on both switch 78 and 80 in order to enable the cellular transceiver unit and to power on the mobile computer, respectively. *See, e.g.*, col. 7:9-11 ("If you wish to send data signals from the computer 12 via the cellular TRU, turn on the cellular TRU 16 (switch 78) and turn on the computer 12 (switch 80).").

**Element E is met.** Cellular TRU Power-on switch 78 has two positions – an "ON" position and an "OFF" position, exactly as a standard power-on switch would. *See* Fig 4; Fig 9B (indicating enablement or disablement of the cellular transceiver unit based on the position of the TRU power switch 78, i.e. "TRU OFF" or "TRU ON"). Each position represents and is associated with the corresponding "ON" or "OFF" status of the internally located cellular transceiver unit 16. *See* Fig. 9B. Switching the cellular TRU Power-on switch 78 to the "ON" position sends "the proper sense signals to the CPU" to enable the wireless communication device. *See* col. 8:34-40.

**Element F is met.** The positions of switch 78, themselves, serve as visual indicators of whether the cellular transceiver unit is enabled or disabled. *Cf.* Fig. 4, Switch 78, and Fig. 4, Switch 80. Claim 1 of the '352 patent requires that the "first **position**" and "second **position**" of the switch be "**indicative** of a wireless communication device enabled status" and "**indicative** of a wireless communication device disabled status," respectively. (Emphasis added.) Claim 6 of the '352 patent similarly requires that there be some visual indicator, possibly including the position of the switch as demonstrated in claim 1, of the wireless communication device's status. By observing the position of cellular transceiver unit power-on switch 78 with their eyes, a user would be able to ascertain the status of the cellular transceiver unit, i.e. whether it was "ON" or "OFF".

**Element G is met.** The '197 patent also expressly and inherently teaches circuitry for enabling the cellular transceiver unit when switch 78 is in the "ON" position, and disabling the cellular transceiver unit when switch 78 is in the "OFF" position. *See, e.g.*, Fig. 9B; *see also* 6:49-58 ("If you wish to make a call over the cellular phone system using the speaker phone 28, turn on the cellular TRU (switch 78) and the computer (switch 80). A control signal is sent from CPU 32 to the speaker phone select lead 102 of analog switching 54 which connects the speaker phone microphone lead 88 to the TRU transmit lead. A control signal is also sent from CPU 32 to the speaker phone select lead 103 of analog switching 54 which connects the speaker phone speaker lead 89 to the TRU receive lead 91."); 8:34-40 ("If the operator desires to send a voice call . . . the operator would . . . also place the TRU power on switch 78 to the ON position. These switches would send the proper sense signals to the CPU.").

**C. Claims 1 and 6 Are Anticipated by U.S. Patent No. 5,226,540**

Claims 1 and 6 of the '352 patent are also anticipated by U.S. Patent No. 5,226,540 ("the '540 patent"). The '540 patent issued on July 13, 1993, more than four years prior to the filing

June 25, 2012
Page 4

of the '352 patent, and is therefore prior art under 35 U.S.C. § 102(b). Transceiver power switch 23 and LED lamp 23A are visible in Figure 2 of the '540 patent, below.



FIG. 2

**Element A is met.** The portable workstation carrying case contains a switch (23) for selectively enabling and disabling a cellular transceiver. "In order to have the ability to selectively energize a transceiver (i.e. the cellular phone) with carrying case 1 in the closed position, an external transceiver power switch 23 is provided at bulkhead 14. . . . By manually operating switch 23, the transceiver can be powered on and off without having to open the lid 2 of case 1." Col. 4:44-52.

**Element B is met.** The transceiver, "i.e. the cellular phone," of the '540 patent is located within the portable workstation. "The phone connector 15 is interconnected with the cellular telephone (best shown in FIG. 6) inside the case." 3:38-40. The external power switch is specifically provided so as to be able to energize the transmitter when the case is in a closed position. *See* col. 4:44-52.

**Element C is met.** The transceiver power switch extends through and is directly mounted to the external case of the portable workstation. "External power switches are also provided and connected between the internal power source and each of the computer and cellular phone to control the powering on and off of said computer and phone." Col. 2:5-8; *see also* col. 4:44-54; 7:56-64.

**Element D is met.** Switch 23 has no effect on the enablement or disablement of the mobile computer. An adjacent power switch, switch 22, is used to provide power to the mobile computer. *See also* Fig. 6 (indicating that the circuit in which switch 23 controls enablement of the RF transmitter is entirely separate from the circuit for enabling the mobile computer).

**Element E is met.** Transceiver power switch 23, illustrated in Fig. 2, is a switch with two positions for selectively enabling and disabling the cellular transceiver. *See* Figs. 2 and 6. "By manually operating switch 23, the transceiver can be powered on and off without having to open the lid 2 of case 1." Col. 4:50-52. "[T]he external transceiver power switch 23 (at bulkhead 14) may be **closed** when the carrying case 1 is closed so as to power the RF transmitter from the same DC power source." Col. 6:62-66 (emphasis added).

**Element F is met.** The "open" and "closed" positions of mechanical power switch 23 indicate the status of the transceiver for the reasons cited in connection with the '197 patent. *See*

'540 patent at Fig. 2, 6:52-66. Furthermore, the '540 patent includes an adjacent LED lamp for indicating the status of the transceiver. "The transceiver has an adjacent indicator (e.g. LED) lamp 23A associated therewith to provide a **visual indication** when power is being supplied thereto." Col. 4:52-54 (emphasis added).

**Element G is met.** Fig. 6 details the circuitry used to selectively enable and disable the RF transmitter based on the position of switch 23. *See also* col. 4:44-54. This circuitry is also inherent to the design of the '540 patent.

### D. Claims 1 and 6 Are Obvious in View of These References and Others

Both the '197 patent and the '540 patent anticipate all elements of the asserted claims of the '352 patent. To the extent that either prior art reference does not include an element of the asserted claims that is present in the other reference, it would have been obvious to a person having ordinary skill in the art to combine the teachings of these references because they both pertain to devices for activating internal cellular transceivers in portable computers.

To the extent that an indication of the status of the cellular transceiver is not satisfied by the position of the switch disclosed in the '197 patent, it would have been obvious to a person of ordinary skill in the art to include text (for example, "ON" and "OFF") or a universally recognized symbol (for example, "O" and "|") on or adjacent to the physical switch for indicating the status of the internal wireless device. *See, e.g.*, U.S. Patent Nos. 4,665,519 (Fig. 1), D373,114. Furthermore, it would also have been obvious to a person having ordinary skill in the art to include an LED lamp either on or adjacent to the physical switch to indicate the status of the wireless communication device, as in the '540 patent. *See, e.g.*, U.S. Patent Nos. 3,614,362; 3,711,669 (toggle switches with built-in lights); 4,169,972; 5,107,082 (rocker switch with built-in light); and/or 4,056,701 (push-button switch with built-in light). The selection of the actual type of switch to use is a mere design choice, and lighted switches were well-known in the art at the time of the alleged invention of the '352 patent.

### E. Conclusion

Defendants will demonstrate that the purported invention of the '352 patent was anticipated and obvious at the time of its alleged invention and will simplify the issues in this case by doing so. For the above reasons, Defendants respectfully request leave to file a Motion for Summary Judgment of Invalidity of Claims 1 and 6 of U.S. Patent 6,673,352 ("the '352 patent") based on anticipation and obviousness.

                                                        Respectfully submitted,
                                                        */s/ Michael J. Newton*
                                                        Michael J. Newton
                                                        Alston + Bird LLP

cc: All counsel of record (by ECF)