## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| ERICSSON INC., et al. | |
| Plaintiffs | |
| v. | Civil Action No. 6:10-cv-473 |
| D-LINK CORPORATION, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

## MOTION TO STRIKE PLAINTIFFS' INFRINGEMENT CONTENTIONS, OR IN THE ALTERNATIVE, TO COMPEL AMENDED CONTENTIONS COMPLIANT WITH PATENT LOCAL RULE 3-1

4853-1063-9119.3

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................3

    A.    Ericsson Files Suit Against OEM Defendants ......................................... 3

    B.    Ericsson Served Substantively Identical Infringement Charts On Every OEM Defendant Based Exclusively On Technical Standards Documents ................................................................................................ 4

    C.    Ericsson Has Had Ample Opportunity to Discover Technical Documents ................................................................................................ 5

III.  ARGUMENT.........................................................................................................5

    A.    Ericsson's Infringement Contentions Do Not Comply With P.R. 3-1 ......................................................................................................... 5

    B.    Exemplary Deficiencies Highlight Non-compliance with P.R. 3-1........................ 9

    C.    The Court Should Strike Ericsson's Infringement Contentions. .......................... 14

IV.   CONCLUSION ...................................................................................................15

4853-1063-9119.3

# CASES

*ConnecTel, LLC v. Cisco Sys., Inc.*,
  391 F. Supp. 2d 526 (E.D. Tex. 2005).............................................................................. 6, 9

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
  No. 6:09-CV-116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ................................... 6, 9

*Flaska v. Little River Marine Const. Co.*,
  389 F.2d 885 (5th Cir. 1968)……………………………………………………………..14

*Fujitsu, Ltd. v. NETGEAR Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)............................................................................. 6, 7, 11

*Linex Tech., Inc. v. Belkin Int'l, Inc.*,
  628 F. Supp. 2d 703 (E.D. Tex. 2008)................................................................ 2, 6, 7, 8, 9

*Nike Inc., v. Adidas Am. Inc.*,
  479 F. Supp. 2d 664 (E.D. Tex. 2007)........................................................................ 14

*Realtime Data, LLC v. Packeteer, Inc.*,
  No. 6:08-CV-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009).......................... 5, 6, 10

*SmartPhone Techs. LLC v. HTC Corp.*
  No. 6:10-cv-580, 2012 U.S. Dist. LEXIS 68049 (E.D. Tex. March
  16, 2012) ...................................................................................................................... 6

*Tantivy Comms., Inc. v. Lucent Techs. Inc.*,
  No. 2:04-CV-79 (TJW), 2005 WL 2860976 (E.D. Tex. Nov. 1,
  2005) ........................................................................................................................... 6

*WIAV Networks, LLC v. 3COM Corp.*,
  2010 WL 3895047 (N.D. Cal. 2010)……………………………………………………...6

## I.   INTRODUCTION

Original Equipment Manufacturer (OEM) Defendants D-Link Systems, Inc., NETGEAR, Inc., Acer, Inc., Acer America Corporation, Gateway, Inc., Dell Inc., Toshiba America Information Systems, Inc., Toshiba Corporation, and Belkin International, Inc. (collectively "OEM Defendants[1]") respectfully request that the Court strike Ericsson Inc.'s and Telefonaktiebolaget LM Ericsson's (collectively "Ericsson") Patent Rule 3-1 Infringement Contentions directed to products containing WiFi chipsets from third party suppliers for U.S. Patent nos. 5,790,516; 5,987,019; 6,330,435; 6,424,625; 6,466,568; 6,519,223; and 6,772,215 ("Asserted Patents") based on Ericsson's failure to comply with the requirements of the Local Patent Rules.  In the alternative, the OEM Defendants request an Order compelling Ericsson to serve amended contentions compliant with P.L. Rule 3-1.

Ericsson accuses the OEM Defendants of infringement based on products having Wi-Fi functionality provided by Wi-Fi chipsets that are designed, developed and manufactured by numerous third party suppliers, including Qualcomm Atheros, Broadcom, Ralink, Realtek, Marvell and others.  The OEM Defendants incorporate such chipsets into their end-user products or purchase end-user products, with the chipsets already incorporated, for resale.  The OEM Defendants have no special knowledge of the inner workings of the Wi-Fi chipsets, and thus require clear, concise contentions to permit them to develop appropriate defenses in this case.

---

[1] Intel Corporation is an intervener/defendant in the present case, but has not joined in this motion.  Intel, the only chipset supplier that is a party to this case, will be filing a separate motion with respect to Ericsson's deficient contentions as to Intel.  This Motion thus relates only to Ericsson's contentions against the OEM Defendants, and seeks an Order striking those contentions and/or an Order compelling amended contentions with specifics as to the accused products that obtain functionality through chipsets supplied not only from Intel, but also from third party chipset suppliers, such as Qualcomm Atheros, Broadcom, Ralink, Realtek, Marvell.

