## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |
|---|---|
| ERICSSON INC., et al. | |
| Plaintiffs | |
| v. | Civil Action No. 6:10-cv-473 |
| D-LINK CORPORATION, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

## OEM DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION TO STRIKE PLAINTIFFS' INFRINGEMENT CONTENTIONS, OR IN THE
## ALTERNATIVE, TO COMPEL AMENDED CONTENTIONS COMPLIANT WITH
## PATENT LOCAL RULE 3-1

## I.    INTRODUCTION

Ericsson's contentions cite exclusively to sections of the 802.11n standard that are optional and/or implementation-specific, fail to correlate particular portions of the standard to specific claim elements, and provide no accused product-specific information.  As such, they fall far short of the plain requirement of P.L. Rule 3-1 that requires a "chart identifying specifically where each element of each asserted claim *is found within each Accused Instrumentality*'' P.R. 3-1(b) (emphasis added).

Ericsson's Response attempts to obfuscate the contentions' fatal defects by distorting both law and fact.  Indeed, it is well-settled that where, as here, infringement is asserted based on alleged compliance with portions of a standard that are not required and/or may be implemented in different ways, it is insufficient for a plaintiff to merely cite to the standards in its contentions. Unable to legitimately dispute its contentions' deficiencies, Ericsson spends the remainder of its Response deflecting responsibility for its failure to timely obtain information necessary to articulate its infringement theories.  Although Ericsson has (or should have) known critical facts concerning the accused products, Ericsson delayed in conducting the discovery it now contends is necessary.  Indeed, chipset information Ericsson contends was necessary to commence third party discovery is publicly available; the OEM Defendants also provided chipset information at least as early as a year ago; and they have since produced thousands of pages of product-related documents.  Chip suppliers, such as Intel, also have produced hundreds of thousands of pages of technical documents, and Ericsson has finally commenced its review of source code months after Intel's offer to produce.  *See* Doc. #259 at 2.[1]

Ericsson's refusal to provide necessary supplementation during discovery is particularly

---

[1] This salient fact was omitted from the timeline Ericsson prepared to demonstrate its alleged discovery diligence. Doc. # 267 at 3.

inappropriate here because Ericsson admits that it plans to do so later—presumably at trial, when Defendants can no longer respond.  Doc. #267 at 1 ("Ericsson plans to go beyond the standard in its trial proof.")  In short, Defendants should not be forced to wait and then be surprised by infringement theories that—for the first time—rely on technical documents and source code that allegedly show where in the accused products certain claim elements exist.  As a matter of law, Ericsson's contentions are non-compliant and should be stricken and/or amended to provide the specific product and code-based details necessary to satisfy Rule 3-1.

## II.    ERICSSON DOES NOT DENY THAT THE CITED STANDARD SECTIONS ARE OPTIONAL AND / OR IMPLEMENTATION SPECIFIC

There can be no dispute that Ericsson's infringement contentions rely on sections from the 802.11 standard that are optional and/or may be practiced using various implementations.  For example, Ericsson's '516 patent contentions cite portions of the 802.11 standard that refer to a function "$w_T(t)$" as an "example" and stress that other approaches may be used.  In other words, a given product can implement the standard in many different ways—not all (or any) of which may be covered by the patent.  In fact, although the accused products plainly cannot operate in every possible way, the '516 contentions inexplicably cite to all possible standard options without clarifying where, if anywhere, any particular option is implemented in a product.

Ericsson's assertion that these contentions comply with Rule 3-1 because they "identify an explanatory waveform and provide a description of Ericsson's infringement theory" —and its related assertion that it may simply cite to optional and/or implementation-specific sections—is contradicted by *Linex* and *Fujitsu*,[2] which establish that pointing to such standards fails to comply with Rule 3-1 (*Linex*) or prove infringement (*Fujitsu*).  Ericsson selectively cites both cases, relying on *dicta* concerning inapplicable standards sections.  But Ericsson's contentions

---

[2] *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703 (E.D. Tex. 2008); *Fujitsu Ltd. v. NETGEAR Inc.*, 620 F.3d 1321 (Fed. Cir. 2010).

fail to meet the bar set forth in those cases because Ericsson makes no attempt to clarify how or where any particular implementation of any option is found in any product.  Just as in *Linex*, Ericsson's contentions fail "to delineate details which are critical to an assertion or determination of infringement" and thus "will not, alone suffice as the basis for Infringement contentions required by this Court's Patent Rules."  *Linex* at 709.

