## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| ERICSSON INC., et al. | |
| Plaintiffs | |
| v. | Civil Action No. 6:10-cv-473 |
| D-LINK CORPORATION, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEFENDANTS' ALLEGED EQUITABLE DEFENSES

**<u>Filed Under Seal</u>**

McKool 294212v1

Pursuant to Federal Rule of Civil Procedure 52, Plaintiff Ericsson Inc. and Telefonaktiebolaget LM Ericsson ("Plaintiffs" or "Ericsson") proposes the following Findings Of Fact And Conclusions Of Law Regarding Defendants' alleged equitable defenses.

## I.    FINDINGS OF FACT

1.    Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

2.    Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the country of Sweden with its principal place of business at Torshamnsgatan 23, Kista, 164 83 Stockholm, Sweden.

3.    Defendant D-Link Systems, Inc. is a California corporation, with its principal place of business at 17595 Mt. Hermann Street, Fountain Valley, California 92708.

4.    Defendant Netgear, Inc. is a Delaware corporation, with its principal place of business at 350 East Plumeria Drive, San Jose, California 95134-1911.

5.    Defendant Acer, Inc. is a Taiwanese corporation, with its principal place of business at 8F, 88, Sec. 1, Hsin Tai Wud Road, Hsichih 221, Taiwan.

6.    Defendant Acer America Corporation is a California corporation, with its principal place of business at 333 W. San Carlos Street, Suite 1500, San Jose, California 95110.

7.    Defendant Gateway, Inc. is a Delaware corporation, with its principal place of business at 7565 Irvine Center Drive, Irvine, California 92618.

8.    Defendant Dell, Inc. is a Delaware corporation with its principal place of business at 1 Dell Way, Round Rock, Texas 78682-2222.

9.    Defendant Toshiba Corporation is a Japanese Corporation with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.

10.    Defendant Toshiba America Information Systems, Inc. is a California Corporation with its principal place of business at 9740 Irvine Blvd., Irvine, California 92618.

11.    Defendant Belkin International, Inc. ("Belkin", formerly Belkin Corporation) is a Delaware Corporation with its principal place of business at 12045 E. Waterfront Drive, Playa Vista, California 90094.

12.    Intervenor and counterclaim defendant Intel Corporation is a Delaware corporation with its headquarters in Santa Clara, California.

13.    Plaintiff Ericsson filed its original Complaint on September 14, 2010.

14.    Plaintiff Ericsson filed its First Amended Complaint on June 8, 2011.

15.    On November 16, 1999, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 5,987,019 ("the '019 Patent"), entitled "Multi-Rate Radiocommunication Systems and Terminals," to Alex Krister Raith, James Ragsdale, and John Diachina. Telefonaktiebolaget LM Ericsson is the owner by assignment of the '019 Patent.

16.    On December 11, 2001, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,330,435 ("the '435 Patent"), entitled "Data Packet Discard Notification," to Tawfik Lazraq and Farooq Khan.  Telefonaktiebolaget LM Ericsson is the owner by assignment of the '435 Patent.

17.    On July 23, 2002, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,424,625 ("the '625 Patent"), entitled "Method and Apparatus for Discarding Packets in a Data Network Having Automatic Repeat Request," to Peter Larsson and Mikael Larsson.  Telefonaktiebolaget LM Ericsson is the owner by assignment of the '625 Patent.

18.    On October 15, 2002, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,466,568 ("the '568 Patent"), entitled "Multi-Rate Radiocommunication

Systems and Terminals," to Alex Krister Raith, James Ragsdale, and John Diachina. Telefonaktiebolaget LM Ericsson is the owner by assignment of the '568 Patent.

19.     On February 11, 2003, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,519,223 ("the '223 Patent"), entitled "System and Method for Implementing a Semi Reliable Retransmission Protocol," to Stefan Henrik Andreas Wager and Reiner Ludwig.  Telefonaktiebolaget LM Ericsson is the owner by assignment of the '223 Patent.

