| | |
|---|---|
| ERICSSON INC., et al., )<br><br>)<br><br>)<br>Plaintiffs, )<br><br>)<br>vs. )<br><br>)<br>D-LINK CORPORATION, et al., )<br><br>)<br>Defendants. ) | Civil Action No. 6:10-cv-473<br><br>JURY TRIAL DEMANDED |

## <u>AMENDED JOINT PROPOSED JURY INSTRUCTIONS</u>

The parties hereby submit their amended joint proposed jury instructions in view of bifurcation and reduced claims and issues to be decided by the jury. To the extent the parties have disagreements on the form of the jury instructions, those disagreements are set forth in separately-bracketed and highlighted text colored to correspond to the respective parties' positions.

These amended joint proposed jury instructions contain the following:

<u>Ex. 1</u>: Proposed Preliminary Instructions

<u>Ex. 2</u>: Proposed Deposition Instruction (to be read prior to the introduction of the first testimony by deposition)

<u>Ex. 3</u>: Proposed Limiting Instructions (to be read when evidence subject to limiting instruction is introduced).

<u>Ex. 4</u>: Proposed Final Instructions

<u>Ex. 5</u>: Proposed Willfulness Instructions (to be presented during willfulness phase)

# Exhibit 1

# JOINT PROPOSED PRELIMINARY INSTRUCTIONS

**PRELIMINARY INSTRUCTION NO. 1. [AGREED]**

**(OVERVIEW OF TRIAL)[1]**

MEMBERS OF THE JURY:

You have now been sworn in as the jury who will hear and decide this case. Your role as the jury is to decide all disputed questions of fact. That's your job. You're the judge of the facts. My role as the Judge of the trial is to decide all questions of law and procedure.

I will provide you with instructions on the rules of law and the procedure that you should follow in making your decision. I am now giving you some preliminary instructions on the rules of law and procedure; and then at the end of the trial, I will give you more detailed, final instructions on the law and procedure you must follow in reaching a verdict in this case.

Very soon, the lawyers for each side will make what is called an opening statement. An opening statement is an overview of what each side expects the evidence to show in the case; but, remember, what the attorneys say is not evidence. Your decision should be based on the evidence in the case. What they are saying is intended to be a roadmap to help you understand the evidence as you hear it during the course of the trial.

After opening statements from both sides, the Plaintiff, Ericsson, will then begin presenting its evidence. After the Plaintiff has concluded presenting its evidence on their case-in-chief, then the Defendants will present their evidence. And then finally, the Plaintiff will have an opportunity to present any rebuttal evidence that they may have.

---

[1]  Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

Once you have heard all of the evidence in the case, I will then give you my final instructions. After you have received my final instructions, both orally and in writing, then both sides will have an opportunity to present to you their closing arguments; and their closing arguments will be what they believe that the evidence has proven and what they believe your verdict should be.

Finally, after you've heard the closing arguments, you will then retire to the jury room to begin your deliberations and reach your verdict.

**PRELIMINARY INSTRUCTION NO. 2. [AGREED]**

**(JUROR'S DUTIES)[2]**

Now, during the course of this trial, I want you to keep an open mind until you've heard all of the evidence; my final instructions, called the Court's charge; and the attorneys' closing arguments. Be sure to pay close attention to all of the testimony and evidence.

To help you, you may take notes during the trial, if you wish. A juror notebook has been provided for your convenience. Please remember that everything you write in the notebook will be confidential. Your juror notebook will be turned in each day to the Court Security Officer, and we will keep that notebook private, and no one will have access to it. It will then be returned to you the following day. And at the end of the case, your notebook notes will be shredded.

You do not have to take notes, but you may, if you wish to. If you do decide to take notes, please be sure that you don't get so involved in your note-taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

---

[2] Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED [modified to include language from Fifth Circuit Pattern Jury Instructions – Civil (2006), Instruction 1.1 regarding notetaking].

Until this trial is over do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your family, friends, and even your fellow jurors. The very first time you should ever discuss this case is at the end of the case when you and your fellow jurors finally retire to the jury room to actually begin deliberating on your verdict.

Now, the reason for this rule is very simple. You are to decide this case based on the evidence. And when you do begin your deliberations, your deliberations will be carried on with all eight of you in the room. In other words, you should have the benefit of each one of you hearing what anyone else has to say. So if two of you, you know, are taking a break and two of you start talking about the case, the other six don't have the benefit of that. And you should just keep your own counsel until all of the evidence is in, so don't discuss it with anyone until the final jury deliberations begin.

Also during this trial, please hold yourself completely apart from the people involved in the case; the parties, the witnesses, the attorneys, and the persons associated with them. It is important not only that you be fair and impartial but that you appear to be fair and impartial as well. That's why, if you're taking a break and you're visiting with one of the attorneys on one side or the other, you may be talking about something completely unrelated to the case; but if folks on the other side were to see that, you can imagine what might go through their mind.

So just keep yourself completely apart and separate from the attorneys and the other parties. You have a juror badge on. Everyone in the courtroom knows that they are to respect that. Don't feel like they're not being friendly if they don't come up and chat with you, and they won't feel like you're being rude if you don't chat with them. It's fine

to say good morning or something to someone like that, if you're riding up on an elevator, but no discussion of any kind about any topic.

Also this is another very important juror instruction. If any of you happen to be members of a social networking, Internet site or tool, such as Facebook, MySpace, or Twitter, you should not discuss, mention, or post updates in any manner whatsoever regarding the trial of this case. Likewise, do not send or receive text messages about this case. Now, I do allow you to have your cell phones. You can certainly text your spouse or call your spouse to say, honey, I'm going to be running a little late today, or I won't be home on time, or can you pick the kids up; but don't discuss the case or send any messages to anyone or post anything on any Internet site regarding any aspect of the case.

Also, do not make any independent investigation of any fact or matter regarding this case. Do not learn anything about this case from any other outside source. Do not watch TV or read the newspaper about this case. And I don't think there will be anything on it, but if there should, just don't read the article, or flip the channel.

Also, do not use the Internet or Google to find out more information about the case, the parties, or the attorneys in this case. For example, if you have a home computer, during this case don't go home at night and get on your home computer and start trying to figure things out for yourself. And, again, this comes back to the basic premise that our justice system is founded on. You are to decide this case from the legally admissible evidence that you hear from this witness stand and the exhibits that I allow to be introduced into evidence. And that's all you are to decide it on. And if you were to go start doing your own research or something, number one, that's going outside the

evidence that's in the case, but, secondly and most importantly, it deprives the other side of the opportunity to cross-examine.

And that's one of the things I think you will find during the trial of this case is one of the great tools that a jury can use, when they are trying to determine the truth of the facts, and, that is, the cross-examination of the witnesses. And so you would be depriving somebody of that right to cross-examine, if you were to go out and do any type of research on your own.

Also, I would say you would be violating this Court's instructions, which could be a very serious matter; and, secondly, as you can see, a great deal of time, effort, and money has gone into getting this case ready for trial, to trying it fairly and impartially before you to allow you to decide this case. But if you are to violate this instruction or any of the Court's other instructions, it could put all of that in jeopardy, and we'd have to go back and do all of this over again.

So, please, these instructions are very, very important. Please follow them religiously.

**PRELIMINARY INSTRUCTION NO. 3. [AGREED]**

**(NATURE OF THE CASE)[3]**

Now, let me tell you a little more about the parties and the nature of this case. As I said earlier, this is a patent case, and you've seen the video downstairs to give you a little familiarity with our patent system.

In this case, the Plaintiffs are Ericsson Inc. and Telefonaktiebolaget LM Ericsson, who I will refer to collectively as "Ericsson." Ericsson alleges that the Defendants infringe its patents and that it is entitled to damages. There are several defendants in this case who are the following: Intel Corporation, Acer, Inc., Acer America Corporation, Belkin International, Inc., D-Link Systems, Inc., Dell Inc., NETGEAR, Inc., Toshiba Corporation and Toshiba America Information Systems, Inc. The Defendants deny such infringement and damages and allege that two of the five patents asserted by Ericsson are invalid. Invalidity is a defense to infringement.

Now, generally, there are three questions you will be called upon to answer at the end of this case.

Number one, is there infringement?

Number two, are certain of the patents invalid?

And, number three, if you find the patents are valid and there is infringement, what are the damages?

Those are the three questions basically that you will be asked at the end of the case: Infringement, invalidity, and damages.

---

[3] Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

Now, there are five patents involved in this case.

The first patent is United States Patent 6,330,435, which will be referred to as the '435 patent. For convenience, the parties and I will often refer to this patent as the '435 patent. 435 are the last three digits of the patent number.

The second is United States Patent 6,424,625, which will be referred to as the '625 patent.

The third is United States Patent 6,466,568, which will be referred to as the '568 patent.

The fourth is United States Patent 6,519,223, which will be referred to as the '223 patent.

The fifth is United States Patent 6,772,215, which will be referred to as the '215 patent.

All right. Patents are normally referred to by their last three digits, as I just indicated. You will hear much, much more about this these patents during the opening statements and also during the evidence.

**PRELIMINARY INSTRUCTION NO. 4. [AGREED except as indicated]**

**(WHAT A PATENT IS AND HOW ONE IS OBTAINED)[4]**

Let me now visit with you just about our patent system, a little more detail, perhaps, than you saw on the video, and how it works.

The United States Constitution empowers the United States Government to enact patent laws and issue patents in order to protect inventions.

