# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

ERICSSON INC., et al.,

      Plaintiffs,

      vs.

D-LINK CORPORATION, et al.,

      D-Links.

Civil Action No. 6:10-cv-473

**JURY TRIAL DEMANDED**

## DEFENDANTS' FEDERAL RULE OF CIVIL PROCEDURE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANTS (NON-INFRINGEMENT)

# TABLE OF CONTENTS

Page

I. ERICSSON HAS NOT OFFERED EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF DIRECT INFRINGEMENT ..................................1

    A. The '568 Patent ........................................................................2

    B. The '625 Patent ........................................................................5

    C. The '435 Patent ........................................................................7

    D. The '223 Patent ........................................................................8

    E. The '215 Patent ........................................................................9

II. ERICSSON HAS NOT OFFERED EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF INDIRECT INFRINGEMENT ...........................................10

    A. No Reasonable Jury Could Find That Defendants Induced Any Infringing Acts ..................................................................11

    B. No Reasonable Jury Could Find That Defendants Intended Their Customers To Infringe The Asserted Claims ...............................11

    C. No Jury Could Conclude That Defendants Specifically Intended To Encouraged Infringement Of The Asserted Claims ..........................................................................13

    D. Ericsson Did Not Advance Evidence Of Contributory Infringement ........................................................................14

K&E 26770382.1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   692 F.3d 1301 (Fed. Cir. 2012) ........................................................................ 11

*Fujitsu Ltd. v. Netgear, Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ........................................................................ 12

*Global-Tech Appliances, Inc. v. SEB S.A.,*
   131 S. Ct. 2060 (2011)...................................................................................... 10

*Mas-Hamilton Grp. v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) .......................................................................... 2

*Microsoft Corp. v. DataTern, Inc.*,
   2012 WL 3682915 (S.D.N.Y. Aug. 24, 2012)................................................... 11

*Mirror Worlds, LLC v. Apple, Inc.*,
   784 F. Supp. 2d 703 E.D. Tex. 2011)
   *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012)............................................................. 1, 9

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ............................................................................ 2

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011) .......................................................................... 4

**Statutes**

35 U.S.C. § 271(c) ............................................................................................... 11

Fed. R. Civ. P. 50(a) .............................................................................................. 1

Fed.R.Civ.Proc. 50(a)(1)...................................................................................... 12

K&E 26770382.1

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants D-Link Systems, Inc., NETGEAR, Inc., Acer America Corporation, Acer, Inc., Gateway, Inc., Dell Inc., Toshiba America Information Systems, Inc., Toshiba Corporation and Belkin International, Inc., and Intervenor Intel Corporation (collectively, "Defendants") respectfully move that the Court grant judgment as a matter of law ("JMOL") on all of plaintiffs' Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") claims against Defendants because Ericsson has failed to offer evidence sufficient to allow a reasonable jury to find in its favor on those claims.

## ARGUMENT

JMOL is appropriate on a given issue when, taking the record in the light most favorable to the non-moving party, a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 710 (E.D. Tex. 2011) (quoting Fed. R. Civ. P. 50(a)), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012). This standard is met here because the jury has no legally sufficient evidentiary basis to rule for Ericsson on any issue in support of any of its claims in its case-in-chief.

## I. ERICSSON HAS NOT OFFERED EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF DIRECT INFRINGEMENT

Ericsson asserts claims for direct and indirect infringement of the following U.S. patents against the Defendants:[1]

- United States Patent 6,330,435 ("the '435 patent");

- United States Patent 6,424,625 ("the '625 patent");

- United States Patent 6,466,568("the '568 patent");

---

[1] On May 31, 2013, Ericsson filed its "Supplemental Notice of Compliance with the Court's Claim Reduction Order" (Dkt. No. 470) in which it indicates that it is only pursuing claims 1 and 5 of the '568 patent, claims 1 and 2 of the '435 patent, claim 1 of the '625 patent, claims 1 and 2 of the '215 patent, and claim 11 of the '223 patent. Ericsson has not provided any evidence in support of any other patent or patent claim asserted in this action. Accordingly, the standard for JMOL is met with respect thereto and Defendants are entitled to judgment as a matter of law in their favor on these patent claims.

