**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **ERICSSON INC., et al.,** | |
| **Plaintiffs,** | |
| **vs.** | **Civil Action No. 6:10-cv-473** |
| **D-LINK CORPORATION, et al.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

**DEFENDANTS' FEDERAL RULE OF CIVIL PROCEDURE 50(a) MOTION FOR**
**JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANTS**
**(WILLFULNESS)**

# TABLE OF CONTENTS

**Page**

I. ERICSSON HAS FAILED TO OFFER CLEAR AND CONVINCING EVIDENCE THAT DEFENDANTS WERE OBJECTIVELY RECKLESS ............... 2

    A.      Ericsson's Failure To Satisfy The Objective Prong Of The Willfulness Standard Requires That The Subjective Prong Not Be Submitted To The Jury ................................................................................................................ 2

    B.      Defendants' Continued Sale of the Accused Products Was Not Objectively Reckless In Light Of Ericsson's RAND Obligations ............................................... 4

    C.      The Record Developed Before and During Trial Demonstrate That Defendants' Non-Infringement and Invalidity Defenses Are Meritorious and Substantial ................................................................................................. 5

        1.      The '568 Patent ................................................................................. 6
        2.      The '625 Patent ................................................................................. 8
        3.      The '435 Patent ................................................................................. 10
        4.      The '223 Patent ................................................................................. 12
        5.      The '215 Patent ................................................................................. 13

II. CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apple, Inc. v. Motorola, Inc.*,
869 F. Supp. 2d 901 (N.D. Ill., 2012) .............................................................. 4

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
260 F. App'x 280 (Fed. Cir. 2008)................................................................... 3

*CSB-Sys. fnt'l Inc. v. SAP Am. Inc.*, No. 10-2156,
2012 WL 1439059 (E.D. Pa. Apr. 25, 2012) ................................................... 3

*Highmark, Inc. v. Allcare Health Management Systems, Inc.*,
687 F.3d 1300 (Fed. Cir. 2012)........................................................................ 2

*In re Seagate Technology, LLC*,
497 F.3d 1360 (Fed. Cir. 2007).............................................................. 2, 3, 5, 6

Mirror Worlds, LLC v. Apple, Inc.,
784 F. Supp. 2d 703 (E.D. Tex. 2011) ............................................................. 1

*OPTi Inc. v. Apple, Inc.*,
2009 U.S. Dist. LEXIS 112537 (E.D. Tex. Dec. 3, 2009) ............................... 6

*Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*,
682 F.3d 1003 (Fed. Cir. 2012)...................................................................... 2, 3

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011)........................................................................ 2

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ......................................................................... 6

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
620 F.3d 1305 (Fed. Cir. 2010)........................................................................ 3

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)........................................................................ 6

**RULES**

Fed. R. Civ. P. 50........................................................................................... 1

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants D-Link Systems, Inc., NETGEAR, Inc., Acer America Corporation, Acer, Inc., Gateway, Inc., Dell Inc., Toshiba America Information Systems, Inc., Toshiba Corporation and Belkin International, Inc., and Intervenor Intel Corporation (collectively, "Defendants") respectfully move that the Court grant judgment as a matter of law ("JMOL") on all of plaintiffs' Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") claims for willful infringement.

Trial on liability is concluded. Ericsson has made its best case for alleged infringement of the patents-in-suit. But its proof does not show infringement, much less objectively reckless infringement. Ericsson cannot, therefore, satisfy the objective prong of the willfulness question. Ericsson was required to prove by clear and convincing evidence that Defendants acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Defendants have presented substantial, credible, and meritorious defenses to each of Ericsson's claims at trial and throughout this action, and to the validity of several of Ericsson's asserted patents. Because the power to decide the objective prong resides exclusively with the Court, the matter can be decided now on this record—bifurcated proceedings with this jury to decide whether Defendants acted in a subjectively reckless are unnecessary. Accordingly, JMOL should be granted.

## ARGUMENT

JMOL is appropriate on a given issue when, taking the record in the light most favorable to the non-moving party, a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 710 (E.D. Tex. 2011) (quoting Fed. R. Civ. P. 50(a)). This standard is met here because there is no legally sufficient evidentiary basis to rule for Ericsson on any issue in support of its willful infringement claims against Defendants. The threshold objective prong of the willfulness

analysis has not been shown, thus the issue under the second, subjective prong need not be put to the jury.

