IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ERICSSON INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 6:10-cv-473 |
| | § | |
| D-LINK CORP., ET AL., | § | |
| | § | |
| Defendants. | § | |

## FINAL JURY INSTRUCTIONS

### 1.    Introduction

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and the parties' contentions.

## 1.1   General Instructions

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  With respect to each question asked, your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 1.2.   Considering Witness Testimony

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from the

wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

### 1.3    How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration, and it is to be judged by you as to credibility and weight and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding

the truth as to the facts in the case.  One is direct evidence such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

The parties have stipulated, or agreed to, some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

## 1.4    Objections to Evidence

Attorneys representing clients in Courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence.  The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

So, you should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, then ignore the question.  If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

### 1.5    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it.   In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness.

### 2.    Contentions of the Parties

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson") contend that the Defendants D-LINK Systems (hereinafter "D-LINK"), Netgear, Inc. (hereinafter "Netgear"), Acer, Inc. and Acer America Corp. (collectively "Acer"), Gateway, Inc. (hereinafter "Gateway"), Dell Inc. (hereinafter "Dell"), Toshiba Corporation and Toshiba America Information Systems, Inc. (collectively "Toshiba"), Belkin International, Inc. (hereinafter "Belkin") and Intel Corp. (hereinafter "Intel") (collectively "Defendants," hereinafter), make, use, sell, offer to sell, and/or import into the United States Defendants' accused 802.11n-

compliant products that practice or embody one or more claims of the following patents:

US Patent No. 6,466,568 ('568) / Claims 1 and 5

US Patent No. 6,424,625 ('625) / Claim 1

US Patent No. 6,330,435 ('435) / Claims 1 and 2

US Patent No. 6,772,215 ('215) / Claims 1 and 2

Ericsson also contends that Defendants Acer, Gateway, Dell, Toshiba, and Intel infringe certain claims of the following patent:

US Patent No. 6,519,223 ('223) / Claim 11.

These claims have been referred to as the "Asserted Claims" and these patents have been referred to as the "Patents-in-Suit."

Ericsson also contends that Defendants are inducing their customers and/or end-users to directly infringe certain claims of the Patents-in-Suit.  Ericsson is seeking damages for the alleged infringement of the Defendants.

In response to Ericsson's contentions, Defendants contend that neither they nor their customers or end-users have infringed the Patents-in-Suit.  Defendants further contend that they have not induced direct infringement of the Asserted Claims.  Defendants also contend that at least certain of the Asserted Claims of the '435 and '625 patents are invalid as being anticipated by the prior art.  Defendants also contend that Ericsson is not entitled to damages for any infringement.

### 3.      Burdens of Proof

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."  The burden of proof in this case is on Ericsson for some issues and on the Defendants for other issues.

Ericsson has the burden of proving infringement and damages by a preponderance of the evidence.  Preponderance of the evidence means the evidence persuades you that a claim is more likely true than not true.  If the proof establishes that all parts of one of Ericsson's infringement claims are more likely true than not true, then you should find for Ericsson as to that claim.

The Defendants have the burden of proving invalidity by clear and convincing evidence.  Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who

may have produced them.

**4.     The Claims**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."   The patent claims are the numbered sentences at the end of each patent.   The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.   Each claim is effectively treated as if it was a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.   The law says that it is the Court's role to define the terms of the claims and it is your role to apply these definitions to the issues that you are asked to decide in this case.   Therefore, as I explained to you at the start of the case, the Court has determined the meaning of the claims, and I will provide to you the definitions of certain claim terms.   You must accept the definitions of these words in the claims as being correct.   It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and

validity.

## 4.1    How a Claim defines what it covers

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that the Court has defined, and you are to apply those definitions.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

**4.2    Claim Interpretation**

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept the definition of these words in the claims as correct. For any words in the claim for which you have not been provided with a definition, you should apply their common meaning. You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

| Term | Construction |
|------|--------------|
| Responsive to the receiving step, constructing a message field for a second data unit, said message field including a type identifier field | Responsive to the receiving step, generating a message field including a field that identifies the message type of the feedback response message from a number of different message types |

| Data packet discard notification message from the transmitter to the receiver indicating data packets the transmitter has discarded | A message that indicates data packets that the transmitter has discarded |
|---|---|
| A service type identifier which identifies a type of payload information | An identifier that identifies the type of information conveyed in the payload. Examples of types of information include, but are not limited to, video, voice, data, and multimedia. |

## 5.     Direct Infringement

I will now instruct you on the specific rules you must follow to determine whether Ericsson has proven that the Defendants have infringed one or more of the asserted claims of one or more of the patents-in-suit involved in this case.

