# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| | § | |
| **ERICSSON INC., ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CASE NO.  6:10-CV-473** |
| | § | |
| **D-LINK CORPORATION, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Ericsson's Motion for Partial Summary Judgment and/or to Exclude Defendant Dell's License Defenses (Docket No. 431) ("Motion"). The Court heard oral argument on May 23, 2013. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

This Motion involves three separate Ericsson[1] entities: LM Ericsson, Ericsson AB, and Ericsson Inc. Two of these entities—LM Ericsson and Ericsson Inc.—are the Plaintiffs in this suit. The third—Ericsson AB—is not a party. LM Ericsson, a Swedish company, is the corporate parent of Ericsson AB and Ericsson Inc. Ericsson AB is a Swedish company, and Ericsson Inc. is an American company. LM Ericsson is the owner of the patents-in-suit, and Ericsson Inc. possesses the exclusive enforcement rights to the patents in the United States. Ericsson AB maintains no ownership in the patents.

---

[1] This Motion uses "Ericsson" to refer collectively to the Plaintiffs LM Ericsson and Ericsson Inc. It also uses "Ericsson" to refer to all Ericsson corporate entities collectively. All references to an individual Ericsson entity are specified.

In 2008, Dell entered into an agreement with Ericsson AB (the "Master Purchase Agreement" or "MPA") to purchase a series of products from Ericsson AB. *See* Docket No. 301, Ex. 2 ("MPA"). One of the provisions of the MPA was a release clause. The release clause states:

> Supplier will not commence any lawsuit or seek any judicial order affecting Dell or add Dell as a party to any pending legal or administrative proceeding that is not directly related to Dell's purchase of Products or that may prevent Dell from shipping any Dell or third party products.

*Id*. at 3. Dell contends this clause prohibits LM Ericsson and Ericsson Inc. from bringing the present infringement suit.

For the purposes of this Motion, the key word in the release clause is "Supplier." Supplier is explicitly defined in the MPA as Ericsson AB. *Id*. at 1. Accordingly, the MPA release clause on its face does not apply to the Plaintiffs LM Ericsson and Ericsson Inc.[2] However, Dell contends the MPA applies to LM Ericsson through agency law. Dell asserts that at the time LM Ericsson filed this lawsuit, LM Ericsson was acting as the agent of Ericsson AB. Because LM Ericsson was the agent of Ericsson AB, and Ericsson AB could not sue Dell because of the release clause, LM Ericsson is precluded from bringing this lawsuit against Dell.

## APPLICABLE LAW

### Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is

---

[2] Dell conceded this point at oral argument.

genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

**Agency Law**

Whether an agency relationship exists is a mixed question of law and fact. *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003).[3] There are two elements required to establish an agency relationship. *Id*. First, the principal must manifest its intent to grant authority to the agent. *Id*. Second, the agent must consent to the agency

---

[3] The MPA is governed by New York law, and both sides agree that New York law governs resolution of the agency issue.

relationship. *Id*. Additionally, the principal must maintain control over key aspects of the undertaking. *Id*.

A principal can manifest its intent to grant authority in numerous ways. In this case, Dell alleges Ericsson AB granted authority to LM Ericsson through both actual and apparent authority. *See* Docket No. 444 ("Response") at 10. Actual authority and apparent authority are similar in that they both hinge on the behavior of the principal. However, they differ over from whose perspective the principal's behavior is viewed. Actual authority focuses on the conduct of the principal, viewed from the eyes of the potential agent. *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003). Actual authority comes from direct manifestations from the principal to the agent, interpreted in light of all the circumstances surrounding those manifestations. *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) (quoting *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997)). An agent has actual authority if the principal grants the agent power to act on the principal's behalf. *Id*.

Even if an agent lacks actual authority, it can still bind a principal through apparent authority. *Id*. at 328. Apparent authority exists when an agent lacks actual authority, but the principal's actions create the appearance of actual authority vested in the agent. *Id*. Similar to actual authority, apparent authority focuses on the actions of the principal. However, unlike actual authority, apparent authority views the principal's actions from the eyes of a third party. *Telenor Mobile Commc'n AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009). To establish apparent authority, a party must show: (1) the principal is responsible for the appearance of authority; and (2) the third party's reliance on the apparent authority is reasonable. *F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997).

## ANALYSIS

Ericsson makes three distinct arguments in support of its Motion. First, Ericsson argues Dell does not have a license to the Patents because LM Ericsson is not a signatory to the MPA. Motion at 4. The MPA specifically references Ericsson AB, which Ericsson believes indicates that the MPA does not bind other Ericsson entities. *Id*. Second, Ericsson contends Dell's own actions demonstrate that it did not believe LM Ericsson was bound under the MPA. *Id*. at 9. In December 2011, LM Ericsson and Dell negotiated a license for Ericsson's cellular patent portfolio. *Id*. Ericsson asserts that if Dell genuinely believed LM Ericsson was bound under the MPA, the 2011 license would have been unnecessary. *Id*.

