**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |
|---|---|
| **ERICSSON INC., et al.,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**D-LINK CORPORATION, et al.,**<br><br>**Defendants** | **Civil Action No. 6:10-cv-473**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF FEDERAL RULE OF CIVIL PROCEDURE
50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW IN FAVOR OF
DEFENDANTS (NON-INFRINGEMENT AND INVALIDITY) AND
<u>MOTION FOR A NEW TRIAL</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................1

      A.    Insufficient Evidence Of Direct Infringement ...........................................1

          1.    The '215 Patent .................................................................................1

          2.    The '568 Patent .................................................................................3

          3.    The '625 Patent .................................................................................5

      B.    Insufficient Evidence Of Direct Infringement Of Method Claims .............................................................................................................7

      C.    Insufficient Evidence Of Indirect Infringement.........................................8

      D.    Clear And Convincing Evidence Compels A Finding Of Invalidity ....................................................................................................9

          1.    The Petras Reference Discloses Claim 1 Of The '625 Patent .................................................................................................9

          2.    The Petras Reference Discloses Claims 1 And 2 Of The '435 Patent ...............................................................................10

III.  CONCLUSION....................................................................................................11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    692 F.3d 1301 (Fed. Cir. 2012) ........................................................................... 9

*Cordis Corp. v. Boston Scientific Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011) ........................................................................... 3

*DSU Medical Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006) ........................................................................... 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011)........................................................................................ 8

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ............................................................................. 7

*Malta v. Schulmerich Carillons, Inc.*,
    952 F. 3d 1320 (Fed. Cir. 1991) .......................................................................... 7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*,
    545 U.S. 913 (2005)............................................................................................ 9

*SiRF Tech. Inc. v. ITC*,
    601 F.3d 1319 (Fed. Cir. 2010) ........................................................................... 8

*Versata Software, Inc. v. SAP Am., Inc.*,
    2013 U.S. App. LEXIS 8838 (Fed. Cir. May 1, 2013) ......................................... 7

## I.    INTRODUCTION

Defendants respectfully file this reply in support of their renewed motion for judgment as a matter of law ("JMOL") of non-infringement and invalidity or for a new trial.  As set forth in Defendants' opening brief and herein, Ericsson has failed to offer evidence sufficient to allow a reasonable jury to find infringement or rebut the clear and convincing evidence regarding anticipation, rendering the jury's findings of infringement and validity unsupportable.

## II.    ARGUMENT

### A.    Insufficient Evidence Of Direct Infringement

#### 1.    The '215 Patent

The sole dispute is whether the claims cover a device that is only capable of sending a single message type.  As set forth in Defendants' opening brief (Dkt. 528, hereafter "Brief"),[1] under the Court's claim construction, which Ericsson has repeatedly confirmed, the claims do not cover such devices.  Ericsson's core argument relies on casting Defendants' motion as "really a new claim construction argument."  Ericsson's Response (Dkt. 581, hereafter "Response") at 3.  But it is Ericsson who has shifted its position by re-interpreting this Court's *Markman* Order.  Ericsson confirmed to this Court time and time again that the "invention" as "expressed in the claims" is "giving the receiver a choice" and constructing a message field so the receiver can "express what it has chosen."  Brief at 6-8.  Ericsson incorrectly describes one such admission as "selectively quoted" (Response at 6-7), but otherwise fails to address this issue.  It does not even mention—much less substantively respond to—its numerous other admissions.  And notably, Ericsson ignores its own statements in the days before trial: In its own words, Ericsson "has consistently alleged that the '215 patent *enables devices to choose between different feedback responses* by using a type identifier field."  Dkt. 460 at 6.  Indeed, Ericsson

---

[1] All citations to Exhibits are to the exhibits to Defendants' opening brief, except X-AA, filed herewith.

*stipulated* to this days before trial. *See* Ex. J. Further, the Court rejected Defendants' proposed requirement that the choice be made to obtain particular advantages (*e.g.*, to minimize the size / number of feedback responses), but agreed with Ericsson regarding choice. Dkt. 341 at 8, n.2.