4853-1063-9119.3                                        1

Ericsson contends that hundreds of products from each defendant infringe the Asserted Patents. To date, after more than 18 months of litigation, the only information Ericsson has provided concerning its infringement theories consist, for each OEM Defendant, of a single set of generic claim charts intended to cover every single accused product. What's more, Ericsson provided essentially identical generic claim charts to each OEM Defendant, in essence relying on one set of charts to cover a very wide variety of OEM Defendants' Accused Products. Ericsson's charts rely almost exclusively on lengthy excerpts from a Wi-Fi technology standard called "IEEE 802.11" without indicating (e.g., by circling or highlighting) which specific portion of the standard allegedly correlates to the various specific asserted claim elements. And for each Defendant, Ericsson's charts contain only a nominal citation to a product webpage—the same webpage a consumer would see when purchasing the product—of a single accused product. As such, Ericsson has failed to identify where the accused functionality in each product is allegedly found as required by P.R. 3-1, which directs that any party claiming patent infringement must serve infringement contentions that contain a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality.'' P.R. 3-1(b); *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 714 (E.D. Tex. 2008) (rejecting standards-based contentions, and compelling product specific contentions in case involving 802.11 standard).

Here, standards-based infringement contentions are not enough. Ericsson has had a duty to obtain and disclose to Defendants early in this case information concerning specifically where in the accused products, i.e., where in the technical documentation and third party chipset codes, each element of the asserted claim is found. The OEM defendants have no special access to such chip-level code information. Without proper infringement contentions from Ericsson, they are deprived of Ericsson's basic case theories and substantially hampered in preparing for trial. As such, OEM Defendants' motion should be granted.

## II.    FACTUAL BACKGROUND

### A.    Ericsson Files Suit Against OEM Defendants

Ericsson initiated this action on September 14, 2010, and filed its First Amended Complaint on June 8, 2011, naming as defendants seven companies involved in supplying end-user products with certain wireless functionality.  These companies do not manufacture or design the wireless chipsets, and instead, for example, purchase end-user products, with the Wi-Fi chipsets already incorporated, for resale.  Ericsson accuses all seven[2] OEM Defendants of infringing the Asserted Patents, asserting that 42 claims of these patents are infringed by all 802.11(a), (g), and (n) products, including many different types of consumer electronics products from each Defendant, such as routers, laptop computers, printers, TVs, and Blu Ray disc players. *See* Dkt. No. 77; Ex. 1, Ericsson's 3-1 Disclosures to Toshiba.

In its original complaint, Ericsson specifically attributed the accused functionality to WiFi chipsets used by the defendants and identified by name several of the suppliers of those chipsets.  Although for years Ericsson has plainly known which third parties have supplied the accused chipsets, Ericsson chose to not name any such suppliers in its lawsuit and, in fact, Ericsson apparently has only recently attempted to seek any discovery from them concerning their purported 802.11 chipsets that provide the accused functionality in the OEM Defendants' accused products.  Despite knowing the identity of relevant third party chipset suppliers, Ericsson has made no effort to disclose to Defendants any information about where in the accused products – i.e., by pointing to where in third party (or Intel) chip code or other technical documentation – each element resides in the accused products.

---

[2]   Intel, which designs, develops and supplies certain wireless products to four of the named defendants, moved to intervene in this action in November 2011.  That motion was granted in part in May 2012, and Intel has since filed a Complaint in Intervention.

**B.    Ericsson Served Substantively Identical Infringement Charts On Every OEM Defendant Based Exclusively On Technical Standards Documents**

Ericsson's infringement contentions for seven of the asserted patents are based almost entirely on the 802.11 wireless standard.  In the infringement contentions for each and every Defendant, Ericsson alleges that the Asserted Patents are "infringed by all [Defendant] 802.11(n)-compliant products" except that the '516 patent is infringed by "all [Defendant] 802.11(a), (g), and (n)-compliant products." *See, e.g.*, Exs. 2-8 (Infringement Contentions Served on Toshiba).  Ericsson's P.R. 3-1 claim charts rely exclusively on certain IEEE standards, a book, and a citation to the main product webpage for an allegedly exemplar product that reveals only nominal product features and not operational or structural details.  To be clear, other than these token citations to product documentation, Ericsson's infringement charts do not refer to any product documentation or otherwise address any operational details of OEM Defendants' products.  Rather, Ericsson's charts cite exclusively to functional guidelines in public standards documents.  *See id.*  And in many instances, Ericsson's citations to, and excerpts from, the standards documents fail to identify which specific elements of the standards allegedly correlate to the specific asserted claim limitations.  *Id*.

After Defendants raised the issue of Ericsson's contentions' deficiencies during the meet and confer process, Ericsson did not dispute that the OEM Defendants have no special knowledge of, or access to, the third party code providing accused functionality in the accused products.  Nor did Ericsson dispute that its contentions were almost exclusively based on the standards – not on any product-level analysis.  Yet without any explanation, Ericsson repeatedly denied that its contentions were deficient in any way.  Ericsson subsequently informed Defendants that it intends to seek leave to serve amended contentions – not in response to the deficiencies noted by Defendants but purportedly in response to arguments made during claim construction.  The amendments that Ericsson proposes to its contentions continue to fail to

provide any product-by-product disclosure that identifies, through citations to technical documentation or code, where each claim limitation resides in the accused products.  Ericsson has merely added various theories relating to the doctrine of equivalents, and, for some charts, additional citations to more standards excerpts.  Accordingly, the proposed amendments do nothing to rectify the fatal defects present in Ericsson's current contentions.  *See* Exs. 9-13 (Proposed Amended Contentions for Toshiba).