### III.  ERICSSON DELAYED IN SEEKING CHIPSET SUPPLIER DISCOVERY

Implicitly conceding that further detail is appropriate, Ericsson erroneously asserts that the Defendants have somehow withheld information needed for its third party discovery, and in turn, proper P.R. 3-1 contentions.  Ericsson is wrong.  Years prior to filing its lawsuit, Ericsson knew it would need technical information from the suppliers that actually design, develop, and manufacture the Wi-Fi chipsets used in the accused products.  Ericsson's own documents show that it studied Defendants' products as early as 2009 (see Keener Decl., Ex. 15) and knew the identity of the suppliers—information that is public and available from defendants' datasheets. *See e.g.*, Keener Decl., Ex. 15 at 3-14.  Chipset information related to Ericsson's third party discovery also was *publicly available to Ericsson* pre-suit.  For example, the vendor and model number of the Wi-Fi chipset used in a PC can be determined by clicking on the "Network Adapters" tab in the "Device Manager" section of the "Control Panel" of any Microsoft Windows operating system.  Chipset information (for routers, PCs, etc.) is also available by looking at physical cards in Defendants' products (*e.g.* Keener Decl., Ex. 18) and through websites such as the FCC website and others (*e.g.* http://wikidevi.com/wiki/Netgear_WNDR4500.)  (Keener Decl. Ex. 17).  Defendants also provided chipset information sufficient to commence third party discovery as early as August

and October 2011 in response to Ericsson's discovery.[3]  Yet, Ericson inexplicably delayed serving subpoenas until February of the following year, and then failed to diligently pursue that discovery.  Similarly, Ericsson's Response neglects to mention that it received hundreds of thousands of pages of Intel technical documents over five months ago, and that it waited months before even responding to Intel's February 2012 offer to produce source code, which it just began inspecting this month.[4]  Doc. #259 at 2.

Simply put, Ericsson's complaints concerning third party discovery are the direct result of its own strategic decision to sue only the OEM defendants, and not the chipset suppliers that design, develop and manufacture the Wi-Fi chipsets in the accused products.[5]  Ericsson should not be permitted to make the strategic decision to forego naming chipset makers as defendants (in order to attempt to claim a royalty on the OEM defendants' products), and then use that decision as an excuse for failing to provide contentions that comply with P.R. 3-1.[6]  Further, this strategy is particularly inappropriate because a small component in Defendants' products—an 802.11 computer chip—contains the functionality that Ericsson alleges to be infringing.  Ericsson should not be entitled to claim a royalty on the entire accused products, yet withhold what portion of the actual product it is relying on for infringement.

---

[3] For example, on October 20, 2011, Toshiba provided Ericsson with a file that identified by model number the WiFi chipsets used in the accused Toshiba PCs.  See Keener Decl., Ex. 16 (letter from A. Cheslock to Austin Curry).  And in August 2011, Acer, NETGEAR and D-Link provided lists of chipsets used in the accused products, which easily could have been used to commence supplier discovery.  (*See, e.g*., Nemunaitus Decl. Ex. 4)

[4] Ericsson's related assertion that Defendants delayed bringing this Motion is wholly inconsistent with its position that it requires more time to obtain information needed for adequate contentions.  In fact, before filing this Motion, Defendants properly provided, and Ericsson had, ample time to obtain whatever information it deemed necessary to articulate its infringement theories in proper 3-1 contentions.

[5] Intel, the only chipset supplier party defendant, was not a named defendant, but intervened.

[6] Ericsson's purported offer to supplement is illusory because it has yet to provide any proposed contentions that address the deficiencies raised by Defendants and admits that it lacks information to do so.  This, coupled with Ericsson's lack of diligence, reveals that Ericsson's real goal is to surprise the defendants with details for the first time in its expert report.  Such tactics are unfair, contrary to Rule 3-1, and should not be tolerated.

Moreover, even without discovery or source code from the chipset suppliers, Ericsson was required to provide far more detailed information concerning the accused products, standards, and patents in its contentions. Even though Ericsson required no party or third party discovery to study the accused products, related publicly-available information, the patents, and standards in order to provide useful and informative infringement contentions, its contentions contain no product-specific information and merely quote large sections of the standard, without connecting any of specific portion to any particular claim element or product part.

Finally, Ericsson's own authority, *American Video Graphics L.P. v. Electronic Arts Inc.*, 359 F.Supp.2d 558 (E.D. Tex. 2005) ("*AVG*"), actually supports Defendants. In *AVG*, the Court found that information necessary to provide adequate infringement contentions was available only through access to the defendants' own confidential source code. Thus, although plaintiff had supplied contentions to the best of its ability without access to such source code information, those contentions fell short, and the Court ordered supplementation within 30 days of the defendants' depositing of source code into escrow. Unlike the plaintiff in *AVG*, Ericsson did not file suit against the parties with relevant source code and did not supply contentions to the best of its ability based on publicly available information. Ericsson now must live with those decisions. Just like the *AVG* plaintiff, Ericsson had a duty to provide comprehensive contentions based publicly available information, diligently gain access to any necessary confidential information through proper discovery tools, and then, if required, seek leave of court (under Rule 3-6(b)) to supplement its charts "with specific reference to source code". *Id*. at 561. Ericsson apparently has taken none of these required steps, and this Motion should be granted.