20.     On August 3, 2004, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,772,215 ("the '215 Patent"), entitled "Method for Minimizing Feedback Responses in ARQ Protocols," to Bela Rathonyi, Joachim Sachs, Michael Meyer, Per Beming, Mathias Johansson, Christiaan Roobol, Erik Schon, and Kazuhiko Inoue.  Telefonaktiebolaget LM Ericsson is the owner by assignment of the '215 Patent.

21.     On January 29, 2003, Ericsson submitted a Letter of Assurance to the IEEE stating that Ericsson is "prepared to grant a license to an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the [Proposed] IEEE Standard" subject to the IP statement attached to the Letter of Assurance. Ericsson specifically identified that this Letter applied to the following amendments to the 802.11 standard: a, b, e, f, g, h, i.

22.     On April 18, 2011, Ericsson submitted another Letter of Assurance to the IEEE clarifying that Ericsson's RAND obligations extend to the n amendment to the 802.11 standard.

23.     Ericsson specifically identified 802.11 patents to Netgear in September 2004.[1]

24.     Ericsson specifically identified 802.11 patents to D-Link in March 2004.[2]

25.     Ericsson specifically identified 802.11 patents to Belkin in April 2010.[3]

---

[1] NETGEARINC00387912.

[2] ERCDLINK0023036.

McKool 294212v1                     3

26.    Ericsson specifically identified 802.11 patents to Dell in March 2010.[4]

27.    Ericsson specifically identified 802.11 patents to Acer in November 2009.[5]

28.    Ericsson specifically identified 802.11 patents to Toshiba in November 2009.[6]

29.    Intel received specific notice of Ericsson's 802.11n patents via its customer HP at least as early as April 16, 2010.[7]

30.    Ericsson has substantial experience licensing standard essential patents in general, and its standard essential 802.11n patents in particular.[8]

31.    Ericsson has licensed the patents-in-suit to several companies that make and sell end user products, including HP, RIM, Buffalo, Ascom, Sonim, and Option N.V.[9]

### A.    Summary Of The Laches And Equitable Estoppel Issues

#### 1.    RAND Defense

32.    Defendants contend that Ericsson breached a contract formed between Ericsson and the IEEE and/or a promise made by Ericsson to the Defendants with regard to Ericsson's standard essential 802.11n patents.  Specifically, Defendants contend that Ericsson breached its contract and/or promise by seeking an amount of damages in this case which Defendants believe to be excessive, by allegedly discriminating against chipset makers, and by pleading that it is entitled to injunctive relief.  In addition, Defendants contend that Ericsson's actions constitute unclean hands.

---

[3] ERCDLINK0015652.

[4] DELLERIC-000222857, DELLERIC-000222863.

[5] ERCDLINK0015238.

[6] TOSH-0440959.

[7] 75774DOC000021.

[8] Expert Reports of John Bone

[9] Expert Reports of John Bone.

McKool 294212v1                    4

33.     None of the actions identified by Defendants constitute material breaches of a contract or promise.  The damages that Ericsson seeks in this case are well supported by industry practice, past licenses, and expert testimony from John Bone and Scott Nettles.[10]  Accordingly, Ericsson's damages demands in this case cannot constitute a RAND violation.  Ericsson has not discriminated against chipmakers because Ericsson has attempted to develop a licensing scheme that will ensure that both OEMs and chipmakers are able to obtain licenses to Ericsson's patents either directly or via pass through rights and/or patent exhaustion.  Ericsson's claim that it is entitled to injunctive relief cannot be a breach of contract because the Court determines the appropriateness of injunctive relief after the parties have submitted all of their supporting evidence.  For these same reasons, Ericsson's actions do not constitute unclean hands.

### 2.     Laches

34.     Defendants assert that Ericsson is barred from recovering damages prior to the date of filing suit based on the affirmative defense of laches.  The doctrine of laches requires that the defendant prove (1) an unreasonable and inexcusable delay in filing suit; and (2) material prejudice caused by plaintiff's unreasonable delay.  Prejudice may be either economic or evidentiary in nature.