The purpose of our patent system is to help advance science and technology.  The patent system achieves this purpose by granting to the owner of the patent, for the life of the patent, the right to exclude any other person from making, using, offering for sale, or selling, anywhere in the United States, the invention that is covered by the patent.  A patent has a life for a limited amount of time, which for the patents involved in this case has not yet ended.  Once a patent does expire, however, the invention is then said to become part of the public domain, which means that anyone is free to use it, and the patent owner may no longer exclude anyone from making use of the invention claimed by the patent.  However, during the term of the patent, if another person, without the patent owner's permission, makes, uses, sells, or offers to sell something that is covered by the claims of the patent, then that person is said to have infringed the patent.  The patent owner may enforce a patent against persons or companies or corporations that it believes to be infringers of its patents in a lawsuit in federal court, as in this case.  The law does not require that the patent owner give advance notice to a defendant that the plaintiff

---

[4]  Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED

intends to file suit, although whether the patent owner did give advance notice to a defendant can impact some of the issues you are to decide, as I will explain later. [5]

Now, everyone, however, has the right to use existing knowledge and principles. A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or protection was sought. Thus, to be entitled to patent protection, an invention must be new, useful, and non-obvious.

To obtain a patent, the applicant must file a patent application with the United States Patent Office. After the applicant files a patent application, a Patent Examiner examines the application to determine whether the invention described in the patent application meets the requirements of the patent laws for patentable inventions. If the Examiner concludes that the legal requirements for a patent have all been satisfied, then the Patent Examiner is said to allow the claims, and the application then issues as a United States patent.

The process from the filing of the patent application up until the issuance of the patent is called patent prosecution. The record of papers relating to the patent prosecution is referred to as the prosecution history or file history of the patent. So from the beginning of the filing of the application up until the patent issues, all of that paperwork is kept, and that becomes what's known as the file history or prosecution history for that patent. And you may hear a witness refer to something in the prosecution history, so I tell you that just so that when you hear those terms, you will understand what they mean.

The granting of a patent by the Patent and Trademark Office carries with it the presumption that the patent is valid. From the issuance of a patent, it is presumed that the

---

[5]Adapted from Final Jury Instructions as given in *Bedrock Computer Tech. L.L.C. v. Yahoo! Inc.*, Civil Action No. 6:09-CV-269-LED.

subject matter is new, useful, and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. Just because the Patent and Trademark Office grants a patent, however, does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent. One or more claims may, in fact, not be patentable under the law. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent. In other words, an accused infringer may defend a suit for patent infringement on the grounds that the patent is invalid.

**PRELIMINARY INSTRUCTION NO. 5.  [AGREED]**

**(THE PARTS OF A PATENT)[6]**

Now, the parts of a patent.

You have been provided with copies of the patents-in-suit in your notebooks. Please refer to Tab 1 of your notebook, and you will see what we call the '215 patent. And if you notice, the first page in the upper right-hand column, it says Patent No. US 6,772,215.  Those last three digits are what we refer to this patent by. So you will hear references in the case to the '215 patent. You will know they're referring to this patent. And the same for the other five patents that are in the case.

You will note that the patent on that first page provides identifying information, including the date the patent issued; the patent number along the top, as well as the inventors' names over in the left-hand column where it says inventors; the filing date, which you will notice also down on Line 22.  It says filed March 29, 2000. That's the filing date.

The assignee up above that. You see Telefonaktiebolaget LM Ericsson was the assignee of the patent. And then you will see a list of prior art references that are referred to in the patent.  And I'll have more to say about prior art a little later.

You will also see on the bottom of the first page, an abstract, which is a brief statement about the subject matter of the invention.

Then on the next several pages, you will see what appear as Figures 1 through 13. You will see the second page of the patent has Figure 1 on it. It's a diagram. And for the

---

[6]  Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

next several pages, there are various drawings that depict various aspects or features of the invention. These drawings are described in words later in the patent.

And if you'll flip over past the drawings, you'll see some written material that takes up two columns. This is what we call the written description. In this portion of the patent, each page is divided into two columns. You see at the top of that page, it's got a Column 1 and a Column 2. The next page has a Column 3 and a Column 4. Then down the middle of each page, between the columns, are some little numbers: 5, 10, 15, 20, 25, so forth. Every 5 lines, there's a number. And this is what we call a column/line reference. So, for example, if I were to tell you look at Column 1, Line 10, you would go to Column 1. You'd come down the middle until you found Line 10, and you would see, on Column 1, Line 10, begins the section entitled Background.

So during the course of the trial, if somebody makes a reference to somewhere in the patent and they say Column 6, Line 15, you know, flip over to Column 6, go right down to Line 15, and that's where you'll find what they're talking about.

Now, in this written description, it begins on Column 1, Line 1, and continues all the way through Column 10, Line 17. It includes, as you see at Column 1, Line 10, a background section. Then over at the bottom of Column 4, you see a Summary section. Then if you will look at the bottom of Column 4 and in Column 5, you'll see a description of the drawings where they describe what's in the drawings. Then in Column 5, you see what's called the Detailed Description, and that continues over through Column 10.

Now, if you notice at Column 10, Line 18 you see a line there that says: What is claimed is, colon. And then there is a No. 1, and it begins: "A method for minimizing

feedback responses in an ARQ protocol, comprising the steps of." Then it's got several paragraphs there.

Then you'll see a No. 2 and a No. 3 and a No. 4. All of those bold-faced numbers under what is claimed is, are what we call the claims of the patent. And they continue over through Column 14. So you'll see there are 64 claims in the '215 patent, claims 1 through 64. Not all of these claims are asserted, just certain ones.

**PRELIMINARY INSTRUCTION NO. 6. [AGREED]**

**(THE ROLE OF THE CLAIMS)[7]**

Now, let me visit with you about the significance of patent claims, because they really go to the heart of what a patent case is all about.

The claims of a patent are the main focus of a patent case, because the claims are what define the patent owner's rights under the law; that is, the claims define what the patent owner may exclude others from doing during the term of that patent.

The claims of a patent serve two purposes. First, they set the boundaries of what the invention covers by the patent. Second, they provide notice to the public of what those boundaries are.

The claims of the patent are what are infringed when patent infringement occurs, because the claims define what the patent is. Thus, when a product or a method is accused of infringing a patent, the patent claims are compared to the accused product or method to determine whether or not there is infringement. And that's what you will be doing. You'll be comparing the claims of the patent to the accused products or methods in this case. The claims are also at issue when the validity of a patent is challenged.

In reaching your determination with respect to both infringement and validity, you must consider each claim separately.

---

[7]   Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

**PRELIMINARY INSTRUCTION NO. 7. [AGREED]**

**(INDEPENDENT AND DEPENDENT CLAIMS)**[8]

Now, patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. In other words, it's not necessary to look at any other claim to determine what an independent claim covers.

On the other hand, a dependent claim refers to at least one other claim in the patent, and that dependent claim is said to depend on the reference claim. And it includes the limitations of the other claim or claims to which it refers as well as the additional limitations recited in the dependent claim.

So, for example, take a look at Claim 1 of the '215 patent there in column 10. And I read that to you a moment ago: "A method for minimizing feedback responses in an ARQ protocol, comprising the steps of." And then there are several steps underneath that or what we would call limitations. That is an independent claim. In other words, you don't have to look to any other claim to understand what Claim 1 covers; it's all listed there in Claim 1.

But then take a look at Claim 2 immediately below it. Claim 2 is a dependent claim, and it says: "The method of claim 1, wherein said message field comprises a bitmap message." So Claim 2 depends upon Claim 1. In order to find out whether Claim 2 infringes, not only do the elements of Claim 2 have to be present, but also all of the elements of Claim 1. So that's just very simply the difference between an independent claim and a dependent claim.

---

[8] Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

A dependent claim depends on something else, and an independent claim stands on its own.

## PRELIMINARY INSTRUCTION NO. 8. [AGREED]

## (CLAIM CONSTRUCTION)[9]

Now, with regard to the words that are used in the claims, while the claims define the invention, sometimes there is a disagreement between the parties as to what certain words or terms in the claims mean.

When this happens, they ask the Court to interpret these terms in light of the patent as a whole. This is to help resolve their disagreement and to give you, the jury, guidance in applying the claims to the facts of the case.

And this happened in this case. At some time prior to trial, the parties came to me and said we have a disagreement over what certain words in these claims mean; and, Judge, we want you to resolve these for us. There was a hearing; arguments were heard; and then there was an opinion, which is referred to as a claim construction opinion, where these disputed terms were interpreted.

The Court's claim construction of these terms is set forth in the claim construction chart provided in your juror notebook

Those meanings that I give you in that chart, you must use these meanings when you decide the issues of infringement and invalidity. And you'll hear this referenced when the experts are testifying in their part in this case.

You may hear someone ask an expert, Question: Have you used the meaning given in the claim construction chart? And the witness will normally say, yes, I have used those meanings. And so that's what he's referring to, when you hear references to the claim construction.

---

[9] Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

That's something that was done earlier. The definitions I've given you are binding on you, and you should accept those definitions.

## PRELIMINARY INSTRUCTION NO. 9. [AGREED]

## (BURDENS OF PROOF)[10]

First, let me visit with you about the burdens of proof required in this case. In any legal action, facts must be proved by a required standard of evidence, known as the burden of proof. You may have heard about this in a criminal case, proof beyond a reasonable doubt; or in a civil case, it is proof by a preponderance of the evidence. In a patent case such as this, there are two different burdens of proof that are used. The first is called the preponderance of the evidence standard. The second is called the clear and convincing evidence standard. The standard beyond a reasonable doubt that is used in criminal cases, that does not apply in a civil case like this. We have two standards: Preponderance of the evidence and clear and convincing evidence.

In this case Ericsson must prove its claims of patent infringement and damages by a preponderance of the evidence. When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.

To put it another way, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of a scale, a preponderance of the evidence requires that the scale tip at least somewhat toward the party who has the burden of proof.