- United States Patent 6,772,215 ("the '215 patent").

Ericsson also asserts claims for direct and indirect infringement against Intel and those Defendants using Intel-supplied chips of the following U.S. patent:

- United States Patent 6,519,223 ("the '223 patent");

To prevail on its claim of infringement, Ericsson must prove that "every limitation of the asserted claim[s]" is literally present in the accused device or process.[2] *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1996). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citation omitted) (emphasis added). Here, despite having had a full and fair opportunity to litigate its claims and present its evidence, Ericsson has failed to come forward with legally sufficient evidence to establish that any of the accused products infringe any of the patents-in-suit, including because Ericsson has failed to come forward with evidence that every element of any claim is satisfied by any Defendant.

### A. Ericsson Has Put Forward No Evidence That Any Defendant Directly Infringed Any Method Claim

As a threshold matter, Ericsson has not come forward with any evidence proving direct infringement of the asserted method claims of the '215, '625, and '435 patents. "Direct infringement occurs only when someone performs the claimed method." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010). In order to establish direct infringement of a method claim, "a patent holder must establish that an accused infringer performs all the steps of the claimed method[.]" *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (internal quotation marks omitted)

---

[2] Ericsson has confirmed it is no longer asserting a claim of infringement by doctrine of equivalents and has not offered any evidence in support of such an assertion. *See* 5/23/2013 Tr. at 74:10-12. Because Ericsson has presented no evidence in support of such a claim, Defendants are entitled to JMOL of no infringement of the patents-in-suit under the doctrine of equivalents.

Here, Ericsson has presented no evidence demonstrating that Defendants themselves perform all of the required steps of these method claims. For example, Ericsson has put forward no evidence that any Defendant actually performs each and every step of the claimed method as required for infringement. Instead, Ericsson has relied on the conclusory summary by its expert witness that Defendants somehow perform the claimed methods because "the programming that the Defendants put in their products perform [the] method automatically without user intervention." 06/05/2013 am Tr. at 25:8-11. Such testimony is legally insufficient to carry Ericsson's burden. *See, e.g., Microsoft Corp. v. DataTern, Inc.*, 2012 WL 3682915, at *3 (S.D.N.Y. Aug. 24, 2012) ("[A] court should not consider mere *ipse dixit* of an expert—that is, conclusory statements without analytical basis.").

Moreover, even drawing all reasonable inferences in favor of Ericsson, Ericsson has not come forward with any evidence establishing that any Defendant has actually performed the steps of the asserted method claims. Ericsson's statements concerning how Defendants' products are programmed is insufficient as a matter of law including because the law is clear that "[a] party that does not perform a claimed step does not infringe a method claim merely because it is capable of doing so." *Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 Fed. Appx. 603, 607 (Fed. Cir. 2007). Because Ericsson has failed to put forward any evidence from which a reasonable jury could find that the Defendants actually perform any of the claimed methods, Defendants are entitled to JMOL in their favor on each of the asserted method claims.

**B.    The '568 Patent**

Also, Defendants are entitled to JMOL in their favor on Ericsson's claims for direct infringement of the '568 patent because Ericsson has not submitted legally sufficient evidence for a reasonable jury to find in its favor on those claims.

K&E 26770382.1

For example, asserted claim 1 and dependent claim 5 of the '568 Patent require "a service type identifier which identifies a type of payload information." PX-6 at claim 1. The Court has construed "a service type identifier which identifies a type of payload information" to mean "an identifier that identifies the type of information conveyed in the payload. Examples of types of information include, but are not limited to, video, voice, data, and multimedia." Dkt. 341 at 19. Ericsson has not met its burden of proving that Defendants' accused products (*e.g.*, Intel's accused 802.11n Wi-Fi chipsets, other Defendants' accused products containing 802.11n Wi-Fi chipsets) practice this element of claim 1 and dependent claim 5 of the '568 Patent.[3]