## I.  ERICSSON HAS FAILED TO OFFER CLEAR AND CONVINCING EVIDENCE THAT DEFENDANTS WERE OBJECTIVELY RECKLESS

### A.  Ericsson's Failure To Satisfy The Objective Prong Of The Willfulness Standard Requires That The Subjective Prong Not Be Submitted To The Jury

The Federal Circuit applies a two-prong test for establishing willful infringement. First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005-06 (Fed. Cir. 2012) (*citing In re Seagate Technology, LLC*, 497 F.3d 1360, 1378 (Fed. Cir. 2007)). Once the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id*. Without satisfaction of both prongs, the patentee's willfulness claim must fail.

The "objective" test of "whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge." *Id*. at 1008. If, as here, the patentee cannot satisfy the objective prong, the issue of willfulness—including the second "subjective" prong—cannot be put before a jury. "Should the court determine that the infringer's reliance on a defense was not objectively reckless, *it cannot send the question of willfulness to the jury, since proving the objective prong is a predicate to consideration of the subjective prong.*" *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) (emphasis added); *see also Highmark, Inc. v. Allcare Health Management*

*Systems, Inc.*, 687 F.3d 1300, 1309 (Fed. Cir. 2012) (citing *Bard* and *Powell* and noting that the "threshold objective prong" determination must be made by the court as a matter of law).

The "'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement." *Bard*, 682 F. 3d at 1005-06 (quoting *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010)); *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 F. App'x 280, 291 (Fed. Cir. 2008) ("both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."). "This holds true even if defenses to infringement, including claim constructions, are unsuccessful, so long as they are legitimate or reasonable." *CSB-Sys. Int'l Inc. v. SAP Am. Inc.*, No. 10-2156, 2012 WL 1439059, at *3 (E.D. Pa. Apr. 25, 2012). The "state of mind of the accused infringer is not relevant to this objective inquiry" which is "determined by the record developed in the infringement proceeding." *In re Seagate Tech.*, 497 F.3d at 1371.

Here, the evidence in the liability phase of the trial is closed and Ericsson has put forward its best evidence regarding Defendants' alleged infringement and the validity of the patents-in-suit. Based on all the evidence submitted at trial and also the record developed during the litigation (including Defendants' claim construction and summary judgment motions), Ericsson cannot meet the threshold requirement to show that Defendants were objectively reckless by clear and convincing evidence, as described below. Indeed, as set forth below—and as further detailed in Defendants' additional motions for judgment as a matter of law (which are filed concurrently herewith and incorporated herein by reference)—Defendants have presented meritorious, substantial, and compelling non-infringement and invalidity defenses. The existence of these defenses precludes a finding that Defendants were objectively reckless.

Accordingly, the objective prong is not satisfied and Ericsson's willfulness claim must fail. Defendants request judgment as a matter of law on the issue of willfulness under Rule 50(a) of the Federal Rules of Civil Procedure.

**B.** **Defendants' Continued Sale of the Accused Products Was Not Objectively Reckless In Light Of Ericsson's RAND Obligations**

Ericsson has taken the position that Defendants' continued sale of the accused products after Ericsson provided notice and/or instituted litigation demonstrates that the Defendants acted willfully. Ericsson is incorrect.

Ericsson's witnesses have uniformly conceded that Ericsson owes a RAND obligation with respect to all of the patents-in-suit that, among other things, requires Ericsson to license its patents on a reasonable and non-discriminatory basis. PX-293; PX-294; 06/04/2013 a.m. Tr. at 127:3-15 (Brismark); 06/04/2013 p.m. Tr. at 34:5-10 (Petersson). Ericsson's RAND commitment is a "[p]romise to license . . . to anyone who requests a license." DX-97; *see also* 06/03/2013 p.m. at 129:13-18 (Brismark). Ericsson's RAND promise means that all Defendants—including Intel and the OEMs—are entitled to a license on RAND terms. In addition, by virtue of its RAND commitment, Ericsson is not entitled to an injunction. *See, e.g., Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 915 (N.D. Ill., 2012) ("A FRAND royalty would provide all the relief to which Motorola would be entitled if it proved infringement of the '898 patent, and thus it is not entitled to an injunction."). If Ericsson is not entitled to an injunction to prevent the sale of the accused products, it logically follows that Defendants could not have been objectively reckless in continuing to sell them.