## 5.1    Literal Infringement

If any person makes, uses, or offers to sell, sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called direct infringement.  To determine direct infringement, you must compare the accused products or methods with each of the Asserted Claims of the Asserted Patents, using my instructions as to the meaning of the patent claims.

A patent claim is directly infringed only if the accused product or method includes each and every element or steps in that patent claim.  If the accused

product or method does not contain one or more of the limitations recited in a claim, then that product or method does not directly infringe that claim. If you find that the accused product or method includes each element or step of the claim, then that product or method infringes the claim even if such product or use contains additional elements or steps that are not recited in the claim.

An accused system or product directly infringes a claim if it is reasonably capable of satisfying the claim elements even though it may also be capable of non-infringing modes of operation.  If a claim requires only that the system or product have the capacity to perform a function, one who makes a system or product with that capability without the patent owners' authority is a direct infringer even though the maker's customers do not use the capacity.

A patent claim is directly infringed only if the accused product or method includes each and every element in that patent claim, as I will instruct you shortly. If the accused product or method does not contain one or more of the limitations recited in a claim, then that product or method does not directly infringe that claim.

A person may directly infringe a patent even though in good faith the person believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.  Direct infringement does not require proof that the person copied a product or the patent.

You must consider each of the asserted claims of the patents-in-suit

13

individually.  You must be certain to compare such accused product or method with each claim that such product or method is alleged to infringe.  Such accused product or method should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Taking each asserted claim of the Asserted Patents separately, if you find that Ericsson has proved by a preponderance of the evidence that each and every limitation of that claim is present in the Defendant's accused products or methods, then you must find that such product or method infringes that claim.

A claim limitation is literally met if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as the language would be understood by one of skill in the art.  You must determine separately for each asserted claim whether or not there is infringement.

## 5.2  Infringement of Dependent Claims

So far, my instructions on infringement have applied to what are known as independent claims.  The patents-in-suit also contain dependent claims.  Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of dependent claim of any of the patents-in-

suit, you must first determine whether any of the independent claims have been infringed. If you decide that the independent claim has not been infringed, then the dependent claim cannot have been infringed. If you decide that the independent claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused product. If each additional requirement has been included, then the dependent claim has been infringed. Conversely, if the Defendants' products or conduct omit any additional requirement recited in Ericsson's asserted patent claims, the Defendants do not infringe that claim.

Ericsson must prove that it is more likely than not that a patent claim has been infringed.

## 6.   Indirect Infringement – Inducing Patent Infringement

A party induces patent infringement if it purposefully causes, urges, or encourages another to infringe the claims of a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which can occur unintentionally.

Ericsson has alleged that the Defendants have induced infringement by their customers. To prove that these Defendants induced patent infringement, Ericsson must prove that it is more likely than not: (1) that customers or end-users of the Defendants have directly infringed the asserted patent claims; and (2) that the

Defendants have actively and knowingly aided and abetted that direct infringement.

A Defendant is liable for active inducement of infringement of a patent claim if:

(1)    The particular Defendant takes action during the time the patent is in force which encourages acts by someone else;

(2)    The encouraged acts constitute direct infringement of that claim;

(3)    The particular Defendant (a) was aware of the patent, and knew that the encouraged acts constitute infringement of the patent; or (b) was willfully blind to the infringement of the patent.  Willful blindness requires that the Defendant subjectively believed there was a high probability that the encouraged acts constituted infringement of the patent and took deliberate actions to avoid learning of the infringement;

(4)    The particular Defendant had the intent to encourage infringement by someone else; and

(5)    The encouraged acts are actually carried out by someone else.