Finally, Ericsson argues Dell cannot prevail on its agency theory. *Id*. at 7. Ericsson asserts that Dell is unable to meet the legal requirements of agency—namely, intent to grant authority by the principal and intent to be bound by the agent. *Id*. at 8. Ericsson contends LM Ericsson is the corporate parent of Ericsson AB, and there is no evidence the corporate parent acted as the agent of its subsidiary. Docket No. 446 ("Reply") at 2. Further, Ericsson argues there is no evidence LM Ericsson had authority as an agent. *Id*. Ericsson asserts that LM Ericsson is the patent owner and parent company, so it did not need permission from Ericsson AB to file this lawsuit. *Id*. at 3.

Dell bases its position on agency theory. Dell contends Ericsson is a "monolithic entity," and LM Ericsson is the agent of Ericsson AB. Response at 7–8. In support, Dell argues Ericsson AB granted LM Ericsson authority to sue for patent infringement on its behalf. *Id*. at 10. Additionally, Dell asserts that nearly all of Ericsson's daily intellectual property operations are performed by Ericsson AB employees, and an Ericsson AB employee made the decision to sue

5

Dell for infringement. *Id*. at 7, 11. Dell also argues all Ericsson patents are transferred to LM Ericsson as a matter of course for nominal compensation. *Id*. at 11.

Further, Dell contends Ericsson AB maintains control over LM Ericsson. *Id*. at 12. Dell asserts that Ericsson's patent-related businesses operate as a single unit, and that employees of different Ericsson corporate entities commonly work together on licensing issues. *Id*. at 6. Lastly, Dell argues its cellular license with Ericsson does not undercut its position regarding the MPA. *Id*. at 13. Dell argues the cellular license was intended to protect Dell's customers, while the MPA only protects Dell itself. *Id*. at 14. Thus, the two licenses are non-contradictory. *Id*.

As discussed below, Dell's agency argument fails for two distinct reasons: (1) there is no evidence Ericsson AB granted LM Ericsson authority to sue; and (2) there is no evidence LM Ericsson accepted authority from Ericsson AB. Each alone is sufficient to grant Ericsson's motion for summary judgment.

**Grant of authority from AB to LM**

The first element of agency Dell cannot prove is the grant of authority from Ericsson AB to LM Ericsson. A cloud-level view of Dell's argument demonstrates how tenuous it is. Dell argues Ericsson AB is the principal, and LM Ericsson is the agent. However, LM Ericsson is the corporate parent of Ericsson AB. To prevail, Dell must prove the corporate parent/patent owner received authority *from its subsidiary/non patent owner* to bring this lawsuit. Dell did not present sufficient evidence to survive summary judgment on this issue.

A prerequisite of a principal granting authority is a principal having authority, and Dell cannot satisfy this threshold issue. *See* RESTATEMENT (SECOND) OF AGENCY § 7 (1958). LM Ericsson owns the patents—Ericsson AB does not. A principal cannot grant authority to an agent that the principal itself does not have. *Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F.

6

Supp. 2d 414, 423 (S.D.N.Y. 2007) ("Before a principal can confer actual or apparent authority on another to act on its behalf, the principal must itself possess the power that it is attempting to confer on the agent."); *see Highland Capital*, 607 F.3d at 327 (stating that an agent's authority is subject to whatever limitations the principal places on its power). Here, Ericsson AB is not the patent owner, and it could not have sued for infringement on its own. It would be illogical to hold that Ericsson AB authorized LM Ericsson to perform an act that Ericsson AB itself had no authority to do. *See Mouawad Nat'l*, 476 F. Supp. 2d at 423 ("It is axiomatic that where a principal does not possess the power to bind itself to a third person in contract, there is no power that the principal can confer on an agent that will enable the agent to enter the contract on the principal's behalf."). Granting authority is premised on having authority, and Ericsson AB never had authority to sue for infringement.

None of the evidence cited by Dell overcomes the fact that Ericsson AB had no authority to authorize LM Ericsson to bring suit. Dell asserts that all Ericsson patents are transferred to LM Ericsson as a matter of course, and that Ericsson's intellectual property group operates as a single entity. Dell further contends that employees of different Ericsson entities commonly work together. None of this evidence demonstrates that Ericsson AB owned the patents or possessed the right to determine when to file a lawsuit. It is bedrock corporate law that separate corporate entities are presumed separate, and Dell did not present sufficient evidence to overcome this presumption. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).