Ericsson's argument that Defendants import "selecting" into the claim language (*see* Response at 7) fares no better. Defendants are not arguing that there is a separate "selecting" step that must occur each time the claimed method is performed. Rather, Defendants rely on this Court's construction, which requires "generating a message field including a field that identifies the message type of the feedback response message *from a number of different message types*," and which—as Ericsson has time and again confirmed—necessarily requires a choice in the receiver of a number of different message types. Ericsson argues that Defendants infringe the '215 patent based *solely on the existence of a type identifier field*, irrespective of whether "a number of different message types" exist. *See* Ex. K (6/12/13 a.m. Tr.) at 60:5-61:3; *see also* Response at 7 (Defendants' products infringe the '215 patent "*so long as the feedback response message includes a type identifier field.*"). But the claim construction requires *more* than just a field that identifies the type of feedback response message—it also requires generating such a field from *a number of different message types*. Without that choice requirement, the Court's claim construction would have the *same meaning* regardless of whether the phrase "from a number of different message types" were present. Simply put, by suggesting that a mere type identifier field meets the claim's requirement of "generating a message field including a field that identifies the message type of the feedback response message *from a number of different message types*," Ericsson deprives the "from a number of different message types" of its meaning—*i.e.,* a choice in the device. Dkt. 341 at 9. As such, the evidence Ericsson offered to support its theory is insufficient as a matter of law to establish infringement and should be

2

disregarded.  *See Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).

Similarly, Ericsson's argument (Response at 8-9) that the recitation in the standard of multiple different types of BlockAck messages—while not available to the accused products—provide a "choice" because they are in standards documents cannot support a finding of infringement.  Any alleged "choice" made by engineers in designing the 802.11n products is irrelevant, at least because this is a method claim, and the claims refer to actions performed by a device *after* the product has been designed.  *See* Brief at 10.  Finally, Ericsson misstates the evidence in its Response.  For example, it asserts that Defendants' expert Dr. Gibson "detailed his own testing that showed the '215 method being practiced several hundred thousand times."  Response at 10.  But Dr. Gibson's cited testimony says the *opposite*:

> Well, as you see, the element we've been talking about, which is constructing a message field from a number of different message types, ***that's not found in the products, and so the products don't infringe.***

Ex.X (6/10/13 a.m. Tr.) at 110:6-10.  Further, Ericsson does not even provide a citation for its incorrect assertion that "practice of the '215 patent was mandatory for interoperability."  Response at 11.  In sum, for the reasons above and in their motion, Defendants are entitled to JMOL or a new trial on Ericsson's claims for infringement of the '215 patent.

### 2.    The '568 Patent

Ericsson's sole argument appears to be that Defendants are "capable" of infringing.[2]  *See* Response at 12.  But contrary to Ericsson's assertions, there are no facts establishing or even suggesting that the TID field is capable of identifying the type of information in the payload, and the evidence uniformly confirms that it is not.  Ericsson must prove that the TID field acts as "an *identifier* that *identifies the type of information conveyed in the payload*."  Dkt. 341 at 19.  In an

---

[2] Ericsson does not respond to Defendants' legal argument that capability is insufficient.  *See* Response at 12.

effort to meet the claims, Ericsson relies on the fact that a particular set of TID values could be used in conjunction with voice packets, and another set of TID values could be used in conjunction with video packets.  But because there is no requirement in 802.11n that certain TID values must be used with certain types of information, the TID value necessarily does not, and cannot, indicate to the receiver the type of information conveyed in the payload.  *See* Brief at 12-14.  Indeed, Ericsson's expert conceded this point.  *Id.*  As such, there is no record evidence that the accused devices are capable of using a TID to identify the type of information in the payload.