### C.    Ericsson Has Had Ample Opportunity to Discover Technical Documents

In their P.R. 3-4 disclosures (and elsewhere), the OEM Defendants have confirmed what Ericsson already knew – that their chipsets were supplied by various chipset suppliers, including for example, Qualcomm Atheros, Broadcom, Ralink, Realtek, and Marvell.  It is these suppliers that have the code and/or other technical documentation concerning the chipsets used in the OEM Defendants' accused products. In accordance with the Court's Discovery Order and in response to Ericsson's requests, the OEM Defendants have produced substantial documentation regarding their products related to the alleged standards at issue.  And although Ericsson has had ample time to take (and apparently has taken some) discovery of the chipset suppliers, Ericsson has included no chip-level – indeed, no product-level – contentions in any of its contentions.

### III.    ARGUMENT

### A.    Ericsson's Infringement Contentions Do Not Comply With P.R. 3-1

The Patent Rules were established to prevent precisely the situation presented here—a "hide the ball" approach where a patent holder avoids providing a full disclosure of its infringement theories until the end of the case.  *See Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) ("[T]he Patent Rules require early disclosure of infringement contentions in order to allow OEM Defendants to discover the plaintiff's theories of infringement early in the case because, in practice, it has been difficult to attain such information through traditional discovery."); *Tantivy Comms., Inc. v. Lucent Techs.*

*Inc.*, No. 2:04-CV-79 (TJW), 2005 WL 2860976, at *4 (E.D. Tex. Nov. 1, 2005) ("This Court will simply not allow lawyers or their clients to lay behind the log and disregard their discovery obligations."). Infringement contentions are intended to place defendants on notice of a patentee's theories early in litigation, thereby focusing the issues in dispute and streamlining discovery. *See EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-CV-116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010); *Realtime Data,* 2009 WL 2590101, at *2 (P.R. 3-1 requires a patentee to "formulate, test, and crystallize" its infringement theories early in litigation); *ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) ("When parties accuse hundreds of products of infringing hundreds of claims, and only narrow those accusations after discovery, the case staggers for months without clear direction.").

Where a plaintiff alleges infringement based on a product's asserted compliance with a standard, such as IEEE 802.11, the plaintiff "cannot rest its Infringement Contentions on this standard alone without specifically linking the 802.11n-standard configuration to the Accused Products." *See Linex Tech., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 708 (E.D. Tex. 2008); *SmartPhone Techs. LLC v. HTC Corp.*, No. 6:10cv580, 2012 U.S. Dist. LEXIS 68049, *12 (E.D. Tex. March 16, 2012) ("it is improper to simply chart to standards"). Indeed, where, as here, portions of the standard on which the patentee relies are optional and/or implementation specific, a patentee must base its infringement theories on a comparison of the actual accused products and the patent claims – not on a comparison of the standard and the patent claims. *Linex*, 628 F.Supp.2d at 708; *see also Fujitsu, Ltd. v. NETGEAR Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010); *WIAV Networks, LLC v. 3COM Corp.*, 2010 WL 3895047 at *2 (N.D. Cal. 2010) ("Different accused devices may achieve compliance with an industry standard or protocol through varying designs, with different tolerances, and with competing features" and thus infringement must be proven "on a product-by-product basis" where an asserted claim "might

not cover all implementations of an industry standard"). As the Federal Circuit explained in a case involving some of the same portions of the standard at issue here:

> in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement. Or, as with the '952 patent, the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section. In these instances, *it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes. In these cases, the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard.*

*Fujitsu,* 620 F.3d at 1327-28 (emphasis added).

For example, in a case strikingly similar to this one, the patentee provided standards-based infringement contentions comprising a single claim chart for all defendants that mapped each element of the asserted claims to the IEEE 802.11n draft standard, and not to any of the ten defendants' approximately 70 products. *See Linex Tech,* 628 F.Supp.2d. at 708. Judge Love ordered plaintiff to provide specific contentions, holding that standards-based infringement contentions are an inappropriate substitute for the product-level infringement contentions required by P.R. 3-1, especially where, as here, numerous types of products are accused and the standard does not mandate any specific implementations:

> Plaintiff fails to take into account that the way in which each Accused Product is alleged to infringe the [asserted patent] will not necessarily be the same, even though all Accused Products are compliant with the 802.11n standard. *Not only are there numerous different kinds of Accused Products – including wireless routers, wireless networking cards, and laptops – but the 802.11n standard does not outline specific implementation details for compliant devices*.

*Id.* (emphasis added). The *Linex* court further explained that technical standards—such as the 802.11 standards at issue here—merely provide functional guidelines for standardized products and do not delineate the operational details of the accused products themselves:

> The 802.11n standard is not an exemplary product for the purposes of Infringement Contentions, as Plaintiff implies. The 802.11n standard is merely a functional guideline for compliant products, and as discussed above, the 802.11n

> standard does not delineate the hardware, firmware, or operational details of compliant devices.