## IV.    DEFENDANTS ARE HIGHLY PREJUDICED

Ericsson's failure to provide proper infringement contentions has prejudiced the defendants' ability to prepare defenses. Because the close of discovery is quickly approaching, the time for Ericsson to have provided this information has well passed.

4853-1063-9119.3

6

DATED: August 21, 2012

Respectfully submitted,

*/s/* John P. Bovich (*with permission)*
Scott D. Baker, *Pro Hac Vice* (Cal. SBN 84923)
John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
Christine M. Morgan, *Pro Hac Vice* (Cal. SBN 169350)
Adaline J. Hilgard, *Pro Hac Vice* (Cal. SBN 173213)
William R. Overend, *Pro Hac Vice* (Cal. SBN 180209)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  941015
Telephone:  +1 415 543 8700
Facsimile:  +1 415 391 8269
Email:  sbaker@reedsmith.com
Email:  jbovich@reedsmith.com
Email:  ahilgard@reedsmith.com
Email:  woverend@reedsmith.com
Email:  jmitchell@reedsmith.com

Trey Yarbrough (Bar No. 22133500)
Debby E. Gunter (Bar No. 24012752)
**YARBROUGH & WILCOX, PLLC**
100 E. Ferguson, Ste. 1015
Tyler, Texas 75702
Telephone:  +1 903 595 3111
Facsimile:  +1 903 595 0191
Email:  trey@yw-lawfirm.com
Email:  debby@yw-lawfirm.com

**Counsel for Defendants, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC.**
S.J. Christine Yang (admitted *pro hac vice*)
Duncan Palmatier (admitted *pro hac vice*)
Victoria Hao (admitted *pro hac vice*)
**THE LAW OFFICES OF S.J. CHRISTINE YANG**
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Tel: (714) 641-4022; Fax: (714) 641-2082
E-Mail:  cyang@sjclawpc.com
E-Mail:  dpalm@dpalmlaw.com
E-Mail:  vhao@sjclawpc.com

**Counsel for Defendant D-LINK SYSTEMS, INC.**

4853-1063-9119.3

7

  */s/* Dwayne C. Norton (*with permission*)_____

Michael J. Newton (Texas Bar No. 24003844)
Jason W. Cook (Texas Bar No. 24028537)
Stacey G. White (Texas Bar No. 24053220)
Dwayne C. Norton (Texas Bar No. 24076139)
Shaun W. Hassett (Texas Bar No. 24074372)
Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood St, Suite 1800
Dallas, TX 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
Email: mike.newton@alston.com
Email: jason.cook@alston.com
Email: stacey.white@alston.com
Email: dwayne.norton@alston.com
Email: shaun.hassett@alston.com
Email: brady.cox@alston.com

Marsha E. Mullin (California Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
Email: marsha.mullin@alston.com

Frank G. Smith (Georgia Bar No. 657550)
Kamran Jivani (Georgia Bar No. 510908)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: frank.smith@alston.com
Email: kamran.jivani@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 705-1117
Email: ddacus@rameyflock.com

**Counsel for DEFENDANT DELL INC.**

4853-1063-9119.3                    8

*/s/* Jason J. Keener_____ _____
John Feldhaus
Pavan Agarwal
**FOLEY & LARDNER LLP**
3000 K. Street, NW, Suite 500
Washington, DC 20007
PH: (202) 672-5300
Fax: (202) 672-5399
Email:  jfeldhaus@foley.com
Email:  pagarwal@foley.com

Jason J. Keener
**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 2800
Chicago, IL 60654
PH: (312) 832-5109
Fax: (312) 832-4700
Email:  jkeener@foley.com

Guy N. Harrison
Attorney at Law
217 N. Center
Longview, TX 75606
PH: (903) 758-7361
Fax: (903) 753-9557
Email:  guy@gnhlaw.com

**Counsel for TOSHIBA CORPORATION AND TOSHIBA AMERICA INFORMATION SYSTEMS, INC.**

*/s/*  Eric Chan (*with permission*)
Ryan K. Yagura (Bar No. 24075933)
Vision Winter (*Pro Hac Vice*)
Eric Chan (*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

**Attorneys for BELKIN INTERNATIONAL, INC.**

4853-1063-9119.3

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 21, 2012.

/s/ <i>Jason J. Keener</i>
Jason J. Keener