35.     Defendants contend that by filing this lawsuit on September 14, 2010, Ericsson unreasonably and unjustifiably delayed filing suit because Ericsson could have reached its conclusions regarding infringement after Defendants released products compliant with the 802.11a standard.  Defendants argue that they suffered economic prejudice as a result of Ericsson's alleged delay.  Defendants assert that if Ericsson had filed suit earlier, Defendants would have evaluated and promoted alternatives to the infringing technologies.

---

[10] Expert Reports of John Bone and Dr. Scott Nettles.

36.     The law states, however, that any alleged delay in filing suit could not have begun before Defendants actually engaged in infringing activity, that is, the first sale or offer for sale of an accused product in 2007.  The accused products include 802.11n and draft 802.11n products, not products that are solely compliant with the 802.11a standard.  And although no law requires pre-suit notice of potential infringement by a patentee, the evidence demonstrates that each Defendant did have actual notice of at least one of the patents-in-suit.

37.     But even if Defendants had no such notice, the evidence demonstrates the resulting "delay" of approximately three to four years (at most) was reasonable under the circumstances.  In particular, Ericsson justifiably conducted a thorough pre-suit internal investigation of its patent claims, retained counsel to conduct its own independent analysis, and made a reasonable business decision to prioritize certain licensing efforts rather than devote excessive management attention, personnel and monetary resources to pursuit of litigation against Defendants.  Moreover, Ericsson engaged in substantial pre-suit negotiations with the Defendants and other potential licensees regarding Ericsson's claims prior to filing suit.

38.     Defendants cannot demonstrate that their prejudice, if any, was caused by Ericsson's delay.  Significantly, Defendants have continued to market and sell the infringing products in the two years since Ericsson filed this suit.  This indicates that nothing would have changed had Ericsson filed this suit earlier.

## II.     CONCLUSIONS OF LAW

### A.     Breach of Contract

39.     Under Texas law, to prove breach of contract, Defendants must show (1) there is a valid, enforceable contract; (2) Defendants are proper parties to sue for breach of contract; (3) Defendants performed, tendered performance of, or were excused from performing their contractual obligations; (4) Ericsson breached the contract; (5) Ericsson's breach caused the

plaintiff injury. *See Hovorka v. Community Health sys.*, 262 S.W.3d 503, 508-09 (Tex.App.—El Paso 2008, no pet.); *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W. 2d 153, 161 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

40.     As explained above, Ericsson submitted Letters of Assurance to the IEEE related to 802.11 standards in 2003 and 2011. Based on those Letters, Ericsson agreed to license the patents in suit for 802.11n devices on reasonable and non-discriminatory terms.  Ericsson has never promised to license these patents under the terms demanded by Defendants.  Accordingly, Defendants cannot establish a promise to that effect, or that Ericsson's licensing practices have breached such a promise.

41.      "Breach" means the failure, without legal excuse, to perform a promise that forms all or part of an agreement. *See DeSantis v. Wackenhut Corp.*, 732 S.W.2d 29, 34 (Tex.App.—Houston [14th Dist.] 1987), *rev'd in part on other grounds*, 793 S.W.2d 419, 432 (Tex.1990).  Ericsson has not breached its contract.  Rather, Ericsson has engaged in reasonable and non-discriminatory efforts to license the patents-in-suit for use in 802.11n products.

42.     Defendants are not entitled a finding of breach of contract because they failed to pay Ericsson a reasonable and non-discriminatory royalty for their infringement of Ericsson's patents.

43.     To prove causation, a claimant must show that its injury is a natural, probable, and foreseeable consequence of the alleged breach. *See Mead v. Johnson Group*, 615 S.W.2d 685, 687 (Tex.1981).  In this case, Defendants have suffered no damages naturally, probably, and foreseeably caused as a result of any alleged breach.

44.     Even if Ericsson had breached its RAND obligations, Defendants have no authority for concluding that such an action would render the patents-in-suit unenforceable.