The Defendants have the burden of proving their invalidity defenses by a heavier burden called the clear and convincing evidence standard. When a party has a burden of proof by clear and convincing evidence, it means that the evidence must produce in your

---

[10] Adapted from instructions as given in *VirnetX, Inc. v. Microsoft Corp.*, No. 6-07-CV-80; *i4i LP v. Microsoft Corp.*, No. 6:07CV113 (E.D. Tex. May 2009) and *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.

minds a firm belief or conviction as to the matter sought to be established.  In other words, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of a scale, clear and convincing evidence requires that the scale tip more heavily toward the party who has the burden of proof.

Again, you may have heard of a burden of proof that is used in criminal cases called beyond a reasonable doubt.  That requirement is the highest burden of proof and is used only in criminal cases.  It does not apply in this case and you should, therefore, put it out of your mind.

**PRELIMINARY INSTRUCTION NO. 10**

[Ericsson proposes:

**(ORIENTATION TO INFRINGEMENT, INVALIDITY, AND DAMAGES)**[11][12]

Ericsson contends that the Defendants are infringing the Patents-in-Suit by making, using, selling, offering for sale and importing into the United States 802.11-compliant products and methods. Ericsson also contends that the Defendants infringe indirectly by inducing the direct infringement of others.

Ericsson contends that Defendants infringe the following patent claims. You may mark those claims on the patents in your notebooks by circling those claim numbers.

- Claims 1 and 5 of the '568 patent;

- Claim 1 of the '625 patent;

- Claims 1 and 2 of the '435 patent and

- Claims 1 and 2 of the '215 patent.

Ericsson also contends that Intel, Dell, Toshiba and Acer/Gateway are also infringing

- Claim 11 of the '223 patent.

---

[11] Adapted from instructions as given in *VirnetX, Inc. v. Microsoft Corp.*, No. 6-07-CV-80; *i4i LP v. Microsoft Corp.*, No. 6:07CV113 (E.D. Tex. May 2009) and *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.

[12] Defendants object to this instruction as unnecessary and potentially confusing at this stage of the case. Ericsson's proposed instruction is redundant of Preliminary Instruction No. 4, which outlines the issues that the jury is expected to decide. This instruction is also unnecessarily detailed at this stage, before the jury has heard the evidence, and will potentially serve to confuse the jury including because the asserted claims may change during trial. Ericsson's support for this instruction are the *final* instructions given in *VirnetX, Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, further demonstrating that these detailed instructions are premature and confusing at this stage of the case. To the extent the Court believes that a detailed instruction like this one is warranted at this stage, Defendants submit that the Court should adopt a non-argumentative model instruction as proposed by Defendants in the alternative.

I will first tell you about direct infringement, and then I will tell you about indirect infringement. Ericsson seeks to prove direct infringement of the patents by literal infringement. To prove literal infringement of a particular patent claim, Ericsson must prove by a preponderance of the evidence that the accused 802.11-compliant products and/or the accused methods include each and every limitation of a particular claim. Infringement does not require proof that a Defendant actually copied an Ericsson product or the patent. A person or entity can directly infringe a patent without knowing that what it is doing is an infringement of the patent. The person or entity may directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.[13]

Ericsson also alleges that the Defendants have indirectly infringed the asserted claims by inducing another's direct infringement. To prove that the Defendants induced someone else to infringe, Ericsson must prove by a preponderance of the evidence that the Defendants encouraged or instructed customers or other persons to make or use the patented products and/or use the patented methods in a manner that results in direct infringement and that the Defendant knew of the asserted patent and knew or was willfully blind to the fact that its encouragement or instructions would result in the customer acting in a way that infringed the patent.

To prove that a Defendant contributed to another's person's or entity's direct infringement, Ericsson must prove by a preponderance of the evidence that the Defendant sold or supplied to a customer, end-user, or another person a component that is a material

---

[13]Instructions appear in *VirnetX, Inc. v. Microsoft Corp.,* Civil Action No. 6:07-cv-80, Dkt. 376 at 9.

part of the patented invention and is not suitable for other substantial noninfringing uses. Ericsson must also prove that the customer, end-user, or other person directly infringed the patent claims and that the Defendant knew or was willfully blind to the fact that the components were especially made for use in an infringing manner.[14]

The Defendants deny that they have either directly or indirectly infringed any of the claims of the patents-in-suit. I will explain in more detail at the end of the case how you will decide infringement.

Now with regard to the defense of invalidity, the Defendants contend that the asserted claims of the '435 and '625 patents are invalid. Invalidity is a defense to patent infringement. A person accused of infringement has the right to assert that the claimed invention in a patent did not meet the requirements for patentability and, therefore, that the issued patent claim is invalid.

However, the granting of a patent by the Patent & Trademark Office carries with it the presumption that the patent is valid. The presumption of patent validity imposes the burden on the Defendants to prove invalidity by the clear and convincing evidence standard. The fact that the Defendants may have obtained patents covering certain aspects of their products is not a defense to patent infringement of Ericsson's Patents in this case.

I will now explain to you briefly the legal requirements for each of the grounds on which the Defendants rely to contend that the asserted patent claims are invalid. I will provide more details for each ground in my final instructions at the end of the case.

---

[14] Defendants object to Ericsson's inclusion of contributory infringement as it has not set forth that theory of infringement in its infringement contentions or expert reports.

The first ground is what's called anticipation. The Defendants contend that the inventions covered by the asserted claims of the Patents-in-Suit are not new. An invention that is not new is said to be anticipated by the prior art. To prove that a claim is anticipated by prior art, the Defendants must prove by clear and convincing evidence that each and every limitation of the claim was present in one single item of prior art.

Next is obviousness. The Defendants also contend that the asserted claims of the Patents-in-Suit are invalid for obviousness. To prove invalidity of a patent based on obviousness, the Defendants must prove by clear and convincing evidence that the invention defined by the claim would have been obvious to a hypothetical person of ordinary skill in the art at the time the invention was made.

Now, that concludes the instructions regarding infringement and the instructions regarding invalidity.

Now with regard to damages, Ericsson claims that it is entitled to damages as a result of the Defendants' infringement in the form of a reasonable royalty on each of the Defendants' accused products and methods. Damages cannot be speculative. Ericsson must prove the damages it has suffered as a result of the alleged infringement by a preponderance of the evidence.

The fact that I am instructing you about damages now does not mean that Ericsson is or is not entitled to recover damages. I will explain to you further at the end of the trial how reasonable royalties are determined.

And at the end of the trial, you will get a written charge that will have all of these instructions in it in much more detail than I am giving to you now. You will also have a

verdict form that will ask you some very simple questions dealing with infringement, invalidity and damages.

So there will be questions that you will have to decide in the case basically dealing with infringement, invalidity, and damages.

I know this is all very complex. Do not feel like you have to be an expert on patent law. We have plenty of experts in the room. You are going to hear a lot of testimony about it. This is just to give you an overview so that, as you hear a lot of these terms and you hear the evidence, hopefully, this will give you a little context to filter it through.

Now with regard to construction of the claims, I will instruct you now and at the end of the case about the meaning of some of the claim language.[15] You must use these meanings I give you when you decide the issues of infringement and invalidity.

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims. It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not a patent claim is infringed and whether or not a patent claim is invalid.]

[Defendants propose:

**(CONTENTIONS OF THE PARTIES)[16]**

---

[15]By submitting jury instructions with respect to the Court's claim constructions, neither side intends to waive and hereby expressly preserves their contentions in their *Markman* briefing and argument and reserve its rights to appeal.

[16] American Intellectual Property Law Association Model Patent Jury Instructions, Preliminary Jury Instruction No. 2 [modified to reflect burden of proof standard in Preliminary Instruction No. 6]. Defendants submit this instruction only in the alternative

Ericsson contends that the Defendants make, use, offer to sell, or sell a product or method that infringes the asserted claims of the patents-in-suit. Ericsson must prove that the Defendants infringe the patents-in-suit by a preponderance of the evidence. That means that Ericsson must show that it is more probably true than not true that the Defendants' allegedly infringing products or methods infringes than it does not infringe.

A claim can be literally infringed. To determine literal infringement, you must compare the accused product or method with each claim that Ericsson asserts is infringed. It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if the Defendants' product or method includes each and every element or method step in that patent claim. If the Defendants' products or methods do not contain one or more elements or method steps in that claim, the Defendants do not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

The Defendants deny that they are infringing the patents-in-suit. The Defendants also contend that certain of the patents-in-suit are invalid because they are not new, they are obvious to one of skill in the art, or they are not adequately described or enabled for one of skill in the art to practice the invention. .

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the patents-in-suit, you, the jury, have the ultimate responsibility for deciding whether the claims of the patents-in-suit are valid. The Defendants must prove invalidity by clear and convincing evidence. This is a higher

to Ericsson's proposed instruction. For the reasons set forth earlier, Defendants do not believe that either instruction is appropriate or necessary.

standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.   Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

## PRELIMINARY INSTRUCTION NO. 11. [AGREED]

## (CONCLUDING REMARKS)[17]

Let me just go over with you your duties.

Do not be concerned if you feel a little lost at this point. I will be giving you much more detailed both oral and written instructions at the end of the case, and you will all have these written instructions with you when you retire to consider your verdict.

You will also have a verdict form that will ask you some very simple questions dealing with the four issues that I mentioned to you earlier:

Was the patent infringed?

Number two, are two of the five patents asserted, the '435 and '625 patents, invalid or not?

And, number three, damages.

By the time you get to those three questions, you will have a much greater understanding and confidence in answering them.

Also, let me reassure you that you do not have to be an expert in patent law or in the field of the invention. We have very fine attorneys on both sides of this case who I know will do an excellent job of simplifying and explaining all of this for you.