Ericsson contends that the "TID subfield" found in 802.11n data frames is a "service type identifier." PX-283, 802.11-2007; 06/05/2013 p.m. Tr. 32:21-24 (Nettles). This Court ruled that a "service type identifier" must identify what type of information—*e.g.*, voice, video, data, or multimedia—is contained in the payload of a packet. Ericsson's expert on infringement, Dr. Nettles conceded that there is no way to determine from an 802.11n packet's TID subfield whether that packet's payload contains video or voice or data, or another type of information. *See, e.g.*, 06/05/2013 p.m. Tr. 36:16:-23, 38:5-14, 38:19-39:21 (Nettles). Instead, the TID subfield contains a priority number used to prioritize packets for transmission. 06/05/2013 p.m. Tr. 28:14-20, 33:6-13, 33:21-34:5, 36:6-12, 37:8-14 (Nettles). The TID field does not identify the type of data contained within the packet's payload. 06/05/2013 p.m. Tr. 36:16:-23, 38:5-14, 38:19-39:21 (Nettles). By way of example, Ericsson's suggestion that a packet's priority serves merely as a proxy for a type of payload is disproved by its own testing. PX-356; *see also*, 06/05/2013 p.m. Tr. 36:16-23, 38:5-14, 38:19-39:21 (Nettles).

---

[3] Further, for each of the patents-in-suit, Ericsson has failed to come forward with sufficient evidence concerning the operation of each of the accused products and the Wi-Fi chip contained therein. JMOL in favor of Defendants is appropriate for this reason also.

4

Ericsson has put forth no evidence to establish that the TID subfield value identifies what type of information is contained in a packet's payload. A reasonable jury, therefore, could not find that the accused products infringe claim 1 of the '568 Patent. Additionally, Ericsson has failed to put forward any evidence that the accused products provide at least one second field "separate from" at least one first field. For these same reasons, no reasonable jury could find dependent claim 5 infringed by the Defendants' accused products. Furthermore, Ericsson has failed to put forward legally sufficient evidence to show that the accused products are a "base station" as used in claim 5.[4]

Further, to the extent Ericsson now contends that mere capability alone is sufficient to meet at least aspects of the asserted claims of the '568 patent, that contention is inconsistent with the law. *See, e.g.*, *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380-81 (Fed. Cir. 2011). Defendants are entitled to JMOL in their favor on Ericsson's claims for infringement of the '568 patent for this additional reason also.

### C. The '625 Patent

Further, Defendants are entitled to JMOL in their favor on Ericsson's claims for direct infringement of the '625 patent because Ericsson has not submitted legally sufficient evidence for a reasonable jury to find in its favor on those claims.

For example, asserted claim 1 of the '625 Patent recites a method for discarding packets that includes an automatic repeat request ("ARQ") scheme whereby a transmitter commands a receiver to "receive at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet . . . ." PX-4 at claim 1. Ericsson has not met

---

[4]    Defendants further incorporate by reference the grounds set forth in their Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 5,987,019 and 6,466,568 (Dkt. 371) as additional basis for the grant of JMOL. Notably, Ericsson's arguments at trial appear to be directly contrary to the positions taken in summary judgment where it argued that it did matter whether the TID subfield identifies voice, video, data or the like.

its burden of proving that Defendants' accused products (*e.g.*, Intel's accused 802.11n Wi-Fi chipsets, other Defendants' accused products containing 802.11n Wi-Fi chipsets) practice this element of claim 1 of the '625 Patent.

The evidence submitted by Ericsson establishes that Defendants' accused products do not issue or receive a command to receive as required by the claims. 802.11n Wi-Fi products continue to receive new packets even when prior ones are missing and will shift its window when it receives packets outside of the current window. 06/05/2013 p.m. Tr. 64:24-65:11, 66:7-10, 67:2-68:15, 72:16-73:3, 75:2-5 (Nettles); PX 285 (802.11n). By way of example, although Ericsson has accused the A-MPDUs of containing a "command to receive," the accused sequence number field of an A-MPDU simply contains the packet's sequence number in 802.11n products. A sequence number does not issue a command for the receiver to receive an out of sequence packet. Moreover, none of the bits in the 802.11n MAC header frame control field represents a "command to receive."