Defendants' continued sale of the accused products was also objectively reasonable in light of the fact that 802.11n was designed by the Wi-Fi chip suppliers (like Intel, Broadcom, and Atheros). 06/06/2013 p.m. Tr. at 134:8-23 (McFarland). It makes sense that the chip suppliers

4

were the leaders in developing 802.11n because the Wi-Fi technologies that embody the 802.11n standard exist within the chip. *Id.;* 6/04/2013 a.m. Tr. at 63:18-64:1 (Brismark). In contrast, Ericsson had no involvement in the development of the 802.11n standards. 06/11/2013 a.m. Tr. (Iwerback); 06/04/2013 p.m. Tr. at 94:3-9 (Brismark). Any plans that Ericsson had to get into 802.11-based product development were terminated in 2001. 06/11/2013 a.m. Tr. (Iwerback). Ericsson had no Wi-Fi research and development products in 2010, and it acquired BelAir in 2012 in order to get Wi-Fi products in its product portfolio. *Id.* Notwithstanding the chip suppliers' important role, Ericsson has a long-standing policy of not granting licenses to Wi-Fi chip suppliers—in direct violation of its RAND commitment.[1] 06/04/2013 at 27:5-11, 47:20-48:6 (Petersson); 06/05/2013 p.m. Tr. at 144:25-146:7 (Bone). Regardless, all of the OEM Defendants had discussions with Ericsson about Ericsson's claims, but were unable to reach agreement. Dkt. 474. Under these circumstances, and considered in light of the meritorious and substantial defenses described below, it was not objectively reckless to continue to sell the accused products.

> **C. The Record Developed Before and During Trial Demonstrate That Defendants' Non-Infringement and Invalidity Defenses Are Meritorious and Substantial**

Defendants have presented meritorious defenses and positions at all phases of this litigation—including in their motion for summary judgment and during trial. As set forth in Defendants' motions for judgment as a matter of law of non-infringement, the contents of which are hereby incorporated by reference, Ericsson has failed put forward sufficient evidence for a reasonable jury to find that any of the patents-in-suit are infringed by any of the Defendants. A substantial question of non-infringement negates a showing of the objective prong of willful

---

[1] In fact, Ericsson did not even file suit against Intel; Intel had to file a motion to intervene to become involved in this litigation. 6/05/2013 p.m. Tr. at 144:25-145:11 (Bone).

infringement. *Seagate*, 497 F.3d. at 1374; *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1310 (Fed. Cir. 2011) ("If the accused infringer's position is susceptible to a reasonable conclusion of no infringement, the first prong of Seagate cannot be met."); *OPTi Inc. v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 112537, at \*\*7-9 (E.D. Tex. Dec. 3, 2009) (granting defendant's motion for JMOL on willfulness).

In addition, and as set forth more fully in Defendants' motion for judgment as a matter of law of invalidity filed concurrently herewith, which is incorporated herein by this reference, no reasonable jury could find the asserted clams of the '625 and '435 patents valid. For the reasons set forth in Defendants' JMOL motion, and as briefly set forth below, Ericsson cannot show that Defendants were objectively reckless with respect to these patents for this additional reason, as Defendants have presented substantial, meritorious invalidity defenses.

### 1. The '568 Patent

Ericsson accused the "TID subfield" found in 802.11n data frames as being a "service type identifier" meeting the limitations of claims 1 and 5 of the '568 Patent. PX-283, 802.11-2007; 06/05/2013 p.m. Tr. 32:21-24 (Nettles). During claim construction proceedings, Ericsson argued that the "service type identifier" limitation should be construed to mean "an identifier which identifies transmission characteristics of payload information." Dkt. 341 at 18 (Markman Order). The Court rejected Ericsson's argument. It held that "[t]he language of the claim is clear in that the service type identifier identifies the type of payload information, not the transmission characteristics of that information." *Id*. Accordingly, a "service type identifier" must identify what type of information—*e.g.*, voice, video, data, or multimedia—is contained in the payload of a packet.

Defendants filed a motion for summary judgment of non-infringement of the '568 Patent on grounds including the fact that Ericsson's expert admitted that the "TID subfield" value does

not identify what is contained in a packet's payload. Dkt. 488. Ericsson speculated in response that "TID subfield" values might be assigned in such a way that they correspond to payload content. Dkt. 488 at 11. At trial, however, Dr. Nettles conceded that TID values "don't necessarily reflect the type of data that's in the payload" and that the "system can't determine, from the TID value alone, whether or not the data conveyed in the packet is video, voice, multimedia, or anything else . . . ." *See, e.g.*, 06/05/2013 p.m. Tr. 36:16:-23, 38:5-14, 38:19-39:21 (Nettles).