In order to prove active inducement, Ericsson must prove that each of the above requirements is met. Further, proof of each element must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

In considering whether a Defendant has induced infringement by others, you may consider all the circumstances, including whether or not it obtained the advice of a competent lawyer, whether or not it knew of the patents when designing and manufacturing its products, and whether or not it removed or diminished the allegedly infringing features. You may not assume that merely because they did not obtain an opinion of counsel, the opinion would have been unfavorable.

Intent to cause a third party to perform acts which result in direct infringement may be demonstrated by evidence of active steps taken to encourage the third party to do so, such as advertising an infringing use or instructing how to engage in an infringing use.  It is not sufficient that a Defendant was aware of the act(s) that allegedly result in direct infringement of the patent claim or merely encouraged the acts themselves.  Rather, you must find that the particular Defendant specifically intended to cause its customers to engage in the acts that constitute direct infringement and that the Defendant knew or was willfully blind that the action would cause direct infringement.

If you do not find that the accused infringer specifically meets these intent requirements by a preponderance of the evidence, then you must find that the accused infringer has not actively induced the alleged infringement.

## 7.    Invalidity

The Defendants have challenged the validity of the asserted patent claims of

the '435 and '625 patents.  The Defendants must prove that a patent claim is invalid by clear and convincing evidence.  Evidence of material prior art which is not cumulative of prior art cited to or by the PTO may be more probative in meeting the standard than the prior art that was cited to or by the PTO.  An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent.  From the issuance of the patent, it is presumed that a claimed invention is new, useful, and not obvious, and satisfies the other legal requirements for a valid U.S. patent.  Each claim of a patent is presumed valid independently of the validity of the other claims.  The presumption of validity remains intact and the burden of proof remains on the Defendants throughout this litigation.  In other words, the burden never shifts to Ericsson to prove that its patents are valid.

For a patent to be valid, the invention claimed in the patent must be new, useful, and not obvious.  A patent cannot take away from people their right to use what was known when the invention was made.  In addition, the patent must comply with certain statutory requirements of disclosure.

I will now explain to you the Defendants' grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately.

**7.1    Anticipation – Publicly Used or Known, or Previously Published**

The Defendants contend that the asserted claims of the '435 and '625 patents are invalid because the claimed invention is not new.  For a claim to be invalid because it is not new, all of its requirements must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, such previous publication or patent is called a "prior art reference."  If a patent claim is not new, we say it is "anticipated" by a prior art reference.  The Defendants must prove a claim is anticipated by clear and convincing evidence.

The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the claimed invention looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

The Defendants can show that a patent claim was not new if the claimed invention was already patented or described in a printed publication anywhere in the world before date of invention of the asserted claim.

The Defendants can also show that a patent claim was not new if the claimed invention was already described in another published U.S. patent application or issued U.S. patent that was based on a patent application filed before the date of the patent holder's application filing date, or, the date of invention.  The dates of invention for the patents-in-suit are as follows:

For the '435 patent — March 18, 1999

For the '625 patent — October 28, 1998

Defendants contend that the '435 and '625 are invalid. If a patent claim is not new as explained above, you must find that claim invalid.

## 7.2   Anticipation – Printed Publication

A patent claim is invalid if the invention defined by that claim was described in a printed publication anywhere in the world before it was invented by the patent applicant.

Printed publications may include issued patents as well as articles, treatises, and other written materials.   A reference is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find. An electronic publication, including an on-line or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field, even if it is difficult to find.

A printed publication must be reasonably accessible to those members of the

public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  The date that a printed publication becomes prior art is the date that it becomes reasonably accessible to the public.

So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

For a claim to be anticipated by a prior art publication, all of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention.  The disclosure in a reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or inherent in the reference, to enable someone of ordinary skill in the field of the invention looking at the reference to make and use at least one embodiment of the claimed invention.

A prior art publication also invalidates a patent claim when the claimed invention necessarily results from practice of the subject of the publication, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

A printed publication will anticipate if it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the printed publication or patent; (3) the presence or absence of working examples in the printed publication or patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability of the art; and (8) the breadth of the claims.