Dell relies on both actual and apparent authority to demonstrate that Ericsson AB granted authority to LM Ericsson to bring suit. The actual authority argument fails for many of the reasons recited above. Ericsson AB did not have the right to bring suit, so it could not have transferred that right to LM Ericsson.

7

The apparent authority argument fails because Dell presented no evidence of reliance. One of the elements of apparent authority is that a third party reasonably relies on actions of the principal manifesting an agency relationship exists. *Providence Coll.*, 115 F.3d at 140. Dell's only evidence of reliance is an affidavit from a Dell in-house attorney stating that Dell viewed Ericsson as a "monolithic entity." *See* Response at 7. Dell's own interactions with Ericsson contradict this assertion. Dell signed the MPA with Ericsson AB. The MPA release clause specifies that it only binds Ericsson AB, not other related Ericsson entities. This is an express indication from Ericsson AB to Dell that it viewed separate Ericsson entities as distinct entities. If it did not, there would have been no reason to specify that the MPA only covered Ericsson AB. The fact that Ericsson AB went to such lengths to specify which Ericsson entities were bound by the MPA should have put Dell on notice that Ericsson viewed its corporate entities as separate units. *See Dinaco*, 346 F.3d at 69 (determining that a third party's reliance was unreasonable); *Providence Coll.,* 115 F.3d at 141 ("The general rule in New York is that a third party who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority.").

Dell's own actions indicate it *also* viewed Ericsson's separate entities as separate units. In December 2011, three years after the MPA, Dell signed a second patent license with Ericsson. *See* Motion, Ex. 1. The signatory on this license was LM Ericsson, not Ericsson AB. Thus, Dell itself signed two different patent licenses with two different Ericsson entities. This undercuts Dell's assertion that it viewed Ericsson as a "monolithic entity."

**Acceptance of Authority by LM Ericsson**

Dell cannot meet the second element of agency for a similar reason. To establish an agency relationship, the agent must accept authority from the principal. *Commercial Union*, 347

8

F.3d at 362. In this case, this means LM Ericsson must have accepted authority from Ericsson AB to sue for patent infringement. The flaw in this argument is that LM Ericsson maintained the authority to sue for infringement throughout. LM Ericsson is the patent owner, so it did not need to receive authority to sue from Ericsson AB—it already had that authority. *See Asymmetrx, Inc. v. Biocard Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009).

Dell's strongest piece of evidence is deposition testimony that an Ericsson AB employee—Kasim Alfalahi—made the decision to sue Dell for infringement. This testimony does nothing to address the underlying flaw in Dell's argument, namely that LM Ericsson did not need Mr. Alfalahi's permission (or Ericsson AB's permission) to sue Dell. There is no evidence LM Ericsson could not have sued but for Mr. Alfalahi's authorization. At most, Mr. Alfalahi's permission was a green light to sue, not a prerequisite to sue. Further, there is no evidence that Ericsson AB could have prevented LM Ericsson from bringing suit. *Cf. Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) (noting that a *co-owner* may prevent other co-owners from bringing suit). This evidence is not sufficient to survive summary judgment when the patent owner sues for infringement.

The MPA release clause Dell relies upon unambiguously refers to Ericsson AB alone. Dell concedes this point. Five years later, Dell seeks a do-over on the MPA. Dell now contends the MPA release clause covers LM Ericsson not through the four corners of the contract, but through agency law. However, the equitable relief Dell seeks today was readily available in 2008. In negotiating the MPA,[4] Dell could have included LM Ericsson in the release clause.[5]

---

[4] The MPA resulted from a series of negotiations between Dell and Ericsson. It was not a form contract. Docket No. 453 at 2.

[5] The release clause specifically applies to Ericsson AB. *See* MPA at 3. However, other clauses within the MPA refer to Ericsson AB and its Affiliates. *See, e.g., id.* at 1. Thus, Dell itself distinguished between Ericsson AB individually and all Ericsson affiliates as a whole within the MPA. If Dell intended for the release clause to cover all Ericsson affiliates (including LM Ericsson), it could have specifically referenced Ericsson AB's affiliates within the release clause. Dell could also have defined "Supplier" as "Ericsson AB and its Affiliates." The MPA specifically

Dell was a sophisticated party in 2008, and it is a sophisticated party today. It is not unreasonable or unfair to hold Dell to the bargain it struck in 2008.

## CONCLUSION

For all the foregoing reasons, Ericsson's Motion for Partial Summary Judgment and/or to Exclude Defendant Dell's License Defenses (Docket No. 431) is **GRANTED**.

So ORDERED and SIGNED this 20th day of June, 2013.

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

---

defines "Supplier" as "Ericsson AB." *Id*. However, the MPA defines "Dell" as "Dell Products L.P. and its Affiliates." *Id*. Thus, the MPA distinguishes between Dell (which includes its affiliates) and Ericsson AB (which only includes Ericsson AB).