Further, Ericsson misstates the evidence in response to Defendants' motion.  For example, Ericsson asserts that Dr. Gibson admitted that he practiced the '568 patent during his testing of Ekiga.  Response at 13-14.  But the so-called "admission" was actually a question— not an admission.  Ex. Y (6/10/13 p.m. Tr.) at 57:16-58:7 ("Q. It's using the invention, right?  *A. Ekiga is using the invention, you said?*  Q. Yes. That's what you tested, right?  A. Yes.").  Moreover, Dr. Gibson's testing showed that *data packets carrying different types of information* are commonly *assigned the same TID value*.  Brief at 13.  Similarly, it showed that *data packets carrying the same type of information* can be *assigned different TID values*.  *Id.*  Dr. Nettles' own testing confirmed this, as well.  Ex. I (6/11/13 p.m. Tr.) at 32:11-34:6 (Ekiga test results showed different TID values assigned to the same type of data).  As such, Ericsson's statement that "both experts agreed that the traffic identifier matched the type of information in the payload, and thus infringed the '568 patent" (Response at 15) is inaccurate.

Because different TID values can be used for the same type of information, while the same TID value can be used for different types of information, the TID *value necessarily cannot identify the type of information in the payload* of a packet.  Thus, the Court should grant the

4

motion for JMOL or new trial as to the '568 patent. [3]

### 3.    The '625 Patent

Ericsson does not dispute that the "command to receive" element 1 requires a command to receive packets that the receiver would not otherwise receive—hence the need for a command. *See* Response at 19-20.  The '625 patent applies to systems where a command is needed to "force the receiver to accept packets" in order to overcome the problem of deadlock.  *See, e.g.*, Ex. O (PX0004) 4:26-30; Ex. E (6/5/13 p.m. Tr.) at 58:7-16 (Nettles).  But Ericsson presented no evidence that Defendants' products are forced to receive packets they would not otherwise receive.  To the contrary, the undisputed evidence establishes that 802.11 products *receive all packets without ever needing a command*, and they treat in sequence and out of sequence packets alike.  Brief at 20.  The concept of a command to receive a packet makes no sense in such a system.  Lacking evidence of a command or the need for one, Ericsson simply reads it out, contending that the mere receipt of packets proves the existence of a command to receive them. [4]

Ericsson does not dispute that the accused products receive all data packets sent to them. The dispute is whether *that fact alone* is sufficient to support a jury verdict that in the accused products, a transmitter *commands* the receiver to receive an out of sequence data packet. [5]  It is not.  Ericsson also does not dispute that the accused products send and receive ordinary data packets that, in relevant part, are just like the prior art packets in the '625 patent.  *See* Ex. O (PX0004) Fig. 5; Ex. E (6/5/13 p.m. Tr.) at 60:1-11 (Nettles); *see also* Brief at 19 (detailing

---

[3] Ericsson's argument regarding the Intel Software Developers Kit (Response at 15) is misplaced.  The cited passage is only illustrative, and the system does not operate in this manner.  *See, e.g.*, Ex. Z (6/6/13 p.m. Tr.) 120:3-121:17 (Kitchin).

[4] Ericsson maintains this position even though claim 1 cannot be valid if the claim is given such broad scope, at least because, as explained below, the Petras prior art reference discloses the receipt of ordinary data packets carrying additional information (discard messages).

[5] As explained in Defendants' opening brief, Dr. Nettles testified that a so-called "explicit block acknowledgement request" ("BAR") did not constitute a command to receive.  Ex. E (6/5/13 p.m. Tr.) at 54:16-22 (Nettles).

evidentiary support).[6]  And Ericsson does not dispute that the accused products treat all data packets—in sequence or not—the same: the receiver receives them, as opposed to rejecting them.  *See, e.g.*, Brief at 17; Response at 17-20.  But Ericsson's "proof" of commanding a receiver to receive an out of sequence packet stops there.  Ericsson's proof consisted of Dr. Nettles' characterization that *receiving* packets and *commanding receipt* of packets are *indistinguishable*:

> Q. So in your world, every single packet that carries data is a command, right?
> A. Yes, sir.