*Id*. at 711.  Ericsson's infringement contentions fall far short of the bar set by P.R. 3-1 and the court in *Linex* for at least two reasons.

First, the contentions are based almost exclusively on standards documents and make no reference to actual product structure.  Ericsson does not reference any pre-suit reverse engineering or other analysis, publicly-available drivers, or software code, or even a single page of the documentation provided by OEM Defendants or third parties.  Indeed, because some optional portions of the standard on which Ericsson relies may not be practiced and/or some portions may be implemented in a variety of different ways, mere reference to technical standards is simply not enough.  In short, just like the contentions in *Linex Tech.*, Ericsson's contentions here also fail under P.R. 3-1 because Ericsson accuses, but fails to any provide specific contentions for, all "products that are compliant with one or more of 802.11(a), 802.11(e), 802.11(g), and 802.11(n) wireless LAN standards."  *See* Dkt. No. 77 (Amended Complaint) at ¶¶ 10, 13, 16, 19, 22, 25, 28, 31, 34; Exs. 2-7;  *Linex Tech.,* 628 F. Supp. 2d at 709 ("In sum, Plaintiff must explain how each Accused Product is asserted to infringe each claim limitation.  By relying on the 802.11n standard as the basis for its Infringement Contentions, Plaintiff has not complied with the requirements of Patent Rule 3–1.").

Second, Ericsson's failure to include product-specific information is further compounded by the fact that Ericsson's contentions contain large excerpts from the standards that are neither highlighted nor otherwise marked to show specifically what *portions* or *features* of the standards Ericsson contends actually *correlate* to the specific patent claim limitations at issue.  Without more, the OEM Defendants are at a loss as to what standards-based functionality Ericsson is accusing – let alone where such functionality resides in the accused products.  Thus, Ericsson's contentions should be stricken and/or Ericsson should be ordered to amend its contentions to

provide product-specific, chip-level contentions that cite with particularity, for each element of each claim, to the technical documents and/or lines of code, such as RTL and/or microcode, that Ericsson contends corresponds to each claim limitation asserted.

### B.     Exemplary Deficiencies Highlight Non-compliance with P.R. 3-1

The contentions against Toshiba are helpful to demonstrate five specific deficiencies that exemplify the insufficiency of all of the standards-based infringement contentions against the OEM Defendants.  First, Ericsson attached to Toshiba's infringement contentions a list of hundreds of different products.  *See* Ex. 1 (Exhibit A to Infringement Contentions for Toshiba). This list represents numerous laptop computers, tablets, televisions, Blu Ray disc players and other consumer products produced over a period of many years.  *See id.*  Nonetheless, Ericsson's allegations rely solely on the products' alleged compliance with various versions of the 802.11 standard, tacitly (and erroneously) assuming that all the products implement every portion of the standard and operate in an identical fashion.  Merely alleging that each accused instrumentality "complies" with the standards, however, fails to account for whether each standard section is actually practiced by the products, and for the specific (and different) ways in which each device may operate and is alleged to infringe.[3]   That is why this same allegation was specifically rejected by Judge Love.  *Linex Tech.*, 628 F. Supp. 2d at 708 (the 802.11n standard "is insufficient to put Defendants on notice of how each particular Accused Device is alleged to infringe the asserted claims."); *see also ConnecTel*, 391 F. Supp. 2d at 527-28; *EON Corp.*, 2010 WL 346218, at *3 (finding contentions deficient because they "include one claim chart for each asserted claim….P.R. 3-1 requires [the patentee] to specifically explain how each accused instrumentality meets the asserted claim elements."); *Realtime Data*, 2009 WL 2590101, at *9 (in case involving 9 patents and more than 100 claims against 12 defendants, requiring patentee

---

[3] Ericsson's proposed supplemental contentions suffer from the same defect. Exs. 9-13.

to provide "separate infringement contentions for each Defendant that spell out every patent and every claim that Plaintiff intends to assert against that particular Defendant" including a "chart identifying where each element of each asserted claim is found in each accused product").

Second, Ericsson's 3-1 disclosure includes a chart for Claim 1 of the '516 patent. Ex. 2. For the critical element, "multiplying said first data signal by a pulseshaping waveform . . . ," the chart first repeats the claim language itself. Then, instead of citing to specific product, code or other technical documentation, the chart cites to an exemplary function present in the standard – $w_T(t)$ – that allegedly corresponds to the claimed pulseshaping waveform:

| multiplying said first data signal by a pulseshaping waveform to generate a second data signal, said pulseshaping waveform comprising a function having at least one first and second amplitude wherein said first amplitude is greater than said second amplitude; and | Toshiba's 802.11(a), (g), and/or (n)-compliant products multiply the first data signal by a pulseshaping waveform to generate a second data signal. The pulseshaping waveform comprises a function having at least one first and second amplitude wherein the first amplitude is greater than the second amplitude. For example, Toshiba's Satellite A665 Series products multiply the first data signal by $w_T(t)$ to generate a second data signal. $w_T(t)$ comprises a function having at least one first and second amplitude wherein the first amplitude is greater than the second amplitude. |
|---|---|
| | $$w_T(t) = \begin{cases} \sin^2\left(\frac{\pi}{2}(0.5 + t/T_{TR})\right) & (-T_{TR}/2 < t < T_{TR}/2) \\ 1 & (T_{TR}/2 \le t < T - T_{TR}/2) \\ \sin^2\left(\frac{\pi}{2}(0.5 - (t-T)/T_{TR})\right) & (T - T_{TR}/2 \le t < T + T_{TR}/2) \end{cases} \qquad (17\text{-}4)$$ In the case of vanishing $T_{TR}$, the windowing function degenerates into a rectangular pulse of duration $T$. The normative specifications of generating the transmitted waveforms shall utilize the rectangular pulse shape. In implementation, higher $T_{TR}$ is typically implemented in order to smooth the transitions between the consecutive subsections. This creates a small overlap between them, of duration $T_{TR}$, as shown in Figure 17-2. The transition time, $T_{TR}$, is about 100 ns. Smoothing the transition is required in order to reduce the spectral sidelobes of the transmitted waveform. However, the binding requirements are the spectral mask and modulation accuracy requirements, as detailed in 17.3.9.2 and 17.3.9.6. Time domain windowing, as described here, is just one way to achieve those objectives. The implementer may use other methods to achieve the same goal, such as frequency domain filtering. Therefore, the transition shape and duration of the transition are informative parameters. |

Ex. 2 at 4-5. What Ericsson fails to note, however, is that the very portion of the standard on which Ericsson relies states that *any of various implementations* may be used:

> Time domain windowing, as described here, ***is just one way to achieve those objectives. The implementer may use other methods to achieve the same goal, such as frequency domain filtering.*** Therefore, the transition shape and duration of the transition are informative parameters. Ex. 2 at 5 (emphasis added)

Merely pointing to the standard section relating to one optional function ($w_T(t)$), which could be used in one possible implementation of one optional technique (time domain windowing) for

achieving the goals of the standard is wholly insufficient to place Defendants on notice under

P.R. 3-1 of where in the accused products the claimed element exists.

Third, the '223 patent claim chart presents similar problems, as shown in the following

section relating to the claim 1 element requiring a transmitter having a data link layer that

receives a service data unit and segments the service data unit into at least one protocol data unit:

| a transmitter having a data link layer therein for receiving a service data unit containing a plurality of said data packets, said data link layer segmenting said service data unit into at least one protocol data unit; | Toshiba's 802.11(n)-compliant products include a transmitter having a data link layer for receiving a service data unit containing a plurality of data packets, the data link layer segmenting the service data unit into at least one protocol data unit.

For example, another device (such as a router) includes a data link layer for receiving a service data unit containing a plurality of data packets.  The data link layer segments the service data unit into at least one protocol data unit.  Alternatively, Toshiba's Satellite A665 Series products include a data link layer for receiving a service data unit containing a plurality of data packets.  The data link layer segments the service data unit into at least one protocol data unit.

**5.7 Reference model**

This standard presents the architectural view, emphasizing the separation of the system into two major parts: the MAC of the data link layer (DLL) and the PHY. These layers are intended to correspond closely to the lowest layers of the ISO/IEC basic reference model of Open Systems Interconnection (OSI) (ISO/IEC 7498-1: 1994). The layers and sublayers described in this standard are shown in Figure 5-10.

IEEE Std 802.11-2007 at 42. |

Ex. 6 at 3.  Ericsson's chart then reproduces various sections of the 802.11 standard, including

Section 9.4 that relates to fragmenting:

| | **9.4 Fragmentation**

The MAC may fragment and reassemble individually addressed MSDUs or MMPDUs. The fragmentation and defragmentation mechanisms allow for fragment retransmission.

The length of each fragment shall be an equal number of octets for all fragments except the last, which may be smaller. The length of each fragment shall always be an even number of octets, except for the last fragment of an MSDU or MMPDU, which may be either an even or an odd number of octets. The length of a fragment shall never be larger than dot11FragmentationThreshold unless WEP is invoked for the MPDU. If WEP is active for the MPDU, then the MPDU shall be expanded by IV and ICV (see 8.2.1); this may result in a fragment larger than dot11FragmentationThreshold.

A fragment is an MPDU, the payload of which carries all or a portion of an MSDU or MMPDU. When data are to be transmitted, the number of octets in the fragment (before processing by the security mechanism) shall be determined by dot11FragmentationThreshold and the number of octets in the MPDU that have yet to be assigned to a fragment at the instant the fragment is constructed for the first time. Once a fragment is transmitted for the first time, its frame body content and length shall be fixed until it is successfully delivered to the immediate receiving STA. A STA shall be capable of receiving fragments of arbitrary length.

If a fragment requires retransmission, its frame body content and length shall remain fixed for the lifetime of the MSDU or MMPDU at that STA. After a fragment is transmitted once, contents and length of that fragment are not allowed to fluctuate to accommodate the dwell time boundaries. Each fragment shall contain a Sequence Control field, which is comprised of a sequence number and fragment number. When a STA is transmitting an MSDU or MMPDU, the sequence number shall remain the same for all fragments of that MSDU or MMPDU. The fragments shall be sent in order of lowest fragment number to highest fragment number, where the fragment number value starts at zero, and increases by one for each successive fragment. The Frame Control field also contains a bit, the More Fragments bit, that is equal to zero to indicate the last (or only) fragment of the MSDU or MMPDU.