B.     **Promissory Estoppel**

45.    Under Texas law, to prove promissory estoppel, Defendants must show (1) Ericsson made a promise to Defendants; (2) Defendants reasonably and substantially relied on Ericsson's promise to their detriment; and (3) Ericsson knew or should have known its promise would lead the defendant to some definite and substantial injury; (4) injustice can be avoided only by enforcing Ericsson's promise. *See Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex.1982).

46.    In its Letters of Assurance, Ericsson agreed to license the patents in suit for 802.11n devices on reasonable and non-discriminatory terms.  Ericsson has never promised to license these patents under the terms demanded by Defendants.  Accordingly, Defendants cannot establish a promise to that effect, or that Ericsson's licensing practices have breached such a promise.

47.    For the same reasons, Defendants cannot show that they relied on such a promise to their detriment.  Defendants must show that their reliance on any alleged promise was reasonable.  *See "Moore" Burger, Inc. v. Pillips Pet. Co.*, 492 S.W.2d 934, 937-38 (Tex.1972). In other words, Defendants' mere disagreement with Ericsson regarding appropriate damages in this case does not constitute a RAND violation.

48.    To have detrimentally relied on Ericsson's promise, Defendants must have shifted from a better position to a worse position based on the promise.  *See Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex.App.—Texarkana 1992, writ denied).  Because Ericsson's licensing practices with regard to the patents-in-suit have been and are reasonable and non-discriminatory, Defendants have suffered no detriment as a result of Ericsson's actions.

49.    Even if Ericsson had breached its RAND obligations, Defendants have no authority for concluding that such an action would render the patents-in-suit unenforceable.

**C.    Unclean Hands**

50. Under the doctrine of unclean hands, the Court may refuse to award a plaintiff relief that he would otherwise be entitled to on the basis that he violated conscience, or good faith or other equitable principle. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)

51. Because Ericsson's licensing practices with regard to the patents-in-suit have been and are reasonable and non-discriminatory, Defendants cannot show that Ericsson's conduct constitutes unclean hands.

## D.     Laches

52. To maintain a laches defense, an alleged infringer must prove by a preponderance of the evidence that (1) the patentee delayed filing suit for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its claim against the alleged infringer, and (2) the delay resulted in material prejudice or injury to the alleged infringer. *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995).

53. Since it is an equitable defense left to the discretion of the court, the court must consider "all facts and circumstances of the case and weigh the equities of the parties." *Gasser Chair Co.*, 60 F.3d at 773 (citations omitted).

54. The delay period cannot begin until there is "both an act of alleged infringement and proof that the patentee knew or reasonably should have known of the act." *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 5:01-CV-1974 (NAM/DEP), 2007 U.S. Dist. LEXIS 89637, at *120 (N.D.N.Y. Jan. 31, 2007); *see also Bio-Tech Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564-65 (Fed. Cir.), *cert. denied*, 591 U.S. 911 (1996) (holding that plaintiff could not have delayed during the period in which it had no legal right to enforce the patent).

55.    Here, Ericsson's delay for purposes of laches with respect to the accused products could not start until Defendants committed acts of infringement, i.e. when the first draft 802.11n products were first sold or offered for sale in 2007.

56.    Therefore, even if Ericsson knew or should have known of infringement immediately upon commercial release of the earliest accused product, the maximum length of the delay in filing suit for the accused products is between three and four years. This period is even less for products that were released after the initial release of draft 802.11n compliant devices.

57.    Because this period is less than six years, no presumption of the elements of laches applies. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992). Defendants therefore bear the burden of proving each element of laches by a preponderance of the evidence.

58.    Defendants have failed to satisfy their burden of proof in proving that Ericsson's approximate three to four year delay in filing suit was unreasonable and unjustifiable under the circumstances.

59.    Ericsson engaged in substantial pre-suit negotiations with Defendants and with other companies that ultimately agreed to license Ericsson's patents. The law does not require a patentee to forsake its ongoing business, ignore internal management issues, and jeopardize licensing negotiations in order to bring a patent infringement lawsuit.