And they will also call very capable expert witnesses that will help you understand the issues and the facts of this case.

---

[17] Adapted from preliminary instructions given in *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED.

As I said earlier, I've tried many of these cases; and almost always, by the end of the case, the jury feels very comfortable in deciding the issues in the case. And I know you will be no exception.

# Exhibit 2

# PROPOSED DEPOSITION INSTRUCTION

**PROPOSED DEPOSITION INSTRUCTION [AGREED]**

**(to be read prior to the first introduction of deposition testimony)**

Certain testimony in this case is being presented to you in the form of depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.]

Exhibit 3

# PROPOSED LIMITING INSTRUCTIONS

**PROPOSED LIMITING INSTRUCTION NO. 1**[18]

**[Ericsson proposes:**

**(Limiting Instruction regarding Defendants' own patents)**[19]

Ladies and Gentlemen of the jury, the Court will now permit Defendants to introduce evidence of their own patents. However, Defendants' own patents are not a defense to infringement. A patent grants its owner the right to exclude others and confers no right on the patent holder to make, use, or sell. The fact that Defendants own patents should not play any part in your assessment of whether Defendants' infringe Ericsson's patents.]

**[Defendants' propose:**

**(Relevance of Defendants' Own Patents)**[20]

---

[18] Defendants object to Ericsson's proposed instruction as unnecessary, misleading and contrary to law.

[19] *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent"); *Cordis Corp. v. Medtronic Vascular, Inc.*, Nos. 97-550-SLR; 97-700-SLR; 98-019-SLR, 2005 U.S. Dist. LEXIS 6583, at * 11 (D. Del. Feb. 28, 2005) ("[T]he [Defendant's] patents are not relevant to an infringement analysis."); *EZ Dock, Inc. v. Schafer Sys.*, 2003 U.S. Dist. LEXIS 3634 at *37 (D. Minn. 2003) (Defendant's possession of patents "is irrelevant to the issue of infringement"). This instruction is offered by Ericsson pursuant to the Court's order that it would entertain such a limiting instruction. *See* May 23, 2013 Pre-Trial Hearing Tr. 80:20-81:7 ("THE COURT: Okay. Here's my ruling. You -- I don't want any argument or testimony that the – that Defendants' own patents in any way prove that Ericsson's patents do not infringe or any arguments along that line. I will allow you to talk about your patents and talk about contribution with regard to damages, but, again, the devil may be in the details, so avoid any, you know, specific claim comparison. Keep it on a fairly high level. This is certainly subject to objection if you think they're going too far from the Plaintiffs' standpoint and certainly subject to limiting instructions if either side believes some would be – be appropriate.").

[20] Defendants propose this instruction only in the alternative and submit that no such instruction is necessary and that Ericsson's is improper.

Ladies and Gentlemen of the jury, Defendants are permitted to introduce evidence of their own patents. The existence of Defendants' own patents, however, is not a defense to Ericsson's direct infringement claims. Evidence of these patents, however, may be relevant to other issues in this case and may, for example, be considered by you in determining what value, if any, should be attributed to Ericsson's patents and whether Defendants had the requisite intent to have induced others to directly infringe Ericsson's patents.[21]

---

[21] *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009), *amended on reh'g in part* 366 F. Appx. 154 (2009) (finding evidence of defendant's own prior art patent relevant to intent prong of induced infringement as defendants could have "reasonably believed that the '676 patent did not cover Inspexx because Inspexx contains the same combination of antimicrobial agents disclosed in the [defendant's] prior art <u>Oakes patent</u>."); *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F. 3d 1010, 1024-25 (Fed. Cir. 2009) ("To prove induced infringement, the plaintiff must prove both direct infringement and that the defendant possessed specific intent to encourage another's infringement . . . <u>it does not follow that a defendant's belief that it can freely practice inventions found in the public domain cannot support a jury's finding that the intent required for induced infringement was lacking.</u>")

**PROPOSED LIMITING INSTRUCTION NO. 2**[22]

**[Ericsson proposes:**

**(Limiting instruction regarding Ericsson's commercial involvement)**

Ladies and Gentlemen of the jury, the Court has permitted the Defendants to introduce evidence regarding the extent to which Ericsson participated in developing products or developing industry standards. However, allegations that Ericsson did not participate in standards setting organizations or that Ericsson does not produce products that comply with those standards are not a defense to infringement. Evidence regarding Ericsson's commercial involvement with the WiFi standard or products should be put completely out of your mind when determining whether Defendants infringe Ericsson's patents.[23]**]

**[Defendants' propose:**

**(Relevance of  Participation in Industry Standards)**[24]

Ladies and Gentlemen of the jury, the parties are permitted to introduce evidence on the subject of whether Ericsson participated in the IEEE 802.11n standard setting process. While the development of the standard may be relevant

---

[22] Defendants object to this instruction as unnecessary, misleading and contrary to the law.

[23] Because Defendants intend to argue that they were not willful infringers in view of Ericsson's commercial reputation as a cellular manufacturer and lack of participation in the IEEE 802.11 standard, the Court indicated it would entertain a limiting instruction regarding using such evidence to show non-infringement. *See* May 23, 2013 Pre-trial Hearing Tr. at 43:5-10 ("THE COURT:  Okay.  I'm going to deny your motion to strike as to that one, but that does not mean that I'm prohibiting you from objecting to it at the time that -- that it is offered, and it does not mean on any of these if you feel a limiting instruction of some sort is necessary that I would entertain that.").

[24] Defendants propose this instruction only in the alternative and submit that no such instruction is necessary and that Ericsson's is improper.

to the subject of infringement, the fact that Ericsson did or did not participate in standards setting process is not in and of itself a defense to Ericson's direct infringement claims.  Such evidence, however, may be relevant to other issues in this case and may, for example, be considered by you in determining the value, if any, of Ericsson's patents and whether Defendants had the requisite intent to have induced others to directly infringe Ericsson's patent.  It is up to you, the jury, to determine, based on the evidence presented to you during trial, whether Ericsson has proven that is it more likely true than not that the Defendants infringe any claims of the asserted patents.

# Exhibit 4

# JOINT PROPOSED FINAL INSTRUCTIONS

**FINAL INSTRUCTION NO. 1. [AGREED]**

**(INTRODUCTION)[25]**

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

---

[25] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1 (Dkt. 780)

**FINAL INSTRUCTION NO. 2 [AGREED]**

**(GENERAL INSTRUCTION)[26]**

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice. With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[26] Adapted from *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1.1 (Dkt. 780)

## FINAL INSTRUCTION NO. 3. [AGREED]
## (CONSIDERING WITNESS TESTIMONY)[27]

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it,

---

[27] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1.2 (Dkt. 780) [modified to include instruction about witness bias from Final Instruction No. 6]

because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

**FINAL INSTRUCTION NO. 4 [AGREED]**

**(HOW TO EXAMINE THE EVIDENCE)[28]**

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

---

[28] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1.3 (Dkt. 780) [modified to reflect corroboration requirement of inventor testimony as set forth in *CEATS, Inc. v. Continental Airlines, Inc.*, 2013 WL 1776814 (Fed. Cir. Apr. 26, 2013) and *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157 (Fed. Cir. 2006)].

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

**FINAL INSTRUCTION NO. 5. [AGREED]**

**(OBJECTIONS TO EVIDENCE)[29]**

Attorneys representing clients in Courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

So, you should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, then ignore the question. If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

---

[29] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1.4 (Dkt. 780)

**FINAL INSTRUCTION NO. 6. [AGREED]**

**(EXPERT WITNESSES)[30]**

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether the witness' testimony is believable or not, whether it is supported by the evidence and whether to rely upon it. In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

---

[30] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1.5 (Dkt. 780)

**FINAL INSTRUCTION NO. 7. [AGREED except as indicated]**

**(CONTENTIONS OF THE PARTIES)** [31]

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson") contend that the Defendants D-LINK Systems (hereinafter "D-LINK"), Netgear, Inc. (hereinafter "Netgear"), Acer, Inc. Acer America Corp. (collectively "Acer"), Gateway, Inc. (hereinafter "Gateway"), Dell Inc. (hereinafter "Dell"), Toshiba Corporation, Toshiba America Information Systems, Inc. (collectively "Toshiba"), Belkin International, Inc. (hereinafter "Belkin") and Intel Corp. (hereinafter "Intel") (collectively "Defendants," hereinafter), make, use, sell, offer to sell, and/or import into the United States Defendants' accused 802.11-compliant products that practice or embody one or more claims of the following patents:

US Patent No. 6,466,568 ('568) / Claims 1 and 5
US Patent No. 6,424,625 ('625) / Claim 1
US Patent No. 6,330,435 ('435) / Claims 1 and 2
US Patent No. 6,772,215 ('215) / Claims 1 and  2

Ericsson also contends that Defendants Acer/Gateway, Dell, Toshiba, and Intel infringe certain claims of the following patent:

US Patent No. 6,519,223 ('223) / Claim 11.

---

[31]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Bedrock Computer Tech. L.L.C. v. Google Inc.*, Civil Action No. 6:09-CV-269-LED; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

These claims have been referred to as the "Asserted Claims" and these patents have been referred to as the "Patents-in-Suit."

Ericsson also contends that Defendants are inducing their customers and/or end-users to directly infringe certain claims of the Patents-in-Suit [Ericsson proposes: and are contributing to direct infringement of certain claims of the patents-in-suit by others who make or use the patented 802.11-compliant products or perform the patented methods].[32] Ericsson is seeking damages for the alleged infringement of the Defendants.