Similarly, there is no evidence that the Block Acknowledgement Request ("BAR") feature meets this limitation. A BAR requests that the receiver issue a Block Acknowledgement to indicate which packets the receiver has received; it can also instruct the receiver to shift its window forward to the position of a new starting sequence number of an A-MPDU. Neither of these functions equate to a "command to receive" an out of sequence packet as required by the claims. *See* 06/05/2013 p.m. Tr. 54:10 (Nettles). Ericsson, therefore, has not presented evidence sufficient for a reasonable jury to find that the accused products infringe claim 1 of the '625 Patent.

K&E 26770382.1

### D.     The '435 Patent

Further, Defendants are entitled to JMOL in their favor on Ericsson's claims for direct infringement of the '435 patent because Ericsson has not submitted legally sufficient evidence for a reasonable jury to find in its favor on those claims.

For example, asserted claim 1 and dependent claim 2 of the '435 Patent require performing the step of "computing which data packets have been discarded by the transmitter based on the data packet discard notification message." PX-3 at claim 1. The Court has defined "data packet discard notification message from the transmitter to the receiver indicating data packets the transmitter has discarded." to mean "a message that indicates data packets that the transmitter has discarded." Dkt. 341 at 16. Ericsson has failed to come forth with sufficient evidence to allow a reasonable jury to conclude that Defendants' accused products (*e.g.*, Intel's accused 802.11n Wi-Fi chipsets, other Defendants' accused products containing 802.11n Wi-Fi chipsets) meet this limitation of the claims.

By way of example, Defendants' accused products have an ARQ scheme that uses a BAR message that contains a starting sequence number. As discussed above, a BAR requests that the receiver issue a Block Acknowledgement to indicate which packets the receiver has received; it can also instruct the receiver to shift its window forward to the position of a new starting sequence number of an A-MPDU. PX-286. The BAR's starting sequence number informs the receiver of the current position in the A-MPDU or data stream. Ericsson has provided no evidence that the starting sequence number indicates to the receiver which data packets the transmitter has discarded. 06/05/2013 p.m. Tr. 116:3-16, 117:5-24 (Nettles). Further, knowing the starting sequence number does not allow the receiver to compute which packets the transmitter has discarded. 06/05/2013 p.m. Tr. 116:3-16 (Nettles). Additionally, Ericsson has failed to present evidence that the accused products remove entries from a list of data packets

expected to be received from the transmitter as claimed. Ericsson has not presented evidence sufficient for a fact-finder to find that the accused products infringe claim 1 of the '435 Patent.

For these same reasons, no reasonable jury could find dependent claim 2 infringed by the Defendants' accused products. Accordingly, Defendants are entitled to JMOL in their favor on all of Ericsson's claims for direct infringement of the '435 patent.

### E.      The '223 Patent

Further, Defendants against whom the '223 patent is asserted described above ("'223 Defendants"), are entitled to JMOL in their favor on Ericsson's claims for direct infringement of the '223 patent because Ericsson has not submitted legally sufficient evidence for a reasonable jury to find in its favor on those claims.

For example, asserted claim 11 of the '223 Patent recites the relevant elements of (1) a transmitter having a "data link layer therein for receiving a service data unit containing a plurality of said data packets, said data link layer segmenting said service data unit into at least one protocol data unit" and (2) a "discard timer being initialized when said service data unit is received by said data link layer." PX-8 at claim 11. Ericsson has not adduced facts sufficient to meet its burden of proving that the accused products (*e.g.*, Intel's accused 802.11n Wi-Fi chipsets, other Defendants' accused products containing Intel 802.11n Wi-Fi chipsets) segment service data units ("SDU") and comprise a discard timer as required by the claims.

By way of example, 802.11n expressly prohibits fragmenting MSDUs transmitted under Block Ack. PX-286 802.11-2009 § 9.1.5. The evidence on which Dr. Nettles relies concerning the '223 Defendants' products accused of infringing the '223 patent likewise confirms that those products do not fragment. (06/05/2013 pm Tr. at 78:5-81:2.) Moreover, Ericsson's own testing of Defendants' accused products demonstrated that out of 31,322 packets sent, none were fragmented. PX-356.