Instead, as the evidence shows, the TID subfield contains a priority number used to prioritize packets for transmission — to "determine how the data's to be used." 06/05/2013 p.m. Tr. 28:14-20, 33:6-13, 33:21-34:5, 36:6-12, 37:8-14 (Nettles). Neither the TID subfield nor its priority number identifies the type of data contained within the packet's payload. 06/05/2013 p.m. Tr. 36:16:-23, 38:5-14, 38:19-39:21 (Nettles). Indeed, there is no relationship between the TID subfield and any type of data. 06/06/2013 p.m. 121:14-17 (Kitchin). As Mr. Kitchin testified, "other types of data, other than voice, [can] be in VO, and other types of data, other than video [can] be in VI." 06/06/2013 p.m. 116:15-23 (Kitchin). There is "not a fixed relationship" between "priority and type of data that goes into the packet." 06/06/2013 p.m. 38:21-39:1 (Kitchin). Mr. McFarland also confirmed that the TID subfield "does not" identify the type of data in the packet; "[a]ny type of content can be placed at any priority level at any given moment." 06/06/2013 p.m. 153:23-155:2 (McFarland).

Dr. Nettles' agreement with Defendants' position proves that Defendants' non-infringement defense is meritorious and entitles Defendants to judgment as a matter of law in their favor on Ericsson's claim of infringement of this patent. Even if the Court were to deny that motion, however, Defendants' defense is would remain objectively reasonable. Both before

and during trial, Defendants have presented substantial, meritorious defenses of non-infringement with respect to claims 1 and 5 of the '568 patent, and the objective prong of the willfulness standard cannot be met with respect to this patent as a matter of law.

### 2. The '625 Patent

The '625 Patent claims a method for discarding packets that includes an automatic repeat request ("ARQ") scheme whereby a transmitter commands a receiver to "receive at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet . . . ." PX-4 at claim 1. Ericsson has accused the A-MPDUs in 802.11n products of containing a "command to receive."

Inventor Mikael Larsson stated that the key portion of the invention in the '625 is that the command to receive "can force the receiver to move on and change the window -- reception window and don't expect (sic) packets that have been discarded." 06/04/2013 a.m. Tr. 104:15-23 (Larsson). Mr. Larsson agreed that if the system was designed so that it would "shift the window automatically with just a regular packet" then you "wouldn't need the command" identified in claim 1 of the patent." 06/04/2013 a.m. Tr. 110:7-14 (Larsson).

As Dr. Nettles testified, "a receiver in an 802.11 device is always ready to go" because "it's got the green light to take packets in any order inside or outside the window." 06/05/2013 p.m. Tr. 68:9-68:15 (Nettles). The accused sequence number field of an A-MPDU simply contains the packet's sequence number in 802.11n products. No evidence suggests that a sequence number issues a command for the receiver to receive an out of sequence packet, and in fact, all the evidence proves precisely the opposite; none of the bits in the 802.11n MAC header frame control field constitutes a "command to receive." *See*, *e.g.*, 06/05/2013 p.m. Tr. 54:10 (Nettles). Indeed, the '625 Patent compared a regular, prior art packet with the allegedly

inventive '625 packet, which contains an enforcement bit. *Compare* PX 4 ('625 Patent) at Figure 5 with Figure 8.

Defendants' invalidity defense to this patent is equally meritorious. For example, Dr. Heegard demonstrated that the Petras reference (PX 120 ("Candidate Protocol Stack (MAC + LLC) for a Wireless ATM Air Interface," by Dietmar Petras, *et al.*, Oct. 13, 1997), herein "Petras" or "Petras reference") anticipated claim 1 of the '625 Patent, through a detailed element-by-element by element analysis:

- *A method for discarding packets in a data network employing a packet transfer protocol including an automatic repeat request scheme*: For example, the preamble is met by the disclosure of the ARQ Sender and ARQ Receiver. PX 120 at 14-15 (see, e.g., Fig. 11); *see, e.g.*, 06/10/2013 p.m. Tr. 142:9-21 (Heegard).

- *a transmitter . . . commanding a receiver . . . to receive at least one packet having a sequence number that is not consecutive with a sequence number of a previously received packet*: For example, the step of a transmitter commanding a receiver to receive at least one packet is disclosed by virtue of the discard message being piggybacked on an I-frame. The I-frame forces the receiver to receive the data packet that is sent along with the discard message—even if the window is otherwise not able to receive the packet. PX 120 at 14-15; *see, e.g.*, 06/10/2013 p.m. Tr. 142:2-10, 142:22-143:19 (Heegard).

- *release any expectation of receiving outstanding packets having sequence numbers prior to the at least one packet*: For example, Petras teaches the step of a transmitter commanding a receiver to release expectations of receiving any earlier packets by showing that the transmitter need only send the highest sequence number of a discarded packet. PX 120 at 14-15; 06/10/2013 p.m. Tr. 143:20-144:15. Additionally, prior art receivers required a command or instruction in order to accept packets outside of their window. Without the inclusion of this command attached to a packet, the receiver would simply treat the packet as any other and thus fail to resolve the deadlock. *See, e.g.,* 06/10/2013 p.m. Tr. 143:20-144:15 (Heegard).