## 8.    Damages

I will now instruct you on damages.  If you find that the Defendants have infringed one or more valid claims of the patents-in-suit, you must determine the amount of money damages to which Ericsson is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

In this case, Ericsson has sued D-Link, Netgear, Belkin, Acer/Gateway, Dell, and Toshiba. Intel has intervened in this case to defend its chips used by some of its customer defendants. Accordingly, in answering Question #4, you will

be determining what amount of money would fairly and reasonably compensate Ericsson for infringement, if any, by each Defendant, except Intel. Any damages for Intel's infringement, if any, will be included in whatever damages, if any, you find for each of its customer defendants.

The amount of damages must be adequate to compensate Ericsson for the infringement, but it may not be less than a "reasonable royalty." At the same time, your damages determination must not include additional sums to punish the Defendants or to set an example. You may award compensatory damages only for the loss that Ericsson proves was more likely than not caused by the Defendants' infringement. Moreover, because Ericsson has agreed that it is under an obligation to license the patents-in-suit on Reasonable and Non-Discriminatory ("RAND") terms, you must ensure that any damages award is consistent with and does not exceed the amounts permitted under Ericsson's RAND obligations.

## 8.1    Damages – Burdens of Proof

Where the parties dispute a matter concerning damages, it is Ericsson's burden to prove that it is more probable than not that Ericsson's version is correct. Ericsson must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Ericsson is not entitled to damages that are remote or speculative.

**8.2    When Damages Begin**

The amount of damages Ericsson can recover is limited to those acts of infringement that occurred after Ericsson gave each Defendant notice that it infringed the patent. Actual notice means that Ericsson communicated to the Defendants a specific charge of infringement of the patent by the accused products. This notice is effective as of the date given.

Your job is to calculate damages from the date that each Defendant received actual notice. You should not award damages for Ericsson against any infringement by a Defendant occurring before that Defendant first received actual notice.

**8.3    Reasonable Royalty - Definition**

If you find that any claim of the Asserted Patents is both valid and infringed, then Ericsson is entitled to damages adequate to compensate for the infringement of that patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendant. A royalty is the amount of money a licensee pays to a patent owner to make, use or sell the patented invention.  A reasonable royalty is the amount of money a willing patent holder and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention.   It is the royalty that would have resulted from an arms-length negotiation between a willing licensor and a willing licensee, assuming that both

parties understood the patent to be valid and infringed and that the licensee would respect the patent.  Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.   The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the Defendant first infringed the patent and the facts that existed at that time.  Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations.  Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity.   The Defendant's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner and the alleged infringer would consider in setting the amount the alleged infringer

should pay.

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.     The royalties received by the patentee for licensing of the patents-in-suit, proving or tending to prove an established royalty.

2.      Royalties paid for other patents comparable to the asserted patents.

3.     The nature and scope of the license, as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory, or with respect to the parties to whom the product may be sold.

4.     Whether or not the licensor had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business, or whether they are inventor and promoter.

6.     Whether being able to use the patented invention helps in making sales of other products or services.

7.     The duration of the patent and the term of the license.

8.    The profitability of the patented invention, and whether or not it is commercially successful or popular.

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.    The extent of the licensee's use of the patented invention and any evidence probative of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.    The portion of the profits that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee.

14.    Expert opinions as to what would be a reasonable royalty.

15.    The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which an accused infringer would have been willing to pay as a

royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patent owner if it would have been willing to create a license.

16.     Ericsson's obligation to license its technology on RAND terms.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  The framework which you should use in determining a reasonable royalty is a hypothetical negotiation between normally prudent business people.

**8.4    Damages – Lump Sum Royalty**

A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty where a royalty rate is applied against future sales as they occur.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and estimated future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

**8.5    Infringer's Profit Margin**

An infringer's net profit margin is not the ceiling by which a reasonable royalty is capped.  The infringer's selling price can be raised if necessary to

28

accommodate a higher royalty rate. Requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology.

**8.6     Damages may not be Punitive or Speculative**

You must not award Ericsson more damages than are adequate to compensate for the infringement.  Nor shall you include any additional amount for the purpose of punishing a defendant or setting an example.  Nor may you include damages that are speculative, damages that are only possible, or damages that are based on guesswork.

**9.     Instructions for Deliberations**

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during trial.  After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to

the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.