Ex. E (6/5/13 p.m. Tr.) at 56:23-57:5 (Nettles).  Ericsson also highlighted testimony from Dr. Nettles that a packet's format may omit such a command bit, and so one can simply *characterize* all packets as commands.  *See* Response at 18-19 (*quoting* (6/11/13 a.m. Tr.) at 108:1-19 (Nettles) ("every packet is a command, not just the ones that you set to 1").  This reasoning vitiates claim 1's "command to receive," is inconsistent with the claim and specification,[7] and cannot support a jury verdict of infringement of the '625 patent.

Ericsson then asserts that the mere act of *receiving* a packet proves that a *command to receive* exists because the command must be "programmed" into the 802.11 chip, relying again on Dr. Nettles' conclusory testimony:

> Q. How can a packet be a command?
> A. Well, we should understand that in these systems, the systems have been programmed to follow the rules of the standard. **And so because of the programming, there's really no choice as to whether or not -- what's going to happen when the packet comes in.**

---

[6] Ericsson's statement that "Dr. Nettles testified that 802.11n packets are not the 'ordinary' prior art data packets because the *receivers have been programmed to treat them as commands* to receive when out of sequence" merely highlights that Ericsson's theory of infringement is based on how the receiver treats data packets, not the format of the data packets themselves.  *See* Response at 18 (emphasis added).

[7] As explained in footnote 12 of Defendants' opening brief, claim 1's requirement of commanding the receiver to receive an out of sequence packet refers to receiving out of sequence packets *that the receiver could not otherwise receive*. The '625 patent was concerned with solving a problem known as "deadlock," in which the system would lock up because the receiver would reject incoming packets subsequent to a missing packet.  The accused products do not suffer from deadlock because the receiver accepts all incoming packets.

Ex. L (6/11/13 a.m. Tr.) at 105:24-106:4 (Nettles); Ex. E (6/5/13 p.m. Tr.) at 105:21-106:7

(Nettles); Ex. AA (6/5/13 a.m. Tr.) at 80:4-81:3, 82:4-17 (Nettles); Response at 17-20.  But

Ericsson's expert *conceded* that *receiving* and *commanding to receive are different*, confirming

that the mere act of receiving a packet does not establish the presence of a command:

> Q. Okay. And you also said that **if a receiver could already receive** a packet, **you wouldn't need a command to receive** it, right?
> A. **Yes, sir.**

Ex. E (6/5/13 p.m. Tr.) at 66:7-10 (Nettles); *see also id.* at 64:24-65:11, 66:21-25.[8]

Ericsson has no proof of an actual command, let alone of a single packet that would not

be received in the ordinary course of the operation of the accused products.  Ericsson chose to

characterize its absence of evidence as "every packet is a command."  This is not a "semantic

fight"; it is a failure of proof as to an issue on which Ericsson bears the burden.  Thus, the Court

should grant Defendants' motion for JMOL or new trial as to the '625 patent.[9]

### B.    Insufficient Evidence Of Direct Infringement Of Method Claims

Ericsson points to no evidence that any Defendant actually performed the methods

described in the '215 or '625 patents.  Instead of responding to Defendants' case law (*compare*

---

[8] As did both inventors of the '625 patent.  Ex. H (6/10/13 p.m. Tr.) at 82:17-83:2 (Gibson) (on P. Larsson Dep. Tr. at 124:3-9) ("Q. Okay. And over on the right, there's a quote. And who's that from?  A. That's from Peter Larsson, one of the inventors of the '625 patent.  Q. And was he being asked about this very situation, the inventor of the '62 (sic) patent, that **if you had a system that was just programmed to accept all the time, would you need a command to receive as required by the claims?**  A. And that's what he was asked, and **he said, no, you would not**"); Ex. R (6/4/13 a.m. Tr.) at 110:7-14 (M. Larsson) ("So looking at Figure 2 again, if you had a system that was designed where you could receive a packet, let's say Sequence No. 7, beyond TSN Max and **shift the window automatically with just a regular packet, you wouldn't need the command that you're talking about in Claim 1**, correct? ANSWER: Yes. If you had that, then **you wouldn't need it.**").