The source STA shall maintain a transmit MSDU timer for each MSDU being transmitted. The attribute dot11MaxTransmitMSDULifetime specifies the maximum amount of time allowed to transmit an MSDU. The timer starts on the initial attempt to transmit the first fragment of the MSDU. If the timer exceeds dot11MaxTransmitMSDULifetime, then all remaining fragments are discarded by the source STA and no attempt is made to complete transmission of the MSDU.

IEEE Std 802.11-2007 at 279. |

Ex. 6 at 5.  Section 9.4 on fragmenting, however, is optional and/or implementation specific:

"The MAC *may* fragment and reassemble individually addressed MSDUs or MMPDUs."  *Id.*

(emphasis added).  Accordingly, Ericsson must provide detailed, product level contentions to

meet the notice requirement of P.R. 3-1.  *Fujitsu*, 620 F.3d at 1327-28; P.R. 3-1.  Several of

4853-1063-9119.3                                                11

Ericsson's other claim charts also cite to, and rely upon, optional and/or implementation specific portions of the standards, rendering them inadequate to meet the requirements of P.R. 3-1.[4]

Fourth, with respect to the '223 patent, the portions of the standard cited by Ericsson refer to two different timers for the same claimed function, discarding fragments that were not transmitted. The last paragraph of section 9.4, quoted above, identifies a specific transmit MSDU timer that has a specific starting point and is compared against a specific threshold in order to decide to discard untransmitted fragments. Yet, Ericsson points to a different timer found in a different section of the standard as the discard timer of the claims:

| a discard timer within said transmitter for monitoring a retransmission time of said at least one protocol data unit, | Toshiba's 802-11(n)-compliant products include a discard timer within the transmitter for monitoring the retransmission time of the at least one protocol data unit. |
|---|---|
| | For example, another device (such as a router) includes a discard timer for monitoring the retransmission time of the at least one protocol data unit. Alternatively, Toshiba's Satellite A665 Series products include a discard timer for monitoring the retransmission time of the at least one protocol data unit. |
| | QoS STAs shall maintain a transmit MSDU timer for each MSDU passed to the MAC. The MIB attribute dot11EDCATableMSDULifetime specifies the maximum amount of time allowed to transmit an MSDU for a given AC. The transmit MSDU timer shall be started when the MSDU is passed to the MAC. If the value of this timer exceeds the appropriate entry in dot11EDCATableMSDULifetime, then the MSDU, or any remaining, undelivered fragments of that MSDU, shall be discarded by the source STA without any further attempt to complete delivery of that MSDU. *IEEE Std 802.11-2007 at 291-92.* |
| | *Insert the following paragraph at the end of 9.9.1.6:* When A-MSDU aggregation is used, the HT STA maintains a single timer for the whole A-MSDU. The timer is restarted each time an MSDU is added to the A-MSDU. This procedure ensures that no MSDU in the A-MSDU is discarded before a period of dot11EDCATableMSDULifetime has elapsed. *IEEE Std 802.11n-2009 at 126.* |

---

[4] This same type of deficiency applies to all of the contentions. For the '019 and '568 patents, Ericsson's citations state that the identified QoS fields are implementation specific. Ex. 3 at 4; Ex. 4 at 2 (Section 7.1 of the 802.11n-2009 standard states "A MAC header, which comprises frame control, duration, address, *optional* sequence control information, *optional* QoS Control (QoS data frames only) and *optional* HT Control fields (+HTC frames only).").

Similarly, for the '625 patent, Ericsson's citations reveal that the standard requires no particular implementation. Ex. 5 at 1 ("The originator *may* transmit QoS data MPDUs with a TID matching an established Block Ack agreement in any order provided that their sequence numbers lie within the current transmission window. The originator *may* transmit an MPDU with a sequence number that is beyond the current transmission window.")

For the '435 patent, Ericsson's citations establish that implementation-level specifics are left up to the manufacturer. For example, claim 1 of the '435 patent requires "transmitting a data packet discard notification message." Ericsson apparently asserts that this message is the BlockAckReq identified in the 802.11n standard, which states "The originator *may* send a BlockAckReq for non-Protected Block Ack agreement…". Ex. 7 at 1(emphasis added).

Finally, the '215 patent contentions are based on the same implementation-dependent standards sections discussed above. Ex. 8.

4853-1063-9119.3                                    12

Ex. 6 at 8.  The timer identified by Ericsson in this portion of its chart is also a transmit MSDU timer, but starts at a different time and uses a different specific threshold as the timer attribute used to decide to discard untransmitted fragments.