60.    Even if the Court was to conclude that Ericsson's delay in filing suit was unreasonable and unjustifiable, Defendants have failed to prove by a preponderance of evidence that they suffered material prejudice during and as a result of Ericsson's delay.

61.    "Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary." *A.C. Aukerman Co.* v. R.L. Charles Constr. Co., 960 F.2d 1020, 1033 (Fed. Cir. 1992). Economic

prejudice results where the infringer "will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id*.

62.     Evidence of investment in the infringing products is not enough; there must be a nexus between the patentee's delay and the infringer's injury.  *See Gasser Chair Co., Inc.*, 60 F.3d at 774 ("Even a considerable investment during a delay period is not a result of the delay if it was a deliberate business decision to ignore [a] warning, and to proceed as if nothing had occurred."); *Hemstreet*, 972 F.2d at 1294 ("It is not enough that the alleged infringer changed his position- i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity.").  Therefore, in order to show economic prejudice, "the infringer must prove that the change in economic position would not have occurred had the patentee sued earlier." *Gasser Chair Co.*, 60 F.3d at 775.

63.     Defendants cannot show that Ericsson's delay caused material economic prejudice.

64.     First, Defendants cannot show that the economic prejudice occurred after the earliest possible start of the delay period.  *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1558 (Fed. Cir. 1996.)

65.     Second, Defendants' assertion of nexus between the alleged delay and the economic prejudice fails because it relies on the conclusory allegation, unsupported by any evidence, that it would have acted differently had it known of Ericsson's claims earlier.  *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1066-67 (Fed. Cir.2003) (finding that the infringer failed to present evidence that it would have actually changed its design); *Gasser Chair*, 60 F.3d at 775-76; *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992); *Hemstreet*, 972 F.2d at 1293-94.

66.     Third, Defendants were "indifferent" to whether or not Ericsson sued, and would not have made changes to their products if they had known of Ericsson's claims earlier. Defendants simply made "a business decision to capitalize on a market opportunity." *Hemstreet*, 972 F.2d at 1294; *Gasser Chair Co.*, 60 F.3d at 775.

67.     Defendants have continued to market and sell the accused products without implementing alternative design-arounds in the nearly three years since Ericsson filed suit. *See, e.g., Izume Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 613 (D. Del. 2004) (holding that continued infringement in the face of a filed suit suggests defendant "was more concerned about earning a profit than about [plaintiffs'] claim of infringement").

68.     Defendants have not alleged evidentiary prejudice.

**E.  Conclusion**

69.     Ericsson's licensing practices with regard to the patents-in-suit are reasonable and non-discriminatory.  Accordingly, Defendants have failed to prove that Ericsson breached a contract, that Ericsson is promissorily estopped from enforcing its patents, or that Ericsson's actions constitute unclean hands.  In addition, Defendants have failed to show that they are entitled to the defense of laches.

DATED: May 13, 2013                Respectfully submitted,

/s/  Ted Stevenson
Theodore Stevenson III (Texas Bar No. 19196650)
Lead Attorney
Douglas A. Cawley (Texas Bar No. 04035500)
Ashley N. Moore (Texas Bar No. 24074748)
Justin Nemunaitis (Texas Bar No. 24065815)
**MCKOOL SMITH, P.C**.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044
Email:  tstevenson@mckoolsmith.com
Email:  dcawley@mckoolsmith.com
Email:  bcaldwell@mckoolsmith.com
Email:  amoore@mckoolsmith.com
Email:  jnemunaitis@mckoolsmith.com
Sam Baxter (Texas Bar No. 01938000)
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099
Email:  sbaxter@mckoolsmith.com
**Attorneys For Plaintiffs**
**ERICSSON INC. and**
**TELEFONAKTIEBOLAGET LM**
**ERICSSON**

McKool 294212v1                    13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing document was served on counsel of record via email on May 13, 2013.

*/s/ Justin Nemunaitis*
Justin Nemunaitis

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document and exhibits are authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Justin Nemunaitis*
Justin Nemunaitis

McKool 294212v1                                    14