In response to Ericsson's contentions, Defendants contend that neither they nor their customers or end-users have infringed the Patents-in-Suit. Defendants further contend that they have not induced [Ericsson proposes: or contributed to][33] direct infringement of the Asserted Claims. Defendants also contend that at least certain of the Asserted Claims of the '435 and '625 patents are invalid as being anticipated by or obvious in light of the prior art. Defendants also contend that the Asserted Claims are invalid because the Patents-in-Suit have inadequate written descriptions and lack adequate enablement. Defendants also contend that Ericsson is not entitled to damages for any infringement.

---

[32] Defendants object to the inclusion of contributory infringement as Ericsson has not set forth the bases for such a claim in its infringement contentions or expert reports.

[33] Defendants object to the inclusion of contributory infringement as Ericsson has not set forth the bases for such a claim in its infringement contentions or expert reports.

**FINAL INSTRUCTION NO. 8. [AGREED]**

**(BURDENS OF PROOF)[34]**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on Ericsson for some issues and on the Defendants for other issues.

Ericsson has the burden of proving infringement and damages by a preponderance of the evidence. Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true. If the proof establishes that all parts of one of Ericsson's infringement claims are more likely true than not true, then you should find for Ericsson as to that claim.

The Defendants have the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[34] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 1.3 (Dkt. 780).

**FINAL INSTRUCTION NO. 9. [AGREED]**

**(THE ROLE OF THE CLAIMS OF A PATENT)[35]**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is the Court's role to define the terms of the claims and it is your role to apply these definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, the Court has determined the meaning of the claims and I will provide to you the definitions of certain claim terms. You must accept the definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

---

[35] Federal Circuit Bar Association Model Patent Jury Instructions (2012), Instruction No. 2.1.

**FINAL INSTRUCTION NO. 10. [AGREED]**

**(HOW A CLAIM DEFINES WHAT IT COVERS)[36]**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that the Court has defined and you are to apply those definitions.

---

[36] Federal Circuit Bar Association Model Patent Jury Instructions (2012), Instruction No. 2.2.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

**FINAL INSTRUCTION NO. 11. [AGREED]**

**(CLAIM INTERPRETATION)[37]**

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept the definition of these words in the claims as correct. For any words in the claim for which you have not been provided with a definition, you should apply their common meaning. You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

[INSERT FINAL CLAIM CONSTRUCTIONS]

---

[37] Federal Circuit Bar Association Model Patent Jury Instructions (2012), Instruction No. 2.3.

**FINAL INSTRUCTION NO. 12. [AGREED]**

**(DIRECT INFRINGEMENT – GENERALLY)[38]**

I will now instruct you on the specific rules you must follow to determine whether Ericsson has proven that the Defendants have infringed one or more of the asserted claims of one or more of the patents-in-suit involved in this case.

---

[38] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 3.1 [modified to include party names and patents-in-suit rather than patents-

**FINAL INSTRUCTION NO. 13.**

**[Ericsson proposes:**

**(DIRECT INFRINGEMENT – LITERAL INFRINGEMENT)** [39]

If any person makes, uses, or offers to sell, sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the parent. This type of infringement is called direct infringement. To determine direct infringement, you must compare the accused products or methods with each of the Asserted Claims of the Asserted Patents, using my instructions as to the meaning of the patent claims.

A patent claim is directly infringed only if the accused product or method includes each and every element or steps in that patent claim. If the accused product or method does not contain one or more of the limitations recited in a claim, then that product or method does not directly infringe that claim.[40]

An accused system or product directly infringes a claim if it is reasonably capable of satisfying the claim elements even though it may also be capable of non-infringing modes of operation.[41] If a claim requires only that the system or product have the

---

[39] Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[40] Adapted from *VirnetX v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. No. 597 at 13; Model Patent Jury Instructions prepared by The National Jury Instruction Project at 16.
41 Taken from the Court's Jury Instructions in *VirnetX Inc. v. Microsoft, Inc.*, Civil Action No. 6:07-CV-80-LED, Dkt. No. 376 at 9 (E.D. Tex. March 15, 2010); see also *Hilgraeve Corp. v. Symantec Corp.*, 265 F. 3d 1336, 1343 (Fed. Cir. 2001); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1200, 1204 (Fed. Cir. 2010) (finding that an accused device may be found to infringe a system claim if it is reasonably capable of satisfying the claim limitations even though it may also be capable of non-infringing

capacity to perform a function, one who makes a system or product with that capability without the patent owners' authority is a direct infringer even though the maker's customers do not use the capacity.[4243]

A patent claim is directly infringed only if the accused product or method includes each and every element in that patent claim or its equivalent, as I will instruct you shortly. If the accused product or method does not contain one or more of the limitations recited in a claim, then that product or method does not directly infringe that claim. If you find that the accused product or method includes each element or step of the claim, then that product or method infringes the claim even if such product or use contains additional elements or steps that are not recited in the claim.[44]

A person may directly infringe a patent even though in good faith the person believes that what it is doing is not an infringement of any patent and even if it did not know of the patent. Direct infringement does not require proof that the person copied a product or the patent. [45]

You must consider each of the asserted claims of the patents-in-suit individually. You must be certain to compare such accused product or method with each claim that

---

modes of operation); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, Civil Action No. 2:06-CV-272-LED, Dkt. No. 658 at 18 (E.D. Tex. Nov. 19, 2008).

[42] CHISUM ON PATENTS § 16.02[3][c] ("If the claim only requires that a device have the capacity to perform a function, one who makes a device with that capacity without the patent owner's authority is a direct infringer even though the maker's customers do not use the capacity.").

[43] Defendants object to inclusion of the immediately preceding sentence as inconsistent with the case law and confusing to the jury in the event that this one of Ericsson's proposed instructions is adopted.

[44] *VirnetX Inc. v. Apple, Inc.*, 6:10-CV-417-LED, Dkt. 597 at 13.

[45] From the Court's Charge in *VirnetX Inc. v. Apple Inc.*, Civil Action No. 6:10-cv-417-LED, Dkt. 597 at 13; *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-cv-80, Dkt. No. 376 at 9.

such product or method is alleged to infringe. Such accused product or method should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Taking each asserted claim of the Asserted Patents separately, if you find that Ericsson has proved by a preponderance of the evidence that each and every limitation of that claim is present in the Defendant's accused products or methods, then you must find that such product or method infringes that claim.

A claim limitation is literally met if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as the language would be understood by one of skill in the art. You must determine separately for each asserted claim whether or not there is infringement. [46]]

[Defendants propose:

**(DIRECT INFRINGEMENT – LITERAL INFRINGEMENT)[47]**

You must decide whether the Defendants have made, used, sold, or offered for sale within the United States, or imported into the United States, a product covered by one or more of the following apparatus claims:

Claim 1 and 5 of the '568 patent; and

---

[46]Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Fractus S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

[47] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 3.2 [modified to address apparatus and method claims separately, to include requirement that each claim be considered individually and to reflect standard for direct infringement in *Aristocrat Techs. Australia Pty Ltd v. Int'l Game Technology*, 709 F.3d 1348 (Fed. Cir. 2013) and *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012).]]

Claim 11 of the '223 patent.

You must compare each claim to the Defendants' products to determine whether every requirement of the claim is included in the accused product or conduct. To prove literal infringement of apparatus claims, Ericsson must prove that it is more likely than not that the Defendants' products include every requirement in the asserted patent claims. If the Defendants' products omit any requirement recited in Ericsson's asserted patent claims, the Defendants do not infringe that claim. In making this determination, each claim must be considered individually.

You must also decide whether the Defendants' accused products were actually operated by the Defendants in the United States in a manner to have carried out each of the steps in the following method claims:

Claims 1 and 2 of the '435 patent;

Claim 1 of the '625 patent;

Claims 1 and 2 of the '215 patent.

To prove infringement of these method claims, Ericsson must prove that it is more likely than not a Defendant performs all of the steps of the claimed method in the United States, either personally of through another acting under their direction or control such as through a contractual relationship or a principal-agency relationship (which I will define for you later in these instructions).

You must compare each claim to the Defendants' conduct to determine whether every requirement of the claim is included in the accused product or conduct. If the allegedly infringing conduct of the Defendants omits any requirement recited in

Ericsson's asserted patent claims, you must find that the Defendants do not infringe that claim. In making this determination, each claim must be considered individually.

For literal infringement, Ericsson is not required to prove that the Defendants intended to infringe or knew of the patents-in-suit.]

**FINAL INSTRUCTION NO. 14. [AGREED]**

**(INFRINGEMENT OF DEPENDENT CLAIMS)[48]**

So far, my instructions on infringement have applied to what are known as independent claims. The patents-in-suit also contain dependent claims. Each dependent claim refers to an independent claim. A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of dependent claim of any of the patents-in-suit, you must first determine whether any of the independent claims have been infringed. If you decide that the independent claim has not been infringed, then the dependent claim cannot have been infringed. If you decide that the independent claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused product. If each additional requirement has been included, then the dependent claim has been infringed. Conversely, if the Defendants' products or conduct omit any additional requirement recited in Ericsson's asserted patent claims, the Defendants do not infringe that claim.

Ericsson must prove that it is more likely than not that a patent claim has been infringed.

---

[48] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 3.7 [modified to include instruction to find no infringement if an element of the dependent claim is missing].

**FINAL INSTRUCTION NO.16.**

**[Defendants propose:**

**(INDIRECT INFRINGEMENT)**[49]

Ericsson alleges that the Defendants indirectly infringe the asserted claims of the patents-in-suit by encouraging or inducing others to infringe those claims. This is called "inducing infringement."][50]

---

[49] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 3.10 [modified to limit instruction to inducement].

[50] Ericsson opposes this instruction as not needed and omitting discussion of contributory infringement, which Ericsson has separately proposed.