8

Moreover, there is no evidence that the discard timer element is met under 802.11n. By way of example, Ericsson's infringement theory relies on a timestamp. Moreover, in the accused products, the timestamp initializes when the MSDU enters the MAC (medium access control) layer, not the data link layer. 06/05/2013 pm Tr. 86:7-15. Under 802.11n, MSDUs sent from the network layer must first pass through a higher sublayer of the data link layer before reaching the lower MAC sublayer, which sits at the bottom of the data link layer. 06/05/2013 p.m. Tr. 84:15-86:6 (Nettles). Accordingly, the claimed discard timer does not initialize upon entering the data link layer and no reasonable fact-finder could find that the accused products infringe claim 11 the '223 Patent.

Accordingly, the '223 Defendants—namely Intel and those Defendants using Intel-supplied chips—are entitled to JMOL in their favor on all of Ericsson's claims for direct infringement of the '223 patent.

## F. The '215 Patent

Further, Defendants are entitled to JMOL in their favor on Ericsson's claims for direct infringement of the '215 patent because Ericsson has not submitted legally sufficient evidence for a reasonable jury to find in its favor on those claims.

For example, asserted claim 1 and dependent claim 2 of the '215 patent require "responsive to the receiving step, constructing a message field for a second data unit, said message field including a type identifier field." PX-10 at claim 1. The Court has construed this element of claim 1 to mean a step "responsive to the receiving step, generating a message field including a field that identifies the message type of the feedback response message from a number of different message types." Dkt. 341 at 9. Ericsson has alleged that the Compressed Bitmap and Multi-TID subfields of the BA Control Field of the accused 802.11n products (*e.g.*, Intel's accused 802.11n Wi-Fi chipsets, other Defendants' accused products containing 802.11n

Wi-Fi chipsets) satisfy the claimed "type identifier field" of claim 1. No reasonable jury could find in favor of Ericsson on its claims for infringement of the '215 patent in view of the evidence submitted.

By way of example, unlike the claimed invention, the Wi-Fi products at issue do not contemplate multiple forms of response messages. PX 286 (802.11n-2009). The Wi-Fi products at issue in this case can use only Compressed BlockAcks as their response message. PX 286 (802.11n-2009). Because they can only use the Compressed BlockAck, the accused products have no ability to "generat[e] a message field including a field that identifies the message type of the feedback response from a number of different message types" and thus do not meet this limitation. 06/05/2013 p.m. Tr. 43:11-17, 43:21-44:5, 44:16-47:7, 46:5-10, 114:12-15:8 (Nettles). Moreover, Ericsson's expert Dr. Nettles further confirmed through his testing that the accused products have only one available message type when generating a response message—they can only use Compressed BlockAcks. PX-356; 06/05/2013 p.m. Tr. at 46:25-47:8, 47:13-20, 113:14-114:5 (Nettles). Accordingly, Ericsson has not presented evidence sufficient to support a finding by a reasonable jury of infringement of claim 1 of the '215 Patent.

For these same reasons, no reasonable jury could find dependent claim 2 infringed by the Defendants' accused products. Accordingly, Defendants are entitled to JMOL in their favor on all of Ericsson's claims for direct infringement of the '215 patent.

## II.    ERICSSON HAS NOT OFFERED EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF INDIRECT INFRINGEMENT

Ericsson has not offered legally sufficient evidence of indirect infringement for the same reasons it has not offered evidence satisfying the claims of the patents-in-suit, as described above. Accordingly, Defendants are entitled to JMOL in their favor on all of Ericsson's indirect infringement claims for all the same reasons as those described above with respect to Ericsson's

10

direct infringement claims.  Also, Defendants are entitled to JMOL in their favor on all of Ericsson's indirect infringement claims for the additional reasons described immediately below.

### A.      No Reasonable Jury Could Find That Defendants Induced Any Infringing Acts

To prove induced infringement, Ericsson must prove that Defendants encourage a third party to perform, and that the third party actually did perform, each and every limitation of an asserted claim.  *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d at 1360-61 (Fed. Cir. 2012).  As explained above, Ericsson has not proven—and cannot prove—any act of direct infringement. Accordingly, Defendants are entitled to JMOL in their favor on all of Ericsson's indirect infringement claims.