- *the transmitter discarding all packets for which acknowledgement has not been received, and which have sequence numbers prior to the at least one packet*: For example, Petras discloses that the transmitter sends a discard message to the receiver. The discard message informs the receiver of all packets that have expired and thus been discarded by the transmitter. PX 120 at 14-15; *see, e.g.*, 06/10/2013 p.m. Tr. 144:16-145:1 (Heegard).

9

Accordingly, Defendants have presented substantial, reasonable defenses of non-infringement and invalidity with respect to claim 1 of the '625 Patent, and the objective prong of the willfulness standard cannot be met with respect to this patent as a matter of law.

### 3. The '435 Patent

Asserted claims 1 and 2 of the '435 Patent require performing the step of "computing which data packets have been discarded by the transmitter based on the data packet discard notification message." PX-3 at claim 1. The Court has defined "data packet discard notification message from the transmitter to the receiver indicating data packets the transmitter has discarded" to mean "a message that indicates data packets that the transmitter has discarded." Dkt. 341 at 16.

It is undisputed that the computing step of these claims requires "an identification of at least all of the packets that have been discarded by the transmitter." 06/05/2013 p.m. Tr. 116:3-7 (Nettles). A BAR requests that the receiver issue a Block Acknowledgement to indicate which packets the receiver has received; it can also instruct the receiver to shift its window forward to the position of a new starting sequence number of an A-MPDU. PX-286. A BAR, however, "will not allow the receiver to identify which of the previously-acknowledged packets the transmitter has discarded." 06/05/2013 p.m. Tr. 117:9-13 (Nettles).

In addition, Ericsson has provided no evidence that the starting sequence number indicates to the receiver which data packets the transmitter has discarded. 06/05/2013 p.m. Tr. 116:3-16, 117:5-24 (Nettles). And, Ericsson has not established that the starting sequence number is or could be used by the receiver to compute which packets the transmitter has discarded. 06/05/2013 p.m. Tr. 116:3-16 (Nettles).

That the receiver never computes what the transmitter has discarded was also confirmed by Mr. Kitchin and Mr. McFarland. Mr. Kitchin testified that there is "no reason" for the

receiver to know what the transmitter has discarded — "[i]t's just unnecessary." 06/06/2013 p.m. Tr. 59:17-23 (Kitchin). Mr. McFarland similarly testified that "[w]e don't do any computation about what's been discarded" and "[w]e don't try to understand what's been discarded or what hasn't been discarded." 06/06/2013 p.m. Tr. 152:15-20 (McFarland).

Defendants' invalidity defense is equally meritorious. For example, Dr. Heegard demonstrated that the Petras reference (PX 120) anticipated claims 1 and 2 of the '435 Patent, through a detailed element-by-element analysis:

- *A method for discarding data packets in a system having a transmitter and a receiver, wherein the method is complimentary to the Selective Repeat Automatic Repeat Request protocol*: By way of example, the preamble is met by the disclosure of the ARQ Sender and ARQ Receiver. PX 120 at 14-15 (see, e.g., Fig. 11); see, e.g., 06/10/2013 p.m. Tr. 124:20-125:20, 134:8-19 (Heegard).*transmitting a data packet discard notification message from the transmitter to the receiver indicating data packets the transmitter has discarded*: By way of example, the Petras reference teaches the step of "transmitting a data packet discard notification message from the transmitter to the receiver indicating data packets the transmitter has discarded" because Petras disclosed that a transmitter that may send a short "discard message" containing only the sequence number, instead of the discarded packet, informing the receiver of the packets that had been discarded by the transmitter. PX 120 at 14-15; *see, e.g.,* 06/10/2013 p.m. Tr. 134:29135:5 (Heegard).

- *receiving the data packet discard notification message*: By way of example, the Petras reference discloses the step of "receiving the data packet discard notification message" because Petras teaches that the receiver accepts the discard message like any other packet. PX 120 at 14-15 (*see, e.g.* Fig. 11); *see, e.g.,* 06/10/2013 p.m. Tr. 123:20-124:10, 130:20-131:18, 135:6-12 (Heegard).*computing which data packets have been discarded by the transmitter based on the data packet discard notification message*: By way of example, the Petras reference teaches the step of "computing which data packets have been discarded" by disclosing that the receiver, based on the sequence number contained in the discard message, can compute that all packets having lower sequence numbers have been discarded by the transmitter. PX 120 at 14-15; *see, e.g.,* 06/10/2013 p.m. Tr. 130:20-131:13, 135:13-137:22 (Heegard).