[9] Ericsson also failed to present evidence regarding the other elements of claim 1, and there is none.  *See*, *e.g.*, Brief at fn 14.  Ericsson's two cited cases in support of its waiver argument (Response at 21) are inapposite.  In *Versata Software, Inc. v. SAP Am., Inc.,* Nos. 2012-1029, -1049, 2013 U.S. App. LEXIS 8838 (Fed. Cir. May 1, 2013), the Federal Circuit refused to consider an untimely *Daubert* challenge.  In *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010), the Federal Circuit refused to consider whether there was sufficient evidence to support the damages award because the appellant failed to move for a pre-verdict JMOL on damages.  By contrast, here, Defendants' trial JMOL and renewed JMOL both raise the same ground.  *See, e.g., Malta v. Schulmerich Carillons, Inc.*, 952 F. 3d 1320, 1324-25 (Fed. Cir. 1991) (holding that moving for noninfringement "on the grounds that the evidence is insufficient" preserved later noninfringement arguments in post-verdict motion practice).

Brief at 23-24 with Response at 24-25), Ericsson focuses on the *SiRF* case. This digression is irrelevant, however, because the issue resolved by the Federal Circuit in *SiRF*—*i.e.*, whether a user must practice one or more elements of the method claims at issue there—is markedly different from the failure of proof by Ericsson here. In *SiRF*, the Federal Circuit declined to reach joint infringement on the grounds that the claim language did not require any elements to be performed by a user. *SiRF Tech. Inc. v. ITC*, 601 F.3d 1319, 1329 (Fed. Cir. 2010). As such, *SiRF* is only (potentially) relevant to whether a user must practice the specific claims at issue in that case. *See id.*; *see also* Brief at 23-24. *SiRF* cannot properly be extended to apply to a situation where there is no evidence *at all* that the methods have been performed. Ericsson has failed to put forth any evidence that Defendants practiced the claimed methods, and so Defendants are entitled to JMOL of no direct infringement of the '215 and '625 patents.

## C.     Insufficient Evidence Of Indirect Infringement

Ericsson has not proven that Defendants intended to induce infringement by users or responded to any of the legal support in Defendants' opening brief. *Compare* Brief at 26-28 with Response at 26-29. None of the alleged evidence cited by Ericsson (*see* Response at 27-28) demonstrates that Defendants acted with "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). Ericsson argues that 802.11n products are tested for interoperability (Response at 28), but "inducement requires evidence of *culpable conduct*, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added) (citation omitted).[10] Further, citations to website and consumer product materials (*see* Response

---

[10] Ericsson did not attempt to establish that Intel had been provided with notice of alleged infringement. *See* Dkt. 474 at 2-3 (Stipulation Regarding Notice Dates).

at 28) are irrelevant because "acts incident to product distribution, such as offering customers technical support or product updates, [cannot] support liability in themselves." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 937 (2005). Further, Ericsson failed to submit any evidence establishing or suggesting that Defendants manifested a specific intent to encourage another's infringing acts. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (en banc); *see also* Brief at 28. Defendants are therefore entitled to JMOL in their favor on all of Ericsson's indirect infringement claims or a new trial.

**D.      Clear And Convincing Evidence Compels A Finding Of Invalidity**

**1.      The Petras Reference Discloses Claim 1 Of The '625 Patent**

Dr. Heegard testified consistently and clearly regarding the "command to receive" element of the '625 patent. *See, e.g.*, Brief at 31-32. Specifically, when a discard message is attached to a data packet, it acts as a command to receive. *See id.*[11] The discard message forces the receiver to accept the packet to which it is attached and which it otherwise would not accept. *See id.* Ericsson's two arguments to the contrary are unavailing.