Thus, Ericsson's contentions (including both its current and proposed amended contentions) and the standard both identify multiple different timers for the same function, discarding fragments that were not transmitted.  However, the timers start at different times and have different threshold attributes.  As Ericsson's contentions lack any product-specific details, there is no way to determine from the contentions which, if either, timer is present in any particular implementation.  This information is critical for the OEM Defendants to understand Ericsson's infringement theory.[5]

Finally, in the '223 chart, Ericsson apparently recognized that its citations to the standard are insufficient and thus included a three page citation from a book by Perahia et al., which further complicates Ericsson's muddled contentions regarding the receiver. *See e.g.* Ex. 6 at 12-14.  The OEM Defendants have no way to understand the relevance of this citation.  It is simply not possible to make sense of Ericsson's contention citations, which are no substitute for contentions that identify where in each product, including in each chipset, each claim element is allegedly found as required by P.R. 3-1.

The foregoing are merely representative examples of deficiencies that exist throughout the contentions for the asserted claims.  Space considerations prevent a detailed discussion of each deficiency in each patent (or even a detailed discussion of each deficiency in the '516 and '223 patents).  But even a cursory review of Ericsson's current (and proposed amended)

---

[5]  Similar issues related the manner in which packets may be discarded exist in other sections of the '223 contentions as well as contentions for other patents.

13

contentions reveals that they fundamentally fail to provide the level of specificity required under P.R. 3-1.  For these reasons, this Motion should be granted.

### C.    The Court Should Strike Ericsson's Infringement Contentions.

This Court has the inherent power to enforce its rules and to impose appropriate remedies for violations thereof. *Nike Inc., v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 668 (E.D. Tex. 2007) (citing Fed. R. Civ. P. 16(f); *Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n.3 (5th Cir. 1968)).  In deciding whether to strike insufficient Infringement Contentions, courts consider various factors, including 1) the danger of unfair prejudice to the non-movant; 2) the importance of the particular matter, and whether a lesser remedy would adequately address the situation and also deter future violations of the court's local rules; and 3) whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after the need to disclose additional information became apparent. *Nike*, 479 F. Supp. 2d at 668.  Each of these factors favors striking Ericsson's Infringement Contentions.

First, there is no danger of unfair prejudice to Ericsson. The requirements of detailed Infringement Contentions are clear and well established.  Nonetheless, Ericsson made a tactical decision to eschew those obligations. OEM Defendants informed Ericsson of the numerous deficiencies with its Infringement Contentions and gave Ericsson multiple opportunities to correct those deficiencies without Court involvement.  Ericsson again made a tactical decision not to remedy the deficiencies. Thus, there is no surprise or unfair prejudice in requiring Ericsson to stand or fall based on the adequacy of its Infringement Contentions.

Conversely, OEM Defendants will unquestionably suffer prejudice if Ericsson's Infringement Contentions are not stricken. It has been over a year and a half since Ericsson filed suit and it is still unclear as to what Ericsson is contending as to infringement of the patents-in-suit.  As a result, it has been nearly impossible for OEM Defendants to fully prepare their

4853-1063-9119.3                                             14

defenses. Ericsson's disregard for its obligations has also caused the OEM Defendants to expend significant resources just to determine what this lawsuit is really about.

Second, Ericsson's actions entirely undermine the very purpose of Patent Rule 3-1, which is "to further the goal of full timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Id.* at 667 (internal quotation and citation omitted). Here, Ericsson's Infringement Contentions fail to meet these important goals. Quite the opposite, Ericsson's deficient Infringement Contentions have seriously compromised the OEM Defendants' ability to adequately formulate and present their defenses in this case.

Finally, Ericsson has not been diligent in either providing the required information or seeking an extension of time. In fact, Ericsson has repeatedly, and without explanation, defended its contentions, and refused the opportunity to amend its Infringement Contentions in a manner that would bring them into compliance with P.R. 3-1. *See* Ex. 14 (letters and emails regarding infringement contentions). Thus, Ericsson has not shown the required diligence in this case.

## IV. CONCLUSION

For the foregoing reasons, the OEM Defendants respectfully request that this Court grant OEM Defendants' motion and strike Ericsson's Infringement Contentions for the '516, '019, '568, '325, '223, '435, and '215 patents. In the alternative, OEM Defendants request that the Court order Ericsson to provide Infringement Contentions, within 20 days, that comply with Local Patent Rule 3-1 by providing product-specific contentions that cite with particularity where in the accused products – i.e., where in the code or technical documentation – each of the claim limitations for each asserted claim exists.

4853-1063-9119.3                                                    15

DATED: July 23, 2012

Respectfully submitted,

*/s/* John P. Bovich (*with permission)*

Scott D. Baker, *Pro Hac Vice* (Cal. SBN 84923)
John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
Christine M. Morgan, *Pro Hac Vice* (Cal. SBN 169350)
Adaline J. Hilgard, *Pro Hac Vice* (Cal. SBN 173213)
William R. Overend, *Pro Hac Vice* (Cal. SBN 180209)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  941015
Telephone:  +1 415 543 8700
Facsimile:  +1 415 391 8269
Email:  sbaker@reedsmith.com
Email:  jbovich@reedsmith.com
Email:  ahilgard@reedsmith.com
Email:  woverend@reedsmith.com
Email:  jmitchell@reedsmith.com