**FINAL INSTRUCTION NO. 15. [AGREED]**

**(INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT)[51]**

A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally.

Ericsson has alleged that the Defendants have induced infringement by their customers. To prove that these Defendants induced patent infringement, Ericsson must prove that it is more likely than not that: (1) that customers or end-users of the Defendants have directly infringed the asserted patent claims; and (2) that the Defendants have actively and knowingly aided and abetted that direct infringement.

A Defendant is liable for active inducement of infringement of a patent claim if:

(1)    the particular Defendant takes action during the time the patent is in force which encourages acts by someone else;

(2)    the encouraged acts constitute direct infringement of that claim;

(3)    the particular Defendant (a) was aware of the patent, and knew that the encouraged acts constitute infringement of the patent; or (b) was willfully blind to the infringement of the patent. Willful blindness requires that the Defendant subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and took deliberate actions to avoid learning of the infringement;

---

[51]    *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 6.2 (Dkt. 780) [modified to include introductory paragraph from National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 3.10 and other verbiage changes].

(4) the particular Defendant had the intent to encourage infringement by someone else; and

(5) the encouraged acts are actually carried out by someone else.

In order to prove active inducement, Ericsson must prove that each of the above requirements is met. Further, proof of each element must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

In considering whether a Defendant has induced infringement by others, you may consider all the circumstances, including whether or not it obtained the advice of a competent lawyer, whether or not it knew of the patents when designing and manufacturing its products and whether or not it removed or diminished the allegedly infringing features. You may not assume that merely because they did not obtain an opinion of counsel, the opinion would have been unfavorable.

Intent to cause a third party to perform acts which result in direct infringement may be demonstrated by evidence of active steps taken to encourage the third party to do so, such as advertising an infringing use or instructing how to engage in an infringing use. It is not sufficient that a Defendant was aware of the act(s) that allegedly result in direct infringement of the patent claim or merely encouraged the acts themselves. Rather, you must find that the particular Defendant specifically intended to cause its customers to engage in the acts that constitute direct infringement and that the Defendant knew or was willfully blind that the action would cause direct infringement.

If you do not find that the accused infringer specifically meets these intent requirements by a preponderance of the evidence, then you must find that the accused infringer has not actively induced the alleged infringement.

**FINAL INSTRUCTION NO. 18.**

**[Ericsson proposes:**

**(CONTRIBUTORY INFRINGEMENT)** [52]

Ericsson alleges that the Defendants are liable for contributory infringement by contributing to the direct infringement of the patents-in-suit by another.  As with direct infringement and inducement, you must determine whether there has been contributory infringement on a claim-by-claim and defendant-by-defendant basis.

It is not necessary to show that a Defendant has directly infringed as long as you find that someone has directly infringed.  If there is no direct infringement by anyone, a Defendant cannot have contributed to the infringement of the patent.

If you find someone has directly infringed the patents-in-suit, then contributory infringement exists if Ericsson establishes by a preponderance of the evidence that:

(1)     A Defendant sold, offered for sale, or imported within the United States;

(2)     a material component of a product, or for use in practicing the patented method, that is not a staple article of commerce suitable for substantial non-infringing use;

(3)     with knowledge or willful blindness of the Patent-in-Suit and that the component was especially made or adapted for use in a way that infringes a claim of that patent.  Willful blindness requires that the Defendant

---

[52] Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07-CV-113.

subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and the defendant took deliberate actions to avoid learning of the infringement.[53]

A "staple article of commerce suitable for substantial non-infringing use" is something that has uses other than as a component of the product or patented method. A substantial non-infringing use is one that is not occasional, farfetched, impractical, experimental or hypothetical.

In determining whether or not the component is a staple article of commerce suitable for substantial non-infringing use, you should focus on whether the component itself, not the product in which the component is embedded, is or is not suitable for substantial non-infringing use. Whether the product in which the component is embedded is or is not suitable for substantial non-infringing use is not relevant.[54]][55]

---

[53] *Global-Tech Appliance, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011); *see also Trading Tech. Int'l, Inc. v. BCG Partners, Inc.*, 2011 U.S. Dist. LEXIS 99415, at *13 (N.D. Ill. Sept. 2, 2011) ( finding *Global Tech*'s willful blindness standard applicable to inducement and contributory infringement);*Bose Corp. v. SDI Tech., Inc.*, 2012 U.S. Dist. LEXIS 94948, at *28-29 (D. Mass. July 10, 2012) (finding willful blindness to apply to contributory infringement); *Tarkus Imaging, Inc. v. Adobe Systems, Inc.*, 2012 U.S. Dist. LEXIS 82477 at *12, 16 (D. Del. June 14, 2012) (finding that both induced infringement and contributory infringement require knowledge of the patent and that the defendant may have "indirectly infringed the patent" if found to have acted with willful blindness).

[54] Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07-CV-113; *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008); *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009).

[55] Defendants believe inclusion of this instruction is unnecessary and confusing to the jury because Ericsson is not asserting a contributory infringement claim against Defendants.

**FINAL INSTRUCTION NO. 19.**

**[Ericsson proposes:**

**(INVALIDITY – GENERALLY)**[56]

The Defendants have challenged the validity of the asserted patent claims of the '435 and '625 patents a number of grounds. The Defendants must prove that a patent claim is invalid by clear and convincing evidence. Evidence of material prior art which is not cumulative of prior art cited to or by the PTO may be more probative in meeting the standard than the prior art that was cited to or by the PTO.[57] An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent. From the issuance of the patent, it is presumed that a claimed invention is new, useful and not obvious and satisfies the other legal requirements for a valid U.S. patent. Each claim of a patent is presumed valid independently of the validity of the other claims. The presumption of validity remains intact and the burden of proof remains on the Defendants throughout this litigation. In other words, the burden never shifts to Ericsson to prove that its patents are valid.[58]

For a patent to be valid, the invention claimed in the patent must be new, useful, and not obvious. A patent cannot take away from people their right to use what was

---

[56] Adapted from the Court's Charge in *VirnetX Inc. v. Microsoft Corp.*, Civil Action No. 6:07-CV-80; *i4i Limited Partnership v. Microsoft Corp.*, Civil Action No. 6:07CV113; *Eolas Tech. Inc. v. Adobe Systems, Inc.*, Civil Action No. 6:09-CV-446.

[57] From *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *Alcatel-Lucent USA Inc. v. Overstock.com, Inc.*, Civil Action No. 6:09-cv-422-LED, Dkt. No. 482 at 13.

[58] Adapted from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417; *Fractus, S.A. v. Samsung Electronics Co.*, Civil Action No. 6:09-CV-203.

known or what would have been obvious when the invention was made.  In addition, the patent must comply with certain statutory requirements of disclosure.

I will now explain to you the Defendants' grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately.]

**[Defendants propose:**

## (INVALIDITY – GENERALLY)[59]

Patent invalidity is a defense to patent infringement. Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider. As you consider these issues, remember that Defendants bear the burden of proving that it is highly probable that the claims are invalid.

---

[59] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.1

**FINAL INSTRUCTION NO. 20. [AGREED]**

**(ANTICIPATION – PUBLICLY USED OR KNOWN, OR PREVIOUSLY PUBLISHED)[60]**

The Defendants contend that the asserted claims of the '435 and '625 patents are invalid because the claimed invention is not new. For a claim to be invalid because it is not new, all of its requirements must have been described in a single previous publication or patent that predates the claimed invention. In patent law, such previous publication or patent is called a "prior art reference." If a patent claim is not new we say it is "anticipated" by a prior art reference. The Defendants must prove a claim is anticipated by clear and convincing evidence.

The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the claimed invention looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

The Defendants can show that a patent claim was not new if the claimed invention was already patented or described in a printed publication anywhere in the world before date of invention of the asserted claim.

---

[60] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.5 [modified to omit language regarding prior use].

The Defendants can also show that a patent claim was not new if the claimed invention was already described in another published U.S. patent application or issued U.S. patent that was based on a patent application filed before the date of the patent holder's application filing date, or, the date of invention.  The dates of invention for the patents-in-suit are as follows:

For the '435 patent — March 18, 1999

For the '625 patent — October 28, 1998

For the '568 patent — October 15, 1996

For the '215 patent — April 9, 1999

For the '223 patent — April 6, 1999

Of these patents, Defendants contend that the '435 and '625 are invalid. If a patent claim is not new as explained above, you must find that claim invalid.

## FINAL INSTRUCTION NO. 21. [AGREED]

## (ANTICIPATION – PRINTED PUBLICATION)[61]

A patent claim is invalid if the invention defined by that claim was described in a printed publication anywhere in the world before it was invented by the patent applicant.

Printed publications may include issued patents as well as articles, treatises, and other written materials. A reference is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find. An electronic publication, including an on-line or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field, even if it is difficult to find.[62]

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. The date that a printed publication becomes prior art is the date that it becomes reasonably accessible to the public.

So long as the printed publication was available to the public, the form in which the information was recorded is unimportant. The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

For a claim to be anticipated by a prior art publication, all of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2)

---

[61] Adapted from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.
[62] Adapted from National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.7.

implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention. The disclosure in a reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or inherent in the reference, to enable someone of ordinary skill in the field of the invention looking at the reference to make and use at least one embodiment of the claimed invention.