### B.      No Reasonable Jury Could Find That Defendants Intended Their Customers To Infringe The Asserted Claims

In order to prevail on its indirect infringement claims, Ericsson must not only demonstrate direct infringement, but it must also establish demonstrate that Defendants acted with "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2068 (2011).  At the close of its case in chief, however, and drawing every reasonable inference in favor of Ericsson, it has at best shown only that certain Defendants received notice of the patents on certain dates prior to this litigation, held discussions with Ericsson regarding its infringement allegations, but were unable to reach an agreement with Ericsson.  *See*, *e.g.*, PX-554.  Beyond these bare facts, however, Ericsson offered nothing to suggest that Defendants knew its customers' use of the accused products would infringe the patents-in-suit or that any Defendant deliberately encouraged them to do so.  Instead, the only "evidence" that Ericsson presented was the conclusory testimony proffered by Dr. Nettles's:

> Q.      And in addition to the Defendants, who else performs the method that you found?
> A.      The users of the devices the Defendants sell.
> Q.      Who's responsible for that?

A.    The Defendants.

Q.    Why is that?

A.    The Defendants induce the users to practice this method by basically selling something that does the method and encouraging them to use it.

Q.    And have you seen evidence that the Defendants intend that their devices be used for 802.11n?

A.    Yes, sir. That -- that's -- that's the whole reason for selling them.

06/05/2013 a.m. Tr. at 25:12-24 (Nettles); *see also*, 06/05/2013 a.m. Tr. at 79:7-10 (Nettles). The evidence presented by Ericsson on these issues is legally insufficient to establish the necessary factual predicts for a reasonable jury to find in Ericsson's favor. First, the mere fact that Defendants knew of Ericsson's patents is insufficient to support a finding of inducement. *See, e.g., Guzik Technical Enterprises, Inc. v. Western Digital Corp.*, 2012 WL 1669355, *3 (N.D. Cal. May 11, 2012) ("But knowledge of the patents alone is insufficient to establish the mental state required for an indirect infringement claim."). In addition, the mere fact Defendants intended their devices to be used for 802.11n is equally unavailing as "[i]nducement requires evidence of culpable conduct, directed to encourage another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)). Here, the only evidence that Ericsson has put forward is that the defendants sold products compatible with 802.11n, but it is well-established that "acts incident to product distribution, such as offering customers technical support or product updates, [cannot] support liability in themselves." *Grokster*, 545 U.S. at 937. In short, the only evidence that Ericsson has come forward with on this issue -- mere knowledge of the patents, coupled with alleged knowledge that the products would be used in 802.11n -- is insufficient as a matter of law to establish the intent element of induced infringement. *DSU Medical Corp.*, 471 F.3d at 1306 ("inducement requires evidence of culpable conduct, directed to encourage another's

infringement, not merely that the inducer had knowledge"). Accordingly, Defendants are entitled to JMOL in their favor on all of Ericsson's indirect infringement claims.[5]

By way of another example, to the extent that Ericsson intends to rely on a "willful blindness theory" to avoid its failure of proof, proving willful blindness requires "(1) defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 131 S. Ct. at 2070. Ericsson cannot meet its burden. None of Ericsson's evidence proves or suggests that Defendants subjectively believed a high probability of infringement existed, nor did any evidence submitted show or suggest that Defendants deliberately shielded themselves from the discovery of any facts. Since the filing of this lawsuit, Defendants have maintained reasonable and consistent positions, further negating Ericsson's claim of intent. For this additional exemplary reason, Defendants are entitled to JMOL in their favor on all of Ericsson's indirect infringement claims.