- *removing entries from a first list indicating data packets expected to be received from the transmitter, wherein the entries correspond to data packets identified in the computing step*: By way of example, the receiver of the system described in Petras,

11

which had a fixed reception window, had to keep track of the packets in its buffer in order to know when it could advance its reception window because the missing packets had been discarded; *see, e.g.*, 06/10/2013 p.m. Tr. 135:13-137:22 (Heegard).

In regards to claim 2, the Petras reference explicitly describes a field indicating a format of the (discard) message.

- *The method of claim 1, wherein the data packet discard notification message contains a field indicating a format of the message*: For example, the Petras reference indicates that each of the messages transmitted has a unique format or field so that the receiver understands that an incoming packet is a discard message. PX 120 at 13-15 (*see, e.g.*, Figs. 10 and 11); *see, e.g.*, 06/10/2013 p.m. Tr. 138:2-139:13 (Heegard).

Accordingly, Defendants have presented substantial, reasonable defenses of non-infringement and invalidity with respect to claims 1 and 2 of the '435 Patent, and the objective prong of the willfulness standard cannot be met with respect to this patent as a matter of law.

### 4. The '223 Patent

Asserted claim 11 of the '223 Patent recites the relevant elements of (1) a transmitter having a "data link layer therein for receiving a service data unit containing a plurality of said data packets, said data link layer segmenting said service data unit into at least one protocol data unit" and (2) a "discard timer being initialized when said service data unit is received by said data link layer." PX-8 at claim 11. This patent is asserted only against Intel and accused products that use Intel chips; Ericsson concedes that chips made by Broadcom, Atheros, Realtek, and Ralink do not infringe. 06/05/2013 p.m. Tr. 76:21-25 (Nettles). Ericsson has submitted no evidence to demonstrate the claimed segmenting, and all the evidence of record demonstrates the opposite. Dr. Nettles agreed that segmenting and fragmenting are related concepts, but the evidence establishes that 802.11n expressly prohibits fragmenting MSDUs transmitted under Block Ack. PX-286 802.11-2009 § 9.1.5; 06/05/2013 p.m. Tr. 78:5-16 (Nettles). Dr. Nettles likewise confirmed that the '223 Defendants' products do not fragment. 06/05/2013 pm Tr. at

78:5-81:2. Moreover, Ericsson's own testing of Defendants' accused products demonstrated that out of 31,322 packets sent, none were fragmented. PX-356.

Further, Ericsson has offered no evidence that the discard timer element is met under 802.11n, and the record evidence demonstrates it is not. By way of example, Ericsson's infringement theory relies on a timestamp for when the MSDU enters the data-link layer. However, in the accused products, the timestamp initializes when the MSDU enters the MAC (medium access control) layer, not the data link layer. 06/05/2013 pm Tr. 86:7-15 (Nettles); 06/06/2013 p.m. Tr. 69:2-12 (Kitchin). Indeed, under 802.11n, MSDUs sent from the network layer must first pass through a higher sublayer of the data link layer before reaching the lower MAC sublayer, which sits at the bottom of the data link layer. 06/05/2013 p.m. Tr. 84:15-86:6 (Nettles). Dr. Nettles agreed that if the data is processed in the data link layer before the timer goes off, there is no infringement. 06/05/2013 p.m. Tr. 86:24-87:6 (Nettles). Accordingly, Defendants' products do not infringe.

Defendants have therefore presented substantial, reasonable defenses of non-infringement with respect to Claim 11 of the '223 Patent. For at least this reason, the Court should find that the objective prong cannot be met.

### 5. The '215 Patent

Asserted claims 1 and 2 of the '215 patent require "responsive to the receiving step, constructing a message field for a second data unit, said message field including a type identifier field." PX-10 at claim 1. The Court has construed this element of claim 1 to mean a step "responsive to the receiving step, generating a message field including a field that identifies the message type of the feedback response message from a number of different message types." Dkt. 341 at 9. Ericsson has alleged that the Compressed Bitmap and Multi-TID subfields of the

BA Control Field of the accused 802.11n products satisfy the claimed "type identifier field" of both claims.

Ericsson has confirmed and agreed that "the '215 patent enables devices to choose between different feedback responses by using a type identifier field." Dkt. 460. The '215 Patent requires the "capability to generate . . . multiple types of acknowledgement messages." 06/05/2013 p.m. Tr. 44:2-44:5 (Nettles). Inventor Erik Schon has also stated that the "key element" in the patent is "giving you the choice of -- of using a bit map or a list or a -- or a combination thereof." 06/04/2013 p.m. Tr. 69:24-70:10 (Schon).