First, Ericsson attempts to undermine Dr. Heegard's testimony by citing testimony of Dr. Gibson that a discard message in general is not a command to receive. *See* Response at 33-34. But this testimony is entirely *consistent* with Dr. Heegard's testimony that in Petras a discard message attached to a packet is a command to receive:

> Q. Isn't the packet itself the command?
> A. No. There's no – there's no delete – **so you're asking me if a discard message is a command to receive, and generally speaking it's not.** But in this particular scheme, this system, which has a discard message, it is, because this discard message is tacked on to a message and it's -- and when this system is working and there's a discard message, it is a command to receive. **So generally is a discard message a command to receive, no. In this system, this message is a command to receive.**

---

[11] In view of Ericsson's broad application of the claims, packets with a special message attached that would require receipt of the packets must fall within the claims as applied by Ericsson.

Ex. Y (6/10/13 p.m. Tr.) at 160:16-161:2 (Heegard). There was thus no impeachment of Dr. Heegard's testimony regarding the command to receive.

Second, Ericsson contends that Dr. Heegard was impeached because he agreed that not all packets in the Petras Reference require (or are themselves) a command to receive. *See* Response at 34. Once again, this is entirely consistent with Dr. Heegard's testimony that when there is room in the receiver's window to accept an incoming packet, it will do so, and when there is no room (such as when the packet is outside the receiver's window), a command (such as the discard notice disclosed in the reference) is required to force reception. *See* Ex. H (6/10/13 p.m. Tr.) at 130:20-132:21; Ex. Y (6/10/13 p.m. Tr.) at 161:7-24, 166:24-167:20 (Heegard). Thus, the only points raised by Ericsson are in fact consistent and cannot show impeachment. Because Defendants' evidence of invalidity of claim 1 of the '625 patent was extensive and unimpeached, the jury was not free to disregard Dr. Heegard's testimony (*see* Response at 30-35) and Defendants are entitled to JMOL or a new trial.[12]

### 2. The Petras Reference Discloses Claims 1 And 2 Of The '435 Patent

Ericsson again disputes a single element of one asserted claim, incorrectly contending that Dr. Heegard failed to prove that the Petras Reference disclosed "removing entries from a list." In fact, Dr. Heegard testified consistently and clearly that the Petras Reference discloses a list that tracks which packets are expected or missing from the receiver's buffer. *See, e.g.*, Brief at 33-34 (detailing evidence). Ericsson incorrectly contends that Dr. Heegard testified that the receiver's buffer was the list. *See* Response at 35 (quoting Dr. Heegard's testimony at (6/10/13 p.m. Tr.) at 137:3-5). But Ericsson selectively quotes this testimony, in which Dr. Heegard explains that the relevant part of the receiver is the mechanism that keeps track of which packets

---

[12] Ericsson has not disputed that the Petras Reference is publicly available. *See* Brief at 30-31; Response at 30-38.

are and are not in the buffer (*i.e.*, received vs. expected to be received).  Ex. H (6/10/13 p.m. Tr.) at 135:13-137:22 (Heegard).  Dr. Heegard's testimony on this was consistent and unimpeached.

Second, Ericsson incorrectly contends that Dr. Heegard testified inconsistently by explaining that figure 17 of Petras disclosed the tracking mechanism he had been testifying about all along as meeting the removing elements from a list element.  *See* Response at 36 (quoting (6/10/13 p.m. Tr.) at 166:7-23 (Heegard)).  As Dr. Heegard explained, "In Figure 17, they show a buffer and with a list keeping track of it."  Ex. H (6/10/13 p.m. Tr.) at 166:7-23 (Heegard).  Thus, there was no impeachment with respect to Dr. Heegard's testimony on figure 17.