Trey Yarbrough (Bar No. 22133500)
Debby E. Gunter (Bar No. 24012752)
**YARBROUGH & WILCOX, PLLC**
100 E. Ferguson, Ste. 1015
Tyler, Texas 75702
Telephone:  +1 903 595 3111
Facsimile:  +1 903 595 0191
Email:  trey@yw-lawfirm.com
Email:  debby@yw-lawfirm.com

**Counsel for Defendants, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC.**
S.J. Christine Yang (admitted *pro hac vice*)
Duncan Palmatier (admitted *pro hac vice*)
Victoria Hao (admitted *pro hac vice*)
**THE LAW OFFICES OF S.J. CHRISTINE YANG**
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Tel: (714) 641-4022; Fax: (714) 641-2082
E-Mail:  cyang@sjclawpc.com
E-Mail:  dpalm@dpalmlaw.com
E-Mail:  vhao@sjclawpc.com

**Counsel for Defendant D-LINK SYSTEMS, INC.**

_/s/_ Dwayne C. Norton (*with permission*)_____

Michael J. Newton (Texas Bar No. 24003844)
Jason W. Cook (Texas Bar No. 24028537)
Stacey G. White (Texas Bar No. 24053220)
Dwayne C. Norton (Texas Bar No. 24076139)
Shaun W. Hassett (Texas Bar No. 24074372)
Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood St, Suite 1800
Dallas, TX 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
Email: mike.newton@alston.com
Email: jason.cook@alston.com
Email: stacey.white@alston.com
Email: dwayne.norton@alston.com
Email: shaun.hassett@alston.com
Email: brady.cox@alston.com

Marsha E. Mullin (California Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
Email: marsha.mullin@alston.com

Frank G. Smith (Georgia Bar No. 657550)
Kamran Jivani (Georgia Bar No. 510908)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: frank.smith@alston.com
Email: kamran.jivani@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 705-1117
Email: ddacus@rameyflock.com

**Counsel for DEFENDANT DELL INC.**

*/s/* Jason J. Keener_____ _____
John Feldhaus
Pavan Agarwal
**FOLEY & LARDNER LLP**
3000 K. Street, NW, Suite 500
Washington, DC 20007
PH: (202) 672-5300
Fax: (202) 672-5399
Email:  jfeldhaus@foley.com
Email:  pagarwal@foley.com

Jason J. Keener
**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 2800
Chicago, IL 60654
PH: (312) 832-5109
Fax: (312) 832-4700
Email:  jkeener@foley.com

Guy N. Harrison
Attorney at Law
217 N. Center
Longview, TX 75606
PH: (903) 758-7361
Fax: (903) 753-9557
Email:  guy@gnhlaw.com

**Counsel for TOSHIBA CORPORATION AND TOSHIBA AMERICA INFORMATION SYSTEMS, INC.**

*/s/*  Eric Chan (*with permission*)
Ryan K. Yagura (Bar No. 24075933)
Vision Winter (*Pro Hac Vice*)
Eric Chan (*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

**Attorneys for BELKIN INTERNATIONAL, INC.**

4853-1063-9119.3

18

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 23, 2012.

/s/ <em>Jason J. Keener</em>

Jason J. Keener

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for all Defendants (including lead and local counsel) met and conferred via telephone with counsel for Plaintiff (including lead and local counsel) regarding the present motion and the relief requested and have complied with the meet and confer requirement of Local Rule CV-7(h).  The teleconference occurred on July 2, 2012.  The participants were:

Toshiba:

John Feldhaus, Jason Keener, and Guy Harrison

D-Link Systems, Inc., Netgear, Inc., Acer, Inc., Acer America Corp., and Gateway, Inc.:

John Bovich and Trey Yarbrough

Dell Inc.:

Michael J. Newton and Deron R. Dacus

Belkin International, Inc.:

Eric Chan

Ericsson:

Ted Stevenson and Justin Nemunaitis

Plaintiff opposes the motion,  Plaintiff maintained that its infringement contentions complied with the Patent Local Rules 3-1, refused to withdraw its current contentions, and refused to seek leave to supplement its contentions by providing product-specific contentions that cite with particularity where in the accused products – i.e., where in the code or technical

documentation – each of the claim limitations for each asserted claim exists.  The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

Toshiba

  /s/ John Feldhaus (*with permission*)          /s/ Guy Harrison (*with permission*)____

Lead Counsel: John Feldhaus          Local Counsel: Guy Harrison

D-Link Systems, Inc., Netgear, Inc., Acer, Inc., Acer America Corp., and Gateway, Inc.

  /s/ John Bovich (*with permission)*          /s/ Trey Yarbrough (*with permission*)__

Lead Counsel: John Bovich          Local Counsel: Trey Yarbrough

Dell Inc.

  /s/ Michael J. Newton (*with permission)*  /s/ Deron R. Dacus (*with permission*)___

Lead Counsel: Michael J. Newton          Local Counsel: Deron R. Dacus

Belkin International, Inc.

  /s/ Ryan Yagura (*with permission)*____  /s/ Ryan Yagura (*with permission*)_____

Lead Counsel: Ryan Yagura          Local Counsel: Ryan Yagura