A prior art publication also invalidates a patent claim when the claimed invention necessarily results from practice of the subject of the publication, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

A printed publication will anticipate if it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

**FINAL INSTRUCTION NO. 22. [AGREED]**

**(OBVIOUSNESS)[63]**

In this case, the Defendants contend that the asserted claims of the '435 and '625 patents are invalid as obvious. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the application for that particular patent was filed. This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness. Teachings,

---

[63] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.9

suggestions, and motivations may be found in written references including the prior art itself.  However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.　　Whether the Defendants have identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.　　Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

3.　　Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a

person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.      You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.      You must decide the scope and content of the prior art. In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention. Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned. Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3.      You must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

Factors tending to show nonobviousness:

1.  commercial success of a product due to the merits of the claimed invention;

2.  a long-felt, but unsolved, need for the solution provided by the claimed invention;

3.  unsuccessful attempts by others to find the solution provided by the claimed invention;

4.  copying of the claimed invention by others;

5.  unexpected and superior results from the claimed invention;

6.  acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention;

7.  disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and

8.  other evidence tending to show nonobviousness.

<u>Factors tending to show obviousness</u>

1.  independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

2.  other evidence tending to show obviousness.

You may consider the presence of any of the factors tending to show non-obviousness as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.  And you may consider the presence of the factors tending to show obviousness as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

The Defendants must prove by clear and convincing evidence that a claimed invention was obvious. If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

**FINAL INSTRUCTION NO. 23. [AGREED]**

**(SCOPE AND CONTENT OF PRIOR ART)[64]**

To qualify as prior art relevant to the '435 and '625 patents, the references relied on by Defendants must be reasonably related to the claimed invention of those patents. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem. Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

---

[64] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.11 [modified to remove identification of references disputed to be prior art]

**FINAL INSTRUCTION NO. 24. [AGREED]**

**(DIFFERENCES OVER THE PRIOR ART)[65]**

In reaching your conclusion about whether or not the asserted claims of the '435 and '625 patents would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the identified prior art references and the claimed requirements.

---

[65] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.12

**FINAL INSTRUCTION NO. 25. [AGREED]**

**(LEVEL OF ORDINARY SKILL)[66]**

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems. You should consider all of the evidence introduced at trial in making this decision, including:

1.     the levels of education and experience of persons working in the field;

2.     the types of problems encountered in the field;

3.     the prior art solutions to the problems;

4.     the rapidity with which innovations are made; and

5.     the sophistication of the technology.

Ericsson contends that the level of ordinary skill in the field of the invention is a person with at least an undergraduate education in computer science, computer engineering, electrical engineering, or equivalent experience.

The Defendants contend that the level of ordinary skill in the field would be a person with a bachelor's or graduate degree in a relevant field such as electrical or computer engineering or computer science with some amount of work experience in

---

[66]  National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 5.13 [modified to include language from AIPLA Model Patent Instruction No. 7.3 regarding knowledge of prior art and common sense, and paragraphs 3 and 4 from FCBA Instruction No. B.4.3c(i), and to include Defendants definition of the level of ordinary skill]

communications.  The amount of educational or work experience may vary in proportion

to each other.

**FINAL INSTRUCTION NO. 26 [AGREED]**

**(DAMAGES — GENERALLY)[67]**

I will now instruct you on damages. If you find that the Defendants have infringed one or more valid claims of the patents-in-suit you must determine the amount of money damages to which Ericsson is entitled. By instructing you on damages, I do not suggest that one or the other party should prevail. These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate Ericsson for the infringement, but it may not be less than a "reasonable royalty." At the same time, your damages determination must not include additional sums to punish the Defendants or to set an example. You may award compensatory damages only for the loss that Ericsson proves was more likely than not caused by the Defendants' infringement. Moreover, because Ericsson has agreed that it is under an obligation to license the patents-in-suit on Reasonable and Non-Discriminatory ("RAND") terms, you must ensure that any damages award is consistent with and does not exceed the amounts permitted under Ericsson's RAND obligations.

---

[67] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 6.1 [modified to include RAND obligation]

**FINAL INSTRUCTION NO. 27 [AGREED]**

**(DAMAGES — BURDENS OF PROOF)[68]**

Where the parties dispute a matter concerning damages, it is Ericsson's burden to prove that it is more probable than not that Ericsson's version is correct. Ericsson must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Ericsson is not entitled to damages that are remote or speculative.

---

[68] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 6.2

**[Ericsson proposes:**

### (DAMAGES—WHEN DAMAGES BEGIN)[69]

The amount of damages Ericsson can recover is limited to those acts of infringement that occurred after Ericsson gave each Defendant notice that it infringed the patent. Actual notice means that Ericsson communicated to the Defendants a specific charge of infringement of the patent by the accused products. This notice is effective as of the date given.

Additionally, the filing of a complaint or infringement counterclaim qualifies as actual notice. Ericsson filed a complaint against the Defendants on September 14, 2010 and bears the burden of establishing it is more probable than not that it notified each Defendant of the alleged infringement on an earlier date.

Your job is to calculate damages from the date that each Defendant received actual notice. You should not award damages for Ericsson against any infringement by a Defendant occurring before that Defendant first received actual notice.]

**[Defendants propose:**

### (DAMAGES — WHEN DAMAGES BEGIN; DIRECT INFRINGEMENT)[70]

The damages that Ericsson may be awarded by you from any Defendant for direct infringement of any of the patents-in-suit commences on the date that you find the particular Defendant has both infringed the patent-in-suit and been notified by Ericsson of that infringement. For the method claims at issue, damages can only begin when

---

[69] Adapted from *Mirror Worlds, LLC vs. Apple, Inc.*. 6:08-cv-88 LED.

[70] Model Patent Jury Instructions for the Northern District of California (2011), Instruction No. 5.8 [modified to include starting date for method claims and verbiage changes]

Ericsson also proves, in addition to providing that it provided notice of infringement, that all steps of the method have been performed in the United States by the Defendant or a person acting under their direction or control as previously instructed.  Additionally, for method claims, Ericsson can only recover damages for those accused products that it demonstrates were actually used in the United States to carry out the claimed method.

Here, the Defendants dispute when Ericsson provided notice of any infringement of the patents-in-suit.  In the event that you have found direct infringement of any of the patents-in-suit, in order to determine when damages begin, you must determine the date that each Defendant received actual written notice of each patent-in-suit that you have found was directly infringed and the specific product alleged by Ericsson to directly infringe.

**FINAL INSTRUCTION NO. 29**

**[Defendants propose:**

**(DAMAGES — WHEN DAMAGES BEGIN; INDIRECT INFRINGEMENT)[71]**

The damages that Ericsson may be awarded by you from any Defendant for indirect infringement of any of the patents-in-suit may not commence before the date that you find the particular Defendant has both infringed the patent-in-suit and been notified by Ericsson of that infringement.

In addition, in order to recover damages for induced infringement, Ericsson must also prove acts of direct infringement by others that were induced by the Defendants. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Ericsson must further prove the number of direct acts of infringement of the patents-in-suit, for example, by showing individual acts of direct infringement or by showing that a particular class of products directly infringes.][72]

---

[71] Model Patent Jury Instructions for the Northern District of California (2011), Instruction No. 5.8 [verbiage modified]

[72] Ericsson objects to the inclusion of this instruction as it is redundant with Ericsson's proposed instruction regarding when damages begin.

# FINAL INSTRUCTION NO. 30

[Ericsson proposes:

## (REASONABLE ROYALTY — DEFINITION)[73]

If you find that any claim of the Asserted Patents is both valid and infringed, then Ericsson is entitled to damages adequate to compensate for the infringement of that patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendant.[74] A royalty is the amount of money a licensee pays to a patent owner to make, use or sell the patented invention. A reasonable royalty is the amount of money a willing patent holder and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention.[75] It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee, assuming that both parties understood the patent to be valid and infringed and that the licensee would respect the patent. Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

---

[73] Adapted from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED
[74] 35 U.S.C. § 284.

[75] The instruction appears in *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED, Dkt. 597.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the Defendant infringer first infringed the patent and the facts that existed at that time. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity. The Defendant's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.[76]

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. The royalties received by the patentee for licensing of the patents-in-suit, proving or tending to prove an established royalty.

2. Royalties paid for other patents comparable to the asserted patents.

3. The nature and scope of the license, as exclusive or nonexclusive; or as restricted or nonrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

4. Whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use

---

[76] Taken from *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417-LED, Dkt. at 24.

93

the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.      The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business, or whether they are inventor and promoter.

6.      Whether being able to use the patented invention helps in making sales of other products or services.

7.      The duration of the patent and the term of the license.

8.      The profitability of the patented invention, and whether or not it is commercially successful or popular.

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.     The extent of the licensee's use of the patented invention and any evidence probative of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profits that is due to the patented invention, as compared to the portion of the profit due to other factors, such as

94

unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

14. Expert opinions as to what would be a reasonable royalty.

15. The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patent owner if it would have been willing to create a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.]

**[Defendants propose:**

**(REASONABLE ROYALTY — DEFINITION)[77]**

A royalty is the amount of money a licensee pays to a patent owner for the right to make, use or sell the patented invention. A reasonable royalty is the payment that would have resulted from a negotiation between Ericsson and the Defendants taking place at the time just before the infringing sales first began. In considering the nature of this

---

[77] National Jury Instruction Project, Model Patent Jury Instructions (2009), Final Instruction No. 6.6 [modified to follow language of *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions Nos. 8.1 and 8.2 (Dkt. 780), and to adjust *Georgia-Pacific* factors in light of April 25, 2013 Order in *Microsoft Corp. v. Motorola, Inc.*, Case No. C10-1823JLR (Dkt. 681) dealing with effect of RAND commitments and other verbiage changes]

negotiation, the focus is on what the expectations of Ericsson and the Defendants would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that the parties believed the patents were valid and infringed. In addition, you must assume that Ericsson and the Defendants were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what any particular party would have preferred.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts that existed at that time. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity.