## C. No Jury Could Conclude That Defendants Specifically Intended To Encouraged Infringement Of The Asserted Claims

Ericsson also has failed to submit any evidence establishing or suggesting that Defendants manifested a specific intent to encourage another's infringement. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012). Although Ericsson has referenced Defendants' website and consumer product materials, such materials at best merely instruct users on the basic operation of the product; Ericsson has provided no evidence whatsoever that Defendants encouraged others to practice the claimed inventions of the patents-

---

[5] Intel disputes that Ericsson has properly asserted an induced infringement claim via its infringement contentions, or expert disclosures, and submits this section in order to preserve its rights and without waiver of its arguments or objections to any assertions of induced infringement by Ericsson. For avoidance of doubt, Intel is entitled to JMOL in its favor on Ericsson's induced infringement claims because Ericsson has not come forward with any evidence to establish those claims.

in-suit.  *See*, *e.g.*, PX-504.  Specifically, the product descriptions submitted by Ericsson at best give the user information to setup and operate the general device, such as a computer or router. The instructions do not drill down to the level of how the Wi-Fi chips operate—which is the crux of Ericsson's infringement allegations.  Defendants are therefore entitled to JMOL in their favor on all of Ericsson's indirect infringement claims for this reason also.

### D.    Ericsson Did Not Advance Any Evidence Of Contributory Infringement[6]

Ericsson also did not provide any evidence necessary to prove contributory infringement under 35 U.S.C. § 271(c).  Ericsson—through Dr. Nettles or any of its other witnesses—failed to proffer any evidence to suggest contributory infringement by Defendants, and further failed even to attempt to supply evidence satisfying the requirements of contributory infringement, namely: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial non-infringing uses, and (4) that the component is a material part of the invention."  *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *see also* 35 U.S.C. § 271(c).  For the reasons set forth above, Ericsson has failed to show any instance of direct infringement which negates any contributory infringement, or the requisite intent for contributory infringement.  Ericsson has further failed to come forth with any evidence to establish the other factors for contributory infringement such as, for example, the absence of substantial non-infringing uses.  Ericsson therefore has no valid evidentiary basis that would allow a reasonable jury to find that any Defendant contributorily infringed any of the patents-in-suit.  Therefore, Defendants are entitled to JMOL in their favor on all of Ericsson's indirect infringement claims.

---

[6]    Defendants dispute that Ericsson has properly asserted a contributory infringement claim via its infringement contentions, or expert disclosures, and submits this section in order to preserve their rights and without waiver of their arguments or objections to any assertions of contributory infringement by Ericsson.

## CONCLUSION

For the foregoing reasons, Ericsson has failed to come forward with a legally sufficient evidentiary basis to find in its favor on any of its infringement claims against Defendants. Accordingly, the Court should grant judgment as a matter of law in Defendants' favor on all issues of infringement and, consistent therewith, enter JMOL in favor of Defendants on all of Ericsson's infringement claims. *See* Fed. R. Civ. P. 50(a)(1).

K&E 26770382.1

DATED: June 6, 2013

Respectfully submitted,

*/s/ Robert M. Parker*

Robert M. Parker (State Bar No. 15498000)
Robert Christopher Bunt (State Bar No. 00787165)
Charles Ainsworth (State Bar No. 00783521)
Andrew T. Gorham (State Bar No. 24012715)
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile:  (903) 533-9687
rmparker@pbatyler.com
rcbunt@pbatyler.com
charley@pbatyler.com
tgorham@pbatyler.com

Michael E. Jones (State Bar No.: 10929400)
John F. Bufe (State Bar No.: 03316930)
Allen F. Gardner (State Bar No.: 24043679)
**POTTER MINTON, PC**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903)597-8311
Facsimile: (903) 593-0846
mikejones@potterminton.com
johnbufe@potterminton.com

Adam R. Alper *(Admitted Pro Hac Vice)*
Sarah E. Piepmeier *(Admitted Pro Hac Vice)*
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1876
Facsimile:  (415) 439-1500
adam.alper@kirkland.com
sarah.piepmeier@kirkland.com

Luke Dauchot *(Admitted Pro Hac Vice)*
Tim Majors *(Admitted Pro Hac Vice)*
Michael De Vries *(Admitted Pro Hac Vice)*
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile:  (213) 680-8500
luke.dauchot@kirkland.com
tim.majors@kirkland.com
michael.devries@kirkland.com