In marked contrast to the claimed invention, the accused 802.11n products are not able to choose from multiple forms of response messages. PX 286 (802.11n-2009). Rather, the products accused of infringement in this case can use only Compressed BlockAcks as their feedback response message. PX 286 (802.11n-2009). As Dr. Nettles concedes, the receiver in the accused products "will always send a Compressed BlockAck . . . ." 06/05/2013 p.m. Tr. 114:12-17 (Nettles). Because the accused products use only one form of feedback response message, the accused products have no ability to "generat[e] a message field including a field that identifies the message type of the feedback response from a number of different message types" and thus do not meet this limitation. 06/05/2013 p.m. Tr. 43:11-17, 43:21-44:5, 44:16-47:7, 46:5-10, 114:12-15:8 (Nettles).

That the accused products only use a single response message was confirmed by Mr. Kitchin and Mr. McFarland. Mr. Kitchin testified that the products "just don't have the capability. The chip just doesn't -- doesn't know how to generate that kind - anything other than a compressed BlockAck." 06/06/2013 p.m. Tr. at 72:10-16 (Kitchin). Mr. McFarland likewise testified that Atheros chips "do only the one type" of response message which makes the chip

14

"simpler and faster." 06/06/2013 p.m. Tr. at 148:10-14 (McFarland). Ericsson's expert Dr. Nettles also confirmed through his testing that the accused products have only one available message type when generating a response message—they use only Compressed BlockAcks. PX-356; 06/05/2013 p.m. Tr. at 46:25-47:8, 47:13-20, 113:14-114:5 (Nettles).

Dr. Nettles' agreement with Defendants' position, in addition to the evidence cited herein, proves that Defendants' non-infringement defense is meritorious. Accordingly, Defendants have presented substantial, reasonable defenses of non-infringement with respect to claims 1 and 2 of the '215 Patent, and the objective prong of the willfulness standard cannot be met with respect to this patent as a matter of law.[2]

## II. CONCLUSION

For the foregoing reasons, the Court should grant judgment in favor of Defendants on the issue of willful infringement.[3]

---

[2] Defendant Intel is also entitled to JMOL in its favor on Ericsson's willfulness claims for additional reasons supporting that the objective prong of willfulness is not met as a matter of law. The unrebutted evidence establishes that Ericsson did not sue Intel and further that Ericsson adopted and had a policy of refusing to license chip makers, including Intel—thereby actively permitting Intel to continue making allegedly infringing sales. Ultimately, Intel was forced to intervene in this lawsuit to resolve Ericsson's claims. Even then, Ericsson did not pursue damages claims against Intel. On this record, the objective prong of the willfulness standard cannot be met with respect to Intel and JMOL that the objective prong is not met with respect to Intel is appropriate. 6/05/2013 p.m. Tr. at 144:25-145:11 (Bone).

[3] Defendants also contend that they are entitled to JMOL in their favor on the subjective prong of the willfulness standard. With the expectation that Ericsson will contend that it plans to submit additional evidence of the subjective prong during the bifurcated willfulness portion of the trial, if necessary, Defendants will also renew their motion for JMOL on Ericsson's willfulness claims at the appropriate time during that bifurcated phase of the trial, if necessary. Defendants expressly reserve all arguments in support thereof. As explained herein, however, Ericsson's failure to present sufficient evidence satisfying the objective prong of the willfulness standard requires that JMOL be entered in favor of Defendants on Ericsson's willfulness claims and that the subjective prong not be submitted to the jury in light of Ericsson's failure to satisfy the objective prong.

DATED: June 11, 2013

Respectfully submitted,

*/s/ Robert M. Parker*
Robert M. Parker (State Bar No. 15498000)
Robert Christopher Bunt (State Bar No. 00787165)
Charles Ainsworth (State Bar No. 00783521)
Andrew T. Gorham (State Bar No. 24012715)
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
rmparker@pbatyler.com
rcbunt@pbatyler.com
charley@pbatyler.com
tgorham@pbatyler.com

Michael E. Jones (State Bar No.: 10929400)
John F. Bufe (State Bar No.: 03316930)
Allen F. Gardner (State Bar No.: 24043679)
**POTTER MINTON, PC**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903)597-8311
Facsimile: (903) 593-0846
mikejones@potterminton.com
johnbufe@potterminton.com