Finally, Ericsson incorrectly contends that no evidence was presented that contradicted Dr. Nettles' testimony that "you would never want to remove expectations from" the list pointed out by Dr. Heegard.  *See* Response at 36 (quoting (6/11/13 a.m. Tr.) at 101:14-20-102:6 (Nettles)).  To the contrary, the entire point of Dr. Heegard's testimony about the Petras Reference was that it solved the problem of deadlock (the same problem addressed by the '435 patent) by allowing the receiver to change its expectations of what it was waiting to receive—the very information kept in the list pointed out by Dr. Heegard.  *See, e.g.*, Ex. H (6/10/13 p.m. Tr.) at 122:14-124:10, 130:6-132:18, 135:13-137:22, 166:7-23 (Heegard).

Defendants presented substantial, unimpeached evidence of invalidity through Dr. Heegard on all elements of the asserted claims of the '625 and '435 patents.[13] As such, Defendants are entitled to JMOL on invalidity of those patents or to a new trial on those issues.

## III.    CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, the Court should enter JMOL in favor of Defendants, or alternatively, grant their request for a new trial.

---

[13] Ericsson incorrectly contends that "Dr. Heegard never testified that the Petras disclosure was enabling."  *See* Response at 37-38.  To the contrary, Dr. Heegard testified that "the submission [Petras Reference] describes in sufficient detail that you could implement this protocol."  Ex. H (6/10/13 p.m. Tr.) at 143:3-6 (Heegard).

Dated:  July 9, 2013

Respectfully submitted,

*/s/ Robert M. Parker*
Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No.  00787165
Charles Ainsworth
State Bar No. 00783521
Andrew T. Gorham
State Bar No. 24012715
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile:  (903) 533-9687
E-mail: rmparker@pbatyler.com
E-mail: rcbunt@pbatyler.com
E-mail: charley@pbatyler.com
E-mail: tgorham@pbatyler.com

Adam R. Alper
Sarah E. Piepmeier
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1876
Facsimile: (415) 439-1500
E-mail:adam.alper@kirkland.com
E-mail:sarah.piepmeier@kirkland.com

Luke Dauchot
Michael W. De Vries
Tim Majors
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
E-mail: luke.dauchot@kirkland.com
E-mail: michael.devries@kirkland.com
E-mail: tim.majors@kirkland.com

12

Gregory S. Arovas
**KIRKLAND & ELLIS LLP**
601 Lexington Ave
New York, NY 10022
Telephone: (212) 446-4800
Facsimile:  (212) 446-4900
E-mail: greg.arovas@kirkland.com

Michael E. Jones (State Bar No.: 10929400)
John F. Bufe (State Bar No.: 03316930)
**POTTER MINTON, PC**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903)597-8311
Facsimile: (903) 593-0846
E-mail: mikejones@potterminton.com
E-mail: johnbufe@potterminton.com

**ATTORNEYS FOR INTERVENOR INTEL CORPORATION**

*/s/ Christine M. Morgan*
Scott D. Baker, *Pro Hac Vice* (Cal. SBN 84923)
John P. Bovich, *Pro Hac Vice* (Cal. SBN 150688)
James A. Daire, *Pro Hac Vice* ( Cal. SBN 239637)
Christine M. Morgan, *Pro Hac Vice* (Cal. SBN 169350)
Adaline J. Hilgard, *Pro Hac Vice* (Cal. SBN 173213)
William R. Overend, *Pro Hac Vice* (Cal. SBN 180209)
Jonah D. Mitchell, *Pro Hac Vice* (Cal. SBN 203511)
Seth B. Herring
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:        (415) 543-8700
Facsimile:        (415) 391-8269
E-mail: sbaker@reedsmith.com
E-mail: jbovich@reedsmith.com
E-mail: jdaire@reedsmith.com
E-mail: ahilgard@reedsmith.com
E-mail: woverend@reedsmith.com
E-mail: jmitchell@reedsmith.com

E-mail: sherring@reedsmith.com

Trey Yarbrough (Bar No. 22133500)
Debra E. Gunter (Bar No. 24012752)
**YARBROUGH & WILCOX, PLLC**
100 E. Ferguson, Ste. 1015
Tyler, Texas 75702
Telephone:        (903) 595-3111
Facsimile:        (903) 595-0191
E-mail: trey@yw-lawfirm.com
E-mail: debby@yw-lawfirm.com