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer should pay. In particular, because Ericsson has agreed that it is under an obligation to license the patents-in-suit on RAND terms, you must take into account this RAND commitment in determining a reasonable royalty. For example, in order to prevent patent hold-ups, which RAND commitments are designed to prevent, the parties would examine a reasonable royalty rate under the RAND commitment based on the contribution of the patented technology to the capabilities in the standard, and in turn, the contributions of those capabilities in the standard to the Defendants and the Defendants' products.

Similarly, parties attempting to reach an agreement consistent with RAND obligations would consider the overall licensing landscape in existence vis-à-vis the standard and the Defendants' products.

I will now list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.     Any commitment or assurances by the patent holder to a standards organization, such as the IEEE, to license users and implementers of the technology claimed in the patents-in-suit on fair, reasonable, and non-discriminatory terms.

2.     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

3.     The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

4.     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

5.     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.     The duration of the patent and the term of the license.

7.     The established profitability of the product made under the patents, its commercial success, and its current popularity  In considering this factor, you should

again not take into account the value created to Ericsson by the existence of the standard itself as distinct from the value of Ericsson's technology claimed in the patents-in-suit.

8. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results. Again, as with many other these factors, you should consider the contribution of the patent to the technical capabilities of the standard in comparison to the technical capabilities the standard would have had if the a non-infringing substitute at the time the standard was adopted was incorporated into the standard instead of the technology covered by the patent.

9. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention. In considering this factor, you should also not take into account the value created to Ericsson by the existence of the standard itself, but should instead consider the contribution of the patent to the technical capabilities of the standard in comparison to the technical capabilities the standard would have had if a non-infringing substitute at the time the standard was adopted was incorporated into the standard instead of the technology covered by the patent.

10. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use. In considering this factor it is important to separate the patented technology from the value associated with incorporation of the patented technology into the standard.

11. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

12.     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

13.     The opinion and testimony of qualified experts.

14.     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.  Both Ericsson and the Defendants would consider the RAND commitment and its purposes, such as preventing patent hold-ups and ensuring that the aggregate royalties associated with a given standard are reasonable, in an effort to reach a license agreement under this factor.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.]

# FINAL INSTRUCTION NO. 31

**[Defendants propose:**

## (DAMAGES -- ENTIRE MARKET VALUE)[78]

Under the "entire market value" rule, a patent owner may recover a reasonable royalty based on the value of an entire apparatus or product containing several features, even though only one feature is patented. However, the "entire market value" rule only applies where the patent owner establishes that the patented feature creates the basis for customer demand or substantially creates the value of the component parts. **][79]

---

[78] *Lucent Technologies, Inv. V. Gateway, Inc.*, 580 F.3d 1301, 1338 (quoting *Rite-Hite Corp. v. Kelley Co.*, 6 F.3d 1538, 1554, n. 13 (Fed. Cir. 1995) (en banc) (quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); see also *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1361 (Fed. Cir. 2001); *TWM Mfg.Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) ("The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand.").

[79] Ericsson objects to the inclusion of this instruction because the Court has already held that the entire market value rule is not implicated in this case. (*See* Order at Dkt. No. 443).

**FINAL INSTRUCTION NO. 32**

[Defendants propose:

**(DAMAGES -- LUMP SUM ROYALTY)[80]**

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty where a royalty rate is applied against future sales as they occur. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and estimated future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.][81]

---

[80] Model Patent Jury Instructions for the Northern District of California (2011), Instruction No. 5.7 [modified to include lump sum royalty definition only]

[81] Ericsson objects to this instruction, as Ericsson does not seek a lump sum royalty.

[Ericsson proposes:

**(INFRINGER'S PROFIT MARGIN IS NOT A CEILING ON DAMAGES)[82]**

An infringer's net profit margin is not the ceiling by which a reasonable royalty is capped.  The infringer's selling price can be raised if necessary to accommodate a higher royalty rate.   Requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology.][83]

---

[82] *Douglas Dynamics, LLC v. Buyers Products Co.*, No. 2011-1291, 2012-1046, -1057, -1087, -1088 (Fed. Cir. May 21, 2013) ("Second, the district court clearly erred by limiting the ongoing royalty rate based on Buyers's profit margins. This court has held that an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped. *Golight, Inc. v. Wal-Mart Stoares, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004). The infringer's selling price can be raised if necessary to accommodate a higher royalty rate, and indeed, requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology.  Thus, the district court clearly erred by ensuring the ongoing royalty rate it awarded would "leave some room for profit" by Buyers at its current prices.")

[83] Defendants object to this instruction as prejudicial and contrary to law.  *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1577 (Fed. Cir. 1995) ("Although this court has sanctioned royalty awards that exceeded the infringer's actual net profits, we have done so only when there was evidence that the infringer actually anticipated greater net profits . . . A royalty which on any reasonable projections respecting the innocent infringer's business would be confiscatory violates that balance.  It is simply beyond reality to infer that the management for the five hundred employee-owners of Kelley would have negotiated a royalty which, it was evident at the time, would destroy their business and jobs.")*; see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. ("a reasonable royalty would leave an infringer with reasonable profit").  To the extent that the Court believes such an instruction is necessary, Defendants reserve the right to submit an alternative instruction.

**FINAL INSTRUCTION NO. 34 [AGREED]**

**(DAMAGES MAY NOT BE PUNITIVE OR SPECULATIVE)[84]**

You must not award Ericsson more damages than are adequate to compensate for the infringement. Nor shall you include any additional amount for the purpose of punishing a defendant or setting an example. Nor may you include damages that are speculative, damages that are only possible or damages that are based on guesswork.

---

[84] Fifth Circuit Pattern Jury Instructions – Civil (2006), Instruction 9.11 [modified to reflect name of plaintiff and to eliminate mentions of willfulness due to bifurcation].

## FINAL INSTRUCTION NO. 35 [AGREED]

## (INSTRUCTIONS FOR DELIBERATIONS)[85]

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during trial. After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on

---

[85] *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instructions No. 9 (Dkt. 780)

the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

Exhibit 5


**WILLFULNESS INSTRUCTIONS**

**WILLFULNESS PRELIMINARY INSTRUCTION [AGREED]**

**(to be read during willfulness phase)**

Ladies and Gentlemen of the jury, the Court and the parties thank you for your service in the case and your careful attention to the issues put before you during the first phase of the case. This is the final phase of the case and deals with the issue of willfulness. Ericsson contends that the Defendants have willfully infringed the patents-in-suit. Defendants contend that they have not willfully infringed the patents-in-suit. Because you have found that one or more Defendants infringed Ericsson's patents, you must now decide whether that Defendants' infringement of the claim or claims you found valid and infringed was willful.

Now with regard to willful infringement, Ericsson claims that the Defendants willfully infringed the patent claims you have found valid and infringed. To prove willful infringement, Ericsson must prove that the Defendants acted with reckless disregard of the patent claims. To prove that the Defendants acted recklessly, Ericsson must prove by clear and convincing evidence that the Defendants actually knew or should have known that their actions constituted an unjustifiably high risk of infringement of a valid patent. Ericsson's willful infringement claim requires a higher burden of proof, the clear and convincing standard, than Ericsson's other claims, which require only proof by a preponderance of the evidence.[86]

I will explain in more detail at the end of this final phase of the case how you will decide the allegations of infringement and willful infringement.

---

[86] Excerpted and adapted from instructions as given in *VirnetX, Inc. v. Microsoft Corp.*, No. 6-07-CV-80; *i4i LP v. Microsoft Corp.*, No. 6:07CV113 (E.D. Tex. May 2009) and *VirnetX Inc. v. Apple, Inc.*, Civil Action No. 6:10-CV-417.

**WILLFULNESS FINAL INSTRUCTION[87] [AGREED]**

You have heard the evidence in this phase of the trial regarding willfulness. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

Ericsson claims that the Defendants willfully infringed the claims of the patents-in-suit that you have found valid and infringed. Defendants claim that they have not willfully infringed the patents. The issue of willful infringement relates to the amount of damages Ericsson is entitled to recover in this lawsuit. If you decide that one of the Defendants willfully infringed the claims of one of the patents-in-suit, then it is my job to decide whether or not this willful infringement has any effect on damages.

Willfulness requires you to determine by clear and convincing evidence that the particular Defendant that you have found to be infringing acted with reckless disregard to the patent with respect to the claim you found infringed. To prove that a Defendant acted willfully, Ericsson must prove by clear and convincing evidence that the particular Defendant actually knew or should have known that its actions constituted an

---

[87] Adapted from *Virnetx Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-cv-417-LED, Final Jury Instruction No. 6.4 (Dkt. 780) [modified to include adaptation of from National Jury Instruction Projection, Model Patent Jury Instructions (2009), Final Instruction No. 4.1 and to address jury in terms of bifurcated trial]

unjustifiably high risk of infringement of a valid patent. To determine whether the particular Defendant had this state of mind, consider all the facts which may include, but are not limited to:

(1) Whether or not the Defendant acted in accordance with the standards of commerce for its industry;

(2) Whether or not there is a reasonable basis to believe that the Defendant did not infringe or had a reasonable defense, such as invalidity;

(3) Whether or not the Defendant made a good-faith effort to avoid infringing the patents, for example, whether the Defendant attempted to design around the patents; and

(4) Whether or not the Defendant tried to cover up its infringement.

None of these factors are determinative, and this list of factors is not an exhaustive list of things you should consider. Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during the trial.

Ericsson has the burden of proving willfulness clear and convincing evidence standard. When a party has a burden of proof by clear and convincing evidence, it means that the evidence must produce in your minds a firm belief or conviction as to the matter sought to be established. In other words, if you were to put the evidence for and against the party who must prove the fact on the opposite sides of a scale, clear and convincing evidence requires that the scale tip more heavily toward the party who has the burden of proof.