Gregory S. Arovas *(Admitted Pro Hac Vice)*
**KIRKLAND & ELLIS LLP**
601 Lexington Ave
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
greg.arovas@kirkland.com
**ATTORNEYS FOR INTEL CORPORATION**

*/s/ Christine M. Morgan*
Scott D. Baker, *Pro Hac Vice* (Cal. SBN 84923)
John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
James A. Daire, *Pro Hac Vice* ( Cal. SBN 239637)
Christine M. Morgan, *Pro Hac Vice* (Cal. SBN 169350)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)
Seth B. Herring
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269
sbaker@reedsmith.com
jbovich@reedsmith.com
jdaire@reedsmith.com
ahilgard@reedsmith.com
woverend@reedsmith.com
jmitchell@reedsmith.com
sherring@reedsmith.com

K&E 26770382.1

Trey Yarbrough (Bar No. 22133500)
Debra E. Gunter (Bar No. 24012752)
**YARBROUGH & WILCOX, PLLC**
100 E. Ferguson, Ste. 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com
**Counsel for Defendants, D-LINK SYSTEMS, INC.,
NETGEAR, INC., ACER, INC., ACER AMERICA
CORPORATION, and GATEWAY, INC.**


  */s/ Christine Yang* (with permission)
S.J. Christine Yang (admitted *pro hac vice*)
Duncan Palmatier (admitted *pro hac vice*)
Victoria Hao (admitted *pro hac vice*)
**THE LAW OFFICES OF S.J. CHRISTINE YANG**
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Tel: (714) 641-4022; Fax: (714) 641-2082
cyang@sjclawpc.com
dpalm@dpalmlaw.com
vhao@sjclawpc.com
**Counsel for Defendant D-LINK SYSTEMS, INC.**


  */s/ Dwayne C. Norton* (with permission)
Michael J. Newton (Texas Bar No. 24003844)
Jason W. Cook (Texas Bar No. 24028537)
Dwayne C. Norton (Texas Bar No. 24076139)
Shaun W. Hassett (Texas Bar No. 24074372)
Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood St, Suite 1800
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
mike.newton@alston.com
jason.cook@alston.com
dwayne.norton@alston.com
shaun.hassett@alston.com
brady.cox@alston.com

K&E 26770382.1

Marsha E. Mullin (California Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
marsha.mullin@alston.com

Frank G. Smith (Georgia Bar No. 657550)
Kamran Jivani (Georgia Bar No. 510908)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
frank.smith@alston.com
kamran.jivani@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone:   (903) 705-1117
Facsimile:     (903) 581-2543
ddacus@dacusfirm.com
**Counsel for DEFENDANT DELL INC.**


  _/s/ John Feldhaus_ (with permission)
John Feldhaus
Pavan Agarwal
Andrew R. Cheslock
**FOLEY & LARDNER LLP**
3000 K. Street, NW, Suite 500
Washington, DC 20007
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
 jfeldhaus@foley.com
pagarwal@foley.com
acheslock@foley.com

K&E 26770382.1

Kevin J. Malaney
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 319-7067
Facsimile: (414) 297-4900
kmalaney@foley.com

Guy N. Harrison
Attorney at Law
217 N. Center
Longview, TX 75606
Telephone: (903) 758-7361
Facsimile: (903) 753-9557
guy@gnhlaw.com
**Counsel for TOSHIBA CORPORATION AND
TOSHIBA AMERICA INFORMATION SYSTEMS,
INC.**

   */s/ Ryan K. Yagura* (with permission)
Ryan K. Yagura (Bar No. 24075933)
Vision Winter (*Pro Hac Vice*)
Eric Chan
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
vwinter@omm.com
ryagura@omm.com
echan@omm.com
**Attorneys for BELKIN INTERNATIONAL, INC.**

20

_/s/  Eugene M. Paige_ (with permission)
Robert A. Van Nest
Eugene M. Paige
Matan Shacham
**KEKER & VAN  NEST LLP**
633 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
rvannest@kvn.com
emp@kvn.com
mshacham@kvn.com
**Attorneys for ACER, INC., D-LINK
CORPORATION and GATEWAY, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 6, 2013.

      _/s/ Robert M. Parker_
      Robert M. Parker