Adam R. Alper *(Admitted Pro Hac Vice)*
Sarah E. Piepmeier *(Admitted Pro Hac Vice)*
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1876
Facsimile: (415) 439-1500
adam.alper@kirkland.com
sarah.piepmeier@kirkland.com

16

Luke Dauchot *(Admitted Pro Hac Vice)*
Tim Majors *(Admitted Pro Hac Vice)*
Michael De Vries *(Admitted Pro Hac Vice)*
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile:  (213) 680-8500
luke.dauchot@kirkland.com
tim.majors@kirkland.com
michael.devries@kirkland.com

Gregory S. Arovas *(Admitted Pro Hac Vice)*
**KIRKLAND & ELLIS LLP**
601 Lexington Ave
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
greg.arovas@kirkland.com
**ATTORNEYS FOR INTEL CORPORATION**

*/s/ Christine M. Morgan*
Scott D. Baker, *Pro Hac Vice* (Cal. SBN 84923)
John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
James A. Daire, *Pro Hac Vice* ( Cal. SBN 239637)
Christine M. Morgan, *Pro Hac Vice* (Cal. SBN 169350)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)
Seth B. Herring
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269
sbaker@reedsmith.com
jbovich@reedsmith.com
jdaire@reedsmith.com
ahilgard@reedsmith.com
woverend@reedsmith.com
jmitchell@reedsmith.com
sherring@reedsmith.com

Trey Yarbrough (Bar No. 22133500)
Debra E. Gunter (Bar No. 24012752)
**YARBROUGH & WILCOX, PLLC**
100 E. Ferguson, Ste. 1015
Tyler, Texas 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com
**Counsel for Defendants, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC.**


  /s/ *Christine Yang* (with permission)
S.J. Christine Yang (admitted *pro hac vice*)
Duncan Palmatier (admitted *pro hac vice*)
Victoria Hao (admitted *pro hac vice*)
**THE LAW OFFICES OF S.J. CHRISTINE YANG**
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Tel: (714) 641-4022; Fax: (714) 641-2082
cyang@sjclawpc.com
dpalm@dpalmlaw.com
vhao@sjclawpc.com
**Counsel for Defendant D-LINK SYSTEMS, INC.**


  /s/ *Dwayne C. Norton* (with permission)
Michael J. Newton (Texas Bar No. 24003844)
Jason W. Cook (Texas Bar No. 24028537)
Dwayne C. Norton (Texas Bar No. 24076139)
Shaun W. Hassett (Texas Bar No. 24074372)
Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood St, Suite 1800
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
mike.newton@alston.com
jason.cook@alston.com
dwayne.norton@alston.com
shaun.hassett@alston.com
brady.cox@alston.com

18

Marsha E. Mullin (California Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Phone: (213) 576-1000
Fax: (213) 576-1100
marsha.mullin@alston.com

Frank G. Smith (Georgia Bar No. 657550)
Kamran Jivani (Georgia Bar No. 510908)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
frank.smith@alston.com
kamran.jivani@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone:   (903) 705-1117
Facsimile:    (903) 581-2543
ddacus@dacusfirm.com
**Counsel for DEFENDANT DELL INC.**


  _/s/ John Feldhaus_ (with permission)
John Feldhaus
Pavan Agarwal
Andrew R. Cheslock
**FOLEY & LARDNER LLP**
3000 K. Street, NW, Suite 500
Washington, DC 20007
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
 jfeldhaus@foley.com
pagarwal@foley.com
acheslock@foley.com

19

Kevin J. Malaney
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI  53202
Telephone: (414) 319-7067
Facsimile: (414) 297-4900
kmalaney@foley.com

Guy N. Harrison
Attorney at Law
217 N. Center
Longview, TX 75606
Telephone: (903) 758-7361
Facsimile: (903) 753-9557
guy@gnhlaw.com
**Counsel for TOSHIBA CORPORATION AND
TOSHIBA AMERICA INFORMATION SYSTEMS,
INC.**

  */s/  Ryan K. Yagura* (with permission)
Ryan K. Yagura (Bar No. 24075933)
Vision Winter (*Pro Hac Vice*)
Eric Chan
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
vwinter@omm.com
ryagura@omm.com
echan@omm.com
**Attorneys for BELKIN INTERNATIONAL, INC.**

*/s/ Eugene M. Paige* (with permission)
Robert A. Van Nest
Eugene M. Paige
Matan Shacham
**KEKER & VAN  NEST LLP**
633 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
rvannest@kvn.com
emp@kvn.com
mshacham@kvn.com
**Attorneys for ACER, INC., D-LINK
CORPORATION and GATEWAY, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 11, 2013.

*/s/ Robert M. Parker*
Robert M. Parker