**Counsel for Defendants, D-LINK SYSTEMS, INC., NETGEAR, INC., ACER, INC., ACER AMERICA CORPORATION, and GATEWAY, INC.**

*/s/ S.J. Christine Yang* (with permission)
S.J. Christine Yang (admitted *pro hac vice*)
Duncan Palmatier (admitted *pro hac vice*)
Victoria Hao (admitted *pro hac vice*)
**THE LAW OFFICES OF S.J. CHRISTINE YANG**
17220 Newhope Street, Suite 101
Fountain Valley, California 92708
Telephone:        (714) 641-4022
Facsimile:        (714) 641-2082
E-Mail:  cyang@sjclawpc.com
E-Mail:  dpalm@dpalmlaw.com
E-Mail:  vhao@sjclawpc.com

**Counsel for Defendant D-LINK SYSTEMS, INC.**

*/s/ Dwayne C. Norton* (with permission)
Michael J. Newton (Texas Bar No. 24003844)
Jason W. Cook (Texas Bar No. 24028537)
Dwayne C. Norton (Texas Bar No. 24076139)
Shaun W. Hassett (Texas Bar No. 24074372)
Brady Cox (Texas Bar No. 24074084)
**ALSTON & BIRD LLP**
2828 North Harwood St, Suite 1800
Dallas, Texas 75201
Telephone:        (214) 922-3400
Facsimile:        (214) 922-3899
E-mail:  mike.newton@alston.com

14

E-mail:  jason.cook@alston.com
E-mail:  dwayne.norton@alston.com
E-mail:  shaun.hassett@alston.com
E-mail:  brady.cox@alston.com

Marsha E. Mullin (California Bar No. 93709)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:         (213) 576-1000
Facsimile:         (213) 576-1100
E-mail:  marsha.mullin@alston.com

Frank G. Smith (Georgia Bar No. 657550)
Kamran Jivani (Georgia Bar No. 510908)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:         (404) 881-7000
Facsimile:         (404) 881-7777
E-mail: frank.smith@alston.com
E-mail: kamran.jivani@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
Peter Aaron Kerr
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone:         (903) 705-1117
Facsimile:         (903) 581-2543
E-mail: ddacus@dacusfirm.com
E-mail: pkerr@dacusfirm.com

**Counsel for DEFENDANT DELL INC.**

 */s/ John Feldhaus* (with permission)
John Feldhaus
Pavan Agarwal
Liane M. Peterson
**FOLEY & LARDNER LLP**
3000 K. Street, NW, Suite 500
Washington, DC 20007
Telephone:         (202) 672-5300
Facsimile:          (202) 672-5399
Email:  jfeldhaus@foley.com
Email:  pagarwal@foley.com

15

Email:  Lpeterson@foley.com

Guy N. Harrison
Attorney at Law
217 N. Center
Longview, TX 75606
Telephone:  (903) 758-7361
Facsimile:    (903) 753-9557
Email:  guy@gnhlaw.com

**Counsel for TOSHIBA CORPORATION AND TOSHIBA AMERICA INFORMATION SYSTEMS, INC.**

 */s/  Eugene M. Paige* (with permission)
Robert A. Van Nest
Eugene M. Paige
Matan Shacham
**KEKER & VAN  NEST LLP**
633 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
E-mail: rvannest@kvn.com
E-mail: emp@kvn.com
E-mail: mshacham@kvn.com

**Attorneys for ACER, INC., D-LINK CORPORATION and GATEWAY, INC.**

*/s/  Kaiwen Tseng* (with permission)
Kaiwen Tseng
**FREITAS TSENG & KAUFMAN LLP**
100 Marine Parkway,  Suite 200
Redwood City, CA 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301
Email:  ktseng@ftbklaw.com

**Attorneys for ACER, INC.**

16

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on July 9, 2013 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ Robert M. Parker*
Robert M. Parker

17